STEPHEN R. BASSER (121590)
sbasser@barrack.com
SAMUEL M. WARD (216562)
sward@barrack.com
BARRACK, RODOS & BACINE
One America Plaza
600 West Broadway, Suite 900
San Diego, CA  92101
Telephone:  (619) 230-0800
Facsimile:   (619) 230-1874

*Attorneys for the Port Authority of Allegheny County Retirement and Disability Allowance Plan for Employees Represented by Local 85 of the Amalgamated Transit Union*

CHRISTOPHER J. KELLER
ckeller@labaton.com
JOSEPH A. FONTI
jfonti@labaton.com
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
Telephone:  (212) 907-0853
Facsimile:   (212) 883-7053

*Attorneys for the New Orleans Employees' Retirement System*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| FRED JEAN, Individually and on Behalf of All Others Similarly Situated, | Case No. 8:09-CV-01304-JVS |
| Plaintiffs, | <u>CLASS ACTION</u> |
| v. | ORAL ARGUMENT REQUESTED |
| STEC, INC., MANOUCH MOSHAYEDI, and MARK MOSHAYEDI, | DATE:   February 8, 2010 TIME:    1:30 p.m. CTRM:  10C Honorable James V. Selna |
| Defendants. | |

**MEMORADUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO CONSOLIDATE RELATED CASES,  APPOINT CO-LEAD PLAINTIFFS, AND APPROVE OF CO-LEAD PLAINTIFFS' SELECTION OF CO-LEAD COUNSEL**

1 | HADI SAKHAI, Individually and on
Behalf of All Others Similarly Situated,    Case No. 8:09-CV-01306-JVS

2 | <u>CLASS ACTION</u>

3 | Plaintiff,

4 | v.

5 | STEC, INC., MANOUCH
MOSHAYEDI, MARK MOSHAYEDI,

6 | RAYMOND D. COOK, J.P. MORGAN
SECURITIES INC., DEUTSCHE
BANK SECURITIES INC.,

7 | BARCLAYS CAPITAL INC. and
OPPENHEIMER & CO. INC.,

8 | Defendants.

9 |

10 | FRED GREENWALD, Individually and    Case No. 8:09-CV-01315-JVS
on Behalf of All Others Similarly

11 | Situated,    <u>CLASS ACTION</u>

12 | Plaintiff,

13 | v.

14 | STEC, INC., MANOUCH
MOSHAYEDI, and MARK
(MERHADAD) MOSHAYEDI

15 | Defendants.

16 |

17 | DANIEL MUNTER, Individually and    Case No. 8:09-CV-01320-JVS
on Behalf of All Others Similarly

18 | Situated,    <u>CLASS ACTION</u>
Plaintiff,

19 | v.

20 | STEC, INC., MANOUCH
MOSHAYEDI, MARK MOSHAYEDI,
AND RAYMOND D. COOK,

21 |

22 | Defendants.

23 |

24 |

25 |

26 |

27 |

28 |

| | |
|---|---|
| MARCEL WEINBERGER, Individually and on Behalf of All Others Similarly Situated, | Case No. 8:09-CV-01460-JVS |
| | CLASS ACTION |
| Plaintiff, | |
| v. | |
| STEC, INC., MANOUCH MOSHAYEDI, MARK MOSHAYEDI, AND RAYMOND D. COOK, | |
| Defendants. | |
| JONATHAN FISCHER, Individually and on Behalf of All Others Similarly Situated, | Case No. 2:09-CV-08536-JVS |
| | CLASS ACTION |
| Plaintiff, | |
| v. | |
| STEC, INC., MANOUCH MOSHAYEDI, MARK MOSHAYEDI, AND RAYMOND D. COOK, | |
| Defendants. | |

# TABLE OF CONTENTS

I.    INTRODUCTION…………………………………………………...1

II.   BACKGROUND………………………………………………….3

    A.    Statement of Facts……………………………………………...3

    B.    Procedural History………………………………………….6

III.  ARGUMENT……………………………………………………….6

    A.    All Related Actions Should Be Consolidated…………………6

    B.    ATU 85 and New Orleans Should Be Appointed Co-Lead Plaintiffs in this Action…………..……………………………...8

        1.    The Applicable Legal Standard…………………………..8

        2.    ATU 85 and New Orleans Have Timely Filed This Motion and Believe That They Have the Largest Financial Interest in the Relief Sought by the Class……..10

            a.    ATU 85 and New Orleans Have Timely Filed This Motion………………………………………………10

            b.    ATU 85 and New Orleans Have the Largest Financial Interest…………………………………..9

        3.    ATU 85 and New Orleans Satisfy the Requirements of Rule 23………………………………………………..10

            a.    The Claims of ATU 85 and New Orleans Are Typical of the Claims of the Class……………..…10

            b.    ATU 85 and New Orleans Will Fairly and Adequately Represent the Interests of the Class….12

    C.    The Court Should Approve ATU 85 and New Orleans' Choice of Counsel……..…………………………………………….13

IV.   CONCLUSION…………………………………………………..16

# TABLE OF AUTHORITIES

Page

**CASES**

*A&J Deutscher Family Fund v. Bullard*, [1986-1987 Transfer
    Binder] Fed. Sec. L. Rep. (CCH) ¶92,938 (C.D. Cal. 1986) ................ 11

*Backe v. Novatel Wireless, Inc.*, Case No. 08-CV-01689-H (RBB),
    2008 U.S. Dist LEXIS 100622 (S.D. Cal. Dec. 10, 2008)...................... 7

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975)................................................................. 12

*Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3d Cir. 1977),
    *cert. denied*, 434 U.S. 1086 (1978) ...................................................... 13

*Ferrari v. Impath, Inc.*, No. 03 Civ 5667 (DAB), 2004 U.S. Dist.
    LEXIS 13898 (S.D.N.Y. July 15, 2004) ................................................ 7

*Garber v. Juniper Networks, Inc.*, No. C 06-04327 JW, 2006 U.S.
    Dist. LEXIS 86721 (N.D. Cal. Nov. 20, 2006)........................................ 8

*Glauser v. EVCI Career Colls. Holding Corp.*,
    236 F.R.D. 184 (S.D.N.Y. 2006) .......................................................... 8

*Gluck v. CellStar Corp.*,
    976 F. Supp. 542, 548 (N.D. Tex. 1997)........................................ 3, 9, 13

*Greebel v. FTP Software, Inc.*,
    939 F. Supp. 57 (D. Mass. 1996) .......................................................... 3

*Haley v. Medtronic, Inc.*,
    169 F.R.D. 643, 649 (C.D. Cal. 1996) .................................................. 11

*Hanon v. Dataproducts Corp.*,
    976 F.2d 497 (9th Cir. 1992)................................................................. 11

*In re Cavanaugh*,
    306 F.3d 726 (9th Cir. 2002)............................................................. 9, 13

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001),
    *cert. denied*, 535 U.S. 929 (2002) ...................................................... 14

ii

*In re Cendant Corp. Sec. Litig.*,
    No. 98-CV-1664 (WHW) (D.N.J.)..................................................................14

*In re McKesson HBOC, Inc. Sec. Litig.*,
    No. C-99-20743-RMW (N.D. Cal.) ...............................................................14

*In re Mellon Bank Shareholder Litigation*,
    120 F.R.D. 35 (W.A. Pa. 1998)......................................................................13

*In re Monster Worldwide, Inc. Sec. Litig.*,
    No. 07-cv-2237 (S.D.N.Y. filed Mar. 15, 2007)...........................................15

*In re United Energy Corp. Solar Power Modules Tax Shelter Investments
Securities Litigation*,
    122 F.R.D. 251 (C.D. Cal. 1988) ...................................................................12

*In re Waste Mgmt., Inc. Sec. Litig.*,
    128 F. Supp. 2d 401 (S.D. Tex. 2000) ...........................................................15

*In re WorldCom, Inc. Sec. Litig.*,
    No. 02 Civ. 3288 (DLC) (S.D.N.Y.)...............................................................14

*In re WorldCom, Inc. Sec. Litig.*, No. 02 civ. 3288 (DLC), 2004
    U.S. Dist. LEXIS 22992 (S.D.N.Y. Nov. 12, 2004) ......................................15

*Johnson v. Celotex Corp.*, 899 F.2d 1281 (2d Cir. 1990),
    *cert. denied*, 498 U.S. 920 (1990) ...................................................................8

*Lerwill v. Inflight Motion Pictures, Inc.*,
    582 F.2d at 507 (9th Cir. 1978)......................................................................12

*Lewis v. Curtis*,
    671 F.2d 779 (3d Cir. 1982), *cert. denied*, 459 U.S. 880
    (1982) .............................................................................................................13

*Lubin v. Sybedon Corp.*,
    688 F. Supp. 1425 (S.D. Cal. 1988) ...............................................................12

*Schaefer v. Overland Express Family of Funds*,
    169 F.R.D. 124 (S.D. Cal. 1996).....................................................................12

*Schwartz v. Harp*,
    108 F.R.D. 279 (C.D. Cal. 1985) ........................................................... 11

*Steiner v. Frankino*, No. 1:98CV0264, 1998 U.S. Dist. LEXIS 21804
    (N.D. Ohio July 16, 1998) ...................................................................... 9

*Tanne v. Autobytel, Inc.*,
    226 F.R.D. 659 (C.D. Cal. 2005) ........................................................... 9

*Welling v. Alexy*,
    155 F.R.D. 654 (N.D. Cal. 1994) ........................................................... 11

STATUTES, RULES & REGULATIONS

Private Securities Litigation Reform Act of 1995

    15 U.S.C. § 78u-4(a)(3)............................................................................ 8
    15 U.S.C. § 78u-4(a)(3)(B)(i).................................................................. 10
    15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ......................................................... 10
    15 U.S.C. § 78u-4(a)(3)(A)(i) ................................................................. 9
    15 U.S.C. § 78u-4(a)(3)(B)(v)................................................................ 12
    15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ........................................................... 9

Securities Exchange Act of 1934

    21D(a)(3)(B)................................................................................... 9, 16
    21D(a)(3)(B)(ii) ...................................................................................... 6
    21D(a)(3)(B)(iii)(I)(cc) ......................................................................... 10

Federal Rules of Civil Procedure

    Rule 42(a) .............................................................................................. 7

OTHER AUTHORITIES

    H.R. Conf. Rep. No. 104-369 (1995)                     1, 2
    S. Rep. No. 104-98 (1995) ................................................................... 1, 2

Case No. SACV09-01304 - MEM. P. & A. ISO  MOTION TO CONSOLIDATE RELATED CASES, APP'T CO-LEAD
PLAINTIFFS AND APPROVE CO-LEAD PLAINTIFFS' SELECTION OF CO-LEAD COUNSEL

The Port Authority of Allegheny County Retirement and Disability Allowance Plan for Employees Represented by Local 85 of the Amalgamated Transit Union ("ATU 85") and the New Orleans Employees' Retirement System ("New Orleans") seek to represent in this securities class action all investors who purchased STEC, Inc. ("STEC" or the "Company") securities during the period from June 16, 2009 to November 3, 2009 (the "Class Period"), and who were damaged thereby as a result of the alleged deceptive conduct by defendants STEC, Manouch Moshayedi, STEC's Chief Executive Officer, Mark Moshayedi, STEC's President and Chief Operating Officer, Raymond D. Cook, STEC's Chief Financial Officer, J.P. Morgan Securities, Inc., Deutsche Bank Securities, Inc., Barclays Capital, Inc., and Oppenheimer & Company, Inc.

In enacting the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Congress expressly intended to encourage institutional investors like ATU 85 and New Orleans to serve as lead plaintiffs in securities class actions. H.R. Conf. Rep. No. 104-369 (1995), *as reprinted in* 1995 U.S.C.A.A.N. 730, S. Rep. No. 104-98 (1995), *as reprinted in* 1995 U.S.C.A.A.N. 679. ATU 85 and New Orleans have satisfied all of the PSLRA's requirements for appointment of lead plaintiff, pursuant to 15 U.S.C. § 78u-4(a)(3). This motion is being filed within 60 days of the publication of the first notice, as required by the statute. 15 U.S.C. § 78u-4(a)(3)(A). ATU 85 and New Orleans believe that they have the largest financial interest in the outcome of the litigation, having sustained combined losses of $194,331. In addition, ATU 85 and New Orleans qualify as the "most adequate" plaintiffs to serve as co-lead plaintiffs in this action because they satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure, as required by the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B). Thus, the Court should appoint ATU 85 and New Orleans as the co-lead plaintiffs. In addition, under 15 U.S.C. § 78u-4(a)(3)(B)(v), the Court should approve ATU 85 and New Orleans' selection of Barrack, Rodos & Bacine and Labaton Sucharow LLP ("Labaton

1

Case No. SACV09-01304 - MEM. P. & A. ISO  MOTION TO CONSOLIDATE RELATED CASES, APP'T CO-LEAD PLAINTIFFS AND APPROVE CO-LEAD PLAINTIFFS' SELECTION OF CO-LEAD COUNSEL

Sucharow") to serve as co-lead counsel to represent the class.

# I.    INTRODUCTION

ATU 85 is an institutional investor, representing approximately 2,600 transit workers employed by the Port Authority of Allegheny County. Chartered in 1897, ATU 85 is one of the oldest labor organizations in the country. New Orleans is an institutional investor that is also a Defined Benefit Pension Plan, established under the laws of the State of Louisiana on July 1, 1947. New Orleans manages approximately $400 million in total assets. New Orleans is supported by joint contributions from the City of New Orleans, its employee members and income from investments. As institutional investors and experienced fiduciaries, ATU 85 and New Orleans have a global interest in assuring that the officers and directors of the public companies in which they invest their assets shall and will adhere to their fiduciary duties, establish and enforce appropriate corporate governance standards, and provide truthful and complete information when speaking to the investment community.

The complaints filed in this action allege violations of the federal securities laws arising from the defendants' allegedly false and misleading statements about STEC's business and operations and their purported failure to disclose material facts necessary to make such statements, in light of the circumstances in which they were made, not false and misleading.

In enacting the PSLRA, Congress expressly intended to encourage institutional investors like ATU 85 and New Orleans to serve as lead plaintiffs in securities class actions. H.R. Conf. Rep. No. 104-369, *as reprinted in* 1995 U.S.C.A.A.N. 730, S. Rep. No. 104-98, *as reprinted in* 1995 U.S.C.A.A.N. 679. The PSLRA was intended "to increase the likelihood that institutional investors will serve as lead plaintiffs" because, among other reasons, institutional investors and other class members with large amounts at stake "will represent the interests of the plaintiff class more effectively than class members with small amounts at

stake."    H.R.  Conf.  Rep.  No.  104-369,  at  33- 34,  *as reprinted in*  1995 U.S.C.C.A.N. at 733-34.  Similarly, the Senate Report on the PSLRA states:

> The Committee believes that increasing the role of institutional investors in class actions will ultimately benefit the class and the courts…. Institutions with large stakes in class actions have much the same interests as the plaintiff class generally….

S. Rep. No. 104-98 at 12-13, *as reprinted in* 1995 U.S.C.C.A.N. at 690 (citations omitted); *Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 63 (D. Mass. 1996) (provisions of the PSLRA "suggest a presumption that institutional investors be appointed lead plaintiff"); *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 548 (N.D. Tex. 1997) ("through the PSLRA, Congress has unequivocally expressed its preference for securities fraud litigation to be directed by large institutional investors").

## II.    BACKGROUND

### A.    STATEMENT OF FACTS[1]

The above-captioned cases are securities class actions brought on behalf of all persons who purchased or otherwise acquired the common stock of STEC during the "Class Period" and were damaged thereby.[2]

Throughout the Class Period, defendants made a series of false and/or misleading public statements designed to inflate the trading price of STEC securities.  Through these false and/or misleading statements, defendants misled investors as to both the rate of adoption of SSD technology and the competition in the SSD market faced by STEC.

---

[1]    These facts are taken from each of the six securities class action complaints against the Defendants that are currently pending in this District.

[2]    STEC designs, develops and manufactures flash memory and DRAM products, including solid state drives ("SSDs") for original equipment manufacturers.

3

On June 16, 2009, STEC issued a press release announcing that it was increasing its guidance for the second quarter of 2009.  In this release, STEC increased its revenue guidance from $68-72 million to $82-84 million.  This increase was based largely on an increase in revenue expected from the sales of STEC's ZeusIOPS SSDs from $65 million to $80 million in the first half of the year.

Thereafter, on July 16, 2009, STEC again highlighted its sales of the ZeusIOPS SSDs, announcing a contract for the sale of $120 million worth of the SSDs and forecasted that revenue from sales of the ZeusIOPS SSDs would exceed $220 million in 2009.

On August 3, 2009, STEC announced its financial results for the second quarter of 2009.  In its press release announcing its results, STEC highlighted a 53.7% increase in revenue to $86.4 million, from the same quarter of the prior year.  STEC also announced that revenue from the ZeusIOPS SSD increased 375% during the same period, from $12.1 million to $57.5 million.  STEC highlighted the growth of the market for the ZeusIOPS SSD, citing the $120 million contract for sales of the ZeusIOPS SSD in the second half of 2009 and the accelerated adoption of SSD technology by major OEM customers, including IBM, Fujitsu and HP.  STEC and CEO Manouch Moshayedi also highlighted STEC's inventory control measures, noting that inventory at the end of the second quarter stood at $38 million, a decrease of 16% from the end of the prior quarter.  Manouch Moshayedi attributed this decreased inventory to "effective management of inventory" and the addition of "four more major Enterprise-Storage OEMS to our blue chip customer list."

In an August 3, 2009 conference call with analysts, defendants heralded the high profit margin for their products as a key factor in their results.  Specifically, Manouch Moshayedi stated that "on a go forward basis, our margins will remain in the 50-60% area.  As you know, we have no competition in this area."

4

Case No. SACV09-01304 - MEM. P. & A. ISO  MOTION TO CONSOLIDATE RELATED CASES, APP'T CO-LEAD PLAINTIFFS AND APPROVE CO-LEAD PLAINTIFFS' SELECTION OF CO-LEAD COUNSEL

Manouch Moshayedi emphasized the high margins STEC was generating with sales of the ZeusIOPS SSD, "I think we will be able to maintain about 50% margin for the ZeusIOPS. And as ZeusIOPS grows to be the biggest part of our sales, I think we'll maintain the same type margins."  Moshayedi further responded affirmatively to an analyst's suggestion that STEC was being conservative in its estimate of ZeusIOPS sales in the second half of 2009, telling investors that other major ZeusIOPS customers were "maybe a quarter or two away from full ramping production."

That same day, while STEC stock was artificially inflated as a result of defendants' false or misleading public statements, STEC announced that it would conduct a secondary stock offering of 7.5 million shares of stock held by defendants Manouch and Mark Moshayedi.  This secondary stock offering was completed for the sole benefit of defendants Manouch and Mark Moshayedi, who, respectively, held the positions of CEO and COO of STEC throughout the Class Period.  They were the sole selling shareholders in the secondary offering and who collectively sold 9 million shares of STEC stock for total proceeds of approximately $268 million.  STEC sold no stock and received no proceeds in the August 2009 offering.

At no time prior to the close of the Class Period did any of the defendants disclose that STEC's major customers were, throughout August and September, working with STEC competitor Toshiba to qualify a product that would compete with STEC's SSD products.  Nor did STEC disclose that the timing of this qualification was crucial to STEC's future performance.

On September 17, 2009, an analyst for WedBush Morgan published a report on STEC which disclosed significant adverse information about STEC. Specifically, the Wedbush Morgan report disclosed that one of STEC's "Tier 1" customers was about to qualify a STEC competitor's SSD design and that another STEC competitor was likely to introduce a new SSD design in the fourth quarter.

5

Case No. SACV09-01304 - MEM. P. & A. ISO  MOTION TO CONSOLIDATE RELATED CASES, APP'T CO-LEAD
PLAINTIFFS AND APPROVE CO-LEAD PLAINTIFFS' SELECTION OF CO-LEAD COUNSEL

1   These revelations indicated that STEC was facing much more competitive
2   pressure than previously suggested.

3       Following publication of the WedBush Morgan report, STEC stock fell
4   precipitously, closing at $31.53 per share on September 17, 2009, a one-day
5   decline of $6.37, more than 16% on heavy volume of 21.2 million shares.

6       Thereafter, following the close of the market on November 3, 2009, STEC
7   announced results for the third quarter of 2009 and its outlook for the fourth
8   quarter. STEC then disclosed that EMC Corporation, ("EMC"), which earlier in
9   the year had signed an agreement to purchase $120 million in ZeusIOPS SSDs in
10  the second half of 2009, intended to carry its inventory into 2010 and thus would
11  not be placing any new orders until 2010. STEC further announced that it had
12  accrued increased marketing costs of $1.5 million in an effort to offset the
13  decreased sales to EMC. Following this announcement, STEC stock fell to a
14  closing price of $14.14 per share on November 4, 2009, a one-day decline of 38%
15  on volume of 31.9 million shares.

16      As a result of Defendants' false and misleading public statements, STEC
17  stock traded at inflated prices throughout the Class Period. The revelations of
18  September 17 and November 3, 2009 removed the inflation from the trading price
19  of STEC stock, causing substantial economic loss to investors who purchased
20  STEC stock during the Class Period.

21  **B.    Procedural History**

22      Pending in this District are the following related securities class action
23  lawsuits:

| Abbreviated Caption | Case Number | Filing Date |
|---------------------|-------------|-------------|
| *Jean v. STEC, Inc., et al.* | 8:09-CV-01304-JVS | Nov. 6, 2009 |
| *Sakhai v. STEC, Inc., et al.* | 8:09-CV-01306-JVS | Nov. 6, 2009 |
| *Greenwald v. STEC, Inc., et al.* | 8:09-CV-01315-JVS | Nov. 9, 2009 |
| *Munter v. STEC, Inc., et al.* | 8:09-CV-01320-JVS | Nov. 10, 2009 |
| *Weinberger v. STEC, Inc., et al.* | 8:09-CV-01460-JVS | Nov. 19, 2009 |
| *Fischer v. STEC, Inc., et al.* | 2:09-CV-08536-JVS | Dec. 11, 2009 |

Plaintiffs in these actions allege, *inter alia*, that defendants, in violation of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and SEC Rule 10b-5, disseminated false and misleading material information to the investing public concerning STEC's business operations and prospects, thereby artificially inflating the price of the Company's securities.

## III.    ARGUMENT

### A.    All Related Actions Should Be Consolidated

The PSLRA, among other things, provides for the consolidation of related actions brought under the federal securities laws. Section 21D(a)(3)(B)(ii) of the Exchange Act addresses the issue of consolidation of similar actions filed under the PSLRA:

> If more than one action on behalf of a class asserting substantially the same claim or claims arising under this Act has been filed, and any party has sought to consolidate those actions for pretrial purposes or for trial, the court shall not make the determination [of appointment of lead plaintiff under §21D(a)(3)(B)(i)] until after the decision on the motion to consolidate is rendered.

15 U.S.C. § 78u-4(a)(3)(B)(ii). In addition, Rule 42(a) of the Federal Rules of Civil Procedure provides as follows:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed. R. Civ. P. 42(a). Thus, the Court must first rule on consolidation. Once it has made that determination, the Court is then directed to rule on the lead plaintiff and lead counsel matters. *Ferrari v. Impath, Inc.*, No. 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898, at *12 (S.D.N.Y. July 15, 2004); *Backe v. Novatel*

7

Case No. SACV09-01304 - MEM. P. & A. ISO  MOTION TO CONSOLIDATE RELATED CASES, APP'T CO-LEAD
PLAINTIFFS AND APPROVE CO-LEAD PLAINTIFFS' SELECTION OF CO-LEAD COUNSEL

1    *Wireless, Inc.*, Case No. 08-CV-01689-H (RBB), 2008 U.S. Dist LEXIS 100622,

2    at *5-6 (S.D. Cal. Dec. 10, 2008).

3        Consolidation is appropriate where, as here, there are actions involving

4    common questions of law or fact.  The above-captioned actions involve class

5    claims on behalf of investors who purchased or otherwise acquired STEC

6    securities during the Class Period, involve common questions of law and fact, and

7    allege the same or similar claims under the federal securities laws on behalf of the

8    same or similar plaintiff class.  As a result, consolidation of the cases is

9    warranted.  *See, e.g., Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D.

10   184, 186 (S.D.N.Y. 2006) (courts have recognized that consolidation is

11   particularly appropriate in the context of securities class actions where complaints

12   are based on the same public statements or reports); *Garber v. Juniper Networks,*

13   *Inc.*, No. C 06-04327 JW, 2006 U.S. Dist. LEXIS 86721, at *4 (N.D. Cal. Nov.

14   20, 2006) (consolidation appropriate in securities actions where complaints are

15   based on the same public statements and reports and there are common questions

16   of law and fact).  In addition, these actions will involve similar issues regarding

17   class certification, and will involve overlapping discovery of the parties and of

18   non-parties.  Accordingly, these securities actions should be consolidated for all

19   purposes, in the interest of judicial economy and overall efficiency.  *See Johnson*

20   *v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990), *cert. denied*, 498 U.S. 920

21   (1990) ("[C]ourts have taken the view that considerations of judicial economy

22   favor consolidation.").  Similarly, the Court should direct that any subsequently-

23   filed related actions be consolidated with these proceedings.

24   **B.    ATU 85 and New Orleans Should Be Appointed Co-Lead**
         **Plaintiffs in this Action**

25

26        **1.    The Applicable Legal Standard**

27   The PSLRA sets forth the procedure for the selection of lead plaintiff to

28   oversee class actions brought under the federal securities laws.  15 U.S.C. § 78u-

8

4(a)(3).  *See In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002).   Section 21D(a)(3)(A)(i) of the PSLRA provides that within 20 days after the date on which a class action is filed, the plaintiff shall cause to be published, in a widely circulated, national, business-oriented publication or wire service, a notice advising members of the purported plaintiff class:

> (I)   of the pendency of the action, the claims asserted therein, and the purported class period; and

> (II)  that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i); *Gluck*, 976 F. Supp. at 544.

Section 21D(a)(3)(B)(i) of the PSLRA directs the court, within 90 days after the date the notice is published, to consider motions for appointment as lead plaintiff that are filed in response to the notice.  The time requirements imposed by the PSLRA demonstrate Congress' intent that the lead plaintiff be appointed as soon as practicable.  *See Steiner v. Frankino*, No. 1:98CV0264, 1998 U.S. Dist. LEXIS 21804, at *14 (N.D. Ohio July 16, 1998).

Pursuant to Section 21D(a)(3)(B), the court "shall" appoint the "most adequate plaintiff" to serve as lead plaintiff and shall presume that the "most adequate plaintiff" is the person, or group of persons, that:

> (aa)  has either filed the complaint or made a motion in response to a notice . . . ;
> (bb)  in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc)  otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 664 (C.D. Cal. 2005).   Accordingly, the movant with greatest loss should presumptively be appointed lead plaintiff in a securities fraud class action.

9

**2.     ATU 85 and New Orleans Have Timely Filed This Motion and Believe That They Have the Largest Financial Interest in the Relief Sought by the Class**

**a.     ATU 85 and New Orleans Have Timely Filed This Motion**

On November 6, 2009, the plaintiff in the first filed action against STEC published a notice of that action pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i). *See* Exhibit 1 to the Declaration of Samuel M. Ward ("Ward Decl."), submitted herewith. The notice advised class members of the existence of the lawsuit and described the claims asserted therein. The notice also advised class members of their right to file a motion to be appointed as lead plaintiff within 60 days of the date of the notice. ATU 85 and New Orleans are filing this motion within 60 days of the notice. Therefore, this motion is filed within the time period prescribed by the PSLRA.

**b.     ATU 85 and New Orleans Have the Largest Financial Interest**

The PSLRA also provides that the Court:

[S]hall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the "most adequate plaintiff").

15 U.S.C. § 78u-4(a)(3) (B) (i). Moreover, the statute requires the Court to adopt a rebuttable presumption that:

[T]he most adequate plaintiff in any private action arising under this chapter is the person or group of persons that -
                              *   *   *
    (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class . . . .

15 U.S.C. § 78u-4(a)(3) (B) (iii)(I).

During the relevant period, ATU 85 and New Orleans purchased STEC securities at artificially inflated prices and suffered combined losses of $194,331. *See* Exhibit 4 to the Ward Decl. ATU 85 and New Orleans believe that they have the largest financial interest in the outcome of this litigation, and therefore, are presumptively entitled to appointment as co-lead plaintiffs. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb).

### 3. ATU 85 and New Orleans Satisfy the Requirements of Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA provides that the lead plaintiffs must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id.* With respect to the qualifications of class representatives, Rule 23(a) requires generally that their claims be typical of the claims of the class and that the representatives will fairly and adequately protect the interests of the class. As detailed below, ATU 85 and New Orleans satisfy the typicality and adequacy requirements of Rule 23(a), and are qualified to be appointed co-lead plaintiffs in this action.

### a. The Claims of ATU 85 and New Orleans Are Typical of the Claims of the Class

The typicality requirement of Rule 23(a)(3) is satisfied when the plaintiffs: (1) suffered the same injuries as the absent class members, (2) as a result of the same course of conduct by defendants, and (3) their claims are based on the same legal issues. *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992); *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 649 (C.D. Cal. 1996); *Welling v. Alexy*, 155 F.R.D. 654, 657 (N.D. Cal. 1994); *A&J Deutscher Family Fund v. Bullard*, No. CV-85-1850-PAR, 1986 U.S. Dist. LEXIS 20054, at *17-18 (C.D. Cal. Sept. 22, 1986); *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985). The legal and factual bases for ATU 85 and New Orleans' claims are typical of the claims of the members of the class:

11

(a)  whether defendants' actions violated the federal securities laws;

(b)  whether defendants caused STEC to issue false and misleading statements;

(c)  whether defendants' conduct caused the market price of STEC securities to be artificially inflated during the Class Period and thereby caused the losses suffered by class members; and

(d)  whether the members of the class have sustained damages and, if so, what is the proper measure of damages.

Thus, there is a well-defined community of interest in the questions of law and fact involved in this case, and the claims asserted by ATU 85 and New Orleans are typical of the claims of the members of the proposed class. ATU 85 and New Orleans, like all of the members of the proposed class, acquired STEC securities at prices artificially inflated by defendants' false and misleading misrepresentations and suffered damages thereby. Because the claims asserted by STEC investors are based on the same legal theories and arise "from the same event or course of conduct giving rise to the claims of other class members," typicality is satisfied. *In re United Energy Corp. Solar Power Modules Tax Shelter Invs. Sec. Litig.*, 122 F.R.D. 251, 256 (C.D. Cal. 1988); *accord Blackie v. Barrack*, 524 F.2d 891, 902-03 & n.19 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976).

### b.  ATU 85 and New Orleans Will Fairly and Adequately Represent the Interests of the Class

The requirements of Rule 23(a)(4) are met if it appears that: (1) plaintiffs' interests are not antagonistic to those of the class they seek to represent, and (2) plaintiffs' attorneys are qualified, experienced and generally able to conduct the litigation. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978); *Schaefer v. Overland Express Family of Funds*, 169 F.R.D. 124, 130 (S.D. Cal. 1996); *Lubin v. Sybedon Corp.*, 688 F. Supp. 1425, 1461 (S.D. Cal. 1988);

12

1   *Lewis v. Curtis*, 671 F.2d 779, 788 (3d Cir.), *cert. denied*, 459 U.S. 880 (1982);

2   *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 449 (3d Cir. 1977), *cert. denied*, 434

3   U.S. 1086 (1978); *In re Mellon Bank S'holder Litig.*, 120 F.R.D. 35, 37-38 (W.D.

4   Pa. 1998).

5       The interests of ATU 85 and New Orleans are not antagonistic to those of

6   the class and are clearly aligned with its members.  As detailed above, ATU 85

7   and New Orleans' claims share substantially similar questions of law and fact

8   with the claims of members of the proposed class, and their claims are typical of

9   the claims of members of the class.  In addition, both ATU 85 and New Orleans

10  have selected counsel who are highly experienced in prosecuting securities class

11  actions such as this to represent them and serve as lead counsel.  *See* Exhibit 5 to

12  the Ward Decl. (Firm Biography of Barrack, Rodos & Bacine), and Exhibit 6 to

13  the Ward Decl. (Firm Biography of Labaton Sucharow).

14      Therefore, ATU 85 and New Orleans satisfy the requirements of Rule 23

15  and all of the PSLRA's prerequisites for appointment as co-lead plaintiffs,

16  pursuant to 15 U.S.C. § 78u-4(a)(3)(B), and should be appointed co-lead plaintiffs

17  in this action.  *See also*, Exhibits 2, 3 to the Ward Decl.

18  **C.    The Court Should Approve ATU 85 and New Orleans' Choice of**
19       **Counsel**

20      The PSLRA vests authority in the lead plaintiff to select and retain counsel

21  to represent the class, subject to court approval.  *See* 15 U.S.C. § 78u-

22  4(a)(3)(B)(v); *Gluck*, 976 F. Supp. at 550.  *See Cavanaugh*, 306 F.3d at 732-733.

23  Under the PSLRA, a court should not disturb lead plaintiffs' choice of counsel

24  unless necessary to protect the interests of the class.  As the Ninth Circuit

25  explained, information concerning the prospective counsel "is relevant only to

26  determine whether the presumptive lead plaintiff's choice of counsel is so

27  irrational, or so tainted by self-dealing or conflict of interest, as to cast genuine

28  and serious doubt on that plaintiff's willingness or ability to perform the functions

13

Case No. SACV09-01304 - MEM. P. & A. ISO  MOTION TO CONSOLIDATE RELATED CASES, APP'T CO-LEAD
PLAINTIFFS AND APPROVE CO-LEAD PLAINTIFFS' SELECTION OF CO-LEAD COUNSEL

1    of lead plaintiff." *Id.  See In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir.

2    2001), *cert. denied*, 535 U.S. 929 (2002) ("the [PSLRA] evidences a strong

3    presumption in favor of approving a properly-selected lead plaintiff's decisions as

4    to counsel selection and counsel retention").

5         Barrack, Rodos & Bacine has extensive experience litigating securities

6    class actions and has successfully prosecuted numerous securities fraud class

7    actions on behalf of injured investors.  *See* Exhibit 5 to Ward Decl.  Barrack,

8    Rodos & Bacine has been appointed as lead counsel in dozens of securities class

9    actions, including numerous cases since the passage of the PSLRA.  Further,

10   Barrack, Rodos & Bacine has served as co-lead counsel in two of the largest

11   securities class action recoveries in history: *In re WorldCom, Inc. Sec. Litig.*, No.

12   02 Civ. 3288 (DLC) (S.D.N.Y.), and *In re Cendant Corp. Sec. Litig.*, No. 98-CV-

13   1664 (WHW) (D.N.J.).  In addition, Barrack, Rodos & Bacine served as co-lead

14   counsel in a California federal court case in which there have been settlements of

15   over $1 billion.  *In re McKesson HBOC, Inc. Sec. Litig.*, No. C-99-20743-RMW

16   (N.D. Cal.).

17        The Honorable Denise L. Cote of the Southern District of New York

18   granted final approval of settlements reached by the *WorldCom* lead plaintiff, the

19   New York State Common Retirement Fund, represented by Barrack, Rodos &

20   Bacine as co-lead counsel.  The settlement totaled more than $6.13 billion for the

21   WorldCom investor class, and included a $65 million settlement with

22   WorldCom's former outside auditor, Arthur Andersen LLP, after nearly five

23   weeks of trial.  This was nearly double the previous record recovery in the

24   *Cendant* securities fraud class action, of $3.1 billion, against Cendant

25   Corporation, certain of its officers and directors, and its outside auditor, Ernst &

26   Young.  Both cases involved complex accounting transactions and restatements.

27   Thus, Barrack, Rodos & Bacine is particularly well-suited to serve as lead counsel

28   in the present action involving STEC.

1    In her opinion approving a partial settlement of over $2.5 billion with the

2  Citigroup Defendants in *WorldCom*, Judge Cote described the services provided

3  by Barrack, Rodos & Bacine as co-lead counsel, as follows:

> The quality of the representation given by Lead Counsel is
> unsurpassed in this Court's experience with plaintiffs' counsel in
> securities litigation. Lead Counsel has been energetic and creative.
> Its skill has matched that of able and well-funded defense counsel.
> It has behaved professionally and has taken care not to burden the
> Court or other parties with needless disputes. Its negotiations with
> the Citigroup Defendants have resulted in a settlement of historic
> proportions. It has cooperated with other counsel in ways that
> redound to the benefit of the class and those investors who have
> opted out of the class. The submissions of Lead Counsel to the
> Court have been written with care and have repeatedly been of
> great assistance.
> In sum, the quality of representation that Lead Counsel has
> provided to the class has been superb.… Lead Counsel has
> performed a valuable public service in prosecuting this action with
> vigor and skill.

*In re WorldCom, Inc. Sec. Litig.*, No. 02 civ. 3288 (DLC), 2004 U.S. Dist. LEXIS

22992, at *67-68, *72-73 (S.D.N.Y. Nov. 12, 2004).

    Labaton Sucharow has had a leading role in numerous important actions on

behalf of defrauded investors. Labaton Sucharow served as lead counsel in the

Waste Management securities litigation, which resulted in a settlement of $457

million, one of the largest common-fund securities class action settlements ever

achieved at that time. *See In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d

401, 432 (S.D. Tex. 2000) (stating that Labaton Sucharow "ha[s] been shown to

be knowledgeable about and experienced in federal securities fraud class

actions"). Also, Labaton Sucharow is currently serving as lead or co-lead counsel

in the securities fraud cases against American International Group, HealthSouth,

Countrywide, Bear Stearns, Broadcom, Fannie Mae, Royal Bank Scotland PLC,

and others. In *In re Monster Worldwide, Inc. Sec. Litig.*, No. 07-cv-2237

15

1 (S.D.N.Y. filed Mar. 15, 2007), Judge Rakoff appointed Labaton Sucharow as

2 lead counsel, stating that "the Labaton firm is very well known to . . . courts for

3 the excellence of its representation." (*Id.*, Hr'g Tr. 24:25-25:1, June 14, 2007).

4       Thus, ATU 85 and New Orleans have selected counsel who are highly

5 qualified to vigorously prosecute the litigation.

6 **IV.   CONCLUSION**

7       For the foregoing reasons, ATU 85 and New Orleans respectfully request

8 that this Court consolidate all related actions, appoint ATU 85 and New Orleans

9 as Co-Lead Plaintiffs pursuant to § 21D(a)(3)(B) of the PSLRA and approve their

10 selection of Co-Lead Counsel for the class.

11 DATED:  January 5, 2010               **BARRACK RODOS & BACINE**

12

13                               /s/  STEPHEN R. BASSER

                               STEPHEN R. BASSER
14

15                         Stephen R. Basser
                        Samuel M. Ward

16                         One America Plaza
                        600 West Broadway, Suite 900

17                         San Diego, California 92101
                        Telephone: (619) 230-0800

18                         Facsimile:  (619) 230-1874
                        E-mail:     sbasser@barrack.com

19                                   sward@barrack.com

20                         BARRACK, RODOS & BACINE
                        Daniel E. Bacine

21                         3300 Two Commerce Square
                        2001 Market Street

22                         Philadelphia, PA 19103
                        Phone: (215) 963-0600

23                         Facsimile: (215) 963-0838
                        Email:  dbacine@barrack.com

24                         *Attorneys for the Port Authority of*
                        *Allegheny County Retirement and*

25                         *Disability Allowance Plan for*
                        *Employees Represented by Local 85*

26                         *of the Amalgamated Transit Union*

27

28

16

1

**LABATON SUCHAROW LLP**

2

3

CHRISTOPHER J. KELLER

4

Christopher J. Keller
Joseph A. Fonti
140 Broadway
New York, NY 10005
Telephone: (212) 907-0853
Facsimile: (212) 883-7053
Email: ckeller@labaton.com
        jfonti@labaton.com

5

6

7

8

9

*Attorneys for the New Orleans Employees' Retirement System*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. SACV09-01304 - MEM. P. & A. ISO  MOTION TO CONSOLIDATE RELATED CASES, APP'T CO-LEAD
PLAINTIFFS AND APPROVE CO-LEAD PLAINTIFFS' SELECTION OF CO-LEAD COUNSEL