1 | LATHAM & WATKINS LLP
    Patrick E. Gibbs, Bar No. 183174
2 |    *patrick.gibbs@lw.com*
      Chris W. Johnstone, Bar No. 242152
3 |    *chris.johnstone@lw.com*
  | 140 Scott Drive
4 | Menlo Park, California 94025
  | Telephone:  +1.650.328.4600
5 | Facsimile:  +1.650.463.2600

6 | LATHAM & WATKINS LLP
      Michele D. Johnson, Bar No. 198298
7 |    *michele.johnson@lw.com*
      Carolyn A. Dawes, Bar No. 250747
8 |    *carolyn.dawes@lw.com*
  | 650 Town Center Drive, 20th Floor
9 | Costa Mesa, California  92626-1925
  | Telephone:  +1.714.540.1235
10 | Facsimile:  +1.714.755.8290

11 | Attorneys for Defendants STEC, Inc.,
   | Manouch Moshayedi, Mark Moshayedi and
12 | Raymond D. Cook

13 |

14 | UNITED STATES DISTRICT COURT

15 | CENTRAL DISTRICT OF CALIFORNIA

   | SOUTHERN DIVISION
16 |

17 | IN RE STEC, INC. SECURITIES | Lead Case No. 8:09-cv-01304-JVS (MLG)
18 | LITIGATION
   | | **DEFENDANTS' NOTICE OF**
19 | This Document Relates To: | **MOTION AND MOTION TO**
   | | **DISMISS THE CONSOLIDATED**
20 |     ALL ACTIONS | **COMPLAINT; MEMORANDUM OF**
   | | **POINTS AND AUTHORITIES IN**
21 | | **SUPPORT THEREOF**

22 | | Judge:   Hon. James V. Selna
   | | Court:   10C
23 | | Date:    July 12, 2010
   | | Time:    1:30 p.m.
24 |

25 |

26 |

27 |

28 |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE CONSOLIDATED COMPLAINT

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION .................................................................................. 1

II.   FACTUAL BACKGROUND ................................................................ 3

      A.    STEC's Business And Customer Base ................................... 3

      B.    The SSD Market.................................................................... 5

      C.    The Increasing Demand For STEC's ZeusIOPS Drives..................... 5

      D.    The SEC's Inquiry Regarding EMC ...................................... 7

      E.    The Founders' Stock Sales.................................................... 7

      F.    The WedBush Morgan Analyst Report ............................... 8

      G.    The EMC Inventory Holdover ............................................. 8

      H.    Plaintiffs' Claims And Confidential Witness Allegations................... 9

III.  APPLICABLE LEGAL STANDARDS .............................................. 10

      A.    Plaintiffs' Formidable Pleading Obligations ...................... 10

            1.    Plaintiffs Must Specify Each Statement And State
                  Why It Was Materially False Or Misleading When
                  Made ........................................................................ 11

            2.    Plaintiffs Must Allege With Particularity Facts
                  Giving Rise To A Strong Inference Of Scienter ...................... 11

            3.    Plaintiffs Must Allege That Their Losses Were
                  Caused By A Disclosure Of The "Relevant Truth" ................ 12

IV.   ARGUMENT ...................................................................................... 12

      A.    Plaintiffs' Complaint Fails To State A Claim For Relief ................ 12

            1.    The Quality Of STEC's Products ............................ 13

            2.    Internal Controls, Compliance With GAAP And
                  Revenue Recognition................................................ 14

            3.    STEC's "Customer Base And Growth" ..................... 17

            4.    STEC's Guidance For The Second And Third
                  Quarters Of 2009 ...................................................... 18

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

i

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE CONSOLIDATED COMPLAINT

5.    Potential Future Competition For ZeusIOPS ........................... 19

6.    The $120 Million Agreement With EMC ................................ 21

B.    Stock Trades By Two Of The Three Individual Defendants Do Not Create A Strong Inference Of Scienter ......................................................................................... 23

V.    CONCLUSION ........................................................................... 25

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

ii

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE CONSOLIDATED COMPLAINT

1

# TABLE OF AUTHORITIES

2
**Page**

3
## CASES

4
*Basic Inc. v. Levinson*,
5
    485 U.S. 224 (1988) ..................................................................... 16

6
*Brodsky v. Yahoo! Inc.*,
    592 F. Supp. 2d 1192 (N.D. Cal. 2008) ......................................... 11

7
*Brodsky v. Yahoo! Inc.*,
8
    630 F. Supp. 2d 1104 (N.D. Cal. 2009) .......................... 11, 16, 17, 22

9
*Dura Pharms., Inc. v. Broudo*,
10
    544 U.S. 336 (2005) .............................................................. passim

11
*Employers Teamsters Local Nos. 175 and 505 Pension Trust Fund v.*
    *Clorox Co.*,
12
    353 F.3d 1125 (9th Cir. 2004) ....................................................... 19

13
*Ernst & Ernst v. Hochfelder*,
14
    425 U.S. 185 (1976) ...................................................................... 11

15
*Glen Holly Entm't, Inc. v. Tektronix Inc.*,
    352 F.3d 367 (9th Cir. 2003) .................................................... 17, 22

16
*Grossman v. Novell, Inc.*,
17
    120 F.3d 1112 (10th Cir. 1997) ..................................................... 22

18
*In re Adobe Sys., Inc. Sec. Litig.*,
    787 F. Supp. 912 (N.D. Cal. 1992) ................................................ 19
19

20
*In re Apple Computer Sec. Litig.*,
    886 F.2d 1109 (9th Cir. 1989) ....................................................... 19

21
*In re Daou Sys., Inc. Sec. Litig.*,
22
    411 F.3d 1006 (9th Cir. 2005) ....................................................... 12

23
*In re Ditech Commun's Corp. Sec. Litig.*,
    No. C 05-02406, 2006 WL 2319784 (N.D. Cal. 2006) ................... 24
24

25
*In re Dot Hill Sys. Corp. Sec. Litig.*,
    No. 06-CV-228, 2009 U.S. Dist. LEXIS 22022
26
    (N.D. Cal. Mar. 18, 2009) ...................................................... 15, 19

27
*In re Downey Sec. Litig.*,
    No. CV 08-3261, 2009 WL 736802 (C.D. Cal. March 18, 2009) ...... 22
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

iii

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE CONSOLIDATED COMPLAINT

*In re Hansen Natural Corp. Sec. Litig.*,
  527 F. Supp. 2d 1142 (C.D. Cal 2007)............................................................25

*In re Hypercom Corp. Sec. Litig.*,
  No. 05-0455, 2006 U.S. Dist. LEXIS 45482 (D. Ariz. July 5, 2006)..............16

*In re Infonet Servs. Corp. Sec. Litig.*,
  310 F. Supp. 2d 1080 (C.D. Cal. 2003)..........................................................12

*In re Initial Pub. Offering Sec. Litig.*,
  399 F. Supp. 2d 261 (S.D.N.Y. 2005).............................................................19

*In re iPass, Inc. Sec. Litig.*,
  No. C 05-00228 MHP, 2006 WL 496046 (N.D. Cal. Feb. 28, 2006).............22

*In re Oracle Corp. Sec. Litig.*,
  No. C 01-00988, 2009 U.S. Dist. LEXIS 50995
  (N.D. Cal. June 16, 2009).........................................................................13, 14

*In re Rackable Sys., Inc. Sec. Litig.*,
  No. C 09-0222, 2010 U.S. Dist. LEXIS 2663
  (N.D. Cal. Jan. 13, 2010)................................................................................16

*In re Read-Rite Corp.*,
  335 F.3d 843 (9th Cir. 2003)...........................................................................23

*In re Remec Inc. Sec. Litig.*,
  388 F. Supp. 2d 1170 (S.D. Cal. 2005)...........................................................16

*In re Silicon Graphics, Inc. Sec. Litig.*,
  183 F.3d 970 (9th Cir. 1999).....................................................................11, 23

*In re Splash Tech. Holdings Sec. Litig.*,
  No. C 99-00109, 2001 U.S. Dist. LEXIS 16252
  (N.D. Cal. Aug. 27, 2001)...............................................................................24

*In re Vantive Corp. Sec. Litig.*,
  283 F.3d 1079 (9th Cir. 2002)..............................................................14, 24, 25

*In re VeriFone Sec. Litig.*,
  11 F.3d 865 (9th Cir. 1993).............................................................................23

*McGuire v. Dendreon Corp.*,
  --- F. Supp 2d. ---, 2009 WL 5788761 (W.D. Wash. May 21, 2009)........20, 22

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
  540 F.3d 1049 (9th Cir. 2008)...................................................................passim

*Patel v. Parnes*,
  253 F.R.D. 531 (C.D. Cal. 2008) ....................................................................11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

iv

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE CONSOLIDATED COMPLAINT

*Provenz v. Miller*,
  102 F.3d 1478 (9th Cir. 1996) ............................................................... 19

*Ronconi v. Larkin*,
  253 F.3d 423 (9th Cir. 2001) ........................................................... 24, 25

*Rubke v. Capitol Bancorp*,
  551 F.3d 1156 (9th Cir. 2009) ............................................................... 21

*Weiss v. Amkor Tech., Inc.*,
  527 F. Supp. 2d 938 (D. Ariz. 2007) ............................................... 15, 19

*Wenger v. Lumisys, Inc.*,
  2 F. Supp. 2d 1231 (N.D. Cal. 1998) ..................................................... 24

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2009) .......................................................... 13, 16

**STATUTES**

15 U.S.C. § 78j(b) ......................................................................................... 11

15 U.S.C. § 78u-4(b)(1) ............................................................................... 11

15 U.S.C. § 78u-4(b)(2) ............................................................................... 12

15 U.S.C. § 78u-4(b)(4) ............................................................................... 12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

v

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE CONSOLIDATED COMPLAINT

1  **TO ALL PARTIES AND THEIR COUNSEL OF RECORD**:

2      **PLEASE TAKE NOTICE** that on July 12, 2010, at 1:30 p.m. or as soon

3  thereafter as the matter may be heard, before the Honorable James V. Selna,

4  United States District Judge, located at the Ronald Reagan Federal Building and

5  U.S. Courthouse, 411 West Fourth Street, Courtroom 10C, Santa Ana, California

6  92701, Defendants STEC, Inc. ("STEC" or the "Company"), Manouch Moshayedi,

7  Mark Moshayedi and Raymond D. Cook (collectively, "Defendants") will and

8  hereby do move for an Order dismissing the Consolidated Complaint For

9  Violations Of The Federal Securities Laws (the "Complaint" or "Compl.") filed by

10  Lead Plaintiffs Arman Rashtchi and Keith A. Ovitt ("plaintiffs").  This Motion is

11  made pursuant to: (1) Federal Rules of Civil Procedure 12(b)(6) and 9(b); and (2)

12  the Private Securities Litigation Reform Act of 1995 ("PSLRA") on the grounds

13  that the Complaint fails to state a claim for violation of Sections 10(b) or 20(a) of

14  the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a), or SEC Rule

15  10b-5, 17 C.F.R. § 240.10b-5.

16      The Motion is based on this Notice, the Memorandum of Points and

17  Authorities, the Defendants' Request for Judicial Notice, the Declaration of

18  Michele D. Johnson and the exhibits attached thereto, the Complaint, the Court's

19  record in this matter, and the arguments of counsel.  This Motion is made

20  following the conference of counsel pursuant to L.R. 7-3 which took place on May

21  5, 2010.

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

vi

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE CONSOLIDATED COMPLAINT

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.     INTRODUCTION**

3      STEC, Inc. designs, manufactures and sells enterprise-scale flash (or "solid

4   state") memory drives.  Its customers are the original equipment manufacturers (or

5   "OEMs") that provide high-end data storage systems for large enterprises.  In early

6   2009, STEC's customers were incorporating increasing amounts of solid state

7   memory into their systems, as opposed to relying exclusively on hard-drive based

8   data storage devices.  As the only manufacturer whose solid state drive (or "SSD")

9   products were "qualified" by the so-called "tier 1" OEMs, STEC saw increased

10  demand for its products, including its flagship ZeusIOPS product, and its stock

11  price rose dramatically.  On June 16, 2009, STEC announced that it had entered

12  into a $120 million supply contract with its largest customer, EMC, for the second

13  half of 2009.   As STEC's sales increased and STEC repeatedly exceeded its

14  projections to the market, STEC's stock price continued to rise.

15      In September 2009, WedBush Morgan published a report suggesting that

16  STEC might see competition in the SSD market sooner than analysts had expected.

17  STEC's stock price dropped following that report.  On November 3, 2009, STEC

18  announced that it had received preliminary indications that EMC might carry

19  inventory into the first quarter of 2010, and that this inventory carryover might

20  affect STEC's first quarter 2010 results.   Although STEC had not previously

21  announced any projections for the first quarter of 2010, STEC's stock price

22  dropped following this announcement.  The stock price dropped again following a

23  February 23, 2010 announcement by STEC that it expected EMC's inventory

24  carryover to continue through the first two quarters of 2010.

25      Plaintiffs here claim that the stock price declines following the WedBush

26  Morgan report and STEC's announcements on November 3, 2009, and

27  February 23, 2010, were caused not by changing conditions and developments in

28  STEC's business, but instead by fraud.  To that end, plaintiffs claim that nearly

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

1

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE CONSOLIDATED COMPLAINT

1   every positive thing STEC and its executives said about its business from June 16,
2   2009, until February 23, 2010, was false, and those statements masked a whole
3   host of alleged problems with STEC's business, including poor product quality,
4   improper revenue recognition, and more.   The vast majority of the alleged
5   problems that plaintiffs claim STEC concealed, however, have nothing to do with
6   the information revealed in plaintiffs' three purported "corrective" disclosures—
7   *i.e.*, the WedBush Morgan report and STEC's announcements on November 3,
8   2009, and February 23, 2010.   Having failed to plead that those disclosures
9   revealed what plaintiffs claim is the "relevant truth," plaintiffs have failed to meet
10   their burden of pleading loss causation.   That failure alone requires dismissal of
11   plaintiffs' claims, but in any event, the alleged problems identified by plaintiffs do
12   not actually suggest that defendants' statements were false or misleading, and
13   plaintiffs have not alleged facts supporting the required "strong inference" that
14   STEC or any of its executives acted with scienter, a mental state that the Supreme
15   Court has said is akin to an intent to deceive.   Simply put, plaintiffs' claims
16   regarding problems that were not revealed by the three alleged "corrective"
17   disclosures (and are not alleged to have any other causal relationship with those
18   disclosures) fail on every level.

19       With regard to the information that *was* disclosed in the WedBush Morgan
20   report and in STEC's November 3, 2009 and February 23, 2010 announcements,
21   plaintiffs' claims fail on several grounds.   The WedBush Morgan report suggested
22   that STEC might face competition in the market for enterprise-scale SSDs sooner
23   than analysts previously thought.   But STEC did not tell the market that it would
24   never face competition.   In fact, STEC repeatedly acknowledged, and the market
25   was aware, that other companies were trying to break into the market.   Plaintiffs
26   have not alleged that STEC or its executives made any false statements about the
27   state of competition in the market.   Moreover, plaintiffs have not alleged any facts
28   suggesting that STEC was aware of the information reflected in the WedBush

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

2

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE CONSOLIDATED COMPLAINT

1   Morgan report before it was published, and there is no reason to think that STEC

2   had unique information, unavailable to analysts and other market participants,

3   about what its competitors were doing.  Thus, even accepting plaintiffs' allegations

4   as true, there is no basis for an inference that the WedBush Morgan report revealed

5   any facts that STEC and its executives had fraudulently concealed from the market.

6   The same is true of STEC's announcements regarding EMC's inventory

7   carryover.  The fact that STEC's largest customer carried inventory from 2009 into

8   the first two quarters of 2010 was, of course, a negative development for STEC's

9   business.  But plaintiffs do not allege facts suggesting that the ensuing stock drops

10  resulted from fraud.  Plaintiffs claim that STEC misled the market with regard to

11  the $120 million supply agreement with EMC because it did not disclose that the

12  agreement would "over-supply" EMC, and thus sales to EMC would not continue

13  at that rate.  But plaintiffs do not allege any facts suggesting that STEC knew the

14  agreement was going to "over-supply" EMC or that EMC would end up carrying

15  inventory into the first half of 2010.  And, of course, STEC never said that sales to

16  EMC would continue at the same rate in 2010.  In fact, STEC had repeatedly

17  informed investors that its ability to predict its customers' demand was "limited,"

18  and that its own operating results could fluctuate due to several factors, including

19  inventory buildups by its customers—the very thing that happened with EMC.

20  Plaintiffs' Complaint should be dismissed.

21  **II.   FACTUAL BACKGROUND**[1]

22  **A.   STEC's Business And Customer Base**

23  STEC is an Orange County technology company founded in 1990 by three

24  brothers, Manouch, Mark, and Mike Moshayedi.   (Compl. ¶¶ 18, 19, 24.)

25  _____

26  [1] The following factual background is based upon the allegations in plaintiffs'
    Complaint as well as documents that are subject to judicial notice.   *See*
    Defendants' Request for Judicial Notice filed concurrently herewith.  The exhibits
27  referred to in the Declaration of Michele D. Johnson, attached to the Request for
    Judicial Notice, are referred to herein by the signal "RJN."

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

3

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE CONSOLIDATED COMPLAINT

1    Manouch is the Company's Chairman and CEO.   (*Id.* ¶ 18.)   Mark is the
2    Company's President and Chief Operating Officer.   (*Id.* ¶ 19.)   Mike no longer
3    works at the Company, but he remains a significant shareholder.   (*Id.*)   Raymond
4    Cook is the Company's Chief Financial Officer.   (*Id.* ¶ 20.)

5         STEC is a leading provider of enterprise-scale flash memory drives, which
6    are solid-state data storage devices.   (*Id.* ¶¶ 3, 23; RJN Ex. A at 7.)   STEC's
7    flagship product is the ZeusIOPS SSD.   (Compl. ¶¶ 3, 23.)   Because STEC's
8    products, including ZeusIOPS, are designed for use in high-end, enterprise-scale
9    computer systems, STEC sells its products to the small number of original
10   equipment manufacturers including EMC Corporation, Sun Microsystems, IBM,
11   and Dell, who sell such systems to their customers.   (*Id.*; RJN Ex. A at 13; *id.* Ex.
12   G at 45.)

13        The market is well aware that STEC has a small number of customers
14   because STEC has repeatedly disclosed this fact in its SEC filings.   (*See* RJN Ex. C
15   at 21, 24; *id.* Ex. D at 28, 31; *id.* Ex. E at 35, 37; *id.* Ex. A at 12, 14.)   In addition,
16   STEC has repeatedly identified its largest customer (EMC) by name, and disclosed
17   the percentage of revenue it derived from each customer, together with the change
18   in that percentage from the prior quarter.   (*Id.* Ex. D at 31; *id.* Ex. E at 37.)

19        STEC also disclosed to investors the risks associated with selling to a small
20   number of customers, telling them, for example, that "[t]he loss of, or a significant
21   reduction in purchases by, any of our major customers could materially harm our
22   business, financial condition and results of operations."   (*Id.* Ex. G at 45, 48; *see
23   also id.* Ex. C at 21, 24; *id.* Ex. D at 28, 31; *id.* Ex. E at 35, 37; *id.* Ex. A at 9, 12.)

24        STEC has further consistently told investors that it has "limited" ability to
25   predict its customers' demand for the Company's products.   (*Id.* Ex. A at 11; *see
26   also id.* Ex. C at 25 ("It is difficult to accurately predict what or how many
27   products our customers will need in the future."); *id.* Ex. D at 32 (same); *id.* Ex. E
28   at 38 (same).)   As a result, STEC often does not announce quarterly earnings

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
ORANGE COUNTY

Case No. 8:09-cv-01304-JVS (MLG)
4   NOTICE OF MOTION AND MOTION TO DISMISS
THE CONSOLIDATED COMPLAINT

1    guidance to the market until the quarter is already well underway.  (*Id*. Ex. H; *id*.

2    Ex. I; *id*. Ex. J; *id*. Ex. K; *id*. Ex. L; *id*. Ex. M; *id*. Ex. N.)  Moreover, STEC does

3    not provide the market with long-term projections.  Instead, it typically provides

4    guidance only for one quarter at a time.  (*Id*.)

5        **B.    The SSD Market**

6            STEC's CEO, Manouch Moshayedi, has said publicly that, in the market for

7    enterprise-class SSDs like the ZeusIOPS, STEC has "no competition."  (Compl. ¶

8    101; RJN Ex. B at 16; *id*. Ex. O at 29.)  In so doing, Manouch has made clear—and

9    the market clearly understood—that this means no other SSD supplier has been

10   "qualified" by any of the so-called "tier one" OEMs.  (*Id*. Ex. B at 18; *id*. Ex. O at

11   129.)  While pointing out the difficulties of getting a product qualified by those tier

12   one vendors, Manouch has acknowledged repeatedly that other companies are

13   trying to develop SSD products that would compete with ZeusIOPS.[2]  (*See*, *e.g.*,

14   Compl. ¶ 110.)

15           The market clearly understood this, too.  Although analysts generally said

16   that STEC had a substantial lead over potential competitors, analysts also

17   frequently discussed the fact that other companies, such as Pliant, Samsung,

18   Toshiba and Hitachi, were trying hard to enter the market.  (RJN Ex. P at 158; *id*.

19   Ex. Q at 159; *id*. Ex. R at 160.)   Speculation about when a competitor might

20   emerge was widespread.  (*Id*.)

21       **C.    The Increasing Demand For STEC's ZeusIOPS Drives**

22           In early 2009, STEC experienced a dramatic increase in the demand for its

23   products.  On March 12, 2009—near the end of the first quarter of STEC's 2009

24   fiscal year—STEC issued its guidance for that quarter, telling the market that it

---

25
26   [2] Plaintiffs claim that Manouch told investors there was "zero" probability of
     another company coming out with a product "like ZeusIOPS."  (Compl. ¶ 102.)
27   But Manouch was referring to the likelihood of competitors coming out with
     products using a specific technology, because that technology was not likely to be
28   used much longer.  (RJN Ex. B at 18); *see also infra* at 20.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

5

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE CONSOLIDATED COMPLAINT

expected to generate $58 million-$60 million in revenue, and $0.10-$0.12 in earnings per share ("EPS").  (*Id.* Ex. I at 67.)  On May 11, 2009, STEC announced that its results for the first quarter exceeded its guidance.  (*Id.* Ex. J.)  At the same time, STEC announced its guidance for the second quarter of 2009, telling the market that it expected to generate $68 million-$70 million in revenue, and EPS of $0.20-$0.22.  (Compl. ¶ 77.)

On June 16, 2009, STEC increased its guidance for the second quarter (to $82 million-$84 million in revenue and EPS of $0.32-$0.36), primarily due to increases in sales of ZeusIOPS drives.  (*Id*. ¶¶ 54, 77.)  On that same day, STEC announced that its biggest customer, EMC, had contracted to purchase $120 million of ZeusIOPS drives in the second half of 2009.  (*Id*. ¶ 85.)  On August 3, 2009, STEC announced that, even before the EMC contract took effect, results for the second quarter exceeded the guidance STEC had announced on July 16, 2009.  (*Id*. ¶¶ 58, 90.)  STEC also issued its guidance for the third quarter of 2009, telling the market that it expected revenue of $95 million-$97 million and EPS of $0.45-$0.47.  (*Id*. ¶¶ 79-80.)  STEC ended up exceeding this guidance, too.  (RJN Ex. M at 101.)

Throughout this period, STEC repeatedly advised investors that the composition of STEC's major customer base changes from quarter to quarter, as the market demand for its customers' products fluctuates.  (*Id.* Ex. D at 31; *id*. Ex. E at 37.)  For this reason, STEC has told investors that it "expect[s] this variability to continue in the future."  (*Id*.)  STEC also advised investors that it has "limited" ability to predict future sales, and that its operating results could fluctuate due to many factors, including "inventory buildups by customers."  (*Id*. Ex. G at 47, 50; *id*. Ex. C at 22, 23; *id*. Ex. D at 29, 33; *id*. Ex. E at 13, 30; *see also id*. Ex. B at 12 ("we don't know what's going to happen," and "beyond this year, I really don't

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

6

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE CONSOLIDATED COMPLAINT

1    have a forecast at this point").)[3]

2          D.   **The SEC's Inquiry Regarding EMC**

3          In September and October 2009, as part of its regular comment process, the

4    SEC's Division of Corporation Finance requested an explanation of STEC's

5    dependence on EMC in 2008 and the first half of 2009, and asked whether a

6    particular agreement with EMC should be filed.  (*Id.* Ex. S.)  In response, STEC

7    explained that sales to EMC during that time period were made through individual

8    purchase orders, and not pursuant to an overarching agreement, and the SEC

9    closed its review without additional comment.  (*Id.* Ex. T.)

10         E.   **The Founders' Stock Sales**

11         For the first 13 years after founding the Company, Manouch and Mark

12   owned and retained substantial ownership interests in STEC.  (*Id.* Ex. U at 171; *id.*

13   Ex. V at 174.)  They began to diversify their holdings in 2003, when they reduced

14   their total ownership interest from about 55.9% to about 41.2%.  (*Id.* Ex. W; *id.*

15   Ex. X; *id.* Ex. Y; *id.* Ex. Z.)

16         As part of their long-term strategy for asset diversification, estate planning,

17   and liquidity, Mark and Manouch entered into 10b5-1 trading plans in May 2009 to

18   sell portions of their STEC stock.  (*Id.* Ex. AA.)  Before any shares were sold

19   under the plans, however, STEC announced the EMC contract.  (Compl. ¶ 56.)

20   STEC's stock price rose, and it continued to rise in the weeks that followed.  (*Id.*

21   ¶¶ 57-58.)  Instead of keeping their 10b5-1 plans in place, which would have

22   resulted in automatic sales of large blocks of stock reported day after day without

23   any explanation to the investing public, Mark and Manouch opted to cancel the

24   plans and sell their stock through a secondary offering.  (*See id.* ¶¶ 6, 60.)  The

25   _____

26   [3] Plaintiffs claim Manouch told investors that STEC gets "very solid forecasts"
     from customers.  (Compl. ¶ 33.)  In fact, he said that STEC cannot commit to
27   purchase materials from its suppliers until it has "very solid forecasts and solid
     commitments" from its customers.  (RJN Ex. B at 18.)
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

7

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE CONSOLIDATED COMPLAINT

1   offering was accompanied by about 60 pages of disclosures about the Company

2   and its business.  (RJN Ex. BB at 216-31.)  Pursuant to the offering, Mark and

3   Manouch sold nine million shares at $31 per share.  (*Id*. at 215.)  They retained a

4   10.9% and 6.5% ownership of STEC, respectively.  (*Id*. at 232.)  After these sales,

5   STEC's stock price rose to $42.50 per share.  (*Id.* Ex. F at 41.)

6   **F.   The WedBush Morgan Analyst Report**

7   In a report dated September 17, 2009, a WedBush Morgan analyst opined

8   that STEC's window of opportunity for maintaining its market leadership position

9   "may be closing."   (Compl. ¶¶ 128-130.)   The analyst claimed that another

10  potential SSD provider, Toshiba, was in the final qualification stages with one of

11  STEC's "tier one" OEM customers, and that another company—a leading hard

12  drive disk manufacturer—would "likely introduce" one or more SSD products.

13  (*Id*. ¶ 130; RJN Ex. CC at 233.)   The analyst opined that these developments

14  suggested that STEC would face competition in the SSD market sooner than she

15  had expected previously.  (*Id*.)  Following the publication of the WedBush Morgan

16  report, on September 17, 2009, STEC's stock price fell from $37.90 to $31.53.

17  (Compl. ¶¶ 9, 134.)

18  **G.   The EMC Inventory Holdover**

19  On November 3, 2009, together with the announcement that its third quarter

20  results exceeded guidance, STEC announced that it had recently received

21  preliminary indications that EMC might carry inventory of ZeusIOPS into the first

22  quarter of 2010.  (*Id*. ¶ 138.)  Although EMC honored its agreement by purchasing

23  $120 million of ZeusIOPS drives in the second half of 2009, EMC had built up

24  inventory in a manner that, for STEC, had been "difficult to accurately predict."

25  (*See*, *e.g.*, RJN Ex. C at 25.)   In the conference call with analysts regarding the

26  third quarter results, Manouch reported that EMC had informed STEC of the

27  inventory holdover "[j]ust last week," and explained that back in July and August

28  of 2009, ***even EMC*** did not know that it would be unable to sell through its

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

8

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE CONSOLIDATED COMPLAINT

1    inventory to its customers.  (Compl. ¶ 143; RJN Ex. O at 144-45.)  Plaintiffs allege

2    no contrary facts.

3           A key topic on the conference call was how long the EMC inventory

4    holdover was expected to last.  One analyst asked, "you have engineers co-located

5    with EMC, so you *probably* have pretty good insight into what was actually pulled

6    off the shelf in the third quarter."  (RJN Ex. O at 135 (emphasis added); *see*

7    Compl. ¶ 32.)  Manouch answered, ". . . We *don't know* exactly how many they

8    shipped across each system in Q3."  (RJN Ex. O at 135 (emphasis added).)  Based

9    on the "preliminary indications" from EMC at the time (Compl. ¶ 138), Manouch

10   explained, "*I don't think* it's going to be that huge that it would impact second

11   quarter"—but he emphasized that STEC simply did not know the extent of EMC's

12   holdover:  "Unfortunately, we don't have exact numbers from our customer," "We

13   *don't know* exactly how many they shipped," "We really don't have a good

14   estimate of what EMC has done," "frankly . . . [t]hey don't tell us how much

15   inventory they've got," "We really *don't know* . . .  It's very difficult for us, still, to

16   tell at this point in time the amount of inventory that they'll have at the end of the

17   year."  (*Id.* Ex. O at 126, 135, 144, 147, 151 (emphasis added).)

18          On February 23, 2010, STEC announced fourth quarter 2009 earnings that

19   again exceeded its guidance.  (Compl. ¶¶ 122, 165.)  With this announcement,

20   STEC explained that it expected EMC's inventory carryover to continue through

21   the first half of 2010.  (*Id.*)

22   **H.    Plaintiffs' Claims And Confidential Witness Allegations**

23          The Complaint alleges that Defendants made a series of false and misleading

24   statements regarding:  (i) the quality of STEC's products (*id.* ¶¶ 98-100); (ii)

25   STEC's internal controls, compliance with Generally Accepted Accounting

26   Principles ("GAAP"), and revenue recognition (*id.* ¶¶ 113-118, 186-200); (iii)

27   STEC's "customer base and growth" (*id.* ¶¶ 88-97); (iv) STEC's publicly

28   announced guidance for the second and third quarters of 2009 (*id.* ¶¶ 77-84); (v)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

Case No. 8:09-cv-01304-JVS (MLG)
9    NOTICE OF MOTION AND MOTION TO DISMISS
THE CONSOLIDATED COMPLAINT

1   competition for STEC's ZeusIOPS product (*id.* ¶¶ 101-112); and (vi) the $120

2   million supply agreement between STEC and EMC (*id.* ¶¶ 85-87).  Plaintiffs claim

3   that the "truth" regarding these alleged misstatements came out through the

4   September 17, 2009 WedBush Morgan analyst report and STEC's announcements

5   on November 3, 2009, and February 23, 2010.  (*Id.* ¶¶ 128-130, 138-139, 164-

6   167.)

7        Plaintiffs rely on 13 so-called "confidential witnesses" (or CWs).  Six of

8   them (CWs 3, 6, 8, 9, 12, 13)—including all of the witnesses who are alleged to

9   have described product failures—are former STEC employees who did not work at

10  the Company during the alleged Class Period.  (*Id.* ¶ 22(c), (f), (h), (i), (l), (m).)  A

11  seventh, CW7, allegedly worked for STEC's customer HP, again outside the Class

12  Period.  (*Id.* ¶ 22(g).)  Four (CWs 2, 5, 10, 11) overlapped with the beginning of

13  the Class Period for only a month.  (*Id.* ¶ 22(b), (e), (j), (k).)

14       Several of the CWs say nothing other than that Manouch and Mark were

15  personally involved in running the business of STEC (CWs 8, 11, 13), or that EMC

16  was an important customer (CWs 4, 5, 8).  (*Id.* ¶¶ 22(d), (e), (h), (k), (m), 29, 30,

17  31.)   Others purport to recount events they did not witness—such as CW1

18  purporting to describe a meeting he did not attend—or topics about which they

19  could have no direct knowledge—for example, an engineer or a sales

20  representative discussing revenue recognition (CW 1, 2, 9).  (*Id.* ¶¶ 22(a), (b), (i),

21  40, 41, 49, 50.)  None of the 13 CWs is alleged to have known, in advance, about

22  the facts whose disclosure allegedly caused STEC's stock price to decline, much

23  less to have told STEC's senior management about those facts.

24  **III.   APPLICABLE LEGAL STANDARDS**

25       **A.   Plaintiffs' Formidable Pleading Obligations**

26       To state a claim under Section 10(b), Plaintiffs must allege:  (1) a material

27  misrepresentation; (2) scienter; (3) a connection with the purchase or sale of a

28  security; (4) reliance; (5) economic loss; and (6) loss causation.  *See Dura*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

10

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE CONSOLIDATED COMPLAINT

1   *Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005); *see also* 15 U.S.C. § 78j(b).

2   The standards for pleading falsity, scienter, and loss causation are set forth below,

3   as each of plaintiffs' claims fails to plead one or more of these elements.

### 1.   Plaintiffs Must Specify Each Statement And State Why It Was Materially False Or Misleading When Made

6   To plead falsity, plaintiffs must "specify each statement alleged to have been

7   misleading, the reason or reasons why the statement is misleading, and, if an

8   allegation regarding the statement or omission is made on information and belief,

9   the complaint shall state with particularity all facts on which that belief is formed."

10  15 U.S.C. § 78u-4(b)(1).  Given these "exacting" requirements, the Ninth Circuit

11  has observed that "[a] litany of alleged false statements, unaccompanied by the

12  pleading of specific facts indicating why those statements were false" is

13  insufficient.  *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1070

14  (9th Cir. 2008); *see also Brodsky v. Yahoo! Inc.*, 630 F. Supp. 2d 1104, 1113 (N.D.

15  Cal. 2009).[4]

### 2.   Plaintiffs Must Allege With Particularity Facts Giving Rise To A Strong Inference Of Scienter

18  Plaintiffs must allege "with particularity facts giving rise to a strong

19  inference" that the defendant acted with "the required state of mind," 15 U.S.C.

20  § 78u-4(b)(2), which is an "intent to deceive, manipulate or defraud."  *Ernst &*

21  *Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976).   This standard requires

22  pleading "in great detail" the "facts that constitute strong circumstantial evidence

23  of deliberately reckless or conscious misconduct."  *In re Silicon Graphics, Inc.*

24  *Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999).  Thus, "[t]he factual allegations must

---

[4]  In many instances it is not clear what statements plaintiffs claim were materially false or misleading.  Courts have long criticized complaints like plaintiffs', and this style of puzzle pleading, by itself, is reason enough for the Court to dismiss the Complaint.  *Brodsky v. Yahoo! Inc.*, 592 F. Supp. 2d 1192, 1198 (N.D. Cal. 2008); *Patel v. Parnes*, 253 F.R.D. 531, 554 n.198 (C.D. Cal. 2008).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

11

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE CONSOLIDATED COMPLAINT

1  not only be particular, but also must strongly imply [defendant's]
2  *contemporaneous* knowledge that the statement was false when made." *In re*
3  *Infonet Servs. Corp. Sec. Litig.*, 310 F. Supp. 2d 1080, 1102 (C.D. Cal. 2003)
4  (quotation omitted).

5       **3.**     **Plaintiffs Must Allege That Their Losses Were Caused By A**
6                  **Disclosure Of The "Relevant Truth"**

7       Plaintiffs must allege that a defendant's misrepresentations "caused the loss
8  for which the plaintiff seeks to recover." 15 U.S.C. § 78u-4(b)(4); *see also Dura*,
9  544 U.S. at 342-45; *In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1025 (9th Cir.
10  2005). As the Supreme Court explained, the "logical link between [an] inflated
11  share purchase price" resulting from an alleged misstatement "and any later
12  economic loss is not invariably strong" because "that lower price may reflect, not
13  the earlier misrepresentation, but changed economic circumstances, changed
14  investor expectations, new industry-specific facts, conditions, or other events[.]"
15  *Dura*, 544 U.S. at 342-43. Thus, to withstand a motion to dismiss, a plaintiff must
16  allege that the company's stock price dropped because a "relevant truth" – *i.e.*, a
17  "truth" that the alleged fraud concealed – became "generally known," *id.* at 342-
18  45, and the market reacted to it. *Metzler*, 540 F.3d at 1063.

19  **IV.**    **ARGUMENT**

20      **A.**    **Plaintiffs' Complaint Fails To State A Claim For Relief**

21       Plaintiffs claim that STEC and its executives concealed information from the
22  market concerning six subjects: (i) the quality of STEC's products (Compl. ¶¶ 98-
23  100); (ii) STEC's internal controls, compliance with GAAP, and revenue
24  recognition (*id.* ¶¶ 113-118, 186-200); (iii) STEC's "customer base and growth"
25  (*id.* ¶¶ 88-97); (iv) STEC's publicly announced guidance for the second and third
26  quarters of 2009 (*id.* ¶¶ 77-84); (v) competition for STEC's ZeusIOPS product (*id.*
27  ¶¶ 101-112); and (vi) the $120 million supply agreement between STEC and EMC
28  (*id.* ¶¶ 85-87). As to each, plaintiffs' Complaint fails to allege the required

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

Case No. 8:09-cv-01304-JVS (MLG)
12   NOTICE OF MOTION AND MOTION TO DISMISS
THE CONSOLIDATED COMPLAINT

1    elements under Section 10(b) of the Securities Exchange Act of 1934.  As a result,

2    that claim, as well as plaintiffs' control person claim under Section 20(a) of the

3    Exchange Act, must be dismissed.  *See Dura*, 544 U.S. at 341-42; *Zucco Partners,*

4    *LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).

5                      **1.      The Quality Of STEC's Products**

6           Plaintiffs claim that STEC and its executives concealed problems with the

7    quality of STEC's products.  (Compl. ¶¶ 21, 98-100).  Plaintiffs claim these

8    problems were concealed both directly through statements about STEC's products,

9    and indirectly through statements about the Company's customer base and growth,

10   competition, agreement with EMC, and reported revenue and revenue projections.

11   (*Id.* ¶¶ 81, 87, 94, 98-100, 111.)   These allegations fail to plead either loss

12   causation or the existence of a false statement.

13          Plaintiffs have failed to plead loss causation because they have not identified

14   any disclosure through which the market learned the supposed "relevant truth"

15   about STEC's products.  *See Dura*, 544 U.S. at 342-45; *Metzler*, 540 F.3d at 1063.

16   Plaintiffs identify three allegedly "corrective" disclosures:  the WedBush Morgan

17   analyst report and the November 3, 2009 and February 23, 2010 earnings

18   announcements.   (Compl. ¶¶ 128-130, 138-139, 164-167.)   Not one of these

19   statements revealed any negative information about STEC's products at all.  (*Id.*;

20   *see also* RJN Ex. CC; *id.* Ex. M; *id.* Ex. N; *id.* Ex. O; *id.* Ex. DD; *id.* Ex. A.)

21   Indeed, during the November 3 and February 23 analyst calls, STEC's executives

22   continued to tout the high quality of the Company's products.  (*See* RJN Ex. O at

23   149; *id.* Ex. DD at 254.)  Plainly, these disclosures did not reveal what plaintiffs

24   claim is the "relevant truth" about STEC's products.  *See In re Oracle Corp. Sec.*

25   *Litig.*, No. C 01-00988, 2009 U.S. Dist. LEXIS 50995, at *52 (N.D. Cal. June 16,

26   2009) (rejecting plaintiffs' loss causation argument regarding product problems

27   when alleged corrective disclosures did not reveal any previously unknown

28   problems).   Because plaintiffs do not allege that the market ever learned what

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

13

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE CONSOLIDATED COMPLAINT

1    plaintiffs claim is the "relevant truth" about STEC's products, any claim that STEC

2    concealed problems with its products fails for lack of loss causation.  *Oracle*, 2009

3    U.S. Dist. LEXIS 50995, at *38-41.

4         Plaintiffs' failure to plead loss causation is dispositive.   In addition,

5    however, plaintiffs fail to plead a material misstatement or omission regarding the

6    quality of STEC's products.  As to affirmative statements concerning the quality of

7    STEC's products (*see*, *e.g.*, Compl. ¶¶ 98-99), these statements are not actionable

8    because plaintiffs do not allege why any of the statements were false.  *See In re*

9    *Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1088 (9th Cir. 2002) (holding that

10   plaintiffs failed to sufficiently describe falsity of company's product quality

11   representations).   As to the allegations that STEC concealed product problems

12   indirectly—through statements about the Company's customer base and growth,

13   competition,   agreement   with   EMC,   and   reported   revenue   and   revenue

14   projections—plaintiffs' claim fails because the alleged quality problems with

15   STEC's products do not contradict any of the statements.  Accepting plaintiffs'

16   allegations as true for purposes of this Motion, the allegations do not undermine

17   the Company's reported revenue or revenue projections, the existence of the

18   agreement with EMC, the fact that it currently faced no competition, and the notion

19   that its customers were helping "evangelize" the Company's technology.

20              **2.    Internal Controls, Compliance With GAAP And Revenue**

21                     **Recognition**

22        Plaintiffs also claim that STEC and its executives concealed inadequate

23   internal controls and a failure to comply with GAAP.  (Compl. ¶¶ 113-118.)  In

24   particular, plaintiffs claim that STEC violated GAAP by recognizing revenue on

25   the EMC contract during the third and fourth quarters of 2009 (*id*. ¶¶ 186-200) and

26   that STEC's reported revenue for the second quarter of 2009 was false.  (*Id.* ¶ 81.)

27   These allegations fail on all three relevant elements.

28        First, plaintiffs have failed to plead loss causation.  Not one of plaintiffs'

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

14

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE CONSOLIDATED COMPLAINT

three allegedly "corrective" disclosures revealed anything about problems with STEC's internal controls or its compliance with GAAP.  None of these disclosures suggested that it was improper for STEC to recognize revenue from the EMC contract during the third and fourth quarters of 2009, or that STEC's reported revenue for the second quarter of 2009 was incorrect.  (*See Id.* ¶¶ 128-130, 138-139, 164-167; *see also* RJN Ex. CC; *id.* Ex. M; *id.* Ex. N; *id.* Ex. O; *id.* Ex. DD; *id.* Ex. A.)  STEC has never adjusted or restated its financial statements for any of these quarters, and plaintiffs do not cite any disclosure through which the market allegedly learned that STEC improperly recognized any revenue in the second, third or fourth quarters of 2009.

Indeed, it was during the November 3, 2009, and February 23, 2010, conference calls that STEC reported its third and fourth quarter 2009 revenues, *including the revenue from the EMC contract.*  (*See id.* Ex. O at 124; *id.* Ex. DD at 243.)  Far from revealing to the market that STEC violated GAAP by recognizing that revenue, the supposed corrective disclosures reported the same revenue numbers plaintiffs purport to challenge.  Failing to allege that the market ever learned what they claim is the "relevant truth," plaintiffs have failed to plead loss causation with regard to any purported concealment of these issues.  *See Dura*, 544 U.S. at 342-45, *Metzler*, 540 F.3d at 1063; *In re Dot Hill Sys. Corp. Sec. Litig.*, No. 06-CV-228, 2009 U.S. Dist. LEXIS 22022, at *43 (N.D. Cal. Mar. 18, 2009); *Weiss v. Amkor Tech., Inc.*, 527 F. Supp. 2d 938, 946 (D. Ariz. 2007).

Second, plaintiffs have failed to plead a material misstatement.  Some of the allegations, such as the internal controls claims, are conclusory, and devoid of any factual allegations at all.  (*See*, *e.g.*, Compl. ¶ 118) (asserting without supporting facts that "Defendants' disclosure controls were grossly inadequate").  Some allegations are based on a blatant mischaracterization of STEC's and its executives' statements.  For example, plaintiffs allege that STEC should not have recognized revenue from the EMC contract in 2009 because STEC and EMC

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

15

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE CONSOLIDATED COMPLAINT

1   implemented a so-called "MDF" (a manufacturer's development fund) to

2   encourage EMC sales representatives to sell products containing ZeusIOPS.

3   (Compl. ¶ 192.)  Plaintiffs plead no facts suggesting, however, that the MDF was

4   part of the "required services" under the EMC agreement, or any other fact to

5   suggest that the revenue was improperly recognized.

6        Other allegations are based entirely on CWs who fail to meet the Ninth

7   Circuit's standard for reliability.  *See Zucco*, 552 F.3d at 995.  Eleven of plaintiffs'

8   13 CWs (CWs 2, 3, 5, 6, 7, 8, 9, 10, 11, 12 and 13) were either not associated with

9   STEC *at all* during the Class Period, or their employment overlapped with the

10  beginning of the Class Period for *only a month*.  The claims of these CWs are

11  therefore unreliable.  *See id.* at 996 (excluding claims of CWs who "were not

12  employed by [company] during the time period in question"); *In re Rackable Sys.,*

13  *Inc. Sec. Litig.*, No. C 09-0222, 2010 U.S. Dist. LEXIS 2663, *22 (N.D. Cal. Jan.

14  13, 2010); *Brodsky*, 630 F. Supp. 2d at 1115.  Moreover, not a single CW is

15  alleged to have had any responsibility for—or "personal knowledge" of—STEC's

16  accounting practices.  *See Brodsky*, 630 F. Supp. 2d at 1114.  This is no surprise, as

17  none of the CWs is even alleged to have worked in STEC's accounting

18  department.  *In re Hypercom Corp. Sec. Litig.*, No. 05-0455, 2006 U.S. Dist.

19  LEXIS 45482, at *18-19 (D. Ariz. July 5, 2006).  Even if the CWs' statements

20  were credited, they do not suggest that STEC's revenues were materially false.  For

21  example, CW1's contention that STEC recognized revenues for "shipping bricks"

22  (Compl. ¶¶ 22, 40) provides no facts quantifying these allegations, thus failing to

23  support an inference that there was a *material* misstatement of STEC's revenues.

24  *See Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988); *In re Remec Inc. Sec.*

25  *Litig.*, 388 F. Supp. 2d 1170, 1176 n.1 (S.D. Cal. 2005).

26       Third, plaintiffs have not come close to alleging facts creating a "strong

27  inference" of scienter with regard to STEC's recognition of revenue.  *See Zucco*,

28  552 F.3d at 991-92.  Plaintiffs do not allege particularized facts suggesting that

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

16

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE CONSOLIDATED COMPLAINT

1   anyone at STEC, let alone senior management, believed that STEC was improperly

2   recognizing revenue.  As discussed above, none of plaintiffs' CWs is alleged to

3   have been in a position to have any "personal knowledge" of such facts, and

4   moreover, none have provided reliable allegations regarding any Defendant's

5   purported knowledge of such facts.[5]  Rather, plaintiffs appear to be the only ones

6   ever to take the position that STEC manipulated its accounting.

7        Lacking any facts suggesting knowledge or intent on Defendants' part,

8   plaintiffs rely entirely on stock sales by just two of the three Individual

9   Defendants.  (Compl. ¶¶ 60-72.)  For the reasons discussed in section IV.B below,

10  these stock sales do not support a "strong inference" of scienter, and they do not

11  make up for plaintiffs' lack of factual allegations suggesting that anyone at STEC

12  had any reason to believe that it could not recognize revenue from the EMC

13  contract in the third and fourth quarters of 2009, or that STEC's reported revenue

14  in the second quarter of 2009 was overstated.

15              **3.    STEC's "Customer Base And Growth"**

16       Plaintiffs claim that Manouch misled the market when he said that STEC's

17  customers were helping "evangelize" the Company's technology.  (*Id.* ¶¶ 88-89.)

18  Plaintiffs also complain about statements regarding "indication[s] of [] future SSD

19  growth," "customer acceptance of SSDs," and expectations regarding "continued

20  growth" of ZeusIOPS.  (*Id.* ¶¶ 90-91.)  These statements, however, were nothing

21  more than "generalized, vague, and unspecific assertions, constituting mere

22  'puffery' upon which a reasonable consumer could not rely."  *Glen Holly Entm't,*

23  *Inc. v. Tektronix Inc.*, 352 F.3d 367, 379 (9th Cir. 2003); *see infra* at 22.

24       In addition, plaintiffs allege that "Defendants' statements that STEC's new

25  _____

26  [5] Indeed, among the 13 CWs on whom plaintiffs rely, only three—CWs 1, 2 and 10
    (Compl. ¶ 22 (a), (b), (j))—even *attempt* to describe any Defendant's purported
27  knowledge of *any* misconduct.  Not one other CW claims to have interacted with
    any Defendant during the Class Period.  *See Brodsky*, 630 F. Supp 2d at 1117.
28  And the allegations of CWs 1, 2 and 10 do not come close to establishing scienter.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

17

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE CONSOLIDATED COMPLAINT

1   customers were 'going through the same trials and tribulations that our first

2   customer went through in terms of sales and marketing side' and that these

3   customers were 'very large, and it takes them a little longer to get the parts right'

4   were materially false and misleading when made.'" (Compl. ¶ 94.)  But nothing in

5   the Complaint demonstrates *how* these statements were "false and misleading."

6   Even if plaintiffs' product quality allegations were true, it in no way follows that

7   customers may not be experiencing "sales and marketing" issues, or that larger

8   customers did not have more trouble than smaller customers.

9       Finally, plaintiffs cannot make the requisite showing of loss causation for

10  statements regarding "STEC's Customer Base And Growth."   None of the

11  allegedly fraudulent practices they identify was ever revealed to the market

12  through a corrective disclosure.  (*Id.* ¶¶ 128-130, 138-139, 164-167.)  Without this

13  showing, plaintiffs fail to allege loss causation.  *Dura*, 544 U.S. at 342-45; *see*

14  *supra* at 15.

15          **4.    STEC's Guidance For The Second And Third Quarters Of**

16                 **2009**

17      Plaintiffs claim that STEC and its executives concealed information from the

18  market regarding STEC's guidance for the second and third quarter of 2009.

19  (Compl. ¶¶ 77-84.)   Plaintiffs claim this guidance was "false" because STEC

20  allegedly failed to disclose that: (i) STEC was shipping bricks; (ii) customers were

21  having difficulty integrating STEC's products; (iii) STEC pressured customers to

22  accept orders before the quarter's end; (iv) STEC recorded revenue for faulty

23  products; and (iv) STEC sold refurbished products as new.  (Compl. ¶¶ 81, 83.)

24      STEC actually exceeded its guidance for both the second and third quarters

25  of 2009.  (*See* RJN Ex. J at 78; *id.* Ex. K at 88; *id.* Ex. L at 91, 92; *id.* Ex. M at

26  101.)  Given that, it is more than a little strange to suggest that the price of STEC's

27  stock dropped when the market learned what plaintiffs claim is the "truth"—

28  namely, that STEC's second and third quarter guidance was "false."  Even setting

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

18

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE CONSOLIDATED COMPLAINT

1   that aside, plaintiffs do not allege the market ever learned any of the specific
2   "facts" that, according to plaintiffs, made STEC's second and third quarter
3   guidance "false."  For this reason, plaintiffs do not allege that the announcement of
4   previously undisclosed "facts" caused their losses.  *See Metzler*, 540 F.3d at 1063
5   (plaintiffs failed to allege loss causation because announcements at issue were not
6   corrective disclosures); *see also Dot Hill*, 2009 U.S. Dist. LEXIS 22022, at *43;  *In
7   re Initial Pub. Offering Sec. Litig.*, 399 F. Supp. 2d 261, 266 (S.D.N.Y. 2005);
8   *Weiss*, 527 F. Supp. 2d at 946.

9           In any event, plaintiffs' allegations do not meet the standard for pleading
10  that projections are false.   As courts have long recognized, projections are
11  inherently uncertain, and for purposes of the federal securities laws, projections are
12  not "false" unless the plaintiff pleads and proves: (1) "the statement is not actually
13  believed"; (2) "there is no reasonable basis for the belief"; or (3) "the speaker is
14  aware of undisclosed facts tending seriously to undermine" the projection.  *See
15  Provenz v. Miller*, 102 F.3d 1478, 1487 (9th Cir. 1996); *In re Apple Computer Sec.
16  Litig.*, 886 F.2d 1109, 1113 (9th Cir. 1989); *In re Adobe Sys., Inc. Sec. Litig.*, 787
17  F. Supp. 912, 919 (N.D. Cal. 1992).  Plaintiffs' allegations do not come close to
18  meeting this standard.  The very fact that STEC actually exceeded its guidance for
19  both quarters undercuts any claim that STEC had no reasonable basis for its
20  projections, or that it was aware of facts "tending seriously to undermine" its
21  projections.  Whatever challenges STEC was facing, it did not merely meet its
22  projections; it exceeded them.[6]

23          **5.     Potential Future Competition For ZeusIOPS**

24          Plaintiffs claim that STEC's CEO, Manouch, misled the market about

---

[6] In addition, all statements related to STEC's financial projections are protected
by the PSLRA's Safe Harbor rule and the Bespeaks Caution doctrine because the
statements were accompanied by meaningful cautionary language.  (*See* RJN Ex. K
at 88; *id.* Ex. L at 93); *Employers Teamsters Local Nos. 175 and 505 Pension Trust
Fund v. Clorox Co.*, 353 F.3d 1125, 1132-34 (9th Cir. 2004).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE CONSOLIDATED COMPLAINT
19

1    competition for STEC's ZeusIOPS products when he said on August 3, 2009 that
2    STEC had "no competition at this stage." (Compl. ¶ 101.)  In discussing this issue,
3    however, Manouch had made clear—and the market clearly understood—that
4    STEC had no current competition because it was the only SSD manufacturer
5    whose products had been "qualified" by the major "tier 1" OEMs. (*See* RJN Ex. B
6    at 18; *id.* Ex. O at 129.)  Plaintiffs do not allege any facts to the contrary.  In fact,
7    the September 17, 2009 WedBush Morgan report that plaintiffs cite as a
8    "corrective disclosure" made quite clear that STEC was still the only vendor that
9    had been "qualified" by the tier one OEMs.  (*Id.* Ex. CC at 233.)  The report, in
10   other words, demonstrates that Manouch's August 3, 2009, statement that "we
11   have no competition at this stage" was true.

12        The WedBush Morgan report went on to raise the possibility that STEC
13   might face competition sooner than analysts previously expected.  (*Id.*)  But STEC
14   did not say it would *never* face competition.  In fact, STEC repeatedly made clear
15   that it would, at some point, face competition.  (*See* Compl. ¶ 110; RJN Ex. G at
16   45, 46; *id.* Ex. A at 9, 10.)  Although plaintiffs allege that Manouch told the market
17   that the probability of another company coming out with a product "like
18   ZeusIOPS" was "zero" (Compl. ¶ 102), plaintiffs have badly mischaracterized this
19   statement by ripping it out of context.  Manouch made this statement in response to
20   a question asking him whether any other company was likely to introduce
21   enterprise-class SSDs using a particular kind of technology called "fibre channel
22   interface." (*Id.* Ex. B at 18.)  Noting that this particular technology was likely to
23   be superseded soon, Manouch expressed his opinion that the likelihood of another
24   company coming out with a "fibre channel" SSD product was "zero."  (*Id.*)
25   Plaintiffs do not allege any facts suggesting that this statement—which clearly
26   reflected Manouch's opinion—was "false."  *See McGuire v. Dendreon Corp.*, ---
27   F. Supp 2d. ---, 2009 WL 5788761, at *2-5 (W.D. Wash. May 21, 2009)  (finding
28   statements of opinion are actionable only if the complaint alleges with particularity

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

20

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE CONSOLIDATED COMPLAINT

1    that the statement was both objectively and subjectively false or misleading; a

2    statement is "subjectively false  or misleading" if either "the speaker did not

3    believe it to be true" or "the speaker knew that the opinion would mislead the

4    intended audience, regardless of whether he believed it.") (citing *Rubke v. Capitol*

5    *Bancorp, Ltd.*, 551 F.3d 1156, 1162 (9th Cir. 2009)).

6        Finally, plaintiffs have failed to allege any facts suggesting that STEC was

7    aware, in advance, of the information disclosed in the WedBush Morgan report.

8    Plaintiffs rely entirely on an article that was published on an "industry-specific

9    website."  (Compl. ¶ 108.)  But plaintiffs do not explain how the market could

10   have remained in the dark about information published on the internet (which, in

11   any event, was itself based on publicly available analyst reports).  (RJN Ex. R at

12   160.)  Also, the internet article did not reflect the specific information that was

13   revealed in the WedBush Morgan analyst report.  (*Id.* Ex. CC.)  The article, in

14   other words, does not suggest that STEC had advance knowledge of any "facts"

15   allegedly revealed in the WedBush Morgan report.

16       **6.      The $120 Million Agreement With EMC**

17       Plaintiffs allege that STEC and its executives concealed information about

18   STEC's $120 million supply agreement with EMC.  (Compl. ¶¶ 85-87.)  Plaintiffs

19   do not allege, nor could they, that the agreement did not exist, or that EMC did not

20   actually commit to purchase $120 million worth of STEC's ZeusIOPS SSDs.

21   Instead, plaintiffs claim that STEC misled the market when, in announcing the

22   agreement, STEC said that it "believes that this agreement reflects [EMC]'s

23   continued commitment to integrate STEC's SSD technology into [EMC]'s systems

24   and validates significant storage system performance improvements enabled by

25   STEC's ZeusIOPS SSDs in these enterprise systems." (*Id.* ¶ 85.)  Plaintiffs claim

26   this statement was false because, according to plaintiffs:  (i) the agreement would

27   "over-supply" EMC, which intended this inventory to cover its needs into the first

28   quarter of 2010; (ii) STEC supplied EMC with "faulty products with high rates of

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

21

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE CONSOLIDATED COMPLAINT

1   failure"; and (iii) "STEC's major commitment to EMC and other large customers

2   meant that smaller customers suffered and were forced to wait double the lead time

3   for products."  (*Id.* ¶ 87(a)-(d).)

4          As a threshold matter, the statement is not actionable because it amounts to

5   nothing more than "puffing" or a "'[v]ague, generalized, and unspecific

6   assertion[]' of corporate optimism."  *In re iPass, Inc. Sec. Litig.*, No. C 05-00228

7   MHP, 2006 WL 496046, at *4 (N.D. Cal. Feb. 28, 2006) (quoting *Glen Holly*, 352

8   F.3d at 379); *see also Brodsky*, 630 F. Supp. 2d at 1113; *In re Downey Sec. Litig.*,

9   No. CV 08-3261, 2009 WL 736802, at *6 (C.D. Cal. March 18, 2009).   Such

10   statements "are 'not capable of objective verification,' and 'lack[] a standard

11   against which a reasonable investor could expect them to be pegged.'"  *iPass*, 2006

12   WL 496046, at *4 (quoting *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1119 (10th

13   Cir. 1997)).

14          Even if it were actionable, the statement is framed as an expression of

15   belief—an opinion—which can be deemed "false or misleading" only if plaintiffs

16   plead and prove facts showing that the statement was both objectively and

17   subjectively false.  *See McGuire*, 2009 WL 5788761, at *2-5.   This standard

18   requires plaintiffs to plead "with particularity" facts demonstrating that "the

19   statement was not true *and* the speaker did not believe it to be true."  *Id.* at *2.

20          Plaintiffs' allegations do not come close to meeting this standard.   Even

21   setting aside whether the opinion was objectively true, plaintiffs do not allege any

22   facts to suggest that STEC and its executives did not believe what they said about

23   the import of the EMC agreement for STEC's business.   Plaintiffs claim that the

24   statement was false because the agreement "over-suppl[ied]" EMC, and EMC

25   intended to use the products to meet its needs "going into 2010."  (Compl. ¶ 87(a)-

26   (b).)  But plaintiffs do not allege, nor could they, that anyone at STEC was aware

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

22

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE CONSOLIDATED COMPLAINT

1   of these "facts" when STEC announced the EMC agreement in June of 2009.[7]

2   This is precisely the kind of "fraud by hindsight" the Ninth Circuit has repeatedly

3   rejected.  *See*, *e.g.*, *In re VeriFone Sec. Litig.*, 11 F.3d 865, 871 (9th Cir. 1993).

4         At bottom, plaintiffs' real gripe about the $120 million agreement is that

5   EMC did not continue to purchase STEC's products at the same rate in 2010.  But

6   STEC never predicted that it would.  In fact, STEC did not announce guidance for

7   2010, and instead repeatedly advised shareholders that it has "limited" ability to

8   predict its customers' demand; that the market demand for its customers' products

9   fluctuates; and that its own operating results could fluctuate due to many factors,

10  including "inventory build-ups by customers."  (RJN Ex. G at 47, 50; *id.* Ex. C at

11  22, 23; *id.* Ex. D at 29, 33; *id.* Ex. E at 39; *see also id.* Ex. B at 12 ("we don't know

12  what's going to happen," and "beyond this year, I really don't have a forecast at

13  this point").)  Thus, to the extent plaintiffs are trying to read STEC's statement as a

14  prediction that EMC would continue to buy products at the same rate, the

15  statement is inherently forward-looking, and was accompanied by meaningful

16  cautionary language.  (*Id.* Ex. L at 93.)  As such, the statement also is protected by

17  the PSLRA's Safe Harbor.  *See supra* at 19 n.6.

18        **B.**    **Stock Trades By Two Of The Three Individual Defendants Do**

19                 **Not Create A Strong Inference Of Scienter**

20        Plaintiffs cannot cure their failure to plead a strong inference of scienter

21  simply by citing Manouch and Mark's stock trades during the Class Period.  The

22  Ninth Circuit has made clear that merely pleading Defendants had "motive and

23  opportunity to commit fraud" does not satisfy plaintiffs' burden.  *Silicon Graphics,*

24  183 F.3d at 974, 988.  As such, "by themselves, large numbers" of insider sales

25

26     [7]  The failure to allege that STEC knew these facts in June 2009 also means this
27  claim fails for lack of scienter.  *In re Read-Rite Corp.*, 335 F.3d 843, 847 (9th Cir. 2003) (PSLRA requires "particular allegations which strongly imply [defendant's]
28  *contemporaneous* knowledge that the statement was false when made").

LATHAM&WATKINS ᴸᴸᴾ
ATTORNEYS AT LAW
ORANGE COUNTY

23

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE CONSOLIDATED COMPLAINT

1  "do not necessarily create a strong inference of fraud."  *Vantive*, 283 F.3d at 1093;

2  *see also Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1251 (N.D. Cal. 1998)

3  ("stock sales alone cannot create a strong inference of sceinter"); *In re Splash*

4  *Tech. Holdings Sec. Litig.*, No. C 99-00109, 2001 U.S. Dist. LEXIS 16252, at *43

5  (N.D. Cal. Aug. 27, 2001) (same).

6        Here, plaintiffs have not alleged that Individual Defendant Cook, or *any*

7  other STEC officer sold the Company's stock during the Class Period.  This fact

8  alone is fatal to any weight plaintiffs place on Manouch and Mark's stock sales, as

9  "[o]ne insider's sales do not support the strong inference required by the statute

10 where the rest of the equally knowledgeable insiders act in a way inconsistent with

11 the inference that the favorable characterizations of the company's affairs were

12 known to be false when made."  *Vantive*, 283 F.3d at 1093 (quotation and

13 alteration omitted); *see also In re Ditech Commc'ns Corp. Sec. Litig.*, No. C 05-

14 02406, 2006 WL 2319784, at *8 (N.D. Cal. 2006).

15       But even setting this issue aside, plaintiffs' insider trading allegations would

16 still be insufficient to establish scienter.  In the regular course of business, "[a]

17 corporate insider may sell stock to fund major family expenses, diversify his

18 portfolio, or arrange his estate plan."  *Ronconi v. Larkin*, 253 F.3d 423, 435 (9th

19 Cir. 2001).   Accordingly, "[i]nsider trading is suspicious only when it is

20 dramatically out of line with prior trading practices *at times calculated to maximize*

21 *the personal benefit from undisclosed inside information.*"  *Id.* (quotation omitted;

22 emphasis in original).  Plaintiffs cannot make such a showing in this case.  The

23 secondary offering was priced at $31 per share.  (Compl. ¶ 62.)  But STEC's share

24 price rose dramatically thereafter, eventually reaching $42.50 on September 9,

25 2009.  (RJN Ex. F at 41.)  This peak price is over 27% higher than the price at

26 which Manouch and Mark's shares were sold during the secondary offering.  Thus,

27 by selling at $31 per share instead of $42.50, Manouch and Mark **left over $100**

28 **million on the table**.  The Ninth Circuit has made clear that such conduct is not

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

24

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE CONSOLIDATED COMPLAINT

1  indicative of scienter.  *See Ronconi*, 253 F.3d at 435 (finding no scienter where

2  insiders sold 69% of their holdings for a price anywhere from roughly 24%-28%

3  lower than that to which the stock price rose during the class period).

4       Finally, in addition to failing to establish that any Defendant's stock sales

5  were suspicious in timing, the stock sale allegations fail for another, even simpler

6  reason:  "Plaintiff[s] ha[ve] failed to link any Individual Defendant's sale of stock

7  to any of the alleged misstatements by [STEC]."  *In re Hansen Natural Corp. Sec.*

8  *Litig.*, 527 F. Supp. 2d 1142, 1160 (C.D. Cal 2007); *see also Vantive*, 283 F.3d at

9  1093.  Instead, like in *Hansen*, plaintiffs have simply alleged that almost "every

10  publicly-filed   document   by   [STEC]   during   the   Class   Period   contains

11  misstatements, and, accordingly, stock sales during the Class Period must give rise

12  to a strong inference of scienter."  527 F. Supp. 2d at 1160.  This will not do.  *Id.*

13  **V.    CONCLUSION**

14       For the foregoing reasons, Defendants respectfully request that the Court

15  dismiss plaintiffs' Complaint in its entirety.

16

17  Dated:  May 12, 2010                    Respectfully submitted,

18                                          LATHAM & WATKINS LLP

19

20                                          By _____/s/_____
                                               Patrick E. Gibbs
21                                             Attorneys for Defendants STEC,
                                               Inc., Manouch Moshayedi, Mark
22                                             Moshayedi, and Raymond D. Cook

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

25

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE CONSOLIDATED COMPLAINT