1  LATHAM & WATKINS LLP
       Patrick E. Gibbs, Bar No. 183174
2      *patrick.gibbs@lw.com*
       Chris W. Johnstone, Bar No. 242152
3      *chris.johnstone@lw.com*
   140 Scott Drive
4  Menlo Park, California 94025
   Telephone:  +1.650.328.4600
5  Facsimile:  +1.650.463.2600

6  LATHAM & WATKINS LLP
       Michele D. Johnson, Bar No. 198298
7      *michele.johnson@lw.com*
       Carolyn A. Dawes, Bar No. 250747
8      *carolyn.dawes@lw.com*
   650 Town Center Drive, 20th Floor
9  Costa Mesa, California  92626-1925
   Telephone:  +1.714.540.1235
10 Facsimile:  +1.714.755.8290

11 Attorneys for Defendants STEC, Inc.,
   Manouch Moshayedi, Mark Moshayedi and
12 Raymond D. Cook

13                    UNITED STATES DISTRICT COURT

14                    CENTRAL DISTRICT OF CALIFORNIA

15                         SOUTHERN DIVISION

16

17 | IN RE STEC, INC. SECURITIES | Lead Case No. 8:09-cv-01304-JVS (MLG)
18 | LITIGATION |
   | | **DEFENDANTS' REPLY IN SUPPORT**
19 | This Document Relates To: | **OF MOTION TO DISMISS THE**
   | | **CONSOLIDATED COMPLAINT**
20 |        ALL ACTIONS |
21 | | Judge:  Hon. James V. Selna
   | | Court:  10C
22 | | Date:   July 12, 2010
   | | Time:   1:30 p.m.
23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ........................................................................... 1

II. ARGUMENT ................................................................................. 3

    A.  Plaintiffs Fail To Specify Any Statements That Were False Or Misleading When Made ...................................... 3

        1.  Plaintiffs' Product Quality Allegations Fail ............................ 3

        2.  Plaintiffs Have Not Identified Any False Or Misleading Statements About STEC's Internal Controls, Compliance With GAAP, Or Revenue Recognition .................................................. 4

        3.  Plaintiffs Fail To Specify Any False Or Misleading Statements Regarding STEC's Customer Base ...................... 5

        4.  Plaintiffs Fail To Specify Any False Or Misleading Statements Regarding STEC's Revenue Projections ................................................ 6

        5.  Plaintiffs Fail To Specify Any False Or Misleading Statements Regarding STEC's Competition ........................... 7

        6.  Plaintiffs Fail To Specify Any False Or Misleading Statements Regarding STEC's Agreement With EMC .................................................. 8

    B.  Plaintiffs' Scienter Allegations Fail ................................... 10

        1.  Stock Sales By Two Of Three Individual Defendants Do Not Create A Strong Inference Of Scienter ............................................. 10

        2.  The Confidential Witness Allegations Are Fatally Deficient .................................................. 13

            a.  The CW Allegations Are Not Reliable ........................ 14

            b.  The CW Allegations Are Not Indicative Of Scienter .................................................. 15

        3.  The "Core Operations" Exception Has No Bearing Here .................................................. 17

        4.  The Purported GAAP Violations Do Not Create A Strong Inference Of Sceinter .................................................. 19

C.   Plaintiffs Do Not Adequately Plead Loss Causation ......................... 20

  1.   Plaintiffs Mis-State The Law Of Pleading Loss Causation .................................................................. 20

  2.   None Of The Proposed Disclosures Revealed Any "Relevant Truth" ............................................................. 22

    a.   The September 17, 2009 Announcement ..................... 22

    b.   The November 3, 2009 Announcement ........................ 23

    c.   The February 23, 2010 Announcement ........................ 25

III.   CONCLUSION ............................................................................. 25

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

Case No. 8:09-cv-01304-JVS (MLG)
ii   REPLY IN SUPPORT OF MOTION TO DISMISS THE
CONSOLIDATED COMPLAINT

# TABLE OF AUTHORITIES

Page

## CASES

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008) ........................................................... 15

*Brodsky v. Yahoo! Inc.*,
630 F. Supp. 2d 1104 (N.D. Cal. 2009) ................................. 6, 15, 17

*DSAM Global Value Fund v. Altris Software, Inc.*,
288 F.3d 385 (9th Cir. 2002) ........................................................... 19

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) .................................................................. 20, 21

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*,
343 F.3d 189 (2d Cir. 2003) ...................................................... 20, 21

*Ernst & Ernst v. Hochfelder*,
425 U.S. 185 (1976) ........................................................................ 10

*Fecht v. Price Co.*,
70 F.3d 1078 (9th Cir. 1995) ........................................................... 12

*Glen Holly Entm't, Inc. v. Tektronix Inc.*,
352 F.3d 367 (9th Cir. 2003) ............................................................. 5

*In re Apple Computer Sec. Litig.*,
886 F.2d 1109 (9th Cir. 1989) ....................................................... 7, 9

*In re Bristol-Meyers Squibb Sec. Litig.*,
No. Civ. A. 00-1990 (SRC), 2005 WL 2007004 (D.N.J. Aug 17, 2005) ............................................................................................. 21, 22

*In re Countrywide Fin. Corp. Sec. Litig.*,
588 F. Supp. 2d 1132 (C.D. Cal. 2008) ........................................... 19

*In re Daou Sys., Inc. Sec. Litig.*,
411 F.3d 1006 (9th Cir. 2005) ......................................................... 21

*In re DDi Corp. Sec. Litig.*,
No. 03-7063, 2005 U.S. Dist. LEXIS 28216 (C.D. Cal. July 20, 2005) .................................................................................................... 6

*In re Dot Hill Sys. Corp. Sec. Litig.*,
No. 06-CV-228, 2009 U.S. Dist. LEXIS 22022 (S.D. Cal. Mar. 18, 2009) ........................................................................................ 6, 16, 20

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY
iii
Case No. 8:09-cv-01304-JVS (MLG)
REPLY IN SUPPORT OF MOTION TO DISMISS THE CONSOLIDATED COMPLAINT

*In re Downey Sec. Litig.*,
   No. cv-08-3261, 2009 U.S. Dist. LEXIS 83443 (C.D. Cal. Aug. 21,
   2009) ............................................................................................................. 16

*In re Gilead Sci. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ..................................................................... 20

*In re GlenFed, Inc. Sec. Litig.*,
   42 F.3d 1541 (9th Cir. 2000) ......................................................................... 3

*In re Hansen Natural Corp. Sec. Litig.*,
   527 F. Supp. 2d 1142 (C.D. Cal 2007) .............................................. 13, 20, 25

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
   131 F. Supp. 2d 680 (E.D. Pa. 2001) ............................................................ 24

*In re Immune Response Sec. Litig.*,
   375 F. Supp. 2d 983 (S.D. Cal. 2005) .......................................................... 22

*In re Impac Mortgage Holdings, Inc. Sec. Litig.*,
   554 F. Supp. 2d 1083 (C.D. Cal. 2008) .......................................................... 6

*In re LeapFrog Enters., Inc. Sec. Litig.*,
   527 F. Supp. 2d 1033 (C.D. Cal. 2007) ........................................................ 20

*In re Medicis Pharm. Corp. Sec. Litig.*,
   689 F. Supp. 2d 1192 (D. Ariz. 2009) .......................................................... 15

*In re Metawave Commun's Corp. Sec. Litig.*,
   629 F. Supp. 2d 1207 (W.D. Wash 2009) ..................................................... 14

*In re Oracle Corp. Sec. Litig.*,
   No. C01-00988, 2009 U.S. Dist. LEXIS 50995 (N.D. Cal. June 16,
   2009) ............................................................................................................. 23

*In re Rackable Sys., Inc. Sec. Litig.*,
   No. C 09-0222, 2010 U.S. Dist. LEXIS 2663 (N.D. Cal. Jan. 13,
   2010) .................................................................................... 7, 18, 24, 25

*In re Syncor Int'l Corp. Sec. Litig.*,
   No. 05-55748, 2007 WL 1729968 (9th Cir. Oct. 9, 2007) ............................ 13

*In re U.S. Aggregates, Inc. Sec. Litig.*,
   235 F. Supp. 2d. 1063 (N.D. Cal. 2002) ................................................ 15, 16

*In re UTStarcom, Inc. Sec. Litig.*,
   617 F. Supp. 2d 964 (N.D. Cal 2009) ........................................................... 19

*In re Vantive Corp. Sec. Litig.*,
   283 F.3d 1079 (9th Cir. 2002) ........................................................ 3, 4, 11, 13

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

iv

Case No. 8:09-cv-01304-JVS (MLG)
REPLY IN SUPPORT OF MOTION TO DISMISS THE
CONSOLIDATED COMPLAINT

*In re Verifone Holdings, Inc. Sec. Litig.*,
  No. C 07-06140, 2009 WL 1458211 (N.D. Cal. May 26, 2009) .................... 18

*In re Watchguard Sec. Litig.*,
  No. C05-678JLR, 2006 U.S. Dist. LEXIS 74269 (W.D. Wash. Oct.
  12, 2006) .................................................................................................... 16

*McCabe v. Ernst & Young, LLP*,
  494 F.3d 418 (3d Cir. 2007) .......................................................................... 21

*McCasland v. FormFactor Inc.*,
  No. C 07-5545, 2009 U.S. Dist. LEXIS 59996 (N.D. Cal. July 25,
  2008) ............................................................................................................ 17

*McGuire v. Dendreon Corp.*,
  --- F. Supp 2d. ---, 2009 WL 5788761 (W.D. Wash. May 21, 2009) ............... 9

*Merck & Co. v. Reynolds*,
  130 S. Ct. 1784 (2010) .................................................................................. 10

*Metzler Inv. GmbH v. Corinthian Colls.*,
  540 F.3d 1049 (9th Cir. 2008) ................................................................. passim

*Miller v. Thane*,
  519 F.3d 879 (9th Cir. 2008) ........................................................................... 7

*Morgan v. AXT, Inc.*,
  No. C 04-4362, 2005 U.S. Dist. LEXIS 42346 (N.D. Cal. Sept. 21,
  2005) ............................................................................................................ 10

*N.Y. State Teachers' Ret. Sys. v. Fremont Gen. Corp.*,
  No. 07-cv-5756, 2009 U.S. Dist. LEXIS 94241 (C.D. Cal. Sept. 25,
  2009) ............................................................................................................ 17

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v.
  America West Holding Corp.*,
  320 F.3d 920 (9th Cir. 2003) .......................................................................... 11

*Osher v. JNI Corp.*,
  256 F. Supp. 2d 1144 (S.D. Cal. 2003) .......................................................... 11

*Pittleman v. Impac Mortgage Holdings, Inc.*,
  No. SACV 07-0970, 2009 WL 648983 (C.D. Cal. Mar. 9, 2009) .................. 18

*Provenz v. Miller*,
  102 F.3d 1478 (9th Cir. 1996) ......................................................................... 7

*South Ferry LP, #2 v. Killinger*,
  542 F.3d 776 (9th Cir. 2008) ............................................................. 17, 18, 19

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

Case No. 8:09-cv-01304-JVS (MLG)
v   REPLY IN SUPPORT OF MOTION TO DISMISS THE
CONSOLIDATED COMPLAINT

*Weiss v. Amkor Tech., Inc.*,
    527 F. Supp. 2d 938 (D. Ariz. 2007)................................................................25

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009).......................................................13, 14, 16, 17

**STATUTES**

15 U.S.C. § 78u-4(b)(2)........................................................................................10

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

vi

Case No. 8:09-cv-01304-JVS (MLG)
REPLY IN SUPPORT OF MOTION TO DISMISS THE
CONSOLIDATED COMPLAINT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Straining to show that their Complaint meets the stringent pleading requirements of the Private Securities Litigation Reform Act, plaintiffs' opposition brief mischaracterizes the applicable law and the allegations in their Complaint.  It does so because, for the reasons set forth in Defendants' motion to dismiss, the Complaint does not state a claim for securities fraud.

Plaintiffs' Complaint alleges that STEC's stock price dropped following three announcements: one on September 17, 2009 to the effect that a potential competitor, Toshiba, had reached the final stage of qualification with a single "tier-1" vendor, and two on November 3, 2009, and February 23, 2010, both regarding an inventory buildup at STEC's largest customer, EMC.  But plaintiffs do not allege facts showing that any of these announcements revealed some "truth" that Defendants had previously (and fraudulently) concealed.

Plaintiffs' opposition fails to identify any allegations suggesting that Defendants made any false statements about the state of competition in the SSD market.  In August 2009, Defendants said that STEC faced no competition "at this stage" because it was the only SSD vendor qualified by the so-called "tier-1" OEMs.  Nothing in the September 17, 2009 WedBush Morgan report is to the contrary.  It did not say that Toshiba had been qualified by any "tier-1" OEM, or that Toshiba was then competing with STEC, much less that it was doing so in August, when Defendants spoke.  Thus, the report did not suggest that Defendants' statement was false, and it did not reveal any "relevant truth" to the market.  And in any event, plaintiffs' opposition does not cite any allegations suggesting that Defendants' were aware, before September 17, 2009, of any facts revealed in the September 17, 2009 WedBush Morgan report.

Plaintiffs' opposition likewise does not identify any allegations suggesting that Defendants made any false statements about EMC or its inventory buildup.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

Case No. 8:09-cv-01304-JVS (MLG)
1   REPLY IN SUPPORT OF MOTION TO DISMISS THE
CONSOLIDATED COMPLAINT

STEC repeatedly informed investors that its results could be affected by inventory buildups at its customers.  In announcing a $120 million agreement with EMC in July 2009, Defendants expressed optimism about what that contract implied for STEC's business.   But plaintiffs' opposition does not identify any allegations suggesting that Defendants knew that EMC would have an inventory buildup when Defendants spoke to the market about the EMC agreement in July and August of 2009.  Lacking any such allegations, plaintiffs have failed to plead both falsity or scienter as to any statements about the EMC contract, just as they have failed to plead that the November 3, 2009 and February 23, 2010 announcements revealed some "relevant truth" that Defendants had concealed.

Lacking allegations of falsity, loss causation or scienter as to the information actually revealed in the announcements on September 17, 2009, November 3, 2009, and February 23, 2010, plaintiffs claim that STEC improperly recognized revenue in violation of GAAP and misled the market about problems with its Zeus products.  But plaintiffs do not allege that the market ever learned what plaintiffs claim is the "relevant truth" about these issues:  plaintiffs do not allege that STEC ever restated or revised its revenues, or that any market observers ever questioned STEC's revenues, and plaintiffs do not cite a single public disclosure about alleged problems with STEC's products.   Thus, as to these claims, too, plaintiffs have failed to allege falsity, loss causation and scienter.

At bottom, plaintiffs are left arguing that there must have been a fraud here because two Defendants, Manouch and Mark Moshayedi, sold a large amount of stock in early August of 2009.  Yet that stock sale does not support an inference of fraud.   Plaintiffs do not even purport to tie that stock sale to any particular allegedly false or misleading statements, nor do they allege that any other STEC executive sold any stock during the Class Period.  And plaintiffs concede, as they must, that after selling stock in August, the Moshayedis stood by and watched STEC's stock price rise by another 27%, or nearly a third, without selling any

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

Case No. 8:09-cv-01304-JVS (MLG)
REPLY IN SUPPORT OF MOTION TO DISMISS THE
CONSOLIDATED COMPLAINT

2

additional stock.  The Ninth Circuit has held repeatedly that there is no inference of scienter under such circumstances where, as here, insiders "miss the boat" so badly.  Indeed, plaintiffs do not cite a single case finding a "strong inference of scienter" based on similar allegations.

Plaintiffs' Complaint is nothing more than an effort to characterize changes in the marketplace as fraud.  The PSLRA, together with controlling Supreme Court and Ninth Circuit authority, do not permit this.  Plaintiffs' Complaint must be dismissed for failure to state a claim.

## II.   ARGUMENT

### A.   Plaintiffs Fail To Specify Any Statements That Were False Or Misleading When Made

Plaintiffs concede that they must "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." (Opp. at 4-5.)  Plaintiffs also concede that they must explain why each statement was false *when made*, rather than in "hindsight."  *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548-49 (9th Cir. 2000); (Opp. at 5-6.)  But even as plaintiffs give lip service to this "exacting" standard for pleading falsity, *Metzler Inv. GmbH v. Corinthian Colls.*, 540 F.3d 1049, 1070 (9th Cir. 2008), their opposition utterly fails to show that they have met the standard as to any alleged statement.

### 1.   Plaintiffs' Product Quality Allegations Fail

Plaintiffs argue that "[t]he Complaint sufficiently identifies the false statements regarding Zeus's performance, and details why those statements were false when made."  (Opp. at 6.)  But in fact, neither the Complaint nor plaintiffs' opposition explains why any of plaintiffs' allegations about STEC's product quality, even if true, rendered any of Defendants' statements false or misleading. *See In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1088 (9th Cir. 2002) (holding plaintiffs failed to sufficiently describe the falsity of company's product quality representations).  Plaintiffs allege that STEC falsely stated that its "products are

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

Case No. 8:09-cv-01304-JVS (MLG)
REPLY IN SUPPORT OF MOTION TO DISMISS THE
CONSOLIDATED COMPLAINT

3

1  *designed* specifically for storage systems and servers that run applications

2  requiring … reliability ….”  (Compl. ¶ 99 (emphasis added).)  But in arguing why

3  this statement was supposedly false, plaintiffs merely assert that “STEC’s

4  products, including Zeus, had material problems including, *inter alia*, unusually

5  high failure rates, bugs, software issues, hardware wear leveling, thermal problems,

6  poor coding, problems with controllers, and battery problems.”  (Opp. at 6.)  What

7  plaintiffs have failed to do is explain why these alleged quality issues undercut

8  Defendants’ statements about what STEC’s products were *designed* to do.  There is

9  no basis to conclude that this statement was false.  *Vantive*, 283 F.3d at 1088.

10  Plaintiffs likewise fail to explain how these problems rendered false or

11  misleading Defendants’ statement that “the ZeusIOPS product family is the

12  proprietary SSD architecture which renders an enterprise-optimized storage device

13  with an *unprecedented* combination of performance and energy efficiency.”

14  (Compl. ¶ 98 (emphasis added).)  Many new and innovative products encounter

15  problems.  What plaintiffs have failed to explain is why these alleged problems

16  made it impossible for Zeus to provide an “*unprecedented* combination of

17  performance and energy efficiency.”  The statement is inherently comparative, yet

18  plaintiffs have not alleged any facts to set a baseline for any comparison.  Without

19  alleging any facts comparing STEC’s products to the available alternatives,

20  plaintiffs cannot show that the statement was false or misleading.

21  **2.**  **Plaintiffs Have Not Identified Any False Or Misleading**

22  **Statements About STEC’s Internal Controls, Compliance**

23  **With GAAP, Or Revenue Recognition**

24  Plaintiffs make no effort to defend the vast majority of their allegations

25  about STEC’s internal controls, compliance with GAAP, and revenue recognition.

26  (Mot. at 15; Opp. at 4-8.)  In fact, they only attempt to defend one such claim,

27  namely, that STEC improperly recognized revenue under SAB 104.  (Opp. at 6.)

28  In that regard, plaintiffs claim that Defendants “ignor[e]” their claims that STEC

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
ORANGE COUNTY

4

Case No. 8:09-cv-01304-JVS (MLG)
REPLY IN SUPPORT OF MOTION TO DISMISS THE
CONSOLIDATED COMPLAINT

1   should not have recognized revenue from the EMC contract because, for purposes
2   of SAB 104, there was no "persuasive evidence of an arrangement" and the "price
3   to the buyer was not fixed or determinable." (*Id*.)  Defendants did not "ignore"
4   these theories.  Although the Complaint cites these provisions of SAB 104, it does
5   not allege any facts suggesting that either of these conditions existed.  There was,
6   in other words, nothing for Defendants to address other than to say (as they did)
7   that plaintiffs did not allege any facts to support this theory.  (Mot. at 15.)

8          Plaintiffs also argue that the Complaint provides "detail[ed]" allegations to
9   the effect that the EMC manufacture's development fund ("MDF") amounted to
10  "required services" under SAB 104.  (Opp. at 6.)  But plaintiffs do not identify any
11  such allegations, and in fact, there are none:  the allegations on this point are
12  wholly conclusory.  (Compl. ¶¶ 191-92.)  Moreover, this assertion is contrary to
13  other, more specific allegations in the Complaint:  plaintiffs acknowledge that the
14  MDF was first announced during a "November 3, 2009 analyst call," in which
15  Manouch said, "'We proposed the MDF … to [EMC] about five [or] six days
16  ago.'"  (Compl. ¶ 192.)  Plaintiffs do not claim this statement was false (and do not
17  allege any contrary facts), and they do not explain how an MDF program that was
18  first proposed in late October 2009 could have amounted to "required services"
19  under a purchase agreement that was signed in July.  (*Id.* ¶ 56.)  As such, plaintiffs
20  have alleged no facts suggesting that the MDF amounted to "required services"
21  under STEC's agreement with EMC.  Accordingly, plaintiffs' SAB 104 claim fails.

22         **3.     Plaintiffs Fail To Specify Any False Or Misleading**
23                  **Statements Regarding STEC's Customer Base**

24         As Defendants pointed out, statements that STEC's customers were helping
25  "evangelize" the Company's technology and that there were "indication[s] of []
26  future SSD growth and customers' acceptance of SSDs" (Compl. ¶¶ 88-90) are
27  classic puffery.  (Mot. at 17 (quoting *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 352
28  F.3d 367, 379 (9th Cir. 2003).)  Plaintiffs do not argue otherwise, but claim that

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

5

Case No. 8:09-cv-01304-JVS (MLG)
REPLY IN SUPPORT OF MOTION TO DISMISS THE
CONSOLIDATED COMPLAINT

1    "[t]his fact-based defense is premature" and "unavailable where, as here, there is

2    no reasonable basis for the belief, or the speaker is aware of undisclosed facts

3    tending seriously to undermine the statement's accuracy." (Opp. at 7.) But in fact,

4    courts routinely dismiss claims on this ground at the pleading stage. *See*, *e.g.*,

5    *Brodsky v. Yahoo! Inc.*, 630 F. Supp. 2d 1104, 1113 (N.D. Cal. 2009); *In re Dot*

6    *Hill Sys. Corp. Sec. Litig.*, No. 06-CV-228, 2009 U.S. Dist. LEXIS 22022, at *21-

7    22 (S.D. Cal. Mar. 18, 2009); *In re Impac Mortgage Holdings, Inc. Sec. Litig.*, 554

8    F. Supp. 2d 1083, 1096-98 (C.D. Cal. 2008).[1]

9        Moreover, plaintiffs have alleged no facts suggesting that Defendants lacked

10   a "reasonable basis" for these statements, or were aware of undisclosed facts

11   "tending seriously to undermine" them. Plaintiffs' opposition certainly does not

12   cite any such allegations. Plaintiffs appear to rely on their allegations about

13   STEC's revenue recognition and product quality, but those allegations do not

14   undercut Defendants' statements. An allegation that some customers experienced

15   problems does not mean that no customers were helping to "evangelize" STEC's

16   products. Moreover, these allegations are even further afield from the statement

17   that STEC saw "indication[s] of [] future SSD growth and customers' acceptance

18   of SSDs." (Compl. ¶ 90.) That statement refers to growth and customer

19   acceptance of SSDs generally, not STEC's SSDs. Plaintiffs' allegations about

20   STEC's products thus do not support an inference this statement was false.

21       **4.    Plaintiffs Fail To Specify Any False Or Misleading**

22            **Statements Regarding STEC's Revenue Projections**

23       Plaintiffs do not dispute that projections are not "false" unless: (1) "the

24   statement is not actually believed"; (2) "there is no reasonable basis for the belief";

_____

[1]  The case plaintiffs cite in support of their argument, *In re DDi Corp. Sec. Litig.*, No. 03-7063, 2005 U.S. Dist. LEXIS 28216, at *53-54 (C.D. Cal. July 20, 2005), does not help them. There, the court had already concluded that certain statements were false or misleading, so it opted not to "parse out" some potentially inactionable statements when actionable statements would continue to remain. *Id.*

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

Case No. 8:09-cv-01304-JVS (MLG)
6   REPLY IN SUPPORT OF MOTION TO DISMISS THE
CONSOLIDATED COMPLAINT

1  or (3) "the speaker is aware of undisclosed facts tending seriously to undermine"

2  the projection.  *Provenz v. Miller*, 102 F.3d 1478, 1487 (9th Cir. 1996); *In re Apple*

3  *Computer Sec. Litig.*, 886 F.2d 1109, 1113 (9th Cir. 1989); (Mot. at 19).   Yet

4  plaintiffs do not even attempt to show that they have met this standard.  Instead,

5  they simply argue "that accounting manipulations and GAAP violations enabled

6  STEC to exceed its guidance."  (Opp. at 8.)  As discussed above, plaintiffs have

7  failed to allege that STEC violated GAAP.  But even if they had, it would not meet

8  the standard for pleading that STEC's projections were "false" under this standard,

9  because such a showing would not support an inference that, *at the time the*

10  *projections were made*, Defendants either did not believe the projections, that they

11  lacked a reasonable basis for the projections, or that they were aware of facts

12  tending seriously to undermine the projections.

13  Finally, plaintiffs' attempt to ignore Defendants' Safe Harbor argument by

14  labeling it as "conclusory" does nothing to refute the substance of that argument.

15  (Opp. at 6-7 n.3.)  It is clear that "projections and forward-looking statements are

16  inactionable under the PSLRA's safe harbor and the 'bespeaks caution' doctrine" if

17  they "are accompanied by meaningful cautionary language."  *In re Rackable Sys.,*

18  *Inc. Sec. Litig.*, No. C 09-0222, 2010 U.S. Dist. LEXIS 2663, at *20 (N.D. Cal.

19  Jan. 13, 2010).   Defendants' motion showed that STEC's projections were

20  "accompanied by meaningful cautionary language."  (Mot. at 19 n.6.)  Nothing

21  more is required to invoke the Safe Harbor, and plaintiffs' failure to offer any

22  substantive argument on this point makes clear that they have no response.

23  **5.    Plaintiffs Fail To Specify Any False Or Misleading**

24  **Statements Regarding STEC's Competition**

25  Plaintiffs appear to concede that Defendants' statements about STEC's

26  competition were not false.  (Opp. at 7.)  Instead, plaintiffs argue that "'statements

27  literally true on their face may nonetheless be misleading when considered in

28  context.'"   (*Id.* (quoting *Miller v. Thane*, 519 F.3d 879, 886 (9th Cir. 2008).)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

Case No. 8:09-cv-01304-JVS (MLG)
7   REPLY IN SUPPORT OF MOTION TO DISMISS THE
CONSOLIDATED COMPLAINT

1    Plaintiffs' reliance on "context" is ironic, for plaintiffs themselves have wrenched
2    the statements from their context.  Plaintiffs appear to argue that Defendants led
3    the market to believe that STEC would never face competition.  To that end,
4    plaintiffs cite Manouch Moshayedi's August 3, 2009 statement that the probability
5    of another company coming out with a product like Zeus was "zero."  (Opp. at 7.)
6    But this statement clearly concerned a specific type of SSD technology that
7    Manouch believed would soon be superseded.[2]  (Mot. at 20 (citing RJN Ex. B at
8    18).)  He did not suggest that STEC would never face competition in the SSD
9    market generally, and plaintiffs do not try to show that he did.

10       Plaintiffs also cite Manouch's August 3, 2009 statement that "'we have no
11   competition *at this stage*.'"   (Opp. at 7 (emphasis added).)   But plaintiffs'
12   opposition does not explain why this statement was false.   Certainly, the
13   September 17, 2009 WedBush Morgan report, which plaintiffs claim revealed the
14   "truth" to the market (*id.* at 22), does not render Manouch's statement false.  The
15   fact that potential competition emerged over a month after Manouch said that
16   STEC faced no competition "at this stage" does nothing to somehow render that
17   present-tense statement false.  Indeed, the WedBush Morgan report did not even
18   say that STEC faced any competition as of September 17, 2009.  It said only that
19   Toshiba was in the final round of qualification with one OEM.  (*Id.*)  In fact, the
20   Complaint does not allege that Toshiba or anyone else was later qualified by a
21   "tier-1" OEM.  The Complaint thus does not come close to alleging falsity as to the
22   statement that STEC faced no competition "at this stage."

23       **6.    Plaintiffs Fail To Specify Any False Or Misleading**
24              **Statements Regarding STEC's Agreement With EMC**

25       Plaintiffs' opposition does not cite any allegations suggesting that any of

---

26
27   [2]  Plaintiffs do not even attempt to show that this statement of opinion was false,
     which under the circumstances at issue here, requires a showing of both objective
28   and subjective falsity.  (Mot. at 20-21.)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

Case No. 8:09-cv-01304-JVS (MLG)
8   REPLY IN SUPPORT OF MOTION TO DISMISS THE
CONSOLIDATED COMPLAINT

Defendants' present-tense statements about STEC's $120 million contract with EMC were false. (Opp. at 4-8.) Thus, plaintiffs appear to concede that they are instead attacking Defendants' statements about what the EMC contract meant for STEC's business. (*Id.* at 5.) And plaintiffs do not dispute that, in order to plead "falsity" as to these statements, they must plead either that Defendants did not believe them, that Defendants had no reasonable basis for them, or that Defendants were aware of facts tending seriously to undermine them. (Mot. at 19.) Plaintiffs' opposition does not come close to showing that they have met this standard.

Plaintiffs argue that "EMC's own statements [show] that it had always planned to carry over inventory into 2010…." (Opp. at 5.) This argument mischaracterizes EMC's public statements about the contract, but even accepting plaintiffs' characterization as true, it would not render Defendants' statements false or misleading when made, since plaintiffs do not allege that Defendants were aware of EMC's alleged intent in July and August of 2009. EMC's state of mind is irrelevant; instead, the standard, as discussed above, requires allegations that Defendants either did not believe their statements, lacked a reasonable basis for them, or were aware of facts tending seriously to undermine them. *Apple*, 886 F.2d at 1113.[3] Furthermore, plaintiffs' conclusory allegation that STEC had a "close-knit and communicative relationship" with EMC (Opp. at 5) does not come close to supporting an inference that Defendants knew, in July or August of 2009, of any alleged plan by EMC to carry inventory into 2010.[4]

---

[3] Likewise, plaintiffs' allegations fail if analyzed under the standard for opinions identified in *McGuire v. Dendreon Corp.*, --- F. Supp 2d. ---, 2009 WL 5788761, *2-5 (W.D. Wash. May 21, 2009) (statements of opinion are actionable only if the complaint alleges with particularity that the statement was both objectively and subjectively false or misleading). (Mot. at 20-21.)

[4] Plaintiffs' argument that "GAAP required Defendants to monitor EMC's use and sales of inventory in order to properly record revenue" (Opp. at 5) does not change this analysis. First, it is dependent upon plaintiffs' faulty GAAP allegations. Second, it does not suggest that Defendants knew, in July or August of 2009, that EMC intended to carry inventory into 2010.

1    **B.      Plaintiffs' Scienter Allegations Fail**

2           Plaintiffs advance four arguments regarding scienter. (Opp. at 9-18.) But as

3    set forth below, none of these arguments establish that any Defendant acted with

4    "the required state of mind," 15 U.S.C. § 78u-4(b)(2), which is an "intent to

5    deceive, manipulate or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193

6    n.12 (1976).    Moreover, viewing plaintiffs' inadequate scienter allegations

7    "holistically" (Opp. at 9) changes nothing: "[T]he sum" of plaintiffs' deficient

8    scienter allegations "is no greater than its parts." *Morgan v. AXT, Inc.*, No. C 04-

9    4362, 2005 U.S. Dist. LEXIS 42346, at *46 (N.D. Cal. Sept. 21, 2005).[5]

10          **1.      Stock Sales By Two Of Three Individual Defendants Do Not**

11          **Create A Strong Inference Of Scienter**

12          Plaintiffs do not dispute, nor can they, that the Moshayedis sold their stock

13   at $31 per share, $11.50 per share below the Class Period high several weeks after

14   they sold their stock. (Opp. at 11.) Although plaintiffs argue that the stock price

15   only increased "slightly" after the Moshayedis sold (*id.* at 3), the stock in fact

16   increased 27% – or nearly a third – thereafter. (Mot. at 24.) Thus, plaintiffs' claim

17   that the Moshayedis' sales were "perfectly timed" rings hollow. (Opp. at 10.)

18          More importantly, plaintiffs do not allege, nor could they, that the

19   Moshayedis sold a single share of stock during the remainder of the Class Period.

20   The point is not, as plaintiffs suggest, that scienter requires perfect timing. The

21   point is that, in the weeks following the August 11, 2009 sale, the Moshayedis sat

22   by and watched as STEC's stock price continued to climb – by an additional 27% –

23   without selling any additional shares.   That behavior is flatly inconsistent with

24   plaintiffs' claim that the Moshayedis engaged in a scheme to artificially inflate and

25

26   [5]   Plaintiffs appear to suggest that allegations of falsity necessarily establish
     scienter as well. (Opp. at 9.) Though courts often review the same allegations in
27   assessing falsity and scienter, that does not mean that falsity alone is enough to
     establish a strong inference of scienter. *See*, *e.g.*, *Merck & Co. v. Reynolds*, 130 S.
28   Ct. 1784, 1796-97 (2010).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

Case No. 8:09-cv-01304-JVS (MLG)
10   REPLY IN SUPPORT OF MOTION TO DISMISS THE
CONSOLIDATED COMPLAINT

profit from the price of STEC's stock.  It is, in other words, inconsistent with an inference of fraud.  *Vantive*, 283 F.3d at 1094.

Ignoring most of Defendants' authorities on the stock sales issue, plaintiffs attempt to distinguish just one of them by arguing that in *Ronconi*, after the "bad news" became public, the share price dropped only to "about" what Defendants had sold their stock for months earlier.  (Opp. at 11 n.4.)   But nothing in *Ronconi* suggests that this factor drove the scienter analysis.  In any event, *Vantive* puts any debate about this issue to rest.  In that case, the Ninth Circuit found no inference of scienter when an insider "sold the overwhelming majority of shares for between $20 and $24 per share," the stock price "peaked at $39," and after the bad news became public, the "stock fell to as low as $11...."  283 F.3d at 1084, 1093-1094.  On those facts, which are substantially indistinguishable from those at issue here, the court cited *Ronconi* and held that "there is no strong inference of scienter when insiders 'miss the boat'" so badly.  *Id.* at 1094; *see also Osher v. JNI Corp.*, 256 F. Supp. 2d 1144, 1164-65 (S.D. Cal. 2003) (same).[6]  The same is true here.

That the Moshayedis sold after cancelling their 10b5-1 trading plans (Opp. at 11) does not change this analysis.  Plaintiffs do not allege any facts suggesting that the Moshayedis gained anything by selling stock through a secondary offering rather than simply selling it through the 10b5-1 plans.  They do not allege, for example, that the Moshayedis sold more stock in the offering than they would have sold under the 10b5-1 plans, or that the offering somehow resulted in a higher price.  If anything, the decision to sell through a secondary offering is inconsistent with an inference of fraud.  Among other things, selling through a secondary offering rather than the 10b5-1 plans required Defendants to issue about 60 pages

---

[6]  The case relied upon by plaintiffs, *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. West Holding Corp.*, 320 F.3d 920, 939 (9th Cir. 2003), is entirely consistent with this result.  In that case, the majority of insiders sold 100% of their shares at prices "between $26-9/16 to $30-9/16 per share, near the stock's peak at $31-5/16[.]"  *Id.* (citing both *Ronconi* and *Vantive*).

of detailed disclosures that they otherwise would not of had to issue.  (Mot. at 7-8.)  In addition, Defendants were required to obtain an additional consent from STEC's independent auditor, PricewaterhouseCoopers, obtain a legal opinion from counsel, and submit to due diligence by the investment banks that underwrote the offering.  (Supp. RJN at Exs. 1, 2.)   Absent any allegation that the Moshayedis gained anything from selling through a secondary offering rather than through the 10b5-1 plans – and there are none – cancelling the 10b5-1 plans in favor of the secondary offering is not consistent with fraud, for making that change dramatically increased the amount of scrutiny their stock sales, and the Company, would receive.[7]  If, as plaintiffs claim, the Moshayedis were engaged in a scheme to inflate and profit from the price of STEC's stock, it would have been far easier for them to simply sell stock through their existing 10b5-1 plans.

Plaintiffs argue that Raymond Cook's failure to sell stock does not undermine their scienter argument because Cook did not own any stock during the Class Period.  (Opp. at 12.)  Defendants never claimed that he did, but in any event, that does not change the analysis.  Cook started working at STEC in November 2008.  (Pls. RJN Ex. A at 16.)  Shortly thereafter, STEC's stock was trading around $4 per share.  (Compl. ¶ 60.)  If, as plaintiffs claim, Cook was part of a scheme to inflate and profit from the price of STEC's stock, he could have easily purchased stock in order to sell it later at the inflated price.  The fact that he did not undermines any alleged inference of scienter.  Moreover, plaintiffs' failure to allege that any other executives sold during the Class Period further undermines any such inference:  "One insider's sales do not support the strong inference required by the statute where the equally knowledgeable insiders act in a way

---

[7] Plaintiffs reliance on *Fecht v. Price Co.*, 70 F.3d 1078, 1083-84 (9th Cir. 1995) is misplaced entirely.  (Opp. at 12.)  That case did not have anything to do with 10b5-1 trading plans.  *Fecht*, 70 F.3d at 1080.  It involved an "expansion program's prospects for enhancing the [c]ompany's earnings" and is completely irrelevant to the allegations at issue here.  *Id.*

1  inconsistent with the inference that the favorable characterizations of the
2  company's affairs were known to be false when made." *Vantive*, 283 F.3d at 1093
3  (quotation and alteration omitted); (Mot. at 24).

4      Additionally, plaintiffs do not respond to Defendants' point that they
5  "'ha[ve] failed to link any Individual Defendant's sale of stock to any of the
6  alleged misstatements by [STEC].'"  (Opp. at 25 (quoting *In re Hansen Natural*
7  *Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1160 (C.D. Cal 2007)).)  Plaintiffs try to
8  distinguish *Hansen* on the ground that the plaintiffs in that case "lengthened the
9  class period to sweep in sales unrelated the [sic] fraud." (Opp. at 12 n.5.)  But this
10  observation is irrelevant.  The *Hansen* court stated unequivocally that "stock sales
11  are helpful only in demonstrating that certain statements were misleading and
12  made with knowledge or deliberate recklessness when those sales are able to be
13  related to the challenged statements." *Hansen*, 527 F. Supp. 2d at 1160 (quotation
14  omitted); *see also In re Syncor Int'l Corp. Sec. Litig.*, No. 05-55748, 2007 WL
15  1729968, at **1 (9th Cir. Oct. 9, 2007).  Plaintiffs have not even tried to make
16  such a showing here.

17      Finally, plaintiffs' repeated references to an alleged SEC investigation (Opp.
18  at 3, 10) do not support an inference of scienter:  "[T]he mere existence of an
19  investigation cannot support any inferences of wrongdoing or fraudulent scienter
20  on the part of a company or its senior management." *Hansen*, 527 F. Supp. at 1162
21  (quotation and alterations omitted).

22          **2.     The Confidential Witness Allegations Are Fatally Deficient**

23      Plaintiffs rely heavily on the purported allegations of 13 confidential
24  witnesses (CWs) in an effort to establish scienter.  (Opp. at 12-16.)  But plaintiffs
25  ignore the Ninth Circuit's *Zucco* decision, which requires CW allegations to "pass
26  two hurdles." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir.
27  2009); (Mot. at 16-17.)   First, each CW "must be described with sufficient
28  particularity to establish [the CW's] reliability and personal knowledge." *Zucco*,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

Case No. 8:09-cv-01304-JVS (MLG)
13  REPLY IN SUPPORT OF MOTION TO DISMISS THE
CONSOLIDATED COMPLAINT

1   552 F.3d at 995 (internal quotation omitted).   Second, those statements that are

2   reported "with sufficient reliability and personal knowledge must themselves be

3   indicative of sceinter."  *Id.*  Plaintiffs' allegations clear neither hurdle.

### a.   The CW Allegations Are Not Reliable

5   Plaintiffs argue that their CW allegations are reliable because "the

6   Complaint sets forth [each CWs'] specific job title or description, duration of

7   employment, [] what the witness knew in relation to the fraudulent practices at

8   STEC," and "identifies specific transactions, providing approximate date(s) and

9   places." (Opp. at 13.)  But plaintiffs' problem is not that the CWs are inadequately

10  identified.  It is that the descriptions do not establish the CWs possess the required

11  personal knowledge.  First, as Defendants pointed out, 11 of the 13 CWs (CWs 2,

12  3, 5, 6, 7, 8, 9, 10, 11, 12 and 13) necessarily lack the required personal knowledge

13  because they were either not associated with STEC at all during the Class Period,

14  or their employment overlapped with the beginning of the Class Period for *only a*

15  *month*.  (Mot. at 16.)  In response, plaintiffs cite a single case from the Southern

16  District of Florida and argue that "[a] class period misstatement does not cease to

17  become false and misleading merely because the reasons for falsity arose before

18  the beginning of the class period." (Opp. 14-15 n.7.)  This argument, which goes

19  to falsity, not scienter, is beside the point.  Courts in the Ninth Circuit have held

20  repeatedly that CWs who were not employed by the company during the Class

21  Period are not relevant to Defendants' state of mind *during* that period.  (Mot. at

22  16.)  Even if a "falsity arose before the beginning of the class period" (Opp. at 14-

23  15 n.7), it could cease to exist during the Class Period, and the CWs would not

24  know it.   This is why Ninth Circuit courts have consistently excluded the

25  allegations of such CWs.  *In re Metawave Commc'ns Corp. Sec. Litig.*, 629 F.

26  Supp. 2d 1207, 1216 (W.D. Wash 2009).

27  Second, as Defendants also pointed out, plaintiffs' CW allegations regarding

28  revenue recognition (*see*, *e.g.*, Compl. ¶ 37) are unreliable because not a single CW

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

Case No. 8:09-cv-01304-JVS (MLG)
14  REPLY IN SUPPORT OF MOTION TO DISMISS THE
CONSOLIDATED COMPLAINT

is alleged to have had any responsibility for – or "personal knowledge" of – STEC's accounting practices.  (Mot. at 16.)  In response, plaintiffs argue that the CWs need not work in the accounting department, so long as they "were 'in a position to infer' or 'could reasonably deduce' the facts attributed to them."  (Opp. at 13, 15 (quoting *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008)).)  But plaintiffs have not alleged any facts suggesting that any of these CWs was positioned to "infer" or "deduce" facts regarding STEC's recognition of revenue.  (Opp. at 13 n.6); *compare Berson*, 527 F.3d at 985 ("any number of company employees" could "infer" the existence of "stop-work orders" because they "had the very obvious effect of putting numerous employees out of work") *with Brodsky*, 630 F. Supp. 2d at 1114 ("Plaintiffs must describe with particularity these CWs' roles in [the company's] revenue recognition process and that they had personal knowledge of Defendants' accounting decisions").

Plaintiffs argue that CW1 and CW9 had "first-hand" knowledge of STEC's alleged "practice of 'shipping bricks.'"  (Opp. at 15.)  But plaintiffs do not explain how knowledge about this alleged practice would have put these CWs in a position to "infer" or "deduce" that STEC actually recognized revenue on those purported shipments.  *See Brodsky*, 630 F. Supp. 2d at 1114 (CW's "observations about customer complaints do not bolster Plaintiffs' allegations of Defendants' fraudulent revenue recognition"); *see also In re U.S. Aggregates, Inc. Sec. Litig.*, 235 F. Supp. 2d. 1063, 1074-75 (N.D. Cal. 2002); *In re Medicis Pharm. Corp. Sec. Litig.*, 689 F. Supp. 2d 1192, 1211 n.10 (D. Ariz. 2009).  Plaintiffs conclusory claim that these "problem[s] translated into misstated revenues" (Opp. at 16) is not sufficient to overcome their failure to plead these facts.

### b.      The CW Allegations Are Not Indicative Of Scienter

Even if plaintiffs' CWs were reliable (which they are not), they fail to clear *Zucco*'s second hurdle:  not a single CW allegation is indicative of scienter.  (Mot. at 16-17.)   This hurdle requires plaintiffs to plead facts showing that each

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

Case No. 8:09-cv-01304-JVS (MLG)
15 REPLY IN SUPPORT OF MOTION TO DISMISS THE
CONSOLIDATED COMPLAINT

1  Defendant "had reason to know about the … improprieties identified by the

2  [CWs]." *U.S. Aggregates*, 235 F. Supp. 2d at 1075.  But of the 13 CWs, plaintiffs'

3  opposition appears to identify only two in this regard:  CW1 and CW9.  (Opp. at

4  15.)  The allegations of these CWs do not support a strong inference of scienter.

5      CW1 purportedly "received specific directives from STEC management to

6  lie to customers regarding high product failure rates [] and documented a specific

7  disagreement between Sun Microsystems and Defendant Mark Moshayedi over

8  false product specifications for [] Zeus."  (Opp. at 15 n.8.)  As to the allegation that

9  CW1 "received specific directives from STEC *management*," courts have

10 repeatedly held that generic references to "management" do not suffice to show

11 scienter; plaintiffs must show that *Defendants* were aware of or directed the

12 relevant conduct.  *See Zucco*, 552 F.3d at 995 (plaintiffs must plead facts showing

13 that each Defendant "had reason to know about the [] improprieties identified by

14 the [CWs]"); *In re Watchguard Sec. Litig.*, No. C05-678JLR, 2006 U.S. Dist.

15 LEXIS 74269, at *13, *24 (W.D. Wash. Oct. 12, 2006) (dismissing claims where

16 "[n]one of the [CWs] … [had] any information regarding any Defendant's role in,

17 or awareness of, these issues").

18     As to the alleged disagreement "between Sun Microsystems and Defendant

19 Mark Moshayedi," there is no indication this alleged encounter occurred during the

20 Class Period (Compl. ¶ 49 ("in 2009")), *see Dot Hill*, 2009 U.S. Dist. LEXIS

21 22022, at *26 (CW testimony not indicative of scienter when it is not

22 "contemporaneous with Defendants' statements") and CW1 only "learned" (*id.*) of

23 the story from "sources."  *Zucco*, 552 F.3d at 997 ("A majority of the confidential

24 witnesses base their knowledge on vague hearsay, which is not enough to satisfy

25 [the] reliability standard."); *see also In re Downey Sec. Litig.*, No. cv-08-3261,

26 2009 U.S. Dist. LEXIS 83443, at *32 (C.D. Cal. Aug. 21, 2009).  But perhaps even

27 more importantly, plaintiffs do not explain how a dispute with a single customer,

28 even if it occurred, would support an inference that any of Defendants' statements

LATHAM&WATKINSⁱⁱᵖ
ATTORNEYS AT LAW
ORANGE COUNTY

Case No. 8:09-cv-01304-JVS (MLG)
16 REPLY IN SUPPORT OF MOTION TO DISMISS THE
CONSOLIDATED COMPLAINT

1   were false or misleading, let alone that any Defendant acted with scienter.

2          The allegations of CW9 are likewise deficient.  CW9's employment with

3   STEC ended in December 2008, well before the Class Period ever began.  (Compl.

4   ¶ 22(i).)  Moreover, CW9 is not alleged to have had any interaction with any

5   Defendant, and therefore could not possibly know any Defendant's state of mind.

6   (*Id.* ¶¶ 41-42, 44); *see also Brodsky*, 630 F. Supp. 2d at 1117 (excluding claims of

7   CW who did "not describe any personal contact with any of the Defendants"); *N.Y.*

8   *State Teachers' Ret. Sys. v. Fremont Gen. Corp.*, No. 07-cv-5756, 2009 U.S. Dist.

9   LEXIS 94241, at *36 (C.D. Cal. Sept. 25, 2009) (excluding allegations of CWs

10  where they were not "in a position to gain personal knowledge of what Defendants

11  saw, knew, or thought"); *McCasland v. FormFactor Inc.*, No. C 07-5545, 2009

12  U.S. Dist. LEXIS 59996, at *18 (N.D. Cal. July 25, 2008) ("Although plaintiffs

13  now have 14 [CWs], the complaint still does not … identify any specific

14  information that was either received or communicated by any defendant").  Thus,

15  the allegations regarding CW9 do not support an inference of scienter.[8]

16          **3.      The "Core Operations" Exception Has No Bearing Here**

17          With regard to EMC's decision to carry inventory into 2010, plaintiffs

18  purport to rely on the co-called "core operations" doctrine.  (Opp. at 16.)  But

19  plaintiffs have not alleged facts sufficient to invoke this doctrine, which alone can

20  establish scienter in only two distinct, limited circumstances.   First, in that

21  "*exceedingly rare category of cases*" (*South Ferry LP, #2 v. Killinger*, 542 F.3d

22  776, 785 n.3 (9th Cir. 2008) (emphasis added)) where "the falsity of the

23  information [is] obvious from the operations of the company," *Zucco*, 552 F.3d at

24  1001, "the core operations inference, without more, may raise the strong inference

---

25  [8] Plaintiffs' continually assert that Manouch Moshayedi wanted "the third quarter
26  2009 revenue numbers to 'look grand.'"  (Compl. ¶ 51; Opp. at 8, 12, 14.)  But the
    complaint itself does not attribute this statement to Manouch.   (Compl. ¶ 51.)
27  Instead, it appears that this statement is attributable to CW2 himself.  Furthermore,
28  there is no indication the purported encounter occurred during the Class Period.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

Case No. 8:09-cv-01304-JVS (MLG)
17  REPLY IN SUPPORT OF MOTION TO DISMISS THE
CONSOLIDATED COMPLAINT

1   [of scienter] required by the PSLRA." *South Ferry*, 542 F.3d at 785.  Second,
2   "[a]llegations regarding management's role in a corporate structure and the
3   importance of the corporate information about which management made false or
4   misleading statements may also create a strong inference of scienter *when made in*
5   *conjunction with detailed and specific allegations about management's exposure to*
6   *factual information within the company*."  *Id.* (emphasis added).

7          As an initial matter, plaintiffs' "core operations" argument is focused on
8   something that is not part of STEC's "operations" at all, namely, EMC's inventory
9   buildup.  (Opp. at 16-18.)  No matter how important EMC was as a customer, and
10  no matter how important the Zeus product was to STEC, EMC's inventory buildup
11  is not something that STEC's management can simply be presumed to know.  It is
12  not, in fact, part of STEC's operations at all; it has to do with *EMC's* operations.
13  Thus, plaintiffs have not alleged, nor could they, that EMC's intent to carry
14  inventory into 2010 would have been "obvious" from STEC's operations, nor have
15  they alleged that it would be "absurd" to suggest that STEC's management was
16  unaware of EMC's plans.  In fact, it is quite plausible that STEC's management
17  was unaware of EMC's plans until shortly before STEC's November 3, 2009
18  analyst call.  *Rackable*, 2010 U.S. Dist. LEXIS 2663, at *26-28; *In re Verifone*
19  *Holdings, Inc. Sec. Litig.*, No. C 07-06140, 2009 WL 1458211, at *7 (N.D. Cal.
20  May 26, 2009); *Pittleman v. Impac Mortgage Holdings, Inc.*, No. SACV 07-0970,
21  2009 WL 648983, at *3 (C.D. Cal. Mar. 9, 2009).  Indeed, during that call,
22  Manouch said precisely that, and plaintiffs do not allege any contrary facts.  (Mot.
23  at 8-9.)

24         Nor have plaintiffs provided "detailed and specific allegations about
25  management's exposure to factual information" about EMC's inventory buildup.
26  *Id.* at 785.  On the contrary, plaintiffs' allegations on this point amount to nothing
27  more than a conclusory assumption that STEC's executives must have been aware
28  of the buildup.  This readily distinguishes this case from plaintiffs' only post-*South*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

18

Case No. 8:09-cv-01304-JVS (MLG)
REPLY IN SUPPORT OF MOTION TO DISMISS THE
CONSOLIDATED COMPLAINT

1    *Ferry* authority applying the core operations doctrine. *See In re Countrywide Fin.*

2    *Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1189 (C.D. Cal. 2008) ("directors and

3    officers were allegedly not just generally aware of [the information at issue], they

4    were … regularly provided detailed [] statistics" about such information and

5    "publicly professed knowledge" of important facts).[9]

6         **4.     The Purported GAAP Violations Do Not Create A Strong**

7               **Inference Of Sceinter**

8         Finally, plaintiffs argue, without authority, that "[t]he Complaint's detailed

9    GAAP allegations further support scienter." (Opp. at 18.) Plaintiffs are mistaken.

10   First, as discussed above, plaintiffs offer absolutely no facts, let alone

11   particularized facts, that GAAP violations occurred. Second, it is well settled that

12   "[t]he mere publication of inaccurate accounting figures, or a failure to follow

13   GAAP, without more, does not establish scienter." *DSAM Global Value Fund v.*

14   *Altris Software, Inc.*, 288 F.3d 385, 390 (9th Cir. 2002) (quotation omitted).

15   Rather, to establish scienter, plaintiffs must demonstrate that Defendants

16   "knowingly and recklessly engaged in an improper accounting practice." *Metzler*,

17   540 F.3d at 1069-70. There are absolutely no allegations in the Complaint that

18   support such a conclusion. Instead, just like in *Metzler*, the Complaint fails to

19   "allege that [STEC's] external auditors counseled against the practice[s] or that

20   [Defendants] admitted or [were] aware [they were] improper." 540 F.3d at 1049.[10]

21

22

23

24   [9] To the extent that plaintiffs rely on pre-*South Ferry* decisions, or decisions from other circuits (Opp. at 17-18), that reliance is misplaced, as *South Ferry* now sets

25   the standard for applying the "core operations" exception. 542 F.3d at 786-87.

26   [10] Plaintiffs' reliance on *In re UTStarcom, Inc. Sec. Litig.*, 617 F. Supp. 2d 964 (N.D. Cal 2009) is misplaced. (Opp. at 18.) In that case, there were "financial

27   restatements of approximately $400 million" and it was clear that the defendants "were made aware … of significant internal control problems relating to revenue

28   recognition." *Id.* at 975-76. There are no such facts alleged here.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

Case No. 8:09-cv-01304-JVS (MLG)
19 REPLY IN SUPPORT OF MOTION TO DISMISS THE
CONSOLIDATED COMPLAINT

## C.   Plaintiffs Do Not Adequately Plead Loss Causation

### 1.   Plaintiffs Mis-State The Law Of Pleading Loss Causation

Plaintiffs' opposition badly mischaracterizes the law on pleading loss causation. Plaintiffs argue, for example, that loss causation should not be addressed on a motion to dismiss and "is best left until the record is more fully developed." (Opp. at 20.) This is simply untrue. Courts regularly dismiss securities fraud complaints for failure to adequately plead loss causation. *See*, *e.g.*, *Hansen*, 527 F. Supp. 2d at 1162-63; *In re LeapFrog Enters., Inc. Sec. Litig.*, 527 F. Supp. 2d 1033, 1043 (N.D. Cal. 2007); *Dot Hill*, 2009 U.S. Dist. LEXIS 22022, at *42-44. Binding Supreme Court and Ninth Circuit precedent requires this. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346-48 (2005) (finding complaint's loss causation allegations to be legally insufficient); *Metzler*, 540 F.3d at 1072 (affirming dismissal of the complaint for failure to adequately allege loss causation).

Moreover, nothing in plaintiffs' authorities undermines this principle. In *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008) (*see* Opp. at 20), the Ninth Circuit concluded that the plaintiffs had adequately pled loss causation, but only after carefully analyzing the plaintiffs' loss causation allegations. *Id.* at 1056-57. Nothing in *Gilead* suggests that district courts should simply bypass loss causation at the pleading stage. In fact, *Gilead* confirmed that pleading loss causation requires plaintiffs to allege facts from which a plausible theory of loss causation may be inferred. *Id.* at 1056.

Plaintiffs' purported quotation of *Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 197 (2d Cir. 2003) is grossly misleading. The Second Circuit did not say, as plaintiffs argue, that "loss causation 'is a matter of proof at trial and need not be decided on a Rule 12(b)(6) motion to dismiss.'" (Opp. at 20.) In the quoted portion of the opinion, the court referred to an affirmative defense that intervening events caused plaintiffs' losses: "Of course, if

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

Case No. 8:09-cv-01304-JVS (MLG)
REPLY IN SUPPORT OF MOTION TO DISMISS THE
CONSOLIDATED COMPLAINT

20

1   the loss was caused by an intervening event … the chain of causation will not have

2   been established.  But such is a matter proof at trial and not to be decided on a Rule

3   12(b)(6) motion to dismiss."  *Emergent Capital*, 343 F.3d at 197.  Nothing in that

4   language suggests that plaintiffs are relieved of their burden of pleading loss

5   causation in the first instance.  Indeed, in the very next section of the opinion, the

6   Second Circuit analyzed the sufficiency of the loss causation allegations in the

7   Complaint.  *Id.* at 197-98.[11]  This is precisely what the Supreme Court held in *Dura*

8   that trial courts are required to do.

9        Plaintiffs also argue that they are not required to show that their losses were

10  caused by a disclosure that mirrors the alleged fraud with exact precision.  (Opp. at

11  19.)   But plaintiffs simply cannot escape Supreme Court and Ninth Circuit

12  precedent holding that loss causation requires plaintiffs to plead and prove that the

13  company's stock price dropped when the market learned "the relevant truth" – that

14  is, the truth that Defendants allegedly concealed with their false or misleading

15  statements or omissions.  *Dura*, 544 U.S. at 342-45; *In re Daou Sys., Inc. Sec.*

16  *Litig.*, 411 F.3d 1006, 1025 (9th Cir. 2005); *Metzler*, 540 F.3d at 1063.

17       Plaintiffs' authorities are consistent with this requirement.  In *In re Bristol-*

18  *Meyers Squibb Sec. Litig.*, No. Civ. A. 00-1990 (SRC), 2005 WL 2007004 (D.N.J.

19  Aug 17, 2005), the defendant revealed that it would be withdrawing a new drug

20  application from the FDA due to "questions raised by the agency regarding the

21  comparative incidence and severity of an infrequent side effect known as

22  angioedema…."  *Id.* at *18.  This announcement revealed facts that corrected the

23  company's prior assurances that the drug in question "was well-tolerated, had a

24  side-effect profile comparable to other ACE inhibitors, and that [the drug] would

---

[11] Plaintiffs also cite a footnote in *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 427 n.4 (3d Cir. 2007).  But in that case, the Third Circuit affirmed the district court's summary judgment ruling that plaintiffs failed to create a genuine issue as to loss causation.  *Id.* at 436.  In no way does the *McCabe* opinion support plaintiffs' suggestion that a loss causation analysis should be put off.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

Case No. 8:09-cv-01304-JVS (MLG)
21  REPLY IN SUPPORT OF MOTION TO DISMISS THE
CONSOLIDATED COMPLAINT

1  be 'BMS's next billion dollar drug.'"  *Id.* at *22.  Likewise, in *In re Immune*

2  *Response Sec. Litig.*, 375 F. Supp. 2d 983 (S.D. Cal. 2005), the court found that

3  announcements of a new drug's disappointing study results and the decision to

4  terminate its funding revealed the truth about facts that were allegedly concealed

5  by the company's false statements regarding the likelihood of FDA approval and

6  prior omissions regarding the drug's ineffectiveness.  *Id.* at 1025.

7      As discussed below, plaintiffs cannot meet this test here because they cannot

8  identify a disclosure of the "relevant truth."

9          **2.    None Of The Proposed Disclosures Revealed Any "Relevant**

10              **Truth"**

11          **a.    The September 17, 2009 Announcement**

12      Plaintiffs argue that the September 17, 2009 WedBush Morgan report "first

13  revealed to investors that there was actual competition for STEC's Zeus, contrary

14  to Defendants' adamant and repeated denials of any such competition."  (Opp. at

15  20.)  As set forth in Defendants' motion, the WedBush Morgan report did not

16  contain any corrective disclosures because it did not reveal any facts that

17  Defendants' statements had concealed.  (Mot. at 20.)  Manouch Moshayedi said on

18  August 3, 2009, that "we have no competition *at this stage*."  (Compl. ¶101.)  This

19  was true because none of the Company's competitors had been "qualified" by the

20  "tier-1" OEMs (RJN Ex. B at 18; *id.* Ex. O at 129), and nothing in the WedBush

21  Morgan report is to contrary.   That report, issued six weeks after Manouch's

22  statement, said only that a potential competitor, Toshiba, had reached the final

23  qualification stages with a single OEM.  It did not say that Toshiba was actually

24  qualified and competing with STEC for SSD sales to "tier-1" OEMs.  Finally,

25  plaintiffs do not explain how the WedBush Morgan report could be a corrective

26  disclosure given that STEC repeatedly acknowledged to the market that the

27  Company would eventually face competition.  (*See* Mot. at 20; Compl. ¶110; RJN

28  Ex. G. at 45, 46; *id.* Ex. A at 9, 10.)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

Case No. 8:09-cv-01304-JVS (MLG)
22  REPLY IN SUPPORT OF MOTION TO DISMISS THE
CONSOLIDATED COMPLAINT

1    Plaintiffs also argue that the WedBush Morgan report revealed the truth
2    about problems with the quality of STEC's products.   Specifically, plaintiffs
3    suggest that the announcement of potential future competition from Toshiba
4    stemmed from customer dissatisfaction with "products riddled with defects."
5    (Opp. at 22-23.)  But plaintiffs do not allege, and the WedBush Morgan report does
6    not suggest, that the OEM referenced in the report began working with Toshiba
7    due to any concerns about STEC's product quality.   In essence, plaintiffs are
8    attempting to plead loss causation by euphemism:  they contend that the market
9    "understood" that the announcement that Toshiba might compete with STEC
10   somehow revealed the relevant truth about STEC's supposed problems with
11   product quality. *See Metzler*, 540 F.3d at 1064.  This is not permitted under Ninth
12   Circuit law, and plaintiffs fail to identify a single case in support of their argument.

13   Plaintiffs' attempt to distinguish *In re Oracle Corp. Sec. Litig.*, No. C 01-
14   00988, 2009 U.S. Dist. LEXIS 50995 (N.D. Cal. June 16, 2009), fails.  Plaintiffs
15   argue that this case differs from *Oracle* because the Wedbush Morgan report
16   disclosed "Company-specific information" as compared to the disclosure in
17   *Oracle*, which noted the general slowing of the economy.  (Opp. at 22.)  But the
18   disclosure in *Oracle* was company-specific:  it revealed an earnings miss by Oracle
19   that Oracle blamed on the slowing economy.  *Id.* at *23.  More to the point, in
20   *Oracle*, as here, the disclosure did not mention product quality at all.  *Id.* at *52.
21   The complete absence of any corrective information relating to product quality in
22   the WedBush Morgan report means that it cannot serve as a basis for plaintiffs'
23   loss causation allegations.

24              **b.       The November 3, 2009 Announcement**

25   On November 3, 2009, STEC announced that its largest customer (EMC)
26   might carry inventory of ZeusIOPS into the first quarter of 2010, and that it was
27   unclear how long EMC's inventory overhang would persist.   (Mot. at 8-9.)
28   Remarkably, although the November 3 announcement did not refer to any alleged

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

Case No. 8:09-cv-01304-JVS (MLG)
23   REPLY IN SUPPORT OF MOTION TO DISMISS THE
CONSOLIDATED COMPLAINT

1   GAAP violations, and did not correct any of STEC's previously reported revenues,

2   plaintiffs argue that the November 3 announcement revealed GAAP violations at

3   STEC.  (Opp. at 23-24.)  Specifically, plaintiffs claim that this announcement of

4   inventory buildup at EMC revealed:   (1) fraudulent accounting for defective

5   products; and (2) the premature recognition of revenue.  (Opp. at 23.)  In so doing,

6   plaintiffs do not cite a single supporting authority (Opp. at 23-24), and they simply

7   ignore the fact that the November 3 announcement actually reported some of the

8   very revenues plaintiffs' claim should not have been reported under GAAP, and

9   indeed, repeated several positive statements about STEC's products.  (Mot. at 8-9.)

10  This is contrary to Ninth Circuit law.  *Metzler*, 540 F.3d at 1064.

11          Plaintiffs argue that Manouch revealed a GAAP violation when he said "we

12  don't know exactly how many [EMC] shipped across each system in

13  Q3…Frankly…[t]hey don't tell us how much inventory they've got."  (Opp. at 23;

14  RJN Ex. O at 135, 144.)   But plaintiffs do not cite any allegations in their

15  Complaint suggesting that the market understood this statement to reveal any

16  GAAP violations, let alone that the market reacted to any such understanding.  *See*

17  *Metzler*, 540 F.3d at 1064 (plaintiffs must allege that the market became aware of,

18  and the resulting stock drop was caused by, a disclosure of the relevant truth).

19  Indeed, plaintiffs do not point to a single market analyst who "understood" the

20  November 3, 2009 announcement as an "indirect" disclosure of GAAP violations.

21  *See In re Ikon Office Solutions, Inc. Sec. Litig.*, 131 F. Supp. 2d 680, 688-90 (E.D.

22  Pa. 2001) (analyst commentary did not support plaintiffs' theory of "indirect"

23  disclosures).  Manouch's statements on the November 3, 2009 earnings call do not

24  support an inference of loss causation as to any alleged GAAP violations.

25  *Rackable*, 2010 U.S. Dist. LEXIS 2663, at *28-29 (dismissing complaint because

26  announcement of disappointing financial results did not indicate the existence of

27  any underlying accounting violations).

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

Case No. 8:09-cv-01304-JVS (MLG)
24  REPLY IN SUPPORT OF MOTION TO DISMISS THE
CONSOLIDATED COMPLAINT

### c.     The February 23, 2010 Announcement

The February 23, 2010 announcement suffers from similar defects. Plaintiffs' complete defense of using this date as a corrective disclosure is a listing of bullet points detailing statements made on February 23, 2010.  (Opp. at 24-25.) That's it.  Plaintiffs' brief offers no explanation for how these statements revealed the relevant truth regarding *any* of the six categories of false statements identified in the Complaint.  (See Mot. at 12.)  Nor do plaintiffs cite a single case in support of their conclusory argument that "the series of partial disclosures detailed in the Complaint readily satisfy *Dura* and Fed. R. Civ. P. 8."  (Opp. at 25.)  This is not surprising because the case law uniformly holds that a plaintiff must "link their losses to the alleged misrepresentations by showing that the [Company's] stock price dropped upon revelation of the true state of the facts."  *Weiss v. Amkor Tech., Inc.*, 527 F. Supp. 2d 938, 946-47 (D. Ariz. 2007); *see also Rackable*, 2010 U.S. Dist. LEXIS 2663, at *28-29 (dismissing complaint because announcement of disappointing financial results did not reveal the "truth" about the company's accounting); *Hansen*, 527 F. Supp. 2d at 1162-63 (dismissing complaint without leave to amend because the mere announcement of an SEC investigation did not reveal anything).  The failure to identify a single corrective disclosure means that plaintiffs have not pled loss causation, thus requiring dismissal of the Complaint.

## III.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss plaintiffs' Complaint in its entirety.

Dated:  June 28, 2010                          Respectfully submitted,

LATHAM & WATKINS LLP


By _____/s/_____
    Patrick E. Gibbs
    Attorneys for Defendants STEC,
    Inc., Manouch Moshayedi, Mark
    Moshayedi, and Raymond D. Cook

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
ORANGE COUNTY

Case No. 8:09-cv-01304-JVS (MLG)
25 REPLY IN SUPPORT OF MOTION TO DISMISS THE
CONSOLIDATED COMPLAINT