1  LATHAM & WATKINS LLP
       Patrick E. Gibbs, Bar No. 183174
2      *patrick.gibbs@lw.com*
       Chris W. Johnstone, Bar No. 242152
3      *chris.johnstone@lw.com*
   140 Scott Drive
4  Menlo Park, California 94025
   Telephone: +1.650.328.4600
5  Facsimile: +1.650.463.2600

6  LATHAM & WATKINS LLP
       Michele D. Johnson, Bar No. 198298
7      *michele.johnson@lw.com*
   650 Town Center Drive, 20th Floor
8  Costa Mesa, California  92626-1925
   Telephone: +1.714.540.1235
9  Facsimile: +1.714.755.8290

10 Attorneys for Defendants STEC, Inc.,
   Manouch Moshayedi, Mark Moshayedi,
11 Raymond D. Cook, and Rajat Bahri

12

13                  UNITED STATES DISTRICT COURT

14                  CENTRAL DISTRICT OF CALIFORNIA

15                       SOUTHERN DIVISION

16

17

| | |
|---|---|
| IN RE STEC, INC. SECURITIES LITIGATION | Lead Case No. 8:09-cv-01304-JVS (MLG) |
| This Document Relates To:<br><br>    ALL ACTIONS | **NOTICE OF MOTION AND MOTION TO DISMISS THE CONSOLIDATED AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge:   Hon. James V. Selna<br>Court:   10C<br>Date:    January 10, 2011<br>Time:    1:30 p.m. |

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................... 1

II.     FACTUAL BACKGROUND ................................................................................ 3

        A.      STEC's Business And Customer Base ................................................... 3

        B.      The SSD Market ...................................................................................... 4

        C.      The Increasing Demand For STEC's ZeusIOPS SSDs ......................... 4

        D.      The SEC's Comment Letter Regarding EMC ........................................ 5

        E.      The Founders' Stock Sales ..................................................................... 6

        F.      The WedBush Morgan Analyst Report ................................................. 6

        G.      The EMC Inventory Holdover ............................................................... 7

        H.      Plaintiff's Claims ................................................................................... 7

III.    ARGUMENT ......................................................................................................... 8

        A.      Plaintiff's Exchange Act Claims Fail ................................................... 8

                1.      Plaintiff Fails To Allege A Material False
                        Statement ..................................................................................... 8

                        a.      The EMC Supply Agreement .............................................. 9

                        b.      Sales To STEC's Other OEM Customers ...................... 11

                        c.      Potential Competition ....................................................... 13

                        d.      Inflation Of Revenue For 2Q09 ...................................... 14

                        e.      Increased Earnings Guidance For 2Q09 ....................... 16

                2.      Plaintiff Fails To Allege Scienter ............................................. 17

                3.      Plaintiff Fails To Allege Loss Causation................................... 21

                        a.      The September 17, 2009 WedBush Morgan
                                Report ............................................................................... 21

                        b.      The November 3, 2009 Announcement ........................ 22

                        c.      The February 23, 2010 Announcement........................... 23

                4.      Plaintiff's Claim Under Section 20A Fails............................... 24

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

i

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE AMENDED COMPLAINT

B.    Plaintiff's Securities Act Claims Fail ................................................. 25

    1.    Statements Regarding STEC's Relationship With EMC .................................................................................... 26

    2.    Statements Regarding Other OEMs ........................................ 28

    3.    Statements Regarding STEC's Revenues ................................. 28

IV.    CONCLUSION ............................................................................................ 29

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

ii

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE AMENDED COMPLAINT

1

# TABLE OF AUTHORITIES

**Page**

## CASES

*Backhaus v. Streamedia Commc'n, Inc.*,
  2002 WL 1870272 (S.D.N.Y. Aug. 14, 2002) .......................................... 26, 27

*Basic Inc. v. Levinson*,
  485 U.S. 224, 108 S. Ct. 978 (1988) ....................................................... 16, 28

*Brodsky v. Yahoo! Inc.*,
  630 F. Supp. 2d 1104 (N.D. Cal. 2009) ......................................................... 15

*Buban v. O'Brien*,
  1994 WL 324093 (N.D. Cal. June 22, 1994) .................................................. 25

*Dura Pharm., Inc. v. Broudo*,
  544 U.S. 336, 125 S. Ct. 1627 (2006) ......................................................... 8, 21

*Employers Teamsters Local Nos. 175 & 505 Pension Trust Fund v.*
  *Clorox Co.*,
  353 F.3d 1125 (9th Cir. 2004) ............................................................. 9, 11, 13

*Gross v. Summa Four, Inc.*,
  93 F.3d 987 (1st Cir. 1996) ...................................................................... 16

*In re AirGate PCS, Inc. Sec. Litig.*,
  389 F. Supp. 2d 1360 (N.D. Ga. 2005) .................................................... 26, 27

*In re Apple Computer Sec. Litig.*,
  886 F.2d 1109 (9th Cir. 1989) ............................................................ 10, 12, 16

*In re AST Research Sec. Litig.*,
  887 F. Supp. 231 (C.D. Cal. 1995) ............................................................. 25

*In re Blue Rhino Sec. Litig.*,
  2004 U.S. Dist. LEXIS 27941 (C.D. Cal. Apr. 9, 2004) ................................. 16

*In re CellCyte Genetics Sec. Litig.*,
  2009 WL 3103892 (W.D. Wash. Sept. 24, 2009) ..................................... 10, 12

*In re Copper Mountain Sec. Litig.*,
  311 F. Supp. 2d 857 (N.D. Cal. 2004) ..................................................... 11, 14

*In re Countrywide Fin. Corp. Sec. Litig.*,
  588 F. Supp. 2d 1132 (C.D. Cal. 2008) .................................................... 9, 25

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

iii

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE AMENDED COMPLAINT

*In re Cutera Sec. Litig.*,
610 F.3d 1103 (9th Cir. 2010)...................................................................12, 17

*In re DDi Corp. Sec. Litig.*,
2005 U.S. Dist. LEXIS 1056 (C.D. Cal. Jan. 7, 2005)....................................29

*In re Dot Hill Sys. Corp. Sec. Litig.*,
594 F. Supp. 2d 1150 (S.D. Cal. 2008) ............................................10, 11, 12

*In re GlenFed, Inc. Sec. Litig.*,
42 F.3d 1541 (9th Cir. 2000).............................................................16, 28

*In re Hansen Natural Corp. Sec. Litig.*,
527 F. Supp. 2d 1142 (C.D. Cal 2007)........................................................21, 24

*In re Hypercom Corp. Sec. Litig.*,
2006 WL 1836181 (D. Ariz. July 5, 2006) ....................................................15

*In re Infonet Serv. Corp. Sec. Litig.*,
310 F. Supp. 2d 1080 (C.D. Cal. 2003).........................................................26

*In re iPass, Inc. Sec. Litig.*,
2006 WL 496046 (N.D. Cal. Feb. 28, 2006)....................................................9

*In re Leapfrog Enter., Inc. Sec. Litig.*,
527 F. Supp. 2d 1033 (N.D. Cal. 2007) ...............................................11, 14, 17

*In re Metricom Sec. Litig.*,
2004 WL 966291 (N.D. Cal. Apr. 29, 2004) ..................................................26

*In re Rackable Sys., Inc. Sec. Litig.*,
2010 WL 199703 (N.D. Cal. Jan. 13, 2010) .........................................15, 17, 19

*In re Remec Inc. Sec. Litig.*,
388 F. Supp. 2d 1170 (S.D. Cal. 2005) ........................................................16

*In re Silicon Graphics, Inc. Sec. Litig.*,
183 F.3d 970 (9th Cir. 1999)...............................................................17, 20

*In re Sketchers U.S.A., Inc. Sec. Litig.*,
2004 WL 1080174 (C.D. Cal. May 10, 2004)...........................................11, 17

*In re Splash Tech. Holdings Inc. Sec. Litig.*,
160 F. Supp. 2d 1059 (N.D. Cal. 2001) .......................................................20

*In re Trex Co., Inc. Sec. Litig.*,
212 F. Supp. 2d 596 (W.D. Va. 2002)..........................................................29

*In re Vantive Corp. Sec. Litig.*,
283 F.3d 1079 (9th Cir. 2002)...........................................................9, 20, 21

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

iv

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE AMENDED COMPLAINT

*In re Wet Seal, Inc. Sec. Litig.*,
   518 F. Supp. 2d 1148 (C.D. Cal. 2007) ..................................................... 10, 12

*Johnson v. Aljian*,
   490 F.3d 778 (9th Cir. 2007) ................................................................. 25

*Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*,
   701 F.2d 1276 (9th Cir. 1983) ............................................................... 29

*Lipton v. PathoGenesis Corp.*,
   284 F.3d 1027 (9th Cir. 2002) ............................................................... 20

*McGuire v. Dendreon Corp.*,
   688 F. Supp. 2d 1239 (W.D. Wash. 2009) ....................................... 14

*Metzler Inv. GMBH v. Corinthian Coll., Inc.*,
   540 F.3d 1049 (9th Cir. 2008) ..............................................20, 22, 24, 25

*Osher v. JNI Corp.*,
   256 F. Supp. 2d 1144 (S.D. Cal. 2003) ............................................... 21

*Pittleman v. Impac Mortgage Holdings, Inc.*,
   2009 WL 648983 (C.D. Cal. Mar. 9, 2009) ....................................... 19

*Provenz v. Miller*,
   102 F.3d 1478 (9th Cir. 1996) ...................................................... 10, 12, 16

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004) ................................................................. 26

*Ronconi v. Larkin*,
   253 F.3d 423 (9th Cir. 2001) ................................................................. 20

*Rubke v. Capitol Bancorp, Ltd.*,
   551 F.3d 1156 (9th Cir. 2009) ......................................................... 14, 25

*Slayton v. Am. Express Co.*,
   604 F.3d 758 (2d Cir. 2010) ................................................................. 17

*South Ferry LP v. Killinger*,
   542 F.3d 776 (9th Cir. 2008) ................................................................. 19

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ............................................................... 26

*Wenger v. Lumisys, Inc.*,
   2 F. Supp. 2d 1231 (N.D. Cal. 1998) ................................................... 20

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ........................................................ 15, 19, 21

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

v

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE AMENDED COMPLAINT

**STATUTES**

15 U.S.C. § 78t-1(a) ................................................................................................ 25

15 U.S.C. § 78u-4(b)(1) ............................................................................................. 9

15 U.S.C. § 78u-4(b)(2)(A) ...................................................................................... 17

15 U.S.C. § 78u-4(b)(4) ........................................................................................... 21

15 U.S.C. § 78u-5(c)(1) ............................................................................................. 9

15 U.S.C. § 78u-5(i)(1)(A) ....................................................................................... 16

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

vi

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE AMENDED COMPLAINT

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD**:

**PLEASE TAKE NOTICE** that on January 10, 2011, at 1:30 p.m. before the Honorable James V. Selna, United States District Judge, located at the Ronald Reagan Federal Building and U.S. Courthouse, 411 West Fourth Street, Courtroom 10C, Santa Ana, California 92701, Defendants STEC, Inc. ("STEC" or "the company"), Manouch Moshayedi, Mark Moshayedi, Raymond D. Cook, and Rajat Bahri (collectively, "Defendants") will and hereby do move for an Order dismissing the Consolidated Amended Complaint For Violation Of The Federal Securities Laws (the "Amended Complaint" or "AC") filed by lead plaintiff The State of New Jersey, Department of Treasury, Division of Investment ("Plaintiff"). This Motion is made pursuant to: (1) Federal Rules of Civil Procedure 12(b)(6), 9(b), and 8(a); and (2) the Private Securities Litigation Reform Act of 1995 ("PSLRA") on the grounds that the Amended Complaint fails to state a claim for violations of Sections 10(b), 20(a), or 20A of the Securities Exchange Act of 1934 (the "Exchange Act") and SEC Rule 10b-5 promulgated thereunder and violations of Sections 11, 12(a) or 15 of the Securities Act of 1933 (the "Securities Act").

The Motion is based on this Notice, the Memorandum of Points and Authorities, the Defendants' Request for Judicial Notice, the Declaration of Christopher W. Johnstone and the exhibits attached thereto, the Amended Complaint, the Court's record in this matter, and the arguments of counsel. This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on August 25, 2010.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

vii

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE AMENDED COMPLAINT

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

STEC provides enterprise-scale flash solid-state drive technologies and solutions tailored to meet the high-performance, high-reliability needs of original equipment manufacturers ("OEMs") who, in turn, sell high–end data storage systems to large enterprises. In early 2009, STEC's customers were incorporating increasing amounts of solid-state drives (or "SSDs") into their end-user systems. As the only manufacturer of SSDs that are qualified by the so-called "tier one" OEMs, STEC saw increased demand for its products, including its flagship ZeusIOPS SSD, and its stock price rose. On July 16, 2009, STEC announced that its largest customer, EMC Corporation ("EMC"), would buy $120 million of ZeusIOPS SSDs in the second half of 2009. As STEC's sales increased and it exceeded its public earnings projections, STEC's stock price continued to rise.

On September 17, 2009, an analyst published a report suggesting that STEC might see competition sooner than expected. On November 3, 2009, STEC announced that it had received preliminary indications that EMC might carry inventory into the first quarter of 2010, potentially affecting STEC's results in that period. On February 23, 2010, STEC announced that it expected EMC's inventory carryover to continue through the second quarter of 2010. STEC's stock price declined following each of the September 17, 2009, November 3, 2009, and February 23, 2010 announcements. Plaintiff here claims that those declines resulted not from changes in STEC's business, but instead from the disclosure of facts that STEC had concealed from the market through a series of allegedly false statements about STEC's business.

In many cases, Defendants did not say what Plaintiff claims. Plaintiff claims, for example, that in announcing the $120 million agreement with EMC (the "EMC Supply Agreement"), STEC falsely told the market that EMC would use all $120 million worth of products during the second half of 2009, and that EMC would be

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

1

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE AMENDED COMPLAINT

buying a similar volume of products from STEC every six months after that. But Defendants said no such thing. STEC said that EMC would **buy** $120 million worth of products in the second half of 2009, which it did, and STEC did not offer any predictions at all about what EMC might purchase from STEC after 2009.

But even accepting Plaintiff's mischaracterizations of what Defendants said, Plaintiff relies almost entirely on forward-looking statements, rather than statements of existing facts. These claims fail because Plaintiff does not allege that these forward-looking statements were "false" when made, relying instead on claims that the alleged predictions did not come to pass. And in any event, all of these forward-looking statements are immune from liability under the Safe Harbor provision of the PSLRA, both because they were accompanied by meaningful cautionary language and because Plaintiff does not plead facts showing that Defendants had "actual knowledge" that the statements were false. Nor does Plaintiff allege loss causation for these forward-looking statements because the alleged "corrective disclosures" did not reveal anything Defendants concealed.

To the limited extent that Plaintiff relies on any statements of existing fact (as opposed to forward-looking statements), Plaintiff's claims likewise fail. Plaintiff claims that STEC's financial results for the second quarter of 2009 ("2Q09") were false, but this claim rests on statements attributed to a handful of "Confidential Witnesses" ("CWs") who would have no reason to know anything about STEC's financial results. More importantly, there has never been any disclosure that STEC's 2Q09 revenue was false (because it was not), so there is no loss causation. Plaintiff also claims that STEC falsely told the market that it had "no competition." But this statement, which referred to the fact that no other manufacturer's SSD products were "qualified" by the major "tier one" OEMs, was true when STEC said it, and it remains true today.

The unfortunate reality is that this case arises out of one analyst's speculation that STEC might face competition sooner than analysts thought (which

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SILICON VALLEY

2

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE AMENDED COMPLAINT

speculation turned out to be incorrect), and an unforeseen, temporary slowdown in STEC's sales to its largest customer, EMC. But STEC never misled the market about the state of competition in the SSD industry, and Plaintiff has alleged no facts whatsoever to show that STEC or its executives knew, in advance, that EMC would carry inventory into 2010. Plaintiff's claims rest on mischaracterizations of what Defendants said, and a bare assumption that because the market was surprised by bad news about STEC's business, Defendants must have committed fraud. The Amended Complaint does not come close to pleading a cause of action under any theory, and therefore should be dismissed with prejudice.

## II. FACTUAL BACKGROUND[1]

### A. STEC's Business And Customer Base

STEC, founded in 1990 by brothers Manouch, Mark and Mike Moshayedi, is a leading provider of enterprise-class flash SSDs. (AC ¶¶ 3, 20, 21.) Manouch is STEC's Chairman and Chief Executive Officer ("CEO"). (*Id.* ¶ 3.) Mark is STEC's President, Chief Operating Officer, Chief Technical Officer and Secretary. (*Id.*) Mike no longer works at STEC, but he remains a significant shareholder. (*Id.*) Raymond D. Cook is STEC's Chief Financial Officer. (*Id.* ¶ 28.) Rajat Bahri is a STEC director and chair of the STEC Board's audit committee. (*Id.* ¶ 31.)

STEC's flagship product is the ZeusIOPS SSD. (*Id.* ¶¶ 2, 20, 24.) STEC sells its SSDs to a small number of OEMs such as EMC, Sun Microsystems, IBM, and Dell, who provide high-end, enterprise scale computer storage systems. (Ex. A at 7, 17; Ex. G at 107, 119.) STEC has disclosed the risks associated with selling to a small number of customers, including that "[t]he loss of, or a significant reduction in purchases by, any of our major customers could materially harm our

---

[1] This factual background is based upon the allegations in the Amended Complaint and documents subject to judicial notice. *See* Request for Judicial Notice filed concurrently herewith. The exhibits cited herein as "Ex." are exhibits to the Declaration of Christopher W. Johnstone, attached to the Request for Judicial Notice.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

3

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE AMENDED COMPLAINT

business, financial condition and results of operations." (Ex. G at 112, 128.) In addition, STEC has cautioned investors that it has a "limited" ability to predict its customers' demand. (Ex. A at 10; *see also* Ex. C at 53; Ex. D at 73; Ex. E at 91.) STEC thus does not provide the market with long-term earnings guidance. Instead, STEC typically provides guidance only for one quarter at a time, often when the quarter is already well underway. (*See* Exs. H-N.)

**B.     The SSD Market**

STEC's CEO, Manouch Moshayedi, has said that STEC has "no competition" in the market for enterprise-class SSDs. (AC ¶¶ 140, 159, 168; Ex. B at 33; Ex. O at 236.) In so doing, he has made clear – and the market understood – that this means no other SSD supplier has been "qualified" by any so-called "tier one" OEMs. (Ex. B at 37.) While pointing out the difficulties of getting a product qualified by such vendors, Manouch has acknowledged that other companies are trying to develop SSD products that would compete with ZeusIOPS. (AC ¶ 142.) The market clearly understood this fact: Although analysts noted that STEC had a substantial lead over potential competitors, they also discussed the fact that other companies, such as Pliant, Samsung, Toshiba and Hitachi, were trying hard to enter the market, and they speculated about when a competitor would emerge. (Ex. P at 264, 265, 267; Ex. Q at 290; Ex. R at 297.)

**C.     The Increasing Demand For STEC's ZeusIOPS SSDs**

In early 2009, STEC experienced a dramatic increase in demand for its products. On March 12, 2009 – near the end of the first quarter of STEC's 2009 fiscal year – STEC announced that it expected to generate $58 million to $60 million in revenue. (Ex. I at 153.) On May 11, 2009, STEC announced that its results for the first quarter exceeded this guidance. (Ex. J at 169.) STEC also announced that, for 2Q09, it expected to generate $68 million to $70 million in revenue. (AC ¶¶ 43, 125; Ex. J at 170.) On June 16, 2009, STEC increased its 2Q09 guidance to a range of $82 million to $84 million. (AC ¶¶ 43, 125, 163.)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

4

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE AMENDED COMPLAINT

One month later, on July 16, 2009, STEC announced that one of its largest enterprise storage customers (later revealed to be EMC) had agreed to buy $120 million of ZeusIOPS SSDs in the second half of 2009. (*Id*. ¶¶ 46, 164.) This announcement included the key terms of the EMC Supply Agreement, namely, the total dollar amount of the commitment ($120 million), the product category (ZeusIOPS SSDs), and the timing (second half of 2009). (Ex. DD at 421.) Although Manouch said at the time that the EMC Supply Agreement served as a "further indication of future SSD growth and customers' acceptance of SSDs into the growing market," STEC did not say that EMC would continue to purchase product at this rate indefinitely, or that other customers would soon enter into similar purchase commitments. (Ex. L at 191.)

On August 3, 2009, STEC announced that, even before the EMC Supply Agreement took effect, results for 2Q09 exceeded the guidance STEC had announced. (Ex. L at 190.) STEC also issued its guidance for the third quarter of 2009, projecting revenue of $95 million to $97 million. (AC ¶¶ 125, 155.) STEC ultimately exceeded this guidance, too. (*Id*. ¶ 125; Ex. M at 204.)

Throughout this period, STEC cautioned investors that the composition of its major customer base changes from quarter to quarter, as the market demand for its customers' products fluctuates. (Ex. D at 69; Ex. E at 86, 87.) STEC told investors that it "expect[s] this variability to continue in the future" (*id.*); that it has "limited" ability to predict future sales; and that its operating results could fluctuate due to many factors, including "inventory buildups by customers." (Ex. G at 110, 129; *see also* Ex. B at 41.)

### D.    The SEC's Comment Letter Regarding EMC

In August and September 2009, in a routine comment on one of STEC's public filings, the Securities and Exchange Commission's ("SEC") Division of Corporation Finance requested an explanation of STEC's dependence on EMC in 2008 and the first half of 2009, and asked whether a particular agreement with

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

5

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE AMENDED COMPLAINT

EMC should be filed as an exhibit with the SEC. (Ex. S at 302.) STEC explained that sales to EMC during that time period were made through individual purchase orders, not an overarching agreement, and the SEC closed its review without further comment. (Ex. FF at 433-34; Ex. GG at 437-38; Ex. T at 305.)

### E.   The Founders' Stock Sales

Since founding STEC, Manouch and Mark have retained substantial ownership interests in the company. (Ex. U at 307; Ex. V at 309.) They began to diversify their holdings in 2003, when they reduced their total ownership from about 55.9% to about 41.2%. (Ex. W at 311; Ex. X at 321; Ex. Y at 333; Ex. Z at 341.) In May 2009, as part of a long-term strategy for asset diversification, estate planning, and liquidity, Mark and Manouch entered into 10b5-1 trading plans to sell a large portion of their STEC stock over 18 months, starting on or after August 15, 2009, as certain staggered, pre-determined price thresholds were met. (Ex. AA at 348.) Before any shares could be sold under these plans, however, STEC's stock price rose above all of the pre-determined price thresholds (Ex. F), which would have triggered a very large sale on August 15, 2009, rather than the orderly, staggered sales that had been planned with the expectation that STEC's stock price would increase over time. To prevent that outcome, Mark and Manouch cancelled their plans and instead sold their stock through an orderly and publicly disclosed secondary offering underwritten by four major investment banks (the "Secondary Offering"). (Ex. BB.) The Secondary Offering, priced at $31 per share, was accompanied by a Registration Statement and Prospectus containing 54 pages of public disclosures. (Ex. BB; AC ¶ 236.) After the offering, Mark and Manouch retained about 17.4% ownership of STEC (Ex. BB at 377), and they remain two of its largest shareholders. (Ex. EE at 425.) In the 5 weeks following the Secondary Offering, STEC's stock price rose to $42.50 per share. (Ex. F at 105.)

### F.   The WedBush Morgan Analyst Report

In a report dated September 17, 2009, a WedBush Morgan analyst wrote that

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

6

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE AMENDED COMPLAINT

1  STEC's window for maintaining its market leadership position "may be closing."

2  (AC ¶ 143.) The analyst claimed that another potential SSD provider, Toshiba, was

3  in the final qualification stages with one of STEC's "tier one" OEM customers,

4  and that another company would "likely introduce" one or more SSD products.

5  (*Id.*; Ex. CC at 413.) The analyst opined that, as a result, STEC would face

6  competition sooner than she had previously expected. (*Id.*) After this report was

7  published, STEC's stock price fell from $37.90 to $31.53. (AC ¶ 179.) Plaintiff has

8  not alleged any facts showing that the analyst's predictions ever materialized.

9  ### G.   The EMC Inventory Holdover

10  On November 3, 2009, STEC announced that it had recently received

11  preliminary indications that EMC might carry inventory of ZeusIOPS into the first

12  quarter of 2010. (*Id.* ¶ 54.) On an analyst call that day, a key topic was how long

13  the EMC inventory holdover was expected to last. One analyst asked, "you have

14  engineers co-located with EMC, [so you] *probably* have a pretty good insight

15  [into] what was actually pulled off the shelf in the third quarter." (Ex. O at 242

16  (emphasis added).) Manouch answered, ". . . We *don't know* exactly how many

17  they shipped across each system in Q3." (*Id.* (emphasis added).) Manouch

18  emphasized that STEC did not know the extent of EMC's holdover:

19  "Unfortunately, we don't have exact numbers from our customer," "We really

20  don't have a good estimate of what EMC has done in Q3 and to this date in Q4,"

21  "[EMC doesn't] tell us how much inventory they've got," "We really *don't know* .

22  . . It's very difficult for us still to tell at this point in time the amount of inventory

23  that [EMC will] have at the end of the year." (Ex. O at 233, 251, 258 (emphasis

24  added).) On February 23, 2010, STEC reported that it expected EMC's inventory

25  carryover to continue through the first half of 2010. (AC ¶ 190.)

26  ### H.   Plaintiff's Claims

27  Plaintiff claims that, between June 16, 2009 and February 23, 2010 (the

28  "Class Period"), Defendants made a series of false statements about: (1) the EMC

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

7

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE AMENDED COMPLAINT

1  Supply Agreement; (2) STEC's sales to other large customers in the second half of
2  2009; (3) competition in the industry; (4) STEC's revenues; and (5) STEC's
3  revised guidance for 2Q09. (AC ¶¶ 162-74.) On that basis, Plaintiff asserts claims
4  under Sections 10(b), 20(a), and 20A of the Exchange Act. Plaintiff also claims
5  that the Registration Statement and Prospectus for the Secondary Offering included
6  false statements regarding: (1) STEC's relationship with EMC; (2) other OEMs'
7  demand for ZeusIOPS during the second half of 2009; and (3) STEC's revenues.
8  (*Id.* ¶¶ 276-81.) On that basis, Plaintiff asserts claims under Sections 11, 12(a)(2),
9  and 15 of the Securities Act. Plaintiff claims the "truth" came out through the
10 September 17, 2009 WedBush Morgan report and STEC's announcements on
11 November 3, 2009 and February 23, 2010. (*Id.* ¶¶ 176-99.)

12 **III.   ARGUMENT**

13     **A.    Plaintiff's Exchange Act Claims Fail**

14          To state a claim under Section 10(b) of the Exchange Act, a plaintiff must
15 allege: (1) a material misrepresentation; (2) scienter; (3) a connection with the
16 purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss
17 causation. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-42, 125 S. Ct. 1627
18 (2006). Under Section 20A of the Exchange Act, a plaintiff must allege: (1) a
19 predicate violation of Section 10(b); (2) that the defendants sold stock while in the
20 possession of material, non-public information; and (3) that the plaintiff purchased
21 or sold securities "contemporaneously" with the defendants. *In re Countrywide*
22 *Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1202 (C.D. Cal. 2008). Plaintiff's
23 Amended Complaint fails to allege one or more required elements of its claims
24 under each of Section 10(b) and Section 20A. Those claims, and the claim for
25 control person liability under Section 20(a), must be dismissed.

26         **1.    Plaintiff Fails To Allege A Material False Statement**

27          Under the PSLRA, which was enacted "to eliminate abusive securities
28 litigation and…put an end to the practice of pleading 'fraud by hindsight,'" *In re*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

8

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE AMENDED COMPLAINT

1  *Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1084-85 (9th Cir. 2002), a plaintiff must

2  specify with particularity "each statement alleged to have been misleading" and

3  "the reason or reasons why the statement is misleading…" 15 U.S.C. § 78u-

4  4(b)(1). For statements that are "forward-looking," the PSLRA creates a "Safe

5  Harbor" under which such statements are not actionable as a matter of law if they

6  are accompanied by "meaningful cautionary statements identifying important

7  factors that could cause actual results to differ materially from those in the forward

8  looking statements." *In re iPass, Inc. Sec. Litig.*, 2006 WL 496046, at *5 (N.D.

9  Cal. Feb. 28, 2006). Where a statement qualifies for the Safe Harbor, dismissal at

10  the pleading stage is proper. *Employers Teamsters Local Nos. 175 & 505 Pension*

11  *Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1132-33 (9th Cir. 2004). Here, Plaintiff

12  fails to allege any material false statement, and in any event, most of the alleged

13  statements are immune from liability under the Safe Harbor.

14  ### a.    The EMC Supply Agreement

15  Plaintiff claims Defendants made false statements about STEC's $120

16  million EMC Supply Agreement. (AC ¶¶ 46-82.) To be clear, though, Plaintiff

17  does not challenge any of STEC's present-tense statements about this agreement.

18  Rather, Plaintiff relies entirely on what it claims Defendants said about the impact

19  of the agreement on STEC's future revenues: Plaintiff claims Defendants falsely

20  "implied" that the agreement would cover EMC's supply needs for only the second

21  half of 2009, and that investors "understood" the contract to represent a new level

22  of ongoing purchases to be made every six months by EMC. (*Id.* ¶¶ 50, 53.)

23  Plaintiff badly mischaracterizes Defendants' statements. First, Defendants

24  did not say that EMC would ***use*** $120 million worth of products in the second half

25  of 2009. They said it would ***buy*** $120 million of ZeusIOPS SSDs "in the second

26  half of 2009." (Ex. D at 69; Ex. DD at 421.) Plaintiff does not allege that EMC

27  failed to buy $120 million worth of ZeusIOPS SSDs in that period, and Plaintiff

28  may not plead falsity by mischaracterizing what Defendants actually said. *See In re*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 8:09-cv-01304-JVS (MLG)
9   NOTICE OF MOTION AND MOTION TO DISMISS
THE AMENDED COMPLAINT

*Dot Hill Sys. Corp. Sec. Litig.*, 594 F. Supp. 2d 1150, 1159 (S.D. Cal. 2008) (finding that "there is simply no false statement" where a defendant made a representation about its operating structure that was factually accurate); *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1178 (C.D. Cal. 2007) (rejecting plaintiffs' reliance on certain misstatements because "Plaintiffs cannot show any of these statements were literally false"); *In re CellCyte Genetics Sec. Litig.*, 2009 WL 3103892, at *5 (W.D. Wash. Sept. 24, 2009) (rejecting plaintiffs' unreasonable characterization of a brochure). In any event, even if interpreted as a statement about how much product EMC would ***use*** in the second half of 2009, the statement is clearly a projection, and thus is not false unless the speaker did not actually believe it; lacked a reasonable basis for it; or was aware of facts "tending seriously to undermine" it. *See Provenz v. Miller,* 102 F.3d 1478, 1487 (9th Cir. 1996); *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1113 (9th Cir. 1989). Plaintiff alleges no facts suggesting falsity under this standard.

Second, Defendants never said EMC would be repeating this level of purchases every six months. Indeed, unable to identify any such statement by Defendants, Plaintiff points to an analyst report predicting a "high likelihood of a follow-on contract order" from EMC. (AC ¶ 53.) But not even the analysts expected EMC to purchase $120 million every two quarters, and regardless, Plaintiff cannot rely on statements by a third-party, which Defendants neither endorsed nor adopted, to plead a false statement by Defendants. *In re Sketchers U.S.A., Inc. Sec. Litig.*, 2004 WL 1080174, at *7 (C.D. Cal. May 10, 2004).

Furthermore, even if Defendants had predicted either that EMC would use $120 million worth of products in the second half of 2009, or that EMC would thereafter purchase a similar volume of products every six months, such statements would be absolutely immune from liability under the Safe Harbor. In public filings to which Defendants pointed investors when they made the challenged statements, STEC warned of the risk that its financial results could be affected by "inventory

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SILICON VALLEY

10

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE AMENDED COMPLAINT

buildups by customers" (Ex. G at 110), and that "excess inventory held by our customers may reduce future demand for [STEC's] products…" (Ex. K at 184.)[2] It also warned that "[c]ustomers may change, cancel or delay orders with limited or no penalties" (Ex. G at 114), and that "…results of operations are difficult to forecast, and period-to-period comparisons of our operating results may not be predictive of future performance." (Ex. G at 110.) Noting its "limited number of customers," STEC also told investors that "[t]he loss of, or significant reduction of purchases by, any of our major customers could materially harm our business, financial condition and result of operations." (Ex. G at 112, 128.)[3]

The company thus identified the specific risk that eventually came to pass, namely, an inventory buildup at one of its major customers. Because STEC explained the specific risks associated with its forward-looking statements regarding the EMC Supply Agreement, these statements are completely protected by the Safe Harbor. *See In re Dot Hill Sys. Corp. Sec. Litig.*, 2009 WL 734296, at *12 (N.D. Cal. Mar. 18, 2009); *In re Copper Mountain Sec. Litig.*, 311 F. Supp. 2d 857, 882 (N.D. Cal. 2004). The Safe Harbor protection applies, moreover, regardless of what Plaintiff alleges about Defendants' state of mind. *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1112-13 (9th Cir. 2010).

### b.    Sales To STEC's Other OEM Customers

Plaintiff also claims Defendants falsely told the market that OEM customers other than EMC would increase their purchases "in the same way that the $120 million EMC Supply Agreement had increased the volume of EMC's purchases." (AC ¶¶ 83-100.) But Plaintiff does not cite any actual statement by Defendants to

---

[2]   It is proper for a company to reference cautionary language in its public filings. *See Clorox*, 353 F.3d at 1132-33; *In re Leapfrog Enter., Inc. Sec. Litig.*, 527 F. Supp. 2d 1033, 1047 (N.D. Cal. 2007).

[3]   STEC also warned that "Our dependence on a limited number of customers means that the loss of a major customer or any reduction in orders by a major customer would materially reduce our revenues." (Ex. HH at 441.)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

11

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE AMENDED COMPLAINT

that effect, and there were none. During the August 3, 2009 earnings call, Manouch Moshayedi: (1) noted that OEMs other than EMC remained in the "pre-production" stage; (2) cautioned that the other OEMs were "going through the same trials and tribulations" as EMC had "in terms of sales and marketing"; and (3) estimated that it would take "another quarter or two for full ramp and production." (Ex. B at 38-39.) Notably, Manouch did not say that "full ramp and production" for those other customers would mean that they would match the $120 million EMC Supply Agreement. In fact, he cautioned analysts that "the other four customers…[would] have to come up and do the marketing and sales that the first customer is doing to get up to those sort of volumes" purchased by EMC. (Ex. B at 34.) Again, Plaintiff cannot plead falsity by mischaracterizing what Defendants said. *See Dot Hill*, 594 F. Supp. 2d at 1159; *Wet Seal*, 518 F. Supp. 2d at 1178; *CellCyte*, 2009 WL 3103892, at *5. And, again, even if Defendants had projected similar sales to other OEM customers, that projection would not have been "false" unless Defendants did not believe it, lacked a reasonable basis for it, or were aware of facts "tending seriously to undermine" it. *See Provenz,* 102 F.3d at 1487; *Apple Computer*, 886 F.2d at 1113. Plaintiff does not allege any such facts here.

Moreover, any alleged statement about future purchases by OEMs other than EMC would be immune from liability under the Safe Harbor. In discussing its sales to other OEM customers, STEC directed investors to its public filings, which cautioned that "[i]t is difficult to predict with any precision end user adoption rates or customer demand for our products…" (Ex. D at 70), and that "[o]ur product development is inherently risky because it is difficult to…anticipate the adoption of new standards." (Ex. G at 114.) STEC warned that "[i]t will take time for these new standards and products to be adopted, for customers to accept and transition to these new products and for significant sales to be generated from them, if this happens at all…." (*Id.*) STEC pointed specifically to the "risks and uncertainties" related to its statements about "accelerating customer adoption of ZeusIOPS" (Ex.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

12

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE AMENDED COMPLAINT

1  I at 155), and "customers' acceptance of SSDs." (Ex. L at 192.) Thus, any

2  projections relating to the demand by STEC's other OEM customers are protected

3  by the Safe Harbor. *See Clorox*, 353 F.3d at 1132.

### c.  Potential Competition

5  Plaintiff claims that STEC's CEO, Manouch Moshayedi, misled the market

6  when he said on August 3, 2009 that STEC had "no competition at this stage." (AC

7  ¶ 140.) But in discussing this issue, Manouch made clear – and the market

8  understood – that STEC had no competition because it was the only SSD

9  manufacturer whose products had been "qualified" by the major "tier one" OEMs.

10  (Ex. B at 37.) Plaintiff does not allege that this statement was false. In fact, the

11  September 17, 2009 WedBush Morgan report – which Plaintiff claims revealed the

12  "truth" – made quite clear that STEC was ***still*** the only vendor that had been

13  "qualified" by the "tier one" OEMs. (*See* Ex. CC at 413; AC ¶ 143.) The report

14  thus shows that Manouch's statement was true. Although it went on to suggest that

15  STEC might face competition sooner than previously expected, STEC repeatedly

16  had made clear that it would face competition at some point. (Ex. G at 114.)

17  Plaintiff also claims Manouch told the market that the probability of another

18  company coming out with a "ZeusIOPS-like" SSD product was "zero" (AC ¶ 140),

19  but Plaintiff has mischaracterized this statement, which was made in response to a

20  question asking whether any other company was likely to introduce enterprise-

21  class SSDs using "fibre channel interface" technology. (Ex. B at 37.) Noting that

22  this particular technology was likely to be superseded soon, Manouch opined that

23  the likelihood of another company coming out with a "fibre channel" SSD product

24  was "zero." (*Id*.) Plaintiff does not allege any facts suggesting that this statement –

25  which clearly reflected Manouch's opinion – was "false." *See McGuire v.*

26  *Dendreon Corp*., 688 F. Supp. 2d 1239, 1241-44 (W.D. Wash. 2009) (citing *Rubke*

27  *v. Capitol Bancorp, Ltd.*, 551 F.3d 1156, 1162 (9th Cir. 2009)).

28  Moreover, any statements about future competition in the SSD market are

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

13

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE AMENDED COMPLAINT

1   immune under the Safe Harbor. STEC's SEC filings, to which it referred investors

2   during the August 3, 2009 earnings call, specifically cautioned investors that "[w]e

3   conduct business in an industry characterized by intense competition" and that

4   "[w]e expect our competitors will continue to…introduce new products that may

5   offer greater performance, improved pricing or render our technology or product

6   uncompetitive, any of which could cause a decline in sales or loss of market

7   acceptance of our products." (Ex. G at 114, 116.) Looking forward, STEC stated

8   that "our competitors may develop enhancements to, or future generations of,

9   competitive products that may render our technology or products obsolete or

10  uncompetitive." (Ex. HH at 442.) Manouch's statement about the possibility of a

11  competitor introducing a "fibre channel interface" SSD is thus protected by the

12  Safe Harbor. *Leapfrog*, 527 F. Supp. 2d at 1047; *Copper Mountain*, 311 F. Supp 2d

13  at 882.

14                  **d.      Inflation Of Revenue For 2Q09**

15        Plaintiff claims Defendants inflated STEC's earnings for 2Q09 by

16  improperly recognizing revenue for the shipment of: (1) products that later failed;

17  (2) sales that were pulled into a quarter; (3) products that were never ordered; or

18  (4) products that were never shipped. (AC ¶¶ 102-08, 110-15.) This claim fails for

19  several reasons. First, Plaintiff fails to explain how items (1) and (2) – alleged

20  post-shipment failure and acceleration of deals into the current quarter – would

21  render STEC's reported revenue false. STEC's Form 10-K explains that it

22  recognizes revenue in accordance with Staff Accounting Bulletin No. 104, under

23  which revenue may be recognized when four criteria are met: (1) persuasive

24  evidence of an arrangement exists; (2) the sales price is fixed or determinable; (3)

25  collectability is reasonably assured; and (4) products have been shipped and the

26  customer has taken ownership and assumed risk of loss. (Ex. G at 130.) The AC

27  does not explain why, if these elements are otherwise met, a post-shipment product

28  failure, or the acceleration of a transaction into the current quarter, would preclude

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

14

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE AMENDED COMPLAINT

1   STEC from recognizing revenue under SAB 104.

2        Plaintiff also claims that STEC sent customers unwanted product. (AC ¶

3   109.) But this allegation – which relates to a single customer, HP – is premised on

4   information allegedly provided by CW1, who was not even employed at the

5   company during the Class Period and is therefore unreliable. *See Zucco Partners,*

6   *LLC v. Digimarc Corp.*, 552 F.3d 981, 996 (9th Cir. 2009); *In re Rackable Sys.,*

7   *Inc. Sec. Litig.*, 2010 WL 199703, at *8 (N.D. Cal. Jan. 13, 2010); *Brodsky v.*

8   *Yahoo! Inc.*, 630 F. Supp. 2d 1104, 1114 (N.D. Cal. 2009). Among other things,

9   CW1 cannot and does not say whether STEC actually recognized revenue on the

10  shipment to HP, much less that it did so during 2Q09. In any event, Plaintiff fails

11  to explain why STEC could not recognize revenue for products that HP had

12  ordered, just because HP later imposed a shipment "hold" order. (AC ¶ 273.)

13       With regard to Plaintiff's claim that STEC was "shipping bricks," Plaintiff

14  again relies on CWs who were not in a position to know, and therefore do not say,

15  whether STEC actually recognized revenue for "shipping bricks." (*Id.* ¶¶ 116-20.)

16  CW6 did not work at STEC during the Class Period, and CW10 is not alleged to

17  have been in a position to know anything about STEC's revenue recognition. *See*

18  *In re Hypercom Corp. Sec. Litig.*, 2006 WL 1836181, at *5 (D. Ariz. July 5, 2006).

19  Furthermore, according to CW6, the phrase "shipping bricks" originated because

20  when the shipping palette is loaded with boxes, the boxes look like bricks, not that

21  the products were unsalable. (AC ¶ 117.)

22       In any event, Plaintiff does not plead any facts suggesting that *any* of these

23  alleged practices were material to STEC's reported revenue for 2Q09. Plaintiff

24  does not plead what the "actual" revenue should have been, or how the "actual"

25  earnings figures differed from those reported by STEC.[4] Without such allegations,

26

27  ───────────────

   [4]   There has not been a restatement of STEC's earnings for any of the periods
28  where Plaintiff claims that revenue was improperly recognized.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

15

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE AMENDED COMPLAINT

1    Plaintiff completely fails to plead that STEC's revenue for 2Q09 was in fact

2    misstated by a **material** amount. *See Basic Inc. v. Levinson*, 485 U.S. 224, 231-32,

3    108 S. Ct. 978 (1988); *Gross v. Summa Four, Inc.*, 93 F.3d 987, 996 (1st Cir.

4    1996); *In re Remec Inc. Sec. Litig.*, 388 F. Supp. 2d 1170, 1176 n.1 (S.D. Cal.

5    2005). This failure by itself is fatal to all of Plaintiff's accounting allegations.

6                  **e.      Increased Earnings Guidance For 2Q09**

7           Plaintiff claims that the revised 2Q09 guidance that STEC announced on

8    June 16, 2009 was "false." (AC ¶¶ 43-45.) This claim appears to be based on

9    Plaintiff's claim that Defendants inflated STEC's earnings for 2Q09 (*id.* ¶ 45),

10   which itself fails for the reasons stated above. *Supra* III.A.1.d. But moreover,

11   Plaintiff does not allege facts supporting an inference that STEC's revised

12   guidance – which was a projection – was false when it was announced. *In re*

13   *GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548-49 (9th Cir. 2000). The AC does not

14   allege any facts suggesting that Defendants did not believe the revised 2Q09

15   guidance, or that they lacked a reasonable basis for it, or that they were aware of

16   conditions tending to seriously undermine it. *See Provenz*, 102 F.3d at 1487; *Apple*

17   *Computer*, 886 F.2d at 1113. Indeed, the fact that the company *exceeded* the

18   revised guidance undercuts any claim that the guidance was false. *In re Blue Rhino*

19   *Sec. Litig.*, 2004 U.S. Dist. LEXIS 27941, at *32 (C.D. Cal. Apr. 9, 2004).

20          Moreover, STEC's revised 2Q09 guidance is a forward-looking statement

21   under the Safe Harbor. 15 U.S.C. § 78u-5(i)(1)(A). In announcing its revised 2Q09

22   guidance, STEC cautioned that it was based on "current expectations and

23   involve[d] inherent risks and uncertainties…" including: (1) "changes in demand

24   from certain customer segments"; (2) "excess inventory held by our customers

25   reducing future demand for our products"; (3) "unexpected cancellation or

26   rescheduling of orders by our customers"; and (4) "growth initiatives may not be

27   successfully implemented or implemented slower than expected[.]" (Ex. K at 183-

28   84.) The press release also referred investors to the company's public filings,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

16

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE AMENDED COMPLAINT

which likewise were filled with cautionary language about future revenues. There, in addition to the language mentioned above, STEC warned investors that "[f]luctuating demand for our products" rendered its quarterly results "difficult to forecast", and that "our results of operations may fall below the expectations of securities analysts and investors." (Ex. G at 110). Accordingly, STEC's revised 2Q09 guidance is protected by the Safe Harbor. *See Rackable*, 2010 WL 199703, at *7; *Sketchers*, 2004 WL 1080174, at *5; *Leapfrog*, 527 F. Supp. 2d at 1047.

## 2.    Plaintiff Fails To Allege Scienter

The PSLRA requires Plaintiff to allege "with particularity facts giving rise to a strong inference" that the Defendants acted with scienter. 15 U.S.C. § 78u-4(b)(2)(A). For statements of existing fact, this requires pleading "in great detail" the "facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct." *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999). For forward-looking statements, Plaintiff must allege facts to support a strong inference that the statement was made with "actual knowledge" that it was misleading. *Slayton v. Am. Express Co.*, 604 F.3d 758, 773 (2d Cir. 2010); *In re Cutera*, 610 F.3d at 1112. The allegations in the AC come nowhere close to satisfying either standard.

Plaintiff's core allegation is that Defendants knew EMC would carry over inventory into 2010. Unable to allege directly that Defendants knew about EMC's supply needs, however, Plaintiff resorts to a series of weak allegations, which, even if taken together, fail to create a "strong inference" of scienter. Plaintiff cites EMC's January 26, 2010 statement to the effect that EMC entered into the agreement with STEC to protect itself going into 2010 from a tight supply environment. (AC ¶ 59.) But this after-the-fact statement by EMC obviously says nothing about Defendants' knowledge of EMC's supply needs six months earlier, when STEC announced the EMC Supply Agreement. Plaintiff next claims that Defendants knew about EMC's inventory carryover in advance because STEC was

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

17

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE AMENDED COMPLAINT

1   a "partner" with EMC, and because an analyst stated that STEC had engineers "co-

2   located with EMC." (*Id*. ¶ 60.) Yet Plaintiff does not explain what a "partner" is,

3   why being a "partner" meant Defendants could predict EMC's supply needs, or

4   how engineers "co-located" at EMC could have informed Defendants in advance

5   that EMC would carry inventory into 2010.

6           Straining for an inference of scienter, Plaintiff claims that STEC must have

7   known that EMC would carry inventory into 2010 because STEC did not build up

8   inventory at the end of 2009. (*Id*. ¶ 62-63.) In support of this claim, Plaintiff points

9   out that STEC's inventory fell from $64 million at the end of 2008 to $43 million

10  at the end of 2009. (*Id*. ¶ 63.) But there is no basis for Plaintiff's assumption that

11  STEC's inventory would have increased at the end of 2009 if it had been expecting

12  increased sales in 2010. In fact, as disclosed in STEC's Form 10-K for this period,

13  the company's inventory decreased at the end of 2009 due primarily to an increase

14  in sales in 2009 compared to 2008, and because in 2008 the company had

15  increased its purchase of Flash inventory in anticipation of increased production

16  volumes for SSD products in 2009. (Ex. A at 27.) Furthermore, if STEC had

17  advance knowledge of EMC's inventory buildup, as Plaintiff claims, it would not

18  have entered into the non-cancelable inventory purchase commitments in the

19  second half of 2009 that caused STEC's inventory to increase from $43 million at

20  the end of 2009 to over $66 million on June 30, 2010. (Ex. A at 28; Ex. EE at 424.)

21  Thus, to the extent that STEC's inventory levels were an indicator of what STEC

22  expected in terms of sales to EMC, they suggest precisely the opposite of what

23  Plaintiff claims. They suggest that STEC expected additional orders from EMC in

24  early 2010, and when those orders did not materialize, STEC's inventory

25  increased. Plaintiff's assumption that the buildup would have occurred during 2009

26  – when EMC was still purchasing products – simply makes no sense.

27          Plaintiff also contends that Defendants are "presumed" to have knowledge

28  of all material facts regarding STEC's "core operations." (AC ¶ 153.) But this

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

18

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE AMENDED COMPLAINT

doctrine applies only in an "exceedingly rare category of cases" where "the falsity of the information [is] obvious from the operations of the company," *Zucco*, 552 F.3d at 1001, or where "[a]llegations regarding management's role in a corporate structure and the importance of the corporate information" are "made in conjunction with detailed and specific allegations about management's exposure to factual information within the company." *South Ferry LP v. Killinger*, 542 F.3d 776, 785 (9th Cir. 2008). Here, Plaintiff's claims are focused on something that is not part of STEC's "operations" at all, namely, EMC's inventory. No matter how important EMC was as a customer, EMC's inventory buildup is not something that STEC's management can simply be presumed to know. It is not part of STEC's operations; it is part of *EMC's* operations. Thus, Plaintiff has not alleged that EMC's intent to carry inventory into 2010 would have been "obvious" from STEC's operations, or that it would be "absurd" to suggest that STEC's management was unaware of EMC's plans until shortly before STEC's November 3, 2009 analyst call. *Rackable*, 2010 WL 199703, at *9-10; *Pittleman v. Impac Mortgage Holdings*, *Inc*., 2009 WL 648983, at *3 (C.D. Cal. Mar. 9, 2009). Indeed, during that call, Manouch Moshayedi clearly said that "[t]hey don't tell us how much inventory they've got" (Ex. O at 251), and Plaintiff does not allege any contrary facts.

Plaintiff also relies on Manouch and Mark Moshayedi's stock trades. (AC ¶¶ 124, 146-50.) But the Ninth Circuit has made clear that pleading a "motive and opportunity to commit fraud" (*i.e.*, stock sales) does not satisfy a plaintiff's burden. *Silicon Graphics*, 183 F.3d at 988. In fact, "by themselves, large numbers" of insider sales "do not necessarily create a strong inference of fraud." *Vantive Corp.*, 283 F.3d at 1093; *see also Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1251 (N.D. Cal. 1998); *In re Splash Tech. Holdings Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1081 (N.D. Cal. 2001). Notably, Plaintiff does not allege that Defendants Raymond D. Cook, Rajat Bahri, or any other STEC officer or director sold STEC's

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SILICON VALLEY

19

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE AMENDED COMPLAINT

stock during the Class Period. This fact alone undermines any inference of scienter, as "[o]ne insider's well timed sales do not support the strong inference required by the statute where the rest of the equally knowledgeable insiders act in a way inconsistent with the inference that the favorable characterizations of the company's affairs were known to be false when made." *Ronconi v. Larkin*, 253 F.3d 423, 436 (9th Cir. 2001); *see also Metzler Inv. GMBH v. Corinthian Coll., Inc.*, 540 F.3d 1049, 1067 (9th Cir. 2008); *Lipton v. PathoGenesis Corp.*, 284 F.3d 1027, 1037 (9th Cir. 2002).

Indeed, the timing of Mark's and Manouch's trades likewise undercuts any inference of scienter. "Insider trading is suspicious only when it is dramatically out of line with prior trading practices *at times calculated to maximize the personal benefit from undisclosed inside information*." *Ronconi*, 253 F.3d at 435. Plaintiff cannot make such a showing in this case. The Secondary Offering was priced at $31 per share. (AC ¶ 236.) But STEC's stock price rose dramatically thereafter, eventually reaching $42.50 on September 9, 2009. This peak price is over 27% higher than the price at which the Moshayedis' shares were sold during the Secondary Offering. Thus, by selling at $31 per share instead of $42.50, the Moshayedis left over $100 million on the table. The Ninth Circuit has made clear that such conduct is not indicative of scienter. *See Ronconi*, 253 F.3d at 435.[5]

Next, Plaintiff claims that STEC did not "disclose the terms" of the EMC Supply Agreement. (AC ¶¶ 71, 82.) But in fact, it did: STEC announced the total amount of the commitment ($120 million), the product category (ZeusIOPS SSDs) and the timing (second half of 2009) – in a press release on July 16, 2009. (Ex. DD at 421.) Although Plaintiff suggests that STEC was trying to hide something by

---

[5]   In addition to failing to establish suspicious timing, the trading allegations fail because "Plaintiff[s] ha[ve] failed to link any individual Defendant's sale of stock to any of the alleged misstatements by [STEC]." *In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1160 (C.D. Cal 2007); *see also Vantive Corp.*, 283 F.3d at 1093.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SILICON VALLEY

20

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE AMENDED COMPLAINT

1   failing to file the full agreement with the SEC, Plaintiff does not say what allegedly

2   nefarious information would have been revealed by filing the full agreement. That

3   failure dooms any effort to plead scienter on this basis.

4        Finally, Plaintiff claims that Defendants' Sarbanes-Oxley certifications

5   support an inference of scienter. (AC ¶¶ 160-61.) But as the Ninth Circuit

6   repeatedly has held, "[b]oilerplate language in a corporation's 10-K form, or

7   required certifications under Sarbanes-Oxley section 302(a)…add nothing

8   substantial to the scienter calculus." *Zucco*, 552 F.3d at 1003-04.

9                    **3.    Plaintiff Fails To Allege Loss Causation**

10       Plaintiff must further allege that a defendant's misrepresentations "caused

11  the loss for which the plaintiff seeks to recover." 15 U.S.C. § 78u-4(b)(4); *see also*

12  *Dura*, 544 U.S. at 342-45. As the Supreme Court explained, the "logical link

13  between [an] inflated share purchase price" resulting from an alleged misstatement

14  "and any later economic loss is not invariably strong" because "that lower price

15  may reflect, not the earlier misrepresentation, but changed economic

16  circumstances, changed investor expectations, new industry-specific facts,

17  conditions, or other events[.]" *Dura*, 544 U.S. at 342-43. Thus, to withstand a

18  motion to dismiss, a plaintiff must allege that the company's stock price dropped

19  because a "relevant truth" – *i.e.*, a "truth" that the alleged fraud concealed –

20  became "generally known," *id.* at 342-45, and the market reacted to it. *Metzler*,

21  540 F.3d at 1063. Here, none of the three alleged "corrective disclosures" revealed

22  any "relevant truth."

23                    **a.    The September 17, 2009 WedBush Morgan Report**

24       The WedBush Morgan report discussed "unexpected changes to the

25  competitive landscape" for STEC, namely that: (1) Toshiba was in the process of

26  qualifying a competitive SSD product with one of STEC's customers; and (2) a

27  leading hard disk drive manufacturer was set to introduce another competing

28  product in the fourth quarter of 2010. (AC ¶ 177.) Plaintiff claims that this report

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

21

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE AMENDED COMPLAINT

revealed the "truth" that STEC faced potential competition. But the WedBush Morgan report did not reveal any facts that Defendants had concealed. When Manouch Moshayedi said that STEC had "no competition at this stage" (*id.* ¶ 140), this was true because no one else had been "qualified" by the "tier one" OEMs (Ex. B at 37), and nothing in the WedBush Morgan report is to the contrary. That report, issued six weeks after Manouch's statement, said only that a potential competitor was in the process of qualifying a product, not that it was actually qualified and competing with STEC for SSD sales to "tier one" OEMs. (*Id.* ¶ 177.)

Nor did the WedBush Morgan report reveal any "truth" that had been concealed by Manouch's statement that the probability of someone coming out with a "ZeusIOPs-like SSD" was "zero." As noted above, this statement was limited to the "probability of someone coming out with *a Fibre Channel interface*, ZeusIOPs-like SSD" – a very specific technology that was likely to be superseded soon. (*Id.* ¶ 140.) The WedBush Morgan report does not state, nor does the AC allege, that any competitors were coming out with a Fibre Channel interface SSD. Moreover, STEC repeatedly made clear that it would, at some point, face competition. (Ex. G at 114.) The market understood this, as the WedBush Morgan report itself noted that analysts had "expected STEC's competitors to gain design wins at its OEMs" in 2010. (AC ¶ 177.) Nothing in the WedBush Morgan report revealed any "relevant truth."

### b. The November 3, 2009 Announcement

STEC's November 3, 2009 announcement likewise did not reveal any "relevant truth." The November 3 announcement has no relevance to three of the five categories of allegedly false statements – *i.e.*, STEC's earnings guidance for 2Q09, STEC's reported revenue for 2Q09, and potential competition. (*Id.* ¶¶ 180-84.) But Plaintiff claims that the November 3 announcement revealed the "truth" that the EMC deal "was not indicative of a new, higher volume of purchases by EMC to be repeated every two quarters" (*id.* ¶ 180), and that other OEMs were not

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

22

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE AMENDED COMPLAINT

1   ordering EMC-level volumes in the second half of 2009. (*Id.* ¶ 184.)

2       In fact, the November 3 announcement did not reveal anything that

3   Defendants had concealed. It revealed that EMC might carry inventory into the

4   first quarter of 2010, but STEC had never said that EMC would ***use*** $120 million

5   worth of products in the second half of 2009; it said only that EMC would ***buy***

6   $120 million worth of products in that period, and nothing in the November 3

7   disclosure is to the contrary. (Ex. DD at 421; Ex. D at 69.) Nor did STEC ever say

8   that any other OEMs would match EMC's purchase volume during the second half

9   of 2009, or that EMC would "repeat[]" that volume in any future periods. In fact,

10  during the Class Period, STEC did not announce any guidance at all for the first

11  quarter of 2010, much less project any particular volume of sales to EMC or any

12  other OEM after the second half of 2009. Thus, when the market learned on

13  November 3, 2009 that EMC might carry inventory into the first quarter of 2010,

14  and that this carryover might affect EMC's purchases during that period, the

15  market did not learn anything that Defendants' prior statements had concealed.

16              **c.**      **The February 23, 2010 Announcement**

17      On February 23, 2010, STEC disclosed that: (1) EMC's excess inventory

18  would continue to negatively impact STEC's sales for the second quarter of 2010;

19  (2) STEC was implementing a joint marketing program with its OEM customers

20  but it would take more than six months before OEM customers would begin

21  ramping up their purchases of ZeusIOPS as a result; (3) STEC's guidance for the

22  first quarter of 2010 would be $33 million to $35 million in revenue; and (4) the

23  SEC had issued subpoenas to certain STEC officers and employees in connection

24  with an investigation for insider trading. (AC ¶¶ 189-95.) As with the November 3

25  announcement, Plaintiff claims that this announcement revealed the "truth" that the

26  EMC Supply Agreement did not cover only two quarters of EMC's requirements,

27  and that other OEMs would not soon ramp up their demand for STEC products.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

23

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE AMENDED COMPLAINT

1   (*Id.* ¶¶ 190-92.)[6] But like the November announcement, the February

2   announcement did not contradict any prior statement by STEC, because STEC

3   never said how much inventory EMC would use in 2009, nor did it make any

4   projections about how much EMC would purchase in early 2010, and STEC never

5   said that other OEMs would match EMC's purchase volume during the second half

6   of 2009.

7        Plaintiff also claims that STEC's first quarter of 2010 revenue guidance was

8   an "implicit[] disclos[ure]" that guidance and revenue for 2Q09 had been inflated.

9   (*Id.* ¶ 194.) This allegation makes no sense. STEC did not say anything at all about

10  its 2Q09 guidance or results on February 23, 2010, much less that its 2Q09

11  guidance or results were false. And Plaintiff does not allege any facts suggesting

12  any link between STEC's guidance for the first quarter of 2010, on the one hand,

13  and either its guidance or its results for 2Q09, on the other hand. The fact that

14  STEC's guidance for the first quarter of 2010 was lower than its reported results

15  for 2Q09 (after excluding sales to EMC) does not, in any way, suggest that STEC's

16  guidance or results for 2Q09 were false. The Ninth Circuit has made clear that

17  Plaintiff may not plead loss causation through "euphemism." *Metzler*, 540 F.3d at

18  1064-65. Moreover, market reactions to reports about a defendant's "poor financial

19  health generally" do not establish loss causation where, as here, they do not reveal

20  the "relevant truth" – *i.e.*, the facts that the defendant allegedly obscured through

21  the fraud. *See id.* at 1063. Under this standard, Plaintiff's allegations about STEC's

22  guidance for the first quarter of 2010 do not come close to showing loss causation

23  as to the allegedly overstated guidance or results for 2Q09.

### 4.    Plaintiff's Claim Under Section 20A Fails

25       Plaintiff's Section 20A claim fails for two reasons. First, the sole plaintiff

---

6   Plaintiff also claims that the disclosure of the SEC investigation revealed some "relevant truth," but it is well established that such an announcement does not reveal anything. *See Hansen Natural Corp.*, 527 F. Supp. 2d at 1162-63.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 8:09-cv-01304-JVS (MLG)
24   NOTICE OF MOTION AND MOTION TO DISMISS
THE AMENDED COMPLAINT

1   for this claim, Local 103, does not allege that it traded "contemporaneously" with

2   Manouch and Mark's sale, as required by 15 U.S.C. § 78t-1(a). (AC ¶ 18.) To meet

3   this standard, Plaintiff must allege that it purchased STEC stock *after* the insiders

4   sold, but "on the same trading day, or one trading day after, the insider's

5   transaction." *Countrywide*, 588 F. Supp. 2d at 1205; *In re AST Research Sec.*

6   *Litig.*, 887 F. Supp. 231, 234 (C.D. Cal. 1995); *Buban v. O'Brien*, 1994 WL

7   324093, at *3 (N.D. Cal. June 22, 1994). Plaintiff alleges that Manouch and Mark

8   sold their shares on August 6, 2009. (AC ¶ 231.) The nearest subsequent purchase

9   by Local 103 was on August 12, 2009, a full six days later. (AC Ex. A.) Second,

10   because liability under Section 20A is derivative, failure to plead an independent

11   violation of the Exchange Act dooms the Section 20A claim. 15 U.S.C. § 78t-1(a);

12   *Johnson v. Aljian*, 490 F.3d 778, 781 (9th Cir. 2007).

13       **B.**     **Plaintiff's Securities Act Claims Fail**

14       The AC alleges violations of Sections 11 and 12(a)(2) of the Securities Act,

15   and a claim for control person liability under Section 15 of that Act. (AC ¶¶ 283-

16   07.) To state a claim under Section 11, a plaintiff must allege that a registration

17   statement contained a material false statement or omission. *Rubke v. Capitol*

18   *Bancorp Ltd.*, 460 F. Supp. 2d 1124, 1133 (N.D. Cal. 2006). Under Section

19   12(a)(2), a plaintiff must allege: (1) an offer or sale of a security; (2) by the use of

20   any means of interstate commerce; (3) through a prospectus or oral

21   communication; (4) which includes an untrue statement of material fact. *Id.* The

22   Safe Harbor applies to claims under Section 11 and Section 12, so forward-looking

23   statements accompanied by meaningful cautionary language are immune. *See*

24   *Backhaus v. Streamedia Commc'n, Inc.*, 2002 WL 1870272, at *4 (S.D.N.Y. Aug.

25   14, 2002); *In re AirGate PCS, Inc. Sec. Litig.*, 389 F. Supp. 2d 1360, 1373 (N.D.

26   Ga. 2005). Although neither Section 11 nor Section 12 requires a plaintiff to plead

27   fraud, a plaintiff who asserts a Section 11 or Section 12 claim that "sounds in

28   fraud" must satisfy the pleading requirements of Rule 9(b). *See Rombach v. Chang*,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

25

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE AMENDED COMPLAINT

1  355 F.3d 164, 171 (2d Cir. 2004).

2  Here, although Plaintiff purports to assert claims sounding in negligence, it

3  is clear that Plaintiff alleges a "unified course of fraudulent conduct." *Vess v. Ciba-*

4  *Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003); *In re Metricom Sec.*

5  *Litig.*, 2004 WL 966291, at *23-24 (N.D. Cal. Apr. 29, 2004). It is also clear that

6  Plaintiff's Securities Act allegations are premised on the same exact course of

7  fraudulent conduct that serves as a basis for Plaintiff's securities fraud claims

8  under the Exchange Act. *See In re Infonet Serv. Corp. Sec. Litig.*, 310 F. Supp. 2d

9  1080, 1094 (C.D. Cal. 2003) (Rule 9(b) applied where "Plaintiffs' Section 10(b)

10  claim for securities fraud relies on the same allegations" as plaintiffs' claims under

11  the Exchange Act). Indeed, Plaintiff claims the "fraud" was designed to inflate the

12  price of STEC's stock so that insiders could sell at the inflated price, and Plaintiff's

13  Section 11 and 12 claims are based on allegedly false statements in the very

14  Registration Statement through which those insiders sold their stock. It is difficult

15  to conceive of a more "unified" course of conduct, and as a result, Plaintiff must

16  meet the pleading standard of Rule 9(b). As discussed below, Plaintiff's Section 11

17  and 12 claims fail to allege one or more required elements. Therefore, those

18  claims, and the control person claim under Section 15, must be dismissed.

19  ### 1.  Statements Regarding STEC's Relationship With EMC

20  Plaintiff makes three general assertions related to the EMC Supply

21  Agreement, none of which satisfies the pleading requirements of Rule 9(b) (or

22  even Rule 8). First, Plaintiff claims that STEC misled the market by "creat[ing] an

23  impression" that EMC would buy $120 million worth of product every six months

24  when it said that "we expect sales to EMC will represent a significant percentage

25  of our total revenues for the foreseeable future." (AC ¶¶ 240-41.) But as discussed

26  above, STEC never said that EMC would buy $120 million worth of products

27  every six months. STEC's expectation that EMC would continue to represent a

28  "significant percentage" of its total revenues cannot reasonably be interpreted as

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

26

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE AMENDED COMPLAINT

saying any such thing. In fact, far from guaranteeing future sales to EMC, this statement was identified by STEC as one of many "risks" of its business, along with the very risk that materialized here: that customers might slow down their purchases if they built up too much inventory. (Ex. D at 83-84.) Indeed, regardless of how one interprets this statement, it is plainly forward-looking, and it was accompanied by cautionary statements. (Ex. D at 70-84.) As such, it is protected by the Safe Harbor. *See Backhaus*, 2002 WL 1870272, at *4; *AirGate*, 389 F. Supp. 2d at 1373.

Second, Plaintiff claims the announcement of the EMC Supply Agreement created an "impression of a trend to higher sales." (AC ¶ 252.) Plaintiff does not come close to meeting Rule 9(b)'s standard for pleading the circumstances of this allegedly false statement. It does not even identify what specific statement created this "impression," much less explain why that statement was false. Although Plaintiff claims Defendants failed to properly disclose "known trends or uncertainties" regarding the announcement, the documents themselves show that STEC's statements about the EMC Supply Agreement were accompanied by specific, meaningful cautionary language. *Supra* III.A.1.a. Thus, any suggestion of a "trend to higher sales" in the future would be protected by the Safe Harbor.

Third, Plaintiff claims there was a material omission in the Registration Statement and Prospectus because STEC failed to include a copy of the EMC Supply Agreement in the Form 10-Q for 2Q09 (which was incorporated into the Registration Statement and Prospectus). (AC ¶¶ 245-49.) However, Plaintiff does not identify any undisclosed facts suggesting that this omission was material. Plaintiff also does not allege any facts that would have been revealed by attaching the agreement. *Supra* III.A.2. To plead materiality, Plaintiff must allege facts showing that the omitted information, if disclosed, would have altered the total mix of information available to investors. *See Basic Inc.*, 485 U.S. at 231-32. Plaintiff's failure to do so here is fatal to this claim.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

27

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE AMENDED COMPLAINT

## 2.      Statements Regarding Other OEMs

Plaintiff claims that STEC's statement that it expected continued growth of ZeusIOPS sales through 2009 based on the accelerated adoption of ZeusIOPS by major OEMs was false. Plaintiff asserts that investors "understood" this statement to mean that other OEMs "would immediately be following in EMC's footsteps." (AC ¶ 254.) Plaintiff argues that STEC lacked a basis for this statement because, three months later, Manouch indicated that STEC's other OEM customers had not built SSDs into their systems yet. (*Id*. ¶ 255.) Plaintiff again mischaracterizes what Defendants said. Nothing in the Prospectus or Registration Statement says that other OEMs "would immediately be following in EMC's footsteps" by ordering similar volumes of products. In any event, Plaintiff pleads no particularized facts, as Rule 9(b) requires, that STEC's statement about its expectations for future growth in the market was false "*when made*" three months earlier. *GlenFed*, 42 F.3d at 1548-49.

Moreover, the statement that STEC expected continued growth based on "accelerated adoption" of ZeusIOPs (AC ¶ 253) is clearly forward-looking, and is protected by the Safe Harbor. The Prospectus for the Secondary Offering specifically cautioned that "[t]he market for enterprise Flash-based SSD products is relatively new and evolving, which makes it difficult to forecast end user adoptions, and customer demand, for our products." (Ex. BB at 361.) The Prospectus also referred market investors to the risks described in STEC's public filings, which, as detailed earlier, provided detailed warnings to investors regarding the adoption of Flash-based SSD products. *Supra* III.A.1.b.

## 3.      Statements Regarding STEC's Revenues

Plaintiff alleges that STEC inflated its revenues during 2Q09 by shipping defective and un-ordered product and empty boxes in violation of GAAP. (AC ¶¶ 256-75.) However, Plaintiff does not allege any specific facts as to when or how these events occurred, nor does Plaintiff allege any specific facts about the amount

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

28

Case No. 8:09-cv-01304-JVS (MLG)
NOTICE OF MOTION AND MOTION TO DISMISS
THE AMENDED COMPLAINT

1  of revenue involved. Plaintiff thus fails to plead any facts showing that these

2  alleged shipments had a material impact on STEC's revenues. *See In re DDi Corp.*

3  *Sec. Litig.*, 2005 U.S. Dist. LEXIS 1056, at *64-66 (C.D. Cal. Jan. 7, 2005); *In re*

4  *Trex Co., Inc. Sec. Litig.*, 212 F. Supp. 2d 596, 611-12 (W.D. Va. 2002).

5  Moreover, Plaintiff bases this claim on vague statements attributed to confidential

6  witnesses, two of whom (CW6 and CW9) did not even work for STEC during

7  2Q09, and none of whom provides any information as to when STEC supposedly

8  inflated quarterly revenues or the magnitude of any such inflation. (AC ¶¶ 42(f),

9  42(i), 265, 267.) Such allegations thus are not pled with particularity; nor do they

10  give rise to a plausible inference of misstatement as to STEC's revenues for 2Q09.

11  **IV.   CONCLUSION**

12         For the foregoing reasons, the Amended Complaint should be dismissed.

13  That dismissal, moreover, should be with prejudice. Collectively, plaintiffs in this

14  case have already had three chances to file a viable complaint: the original

15  complaints filed in November 2009; the amended complaint filed by the prior lead

16  plaintiffs on April 9, 2010; and this Amended Complaint. Having failed to state a

17  claim despite the benefit of two prior rounds of pleading by other plaintiffs, Lead

18  Plaintiff should not be given yet another chance to amend. *See Klamath-Lake*

19  *Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983).

20

21  Dated:  September 20, 2010                    Respectfully submitted,

22                                               LATHAM & WATKINS LLP

23

24                                               By                /s/
                                                    Patrick E. Gibbs
25                                                  Attorneys for Defendants STEC, Inc.,
                                                    Manouch Moshayedi, Mark
26                                                  Moshayedi, Raymond D. Cook, and
                                                    Rajat Bahri
27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

29                    Case No. 8:09-cv-01304-JVS (MLG)
                      NOTICE OF MOTION AND MOTION TO DISMISS
                      THE AMENDED COMPLAINT