245.   Thus, on November 4, 2009, a B. Riley report on STEC that stated it was "taking down our numbers somewhat" focused on two primary concerns:  the first was the disclosure that EMC had "excess" ZeusIOPS inventory, and the second was that "IBM, which still is expected to be the next storage customer to embrace SSDs in volume . . . is not generating meaningful revenues yet—in part, STEC stated, due to the fact that Big Blue is marketing the drives as an option vs. coming out and leading upgrade sales efforts with SSDs."

246.   Thus too, on November 4, 2009, a J.P. Morgan report that cut that analyst's STEC stock price target also stated that the two issues depressing the stock price were the need for "greater clarity on the EMC and IBM ramps."

247.   Similarly, the November 4, 2009, *Barron's* article stated that "[a]dditional pressure" on the price of STEC's stock price was the result of the report that "business has been slow as well at both IBM and Sun Microsystems."

### 4.   Disclosure That No Other Customer Could Replace EMC Under the EMC Agreement

248.   A fourth substantial cause of the November 4, 2009, stock price decline was the disclosure that, contrary to the statement in STEC's September 10, 2009, letter to the SEC, no other customer could replace EMC under the EMC Agreement, or, more generally, purchase ZeusIOPS at volumes similar to those being purchased by EMC under the Agreement. *Compare* ¶¶ 169-71, *supra.* During the November 3, 2009, conference call, Manouch confirmed an analyst's statement that STEC's other large customers besides EMC "aren't selling to any degree yet" and added that they were all "*a year behind*" EMC.  Manouch also disclosed that the customer most likely to make the next agreement similar to the EMC Agreement, namely, IBM, was not anywhere close to making such an agreement, that sales to IBM actually had declined during the third quarter, and that IBM was still offering ZeusIOPS as a mere option rather than a standard part of its systems.

249.   Thus, a November 4, 2009, report on STEC by ThinkEquity LLC downgraded STEC from "Buy" to "Hold," while noting that, as Manouch admitted during the November 3, 2009, conference call, the "other Storage OEMs [are] almost a year behind EMC in adopting SSDs."

250.   Similarly, a November 4, 2009, B. Riley report stated it was "taking down our [valuation] numbers somewhat," after discussing the fact that IBM, was, as Manouch had stated during the November 3, 2009, conference call, still "expected to be the next storage customer to embrace SSDs in volume . . . but is not generating meaningful revenues yet—in part, STEC stated, due to the fact that Big Blue is marketing the drives as an option vs. coming out and leading upgrade sales efforts with SSDs."

**B.   The February 23, 2010, Additional Corrective Disclosures**

251.   In reaction to the multiple corrective disclosures made after the market closed on February 23, 2010, the price of STEC common stock dropped over 23% in trading on February 24, 2010, a decline of $3.15, on extraordinary volume of over 36 million shares.

**1.   Additional Disclosure That the EMC Agreement Did Not Represent a New Recurring Level of EMC Purchases**

252.   One substantial cause of the February 24, 2010, stock price decline was STEC's disclosure that it did not expect "any meaningful production orders" from EMC during the first half of 2010.  Each of three different analysts lowered their STEC stock price targets while explaining that, whereas they originally had believed that the EMC Agreement represented EMC's recurring requirements for ZeusIOPS every six months, they now realized that EMC's recurring requirements were only half that much.  *Compare* ¶¶ 81-86, *supra*; *see also* ¶¶ 66-75.

253.   Thus, on February 24, 2010, Oppenheimer stated that "now that EMC's supply contract with STEC for $120M is indicative of a full-year run rate vs. half year we are . . . dropping our [price target] to $10 from $21."

254. Similarly, on February 24, 2010, B. Riley lowered its STEC stock target price from $29 to $16.38, while explaining that "this order was envisioned as meeting six months of demand," but "STEC's new guidance indicates that it expects EMC to take at least a whole year to work through its $120MM July 2009 order for ZeusIOPS SSDs." In a comment reflecting suspicion of STEC management, the report added "[g]iven the drastic difference between actual and expected end-customer demand, we have to wonder why STEC didn't work with EMC and spread shipments over a longer time period—minimizing the disruption all the way around."

255. Also similarly, on February 23, 2010, Deutsche Bank lowered its STEC stock price target to $10 from $36, while stating "[w]e now see EMC revenue of roughly $35M/Q in F2H-10, which we believe has been EMC's true demand over the past few Qs."

### 2. Additional Disclosure That the Other OEMs Would Not Be Increasing Their Purchases During the Second Half of 2009

256. A second substantial cause of the February 24, 2010, stock price decline was STEC's disclosure that its ZeusIOPS sales to its customers other than EMC during the fourth quarter of 2009, and, indeed, during the entire second half of 2009, were far below their quarterly level during the first half of 2009, and were not expected to recover even in the 2010 first quarter. *Compare* ¶¶ 110-120, *supra*; *see also* 152-57.

257. Thus, on February 24, 2010, a Needham report on STEC stated it was "[r]evising estimates lower once more" because, among other reasons, fourth quarter ZeusIOPS revenue was "below our original estimate." This meant revenue from the Other OEMs—not from EMC—was below what Needham had expected, because analysts had known since the third quarter what the amount of fourth quarter revenues from EMC would be, because revenues from EMC for the second half of 2009 had been fixed by the EMC Agreement.

258.   Thus too, on February 24, 2010, J.P. Morgan lowered its STEC stock price target to $12.50 from $42, after noting that STEC's 2010 first quarter revenue guidance was more than $60 million below J.P. Morgan's prior estimate.  Because, after STEC's November 3, 2009, disclosures, investors already knew that EMC would not be purchasing as much as $60 million in the 2010 first quarter, at least a portion of J.P. Morgan's prior overestimate of STEC's 2010 first quarter revenues had been an overestimate of revenues from STEC's customers other than EMC. J.P. Morgan commented that "the disappearance of sustainable revenue momentum up-ended our prior view" and that "[t]he flow-through effects of this reset are staggering to the overall model, which is why we are downgrading to Neutral."

### 3.   Additional Disclosure That IBM Was Not Expected to Begin Purchasing for Volume Production in the Second Half of 2009

259.   A third substantial cause of the February 24, 2010, stock price decline was STEC's disclosure that, not only had IBM failed to commence volume production during the second half of 2009, but also, STEC had no expectation of IBM commencing volume production at any specific time in the future.  *Compare* ¶¶ 160-68, *supra*; *see also* ¶¶ 139-40, 146, 150.

260.   Thus, a Reuters report on STEC issued on February 24, 2010, stating that "the company's shares [were] down 30 percent in extended trade" also reported that "[i]ndustry watchers were anticipating an update on how customers apart from EMC, like IBM Corp were ramping in terms of using STEC's products" and that Manouch had disclosed that "[a]ll of the other customers are picking up slowly."

261.   The analysis presented, *supra*, regarding the Exchange Act Defendants' non-cancelable inventory purchase orders shows that, one of the reasons why, even at the end of 2009, IBM still was not ordering for full production was that, contrary to the impression conveyed by the Prospectus, at the

1   time of the issuance of the Prospectus, the Exchange Act Defendants had no

2   expectation that IBM would transition toward ordering for volume production

3   during the second half of 2009.

### 4.   Additional Disclosure That No Other Customer Could Replace EMC Under the EMC Agreement

6   262.   A fourth substantial cause of the February 24, 2010, stock price

7   decline was STEC's additional disclosure that none of its other customers, singly

8   or even taken together, were capable of duplicating the kind of purchasing made by

9   EMC under the EMC Agreement. *Compare* ¶¶ 169-71, *supra*.

10   263.   Thus, in its February 23, 2010, report on STEC, Deutsche Bank stated

11   that "[i]t sounds like IBM and other customers are ramping modestly, but for now,

12   ***these customers will not be enough to offset lost EMC biz***."

13   264.   Similarly, in the first sentence of its February 24, 2010, report on

14   STEC, Needham stated, "the company remains heavily levered to pulls from its

15   first and primary customer," and in the next sentence, Needham added that "the

16   remaining customers [are] far behind in their own ramps."

### 5.   Disclosure That the Exchange Act Defendants Inflated STEC's 2009 Second Quarter Revenue and Revised Revenue Guidance

20   265.   A fifth substantial reason for the February 24, 2009, decline in the

21   price of STEC's stock was STEC's issuance of revenue guidance for the 2010 first

22   quarter—$33 million to $35 million—that was far below investors' expectations.

23   A February 24, 2010, *Associated Press* article stated "Shares of Stec Inc. plunged

24   Wednesday after the maker of data storage devices said first-quarter revenue would

25   be as much as 53 percent lower than what Wall Street expected." A *Barron's*

26   article by Eric Savitz also published on February 24, 2010, was titled "STEC

27   Wreck: Mass Downgrades On Rotten Guidance." The reason for this decline was

28   that revenue for the several preceding quarters had been artificially high. Revenue

1  for the 2009 third and fourth quarters had been boosted by the one-off EMC

2  Agreement, and, as demonstrated, *supra*, revenue for the 2009 second quarter had

3  been inflated by undisclosed channel stuffing, and the generation and reporting of

4  unearned income, based on shipments to customers other than EMC.

5  *See* ¶¶ 90-203, *supra*.

6      266.   While it has taken until now to understand the multiple reasons why

7  STEC's 2010 first quarter guidance was, to use *Barron's* term, "rotten," even at the

8  time when the guidance was issued, analysts realized that the drop in revenue was

9  caused by more than just a lack of sales to EMC, and that part of the problem was a

10  lack of credibility on the part of STEC's management.

11     267.   Thus, on February 24, 2010, a J.P. Morgan report stated that "the

12  *disappearance* of sustainable revenue momentum up-ended our prior view that

13  STEC was *the high-growth story* in SMidCap." J.P. Morgan had labeled STEC

14  *"the high-growth story* in our coverage universe" when it had initiated coverage of

15  STEC—just one month after STEC had reported its 2009 second quarter revenue.

16     268.   Also on February 24, 2010, a Thomas Weisel Partners report stated

17  that "STEC's 1Q10 revenue guidance suggests to us current SSD adoption in

18  Enterprise Storage applications is well below previous estimates," and that the

19  analyst was lowering its STEC stock price target because of "our loss of

20  confidence in STEC management."

21     269.   Also on February 24, 2010, a *Barron's* article by Alexander Eule

22  stated that "[g]iven STEC's abrupt first-quarter forecast, though, it could be a

23  while before investors take the company at its word." On the same day, another

24  article in *Barron's*, this one by Eric Savitz, noted, sarcastically, that, among those

25  who now looked "prescient" were "CEO Manouch Moshayedi, and his brother,

26  president Mark Moshayedi, who last summer sold 9 million shares—at $31

27  apiece."

28

## VIII.  APPLICABILITY OF PRESUMPTION OF RELIANCE TO EXCHANGE ACT CLAIMS

270.   Lead Plaintiff and other members of the Class are entitled to a presumption of reliance under *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the claims asserted herein against the Exchange Act Defendants are predicated in part upon omissions of material fact that such Defendants had a duty to disclose.  As more fully alleged above, the Exchange Act Defendants failed to disclose material information regarding STEC's business, financial results and business prospects throughout the Class Period.

271.   In the alternative, Lead Plaintiff and other members of the Class are entitled to a presumption of reliance on Defendants' material misrepresentations and omissions pursuant to the fraud-on-the-market doctrine because:

(a)   STEC's common stock was actively traded in an efficient market on NASDAQ during the Class Period;

(b)   STEC's common stock traded at high weekly volumes during the Class Period;

(c)   as a regulated issuer, STEC filed periodic public reports with the SEC;

(d)   during the Class Period, STEC was eligible to file, and did file, registration statements with the SEC on Form S-3;

(e)   STEC regularly communicated with public investors by means of established market communication mechanisms, including regular dissemination of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts and other similar reporting services;

(f)   the market reacted promptly to public information disseminated by STEC;

1          (g)    STEC securities were covered by numerous securities analysts

2    employed by major brokerage firms who wrote reports that were distributed to the

3    sales force and certain customers of their respective firms, and each of these

4    reports was publicly available and entered the public marketplace;

5          (h)    the material misrepresentations and omissions alleged herein

6    would tend to induce a reasonable investor to misjudge the value of STEC's

7    securities; and

8          (i)    without knowledge of the misrepresented or omitted material

9    facts alleged herein, Lead Plaintiff and other members of the Class purchased

10    STEC securities between the time Defendants misrepresented or failed to disclose

11    material facts and the time the true facts were disclosed.

12    **IX.    NO SAFE HARBOR**

13        272.    The statutory safe harbor provided for forward-looking statements

14    under certain circumstances does not apply to any of the materially false and

15    misleading statements alleged in this Complaint.  The statements alleged to be

16    false and misleading all relate to historical facts or existing conditions and were not

17    identified as forward-looking statements.  To the extent that any of the false

18    statements alleged herein may be characterized as forward-looking, they were not

19    adequately identified as "forward-looking" statements when made, and were not

20    accompanied by meaningful cautionary statements adequately tailored to the

21    important factors that caused actual results to differ materially from those in the

22    purportedly "forward-looking" statements.  Alternatively, to the extent that the

23    statutory safe harbor would otherwise apply to any statement pleaded herein,

24    Defendants are liable for those materially false forward-looking statements

25    because, at the time each of those forward-looking statements was made, the

26    speaker knew the statement was false or the statement was authorized or approved

27    by an executive officer of STEC who knew that the statement was false.

28

**X.   CLASS ACTION ALLEGATIONS RELATING TO ALL CLAIMS**

273.   Lead Plaintiff brings this action on its own behalf and as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired STEC common stock between June 16, 2009 and February 23, 2010, inclusive (the "Class Period"), and were damaged thereby (the "Class").

274.   Representative Plaintiff Local 103 alleges violations of Section 20A of the Exchange Act on behalf of all Class members who purchased or sold STEC securities contemporaneously with Defendants Manouch and Mark Moshayedi's purchases and sales of STEC stock during the Class Period.  Those Defendants also signed the documents in connection with the Offering, including the Registration Statement on Form S-3 ("Registration Statement"), and the Prospectus contained in the Registration Statement ("Prospectus").  Local 103 purchased shares of STEC common stock contemporaneously, within the meaning of 20A of the Exchange Act, with sales of Defendants Manouch and Mark Moshayedi during the Class Period.

275.   Representative Plaintiff Norfolk County alleges violations of Sections 11, 12(a)(2) and 15 of the Securities Act on behalf of all Class members who acquired shares of STEC common stock pursuant to or traceable to the Registration Statement and/or pursuant to the false Prospectus issued in connection with the Offering.  Norfolk County purchased shares of STEC common stock pursuant to or traceable to the Registration Statement and/or pursuant to the false Prospectus issued in connection with the Offering.

276.   Excluded from the Class are the Defendants; the members of the immediate families of the Officer Defendants and Defendant Bahri; the subsidiaries and affiliates of Defendants; any person who is an officer, director, partner or controlling person of STEC or any other Defendant; any entity in which

1  any Defendant has a controlling interest; and the legal representatives, heirs,

2  successors and assigns of any such excluded person or entity.

3      277.   The members of the Class are so numerous that joinder of all

4  members is impracticable.  As of December 31, 2009, STEC had nearly 50.3

5  million shares of STEC common stock issued and outstanding and actively trading

6  on NASDAQ with the ticker symbol "STEC."  While the exact number of Class

7  members is unknown to Lead Plaintiff at this time and can only be ascertained

8  through appropriate discovery, Lead Plaintiff believes that the members of the

9  proposed Class number in the hundreds or thousands and are geographically

10  widely dispersed.  Record owners and other members of the Class may be

11  identified from records maintained by STEC or its transfer agent and may be

12  notified of the pendency of this action by mail, using a form of notice similar to

13  that customarily used in securities class actions.

14      278.   There is a well-defined community of interest in the questions of law

15  and fact involved in this case.  Questions of law and fact common to the members

16  of the Class which predominate over questions which may affect individual Class

17  members include:

18          (a)   whether  the  federal  securities  laws  were  violated  by

19      Defendants' acts and omissions as alleged herein;

20          (b)   whether the Registration Statement and Prospectus for the

21      Offering  contained  material  misstatements  or  omitted  to  state  material

22      information;

23          (c)   whether the SEC filings, press releases and other public

24      statements made to the investing public during the Class Period contained

25      material misstatements or omitted to state material information;

26          (d)   whether and to what extent the Company's financial statements

27      were not presented in conformity with GAAP during the Class Period;

28

1    (e) whether and to what extent the market price of STEC common

2  stock was artificially inflated during the Class Period because of the material

3  misrepresentations and/or omissions complained of herein;

4    (f) whether, with respect to Lead Plaintiff's claims for violations of

5  the Securities Act, the Defendants named in those claims can sustain their

6  burden of establishing an affirmative defense pursuant to the applicable

7  statute;

8    (g) whether, with respect to Lead Plaintiff's claims for violations of

9  the Exchange Act, the Defendants named in those claims acted with the

10  requisite level of scienter;

11    (h) whether, with respect to Lead Plaintiff's claims pursuant to

12  Section 15 of the Securities Act and Section 20(a) of the Exchange Act, the

13  Defendants named in those claims were controlling persons of STEC;

14    (i) whether reliance may be presumed pursuant to the fraud-on-the-

15  market doctrine; and

16    (j) whether the members of the Class have sustained damages as a

17  result of the conduct complained of herein and, if so, the proper measure of

18  damages.

19  279. Lead Plaintiff's claims are typical of those of the Class because Lead

20 Plaintiff and the Class were similarly affected and sustained damages from

21 Defendants' wrongful conduct in violation of the federal securities laws as

22 complained of herein.

23  280. Lead Plaintiff will adequately protect the interests of the Class and

24 have retained counsel who are experienced in class action securities litigation.

25 Lead Plaintiff and the Representative Plaintiffs have no interests which conflict

26 with those of the Class.

27  281. A class action is superior to all other available methods for the fair

28 and efficient adjudication of this controversy because, among other things, joinder

1    of all members of the Class is impracticable. Furthermore, because the damages

2    suffered by individual Class members may be relatively small, the expense and

3    burden of individual litigation make it impossible for members of the Class to

4    individually redress the wrongs done to them. There will be no difficulty in the

5    management of this action as a class action.

6    **XI.    EXCHANGE ACT CLAIMS**

7    **COUNT I**

8    **For Violation of Section 10(b) of the Exchange Act**

9    **and Rule 10b-5 Against STEC and The**

10    **Officer Defendants**

11        282.    Lead Plaintiff incorporates by reference each and every allegation

12    contained above, as if set forth herein.

13        283.    This claim is brought pursuant to Section 10(b) of the Exchange Act

14    and Rule 10b-5 promulgated thereunder, on behalf of Lead Plaintiff and members

15    of the Class against Defendants STEC, Manouch Moshayedi, Mark Moshayedi and

16    Raymond Cook.

17        284.    During the Class Period, Defendants STEC, Manouch Moshayedi,

18    Mark Moshayedi and Raymond Cook carried out a plan and course of conduct that

19    was intended to and, throughout the Class Period, did: (i) deceive the investing

20    public regarding STEC's business and operations, and the intrinsic value of STEC

21    common stock; (ii) enable STEC insiders to sell over nine million shares of their

22    privately held STEC common stock while in possession of material adverse non-

23    public information about the Company; and (iii) cause Lead Plaintiff and other

24    members of the Class to purchase STEC common stock at artificially inflated

25    prices. In furtherance of this unlawful plan and course of conduct, the Exchange

26    Act Defendants, jointly and individually (and each of them) took the actions set

27    forth herein.

28

285.   Defendants STEC, Manouch Moshayedi, Mark Moshayedi and Raymond Cook: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for STEC's common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All Defendants are legally responsible as primary participants in the wrongful and illegal conduct charged herein, and the Officer Defendants are also legally responsible as controlling persons as set forth in Count II below.

286.   Defendants STEC, Manouch Moshayedi, Mark Moshayedi and Raymond Cook, individually and in concert, directly and indirectly, by the use, means, or instrumentalities of interstate commerce and/or mail, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of STEC as specified herein.

287.   These Defendants employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of STEC's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about STEC and its business operations and future prospects, in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices, and a course of business which operated as a fraud and deceit upon the purchasers of STEC common stock during the Class Period.

288.   Each of the Officer Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Officer Defendants were high-level executives and directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these Officer Defendants, by virtue of his responsibilities and activities as a senior officer and director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these Officer Defendants enjoyed significant personal contact and familiarity with the other Officer Defendants and was advised of and had access to other members of the Company's management team, internal reports, and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these Officer Defendants was aware of the Company's dissemination of information to the investing public which they knew or deliberately disregarded was materially false and misleading.

289.   The Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with deliberate disregard for the truth in that they failed to ascertain and to disclose such facts.  Such Defendants' material misrepresentations and omissions were done knowingly or with deliberate disregard for the purpose and effect of concealing STEC's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its common stock.  As demonstrated by Defendants' overstatements and misstatements of the Company's business, operations, and earnings throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by recklessly refraining from taking those steps necessary to discover whether those statements were false or misleading.

290. As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of STEC common stock was artificially inflated during the Class Period. In ignorance of the fact that market prices of STEC's publicly traded common stock were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or deliberately disregarded by Defendants but not disclosed in public statements by Defendants during the Class Period, Lead Plaintiff and the other members of the Class acquired STEC common stock during the Class Period at artificially high prices and were damaged thereby.

291. At the time of said misrepresentations and omissions, Lead Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Lead Plaintiff and the other members of the Class and the marketplace known the truth regarding STEC, which was not disclosed by Defendants, Lead Plaintiff and other members of the Class would not have purchased or otherwise acquired their STEC common stock, or, if they had acquired such common stock during the Class Period, they would not have done so at the artificially inflated prices which they paid.

292. By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

293. As a direct and proximate result of Defendants' wrongful conduct, Lead Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's common stock during the Class Period.

## COUNT II

### For Violation of Section 20(a) of the

### Exchange Act Against Manouch Moshayedi,

### Mark Moshayedi and Raymond D. Cook

294.   Lead Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

295.   Defendants Manouch Moshayedi, Mark Moshayedi and Raymond Cook were controlling persons of STEC within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, their ownership and contractual rights, participation in and awareness of the Company's operations, and intimate knowledge of the fraudulent scheme and the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Officer Defendants had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Lead Plaintiff contends are false and misleading.  Defendants Manouch Moshayedi, Mark Moshayedi and Raymond Cook were provided with, or had unlimited access to, copies of the Company's reports, press releases, public filings, and other statements alleged by Lead Plaintiff to be misleading prior to and shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

296.   In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

297.   As set forth above, STEC and the Officer Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Officer

1  Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct

2  and proximate result of STEC's and the Officer Defendants' wrongful conduct,

3  Lead Plaintiff and other members of the Class suffered damages in connection with

4  their purchases of the Company's common stock during the Class Period.

5  **COUNT III**

6  **For Violation of Section 20A of the**

7  **Exchange Act Against Manouch Moshayedi and**

8  **Mark Moshayedi**

9  298. Representative Plaintiff Local 103 repeats and re-alleges each and

10  every allegation contained above as if fully set forth herein.

11  299. This Claim is asserted against Defendants Manouch Moshayedi and

12  Mark Moshayedi, and is brought on behalf of Representative Plaintiff Local 103

13  and Class members who purchased STEC common stock at or about the time that

14  Defendants Manouch Moshayedi and Mark Moshayedi sold STEC common stock

15  at inflated prices during the Class Period.

16  300. On August 11, 2009, while in possession of material, adverse

17  nonpublic information, Defendant Manouch Moshayedi sold 4.1 million shares of

18  STEC common stock, and Defendant Mark Moshayedi sold 4.9 million shares of

19  STEC common stock.

20  301. On August 12, 2009, Representative Plaintiff Local 103 purchased

21  shares of STEC common stock pursuant and traceable to the Offering.

22  302. Defendants Manouch Moshayedi and Mark Moshayedi violated

23  Section 10(b) of the Exchange Act, as described herein.

24  303. As a result of the foregoing, Defendants Manouch Moshayedi and

25  Mark Moshayedi violated Section 20A of the Exchange Act and are liable to

26  Representative Plaintiff Local 103 and other Class members who purchased shares

27  of STEC common stock contemporaneously with these Defendants' insider sales.

28

**XII.   FALSE STATEMENTS AND MISLEADING MATERIAL OMISSIONS RELATING TO THE SECURITIES ACT CLAIMS, AND SUBSTANTIVE ALLEGATIONS REGARDING SAME**

304.   On August 3, 2010, Defendants announced their intention to conduct the Offering of at least 7.5 million shares of STEC common stock, in addition to 1.125 million more shares that they would make available to the Underwriters to cover over-allotments.  Also on August 3, 2010, in connection with the Offering, STEC filed with the SEC the Registration Statement, pursuant to Form S-3ASR, and the Prospectus, pursuant to Form 424B3.

305.   On August 6, 2009, Defendants announced that, pursuant to an amended Prospectus, they had increased the size of the Secondary Offering to nine million shares, in addition to 1.35 million over-subscription shares, and had set the offering price at $31.00 per share.[15]

306.   As alleged herein, the Registration Statement and Prospectus contained false and misleading statements, and also omitted material information material necessary to make the statements made therein not misleading.

**A.   Misstatements/Omissions in the Prospectus**

**1.   Sales to the Other OEMs**

307.   On August 3, 2009, STEC filed a Form 424B3 (the Prospectus) stating, among other things:

> We expect continued growth in the sales of our Flash-
> based SSD ZeusIOPS products though 2009 based on the
> accelerated adoption of our ZeusIOPS SSDs by most of
> our major enterprise-storage and enterprise-server OEM
> customers into their systems.

---

[15] The amended Prospectus, filed on August 7, 2009, is identical to the original Prospectus in all other relevant respects.

308. The foregoing statement was a false statement regarding sales to the Other OEMs, and was false for the reasons explained, *supra*, in paragraphs 121-46.

### 2.   Sales to IBM

309. The statement quoted, *supra*, in paragraph 307, also contained misleading material omissions concerning IBM, as explained, *supra*, in paragraphs 139-41, 146, 160-68.

### 3.   The EMC Agreement

310. The passage quoted, *supra*, in paragraph 307, also was part of the following, longer passage:

> We expect continued growth in the sales of our Flash-
> based SSD ZeusIOPS products though 2009 based on the
> accelerated adoption of our ZeusIOPS SSDs by most of
> our major enterprise-storage and enterprise-server OEM
> customers into their systems.  As part of this expected
> growth, on July 16, 2009 we announced an agreement
> with one of our largest enterprise-storage customers for
> sales of $120 million of ZeusIOPS SSDs to be delivered
> in the second half of 2009.

311. The foregoing passage was a false statement and/or misleading material omission regarding EMC, and was false and/or contained a misleading material omission for the reasons explained, *supra*, in paragraphs 66-86.  *See also* ¶¶ 45-65.

### B.   Misstatements/Omissions in STEC's 2009 Second Quarter 10-Q, Incorporated by Reference into the Registration Statement and Prospectus

312. On August 3, 2009, STEC filed its 2009 second quarter 10-Q, which was incorporated by reference into the Registration Statement and Prospectus.

### 1.   Omission to File the EMC Agreement with the 10-Q

313.   Item 601(b)(10) of Reg. S-K (17 C.F.R. § 229.601(b)(10)) requires filing with a 10-Q "[e]very contract not made in the ordinary course of business which is material to the registrant and is to be performed in whole or in part at or after the filing of the [10-Q] or was entered into not more than two years before such filing."

314.   The same filing requirement applies to "[a]ny contract upon which the registrant's business is substantially dependent."

315.   The EMC Agreement was a "one-off" contract not made in the ordinary course of STEC's business, executed during STEC's 2009 second quarter, and to be performed after the filing of STEC's 2009 second quarter 10-Q.

316.   STEC's business was substantially dependent on the EMC Agreement, as shown by the collapse of STEC's revenues in the quarter following the end of the Agreement.

317.   Defendants omitted to file the EMC Agreement with STEC's 2009 second quarter 10-Q—or at any time thereafter—thereby violating Reg. S-K.

318.   As a matter of law, every violation of Reg. S-K is presumed to be a material violation of Section 11.

319.   Additionally, Defendants' failure to file the EMC Agreement with STEC's 2009 second quarter 10-Q communicated to investors that the EMC Agreement was made in the ordinary course of STEC's business.  For the reasons explained, *supra*, in paragraphs 66-68, 232-37 and 251-55, this communication was materially misleading.

320.   Defendants' failure to file the EMC Agreement with STEC's 2009 second quarter 10-Q also communicated to investors that STEC's business was not substantially dependent on the Agreement.  For the reasons explained, *supra*, in paragraphs 199-200, 251-5 and 262-64, this communication also was materially misleading.

2. **Omission to Explain in the MD&A Section That the EMC Contract Was a One-Off Contract**

321.   As established by Item 303(b) of Reg. S-K, Item 303 sets forth the requirements for "management's discussion and analysis of financial condition and results of operations" in Forms 10-Q.

322.   Item 303(a)(3)(ii) of Reg. S-K requires the registrant to "describe any known trends or uncertainties that have had or that the registrant reasonably expects will have a material favorable or unfavorable impact on sales or revenues or income from continuing operations."

323.   The 10-Q contains the exact same language that appeared in the Prospectus, quoted in paragraph 310, *supra*. For the reasons explained in paragraphs 73-86, *supra*, this statement communicated, among other things, that the EMC Agreement established a new trend in the level of the recurring volume of purchases by EMC. *See also* ¶¶ 45-71. Therefore, STEC was required by Item 303 to disclose in the MD&A that, going forward, EMC was not expected to make a similar volume of purchases every six months. STEC's omission to make any such disclosure in the MD&A violated Reg. S-K and is a material omission under the Securities Act.

3. **2009 Second Quarter Revenue**

324.   The second quarter 10-Q reported revenue of $86.4 million for the second quarter. This statement of reported revenue was false and contained misleading material omissions, for the reasons explained, *supra*, in paragraphs 190-203.

**XIII. SECURITIES ACT CLAIMS**

325.   Counts IV to VI are not based on and do not sound in fraud. Any allegations of fraud or fraudulent conduct are specifically excluded from these Counts. For purposes of asserting these claims under the Securities Act, Representative Plaintiff Norfolk County does not allege that Defendants acted with

scienter or fraudulent intent.  Representative Plaintiff Norfolk County expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct.

## COUNT IV

### For Violation Of Section 11 of the Securities

### Act Against the Officer Defendants, Bahri and STEC

326.   Representative Plaintiff Norfolk County incorporates by reference each and every allegation contained in Sections I-V, IX-X and XII above, as if set forth herein, only to the extent, however, that such allegations do not allege fraud, scienter, or the intent of any Defendant named in this Count to defraud Representative Plaintiff Norfolk County or other members of the Class.  This Count is asserted by  Representative Plaintiff Norfolk County against the Officer Defendants, Defendant Bahri and STEC by and on behalf of persons who acquired shares of STEC common stock pursuant or traceable to the false Registration Statement issued in connection with the Offering, and predicted upon the liability of the Defendants named in this count for making false and materially misleading statements and omissions therein.

327.   STEC was the registrant of the Offering and the issuer of the stock issued via the false Registration Statement.  As such, STEC is strictly liable for each false and misleading statement contained therein.

328.   The Officer Defendants and Defendant Bahri are each signatories of the Registration Statement, therefore, each of these Defendants had a duty to make a reasonable investigation of the statements contained in the Registration Statement and Prospectus to ensure that said statements were true and that there was no omission to state any material fact required to be stated in order to make the statements contained therein not misleading.  In the exercise of reasonable care, the Officer Defendants and Bahri should have known of the material misstatements and omissions contained in the Registration Statement and Prospectus and also

should have known of the omissions of material fact necessary to make the statements made therein not misleading. As such, each of these Defendants is liable to plaintiff and the Class.

329. Each of the Defendants named in this Count caused to be issued and participated in the issuance of materially false and misleading written statements to the investing public that were contained in the Registration Statement, which misrepresented or failed to disclose, *inter alia*, the facts set forth above. Each of these Defendants owed to the purchasers of the shares issued in the Offering the duty to conduct a reasonable and diligent investigation of the statements contained in the Registration Statement for the Offering, and any incorporated documents, at the time it became effective to ensure that such statements were true and that there were no omissions of material fact that rendered them materially misleading. Each of these Defendants did not conduct a reasonable investigation or possess reasonable grounds to believe that the statements contained in the Registration Statement were true, without omissions of any material facts, and were not misleading.

330. By reasons of the conduct alleged herein, each of the Defendants named in this Count violated, and/or controlled a person who violated Section 11 of the Securities Act. As a direct and proximate result of these Defendants' wrongful conduct, the price for the STEC common stock sold in the Offering was artificially inflated and Representative Plaintiff Norfolk County and the Class suffered substantial damages in connection with their purchase of STEC common stock.

331. Representative Plaintiff Norfolk County and other members of the Class who acquired their STEC stock in the Offering did not know and, in the exercise of reasonable diligence could not have known, of the untruths and omissions contained or incorporated by reference in the Registration Statement. The value of the shares sold in the Offering has declined substantially due to

1   violations of Section 11 of the Securities Act by the Defendants named in this
2   Count.  Representative Plaintiff Norfolk County and the other members of the
3   Class were thus damaged by these Defendants' misconduct and by the material
4   misstatements and omissions of the Registration Statement.

5       332.   By reason of the foregoing, the Defendants named in this Count are
6   liable for violations of Section 11 of the Securities Act to Representative Plaintiff
7   Norfolk County and all members of the Class who purchased or otherwise acquired
8   shares of STEC common stock pursuant or traceable to the Offering.

9       333.   This action was brought within one year after the discovery of the
10  untrue statements and omissions and within three years after the Offering.

11                              **COUNT V**
12            **For Violation of Section 11 of the Securities Act**
13               **Against the Underwriter Defendants**

14      334.   Representative Plaintiff Norfolk County incorporates by reference
15  each and every allegation contained in Sections I-V, IX-X and XII above, as if set
16  forth herein, only to the extent, however, that such allegations do not allege fraud,
17  scienter, or the intent of any Underwriter Defendant to defraud Representative
18  Plaintiff Norfolk County or other members of the Class.  No allegation is made
19  herein that any Underwriter Defendant knew or was reckless in failing to know that
20  any of the alleged false statements or misleading material omissions was false or
21  misleading.

22      335.   This Count is asserted by Representative Plaintiff Norfolk County
23  against the Underwriter Defendants by and on behalf of persons who acquired
24  shares of STEC common stock pursuant or traceable to the false Registration
25  Statement issued in connection with the Offering, and predicated upon the
26  Underwriter Defendants' negligence for making false and materially misleading
27  statements and omissions therein.

28

336. Each of the Underwriter Defendants was responsible for the contents and dissemination of the Registration Statement for the Offering. Each of the Underwriter Defendants acted negligently and is liable to Representative Plaintiff Norfolk County and all other persons who purchased or otherwise acquired STEC common stock pursuant or traceable to the Offering. Each of the Underwriter Defendants caused to be issued and participated in the issuance of materially false and misleading written statements to the investing public that were contained in the Registration Statement, which misrepresented or failed to disclose, *inter alia*, the facts set forth above. Each of the Underwriter Defendants owed to the purchasers of the shares issued in the Offering the duty to conduct a reasonable and diligent investigation of the statements contained in the Registration Statement for the Offering, and any incorporated documents, at the time it became effective to ensure that such statements were true and that there were no omissions of material fact that rendered them materially misleading. Each of the Underwriter Defendants did not conduct a reasonable investigation or possess reasonable grounds to believe that the statements contained in the Registration Statement were true, without omissions of any material facts, and were not misleading.

337. By reasons of the conduct alleged herein, each Underwriter Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act. As a direct and proximate result of the Underwriter Defendants' wrongful conduct, the price for the STEC common stock sold in the Offering was artificially inflated and Representative Plaintiff Norfolk County and the Class suffered substantial damages in connection with their purchase of STEC common stock.

338. Representative Plaintiff Norfolk County and other members of the Class who acquired their STEC stock in the Offering did not know and, in the exercise of reasonable diligence could not have known, of the untruths and omissions contained or incorporated by reference in the Registration Statement. The value of the shares sold in the Offering has declined substantially due to