```
 1  BINGHAM MCCUTCHEN LLP
    John D. Pernick (SBN 155468)
 2  john.pernick@bingham.com
    Amy G. June (SBN 218610)
 3  amy.june@bingham.com
    Three Embarcadero Center
 4  San Francisco, CA  94111-4067
    Telephone:  415.393.2000
 5  Facsimile:  415.393.2286
    Email:  john.pernick@bingham.com
 6
    Attorneys for Defendants
 7  Barclays Capital Inc., Deutsche Bank
    Securities Inc., J.P. Morgan Securities, Inc.,
 8  and Oppenheimer & Co., Inc.
 9
                   UNITED STATES DISTRICT COURT
10
                  CENTRAL DISTRICT OF CALIFORNIA
11
                        SOUTHERN DIVISION
12
13
    IN RE STEC, INC. SECURITIES
    LITIGATION                        Lead Case No. 8:09-cv-01304-JVS (MLG)
14
                                      REPLY MEMORANDUM OF
15  This Document Relates To:         POINTS AND AUTHORITIES IN
                                      SUPPORT OF UNDERWRITER
16      ALL ACTIONS                   DEFENDANTS' MOTION TO
                                      DISMISS THE SECOND
17                                    CONSOLIDATED AMENDED
                                      COMPLAINT
18
19                                    Date:   June 13, 2011
                                      Time:   1:30 p.m.
20                                    Court:  10C
                                      Judge:  Hon. James V. Selna
21
22
23
24
25
26
27
28
```

I.   INTRODUCTION

In its Opposition to the Underwriter Defendants' Motion to Dismiss, Plaintiff concedes that it lacks standing to pursue any claims under Section 12(a)(2) of the Securities Act of 1933. (Opp. at 2, n.1.) Plaintiff purports to defend its claims under Section 11 of the Securities Act, but Plaintiff's Opposition does nothing to address the fatal pleading defects described in the Underwriter Defendants' Motion.

Plaintiff admits, as it must, that it did not purchase STEC shares "pursuant to" the Secondary Offering. As a result, Plaintiff has standing under Section 11 only if it purchased STEC shares that can be "traced" back to the Secondary Offering. At the motion to dismiss stage, in order to raise its "right to relief above the speculative level," this requires Plaintiff to allege *how* it will trace its shares. Plaintiff does not even attempt to meet this requirement, and therefore has failed to allege any basis for standing to pursue Section 11 claims. This failure, by itself, requires Plaintiff's Section 11 claims to be dismissed.

Separately, Plaintiff has also failed to plead its Section 11 claims with the required particularity. As this Court has ruled, Plaintiff's Section 11 claims against the Underwriter Defendants are subject to the heightened pleading requirements of Rule 9(b). Although Plaintiff continues to argue that Rule 9(b) should not apply, Plaintiff offers no new arguments or authorities that would undermine the Court's prior ruling. Moreover, as detailed by the STEC Defendants, Plaintiff has failed to satisfy Rule 9(b)'s heightened pleading requirements. As a result, all of Plaintiff's claims against the Underwriter Defendants should be dismissed with prejudice.

II.   ARGUMENT

    A.   **Plaintiff's Securities Act Claims Fail For Lack of Standing**

        1.   **Plaintiff's Conclusory "Tracing" Allegations Do Not Suffice**

Plaintiff's conclusory allegation that Representative Plaintiff Norfolk Country purchased shares "pursuant to or traceable to the Secondary Offering"

(SAC ¶¶ 24, 275) is insufficient to satisfy Plaintiff's burden to allege standing.  In its Opposition, Plaintiff backs away from any pretense that Norfolk County actually purchased shares "pursuant to" the Secondary Offering and argues instead that its conclusory allegation regarding "traceability" is sufficient at this stage of the case.  Plaintiff is wrong.

Although Plaintiff cites several cases in support of its argument that conclusory allegations regarding traceability are sufficient "at the motion to dismiss stage" (Opp. at 3-4), each of Plaintiff's cases was decided before the Supreme Court's seminal decisions in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).[1]  *See In re Century Aluminum Co. Sec. Litig.*, No. C09-1001, 2011 U.S. Dist. LEXIS 21406 at *23 n.8 (N.D. Cal. Mar. 3, 2011) ("While plaintiffs have cited cases holding that, at the pleading stage, mere allegations that shares will be traceable are sufficient to state a claim in a secondary offering case, those cases were decided before *Twombly* and *Iqbal*.").  As the Supreme Court made clear in *Twombly*, even at the motion to dismiss stage a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 129 S. Ct. at 1949.  Rather, it is now clear that the factual allegations in a complaint "must be enough to raise a right to relief *above the speculative level*[.]" *Twombly*, 550 U.S. at 555 (emphasis added); *see also Iqbal*, 129 S. Ct. at 1949 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.").

---

[1] The lone exception is *In re Metropolitan Sec. Litig.*, 532 F. Supp. 2d 1260, 1280-81  (E.D. Wash. 2007), which failed to explicitly consider the impact of *Twombly*, did not involve a secondary offering, and required plaintiffs to file "an amended certification … tracing the representative's securities to one or more of the Registration Statements at issue" before moving for class certification.

"Speculat[e]" is exactly what Plaintiff asks the Court to do with respect to Norfolk County's standing to pursue Section 11 claims. Although Plaintiff complains that the Oppenheimer Declaration submitted previously by the Underwriter Defendants "does not … assert that the shares purchased by Norfolk County … are not traceable to the [Secondary] Offering" (Opp. at 7), Plaintiff puts the burden on the wrong party: "The burden of establishing … standing rests on the party asserting the claim." *Colwell v. Dept. of Health & Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009). Plaintiff has done nothing to satisfy that burden.

Despite Plaintiff's attempts to confuse the issue, the Underwriter Defendants do not contend that Plaintiff must prove at this stage of the case that Norfolk County's shares are "actually traceable" to the Secondary Offering. (Opp. at 4.) Instead, consistent with *Century Aluminum*, the Underwriter Defendants argue only that Plaintiff must establish "*how* [its] shares *can be* traced" to the Secondary Offering. *See Century Aluminum*, 2011 U.S. Dist. LEXIS 21406 at *22 ("[T]he Court has not asked plaintiffs to plead facts that prove their securities are traceable to the secondary offering here, but to plead facts showing how their shares can be traced."). Such a showing is especially important here, given that (1) Plaintiff has backed away from any pretense that Norfolk County actually purchased shares "pursuant to" the Secondary Offering, and (2) the market already contained over 40 million STEC shares when the Secondary Offering's nine million additional shares were made available. *Id.* at *26-27; (STEC RJN Ex. Y at 249).

**2.   Norfolk County's Later Purchases From Oppenheimer Are Irrelevant**

Plaintiff attempts to distinguish this case from *Century Aluminum* on one ground: In *Century Aluminum*, "the plaintiffs purchased shares through brokers and brokers' third-parties, as opposed to through the underwriters," while here,

"Norfolk County purchased directly from Oppenheimer" on some later dates.[2] (Opp. at 4.) This distinction, to the extent it is even accurate, is meritless.

Plaintiff offers no explanation for why Norfolk County's subsequent purchases of shares from Oppenheimer (as opposed to from brokers or other third parties) suggests that those particular shares may be traced to the Secondary Offering. (Opp. at 6.) Rather, Plaintiff asks the Court to assume – without any basis – that, because Oppenheimer was one of several underwriters for the Secondary Offering, any shares that Oppenheimer sold on some *later dates* can be traced to that offering.[3] This argument is wildly speculative and fails to demonstrate *how* Plaintiff will trace any shares that Norfolk County purportedly purchased back to the particular shares that were sold in the Secondary Offering. *Century Aluminum*, 2011 U.S. Dist. LEXIS 21406 at *22. Accordingly, Plaintiff has failed to plead sufficient facts to establish Norfolk County's standing to pursue Section 11 claims, and those claims must be dismissed. *Id.* at 26-27; *Grand Lodge of Pa. v. Peters*, 550 F. Supp. 2d 1363, 1376 (M.D. Fla. 2008) ("Lead Plaintiffs have not suggested what evidence they intend to use to show that the particular shares … can be traced to the stocks issued in the [offering]. Thus, the Court finds that, in this case, Lead Plaintiffs have not sufficiently alleged that the [] stocks purchased are traceable to the [] offering…. [T]he Court grants the motions to dismiss the claims brought pursuant to Section 11.").

---

[2] The declaration and exhibits submitted by Plaintiff do not even support this point. Rather, they make clear that "Copper Rock," an "investment manager," purchased the shares at issue. (*See* Motch Decl. at ¶¶ 1-2.)

[3] Plaintiff provides absolutely no basis to cast any doubt on the statement in the Declaration of Deborah Baker that "[a]ll sales of stock by Oppenheimer in the Secondary Offering were allocated to purchasers on August 6, 2009" and "took place at the offer price of $31 per share." (*See* Baker Decl. ¶ 4.)

**B.      Plaintiff's Securities Act Claims Fail Because They Do Not Plead The Existence of Any False Statement With Particularity**

**1.      Rule 9(b)'s Heightened Pleading Standards Apply To The Entire Second Amended Complaint, And All Defendants**

This Court previously ruled that the heightened pleading requirements of Rule 9(b) apply to "the [Complaint] as a whole" including Plaintiff's Section 11 claims "against the Underwriter Defendants because the [complaint] alleges a unified course of fraudulent conduct." (Order at 4 n.1.)  Ignoring that ruling, Plaintiff continues to argue that Rule 9(b) should not apply.  In doing so, Plaintiff offers no compelling authority or arguments that suggest the Court got it wrong last time.  Instead, Plaintiff relies entirely on two cases decided before the Ninth Circuit made clear in *Rubke v. Capital Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009) that Rule 9(b) applies to the entire complaint where the same factual allegations (i.e.. a "unified course of conduct) support both Securities Act and Exchange Act claims. S*ee also In re Bare Escentuals, Inc. Sec. Litig*. 745 F. Supp. 2d 1052, 1068 (N.D. Cal. 2010).  Indeed, Plaintiff does not suggest that it has alleged anything other than a unified course of conduct.  Instead, Plaintiff asserts that the Court should reverse course because "the Section 11 claims against the Underwriter Defendants are [now] alleged in a separate count not alleged against any other Defendant."  (Opp. at 9.)  This argument is meritless.

Plaintiff's argument relies on the language in the Court's Order stating that Rule 9(b) applied to the Section 11 claims against the Underwriter Defendants because, "among other reasons, 'the claims against the Underwriter Defendants [were] not differentiated from the claims against the other Defendants.'" (Opp. at 9) (quoting Order at 4 n.1.)  But Plaintiff's assertion that its pleading defect may be cured simply by pleading Section 11 claims in separate causes of action demonstrates a complete misunderstanding of the governing law and the Court's

statement.

As the Ninth Circuit has made clear, "[w]here as here, … a complaint employs the exact same factual allegations to allege violations of section 11 as it uses to allege fraudulent conduct under section 10(b) of the Exchange Act, we can assume that it sounds in fraud" and Rule 9(b) therefore applies to the complaint as a whole. *Rubke v. Capitol Bancorp Ltd.*, 551 F. 3d 1156, 1161 (9th Cir. 2009) (*See also* Order at 4 n.1) (Rule "9(b) applies to the [complaint] as a whole[.]")[4] Plaintiff's decision to now plead its Section 11 claims against the Underwriter Defendants as a separate cause of action does absolutely nothing to "differentiate" those claims. Indeed, as described in the Underwriter Defendants' Motion to Dismiss, the same factual allegations *still* explicitly support *all* of the Exchange Act and Securities Act causes of action in the SAC. (*See* Mot. at 11-12.) Although the Section 11 claim against the Underwriter Defendants is alleged as a separate cause of action, it expressly incorporates the allegations contained in Section IV of the SAC entitled "Factual Background And Substantive Allegations Relating To The Exchange Act Claims" and the allegations contained in Section V of the SAC entitled "Additional Allegations Of Scienter." (*See* SAC at ¶ 34). Accordingly, the heightened pleading requirements of Rule 9(b) clearly apply to Plaintiff's Section 11 claims against the Underwriter Defendants.

---

[4] The Court's Order is in line with those of other district courts sitting in California since *Rubke*, which have consistently applied Rule 9(b) to the entire complaint, and to all defendants, where the same facts underlie both fraud and non-fraud claims. *See, e.g., Ferrington v. McAfee, Inc.*, 2010 WL 3910169 at *5 (N.D. Cal., October 10, 2010) (quoting *Rubke* and applying Rule 9(b) to all claims, including non-fraud claims); *In re Bare Escentuals, Inc. Sec. Litig.*, 2010 WL 3893622 at *13 (N.D. Cal. Sept. 30, 2010) (same); *Salameh v. Tarsadia Hotels*, 2010 WL 2839013 at *8 (S.D. Cal. July 20, 2010) (same).

### 2. Plaintiff Fails To Plead Its Section 11 Claims With The Required Particularity

Rule 9(b) requires Plaintiff to "state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. Rule 9(b). "In other words, the [SAC] must set forth what is false or misleading about a statement, and why it is false." *Rubke*, 551 F.3d at 1161 (quotation omitted). As detailed by STEC in its motion to dismiss, Plaintiff has failed completely to meet this burden. (*See* STEC Mot. at 27-28.) The Underwriter Defendants will not repeat those arguments here, but rather incorporate them by reference.

Accordingly, for the reasons set forth in STEC's motion to dismiss, even setting aside Plaintiff's lack of standing to assert Section 11 claims, those claims must be dismissed for the additional reason that Plaintiff has failed to plead those claims with the required particularity.

### III. Conclusion

For the foregoing reasons, the Underwriter Defendants respectfully request that the Court dismiss all of the remaining claims against them with prejudice.

Dated: May 16, 2011

                               Bingham McCutchen LLP

                               By    /s/ John D. Pernick
                                       John D. Pernick
                                  Attorneys for Defendants Barclays Capital Inc., Deutsch Bank Securities Inc., J.P. Morgan Securities, Inc., and Oppenheimer & Co., Inc.