1   LATHAM & WATKINS LLP
        Patrick E. Gibbs, Bar No. 183174
2       *patrick.gibbs@lw.com*
        Chris W. Johnstone, Bar No. 242152
3       *chris.johnstone@lw.com*
    140 Scott Drive
4   Menlo Park, California 94025
    Telephone:  +1.650.328.4600
5   Facsimile:  +1.650.463.2600

6   LATHAM & WATKINS LLP
        Michele D. Johnson, Bar No. 198298
7       *michele.johnson@lw.com*
    650 Town Center Drive, 20th Floor
8   Costa Mesa, California  92626-1925
    Telephone:  +1.714.540.1235
9   Facsimile:  +1.714.755.8290

10  Attorneys for Defendants STEC, Inc.,
    Manouch Moshayedi, Mark Moshayedi,
11  Raymond D. Cook, and Rajat Bahri

12

13              UNITED STATES DISTRICT COURT

14             CENTRAL DISTRICT OF CALIFORNIA

15                  SOUTHERN DIVISION

16

17

| | |
|---|---|
| IN RE STEC, INC. SECURITIES LITIGATION | Lead Case No. 8:09-cv-01304-JVS (MLG) |
| This Document Relates To: | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SECOND CONSOLIDATED AMENDED COMPLAINT** |
| ALL ACTIONS | |
| | Judge:   Hon. James V. Selna |
| | Court:   10C |
| | Date:    June 13, 2011 |
| | Time:    1:30 p.m. |

18
19
20
21
22
23
24
25
26
27
28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

Case No. 8:09-cv-01304-JVS (MLG)
REPLY IN SUPPORT OF
MOTION TO DISMISS SAC

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ......................................................................... 1

II.     ARGUMENT .............................................................................. 1

    A.      Plaintiff's Exchange Act Claims Fail .................................. 1

        1.      The EMC Supply Agreement ..................................... 1

        2.      STEC's Revenue & Revised Guidance For 2Q09.................... 6

        3.      Sales To STEC's Other OEM Customers ................................ 7

            a.      The August 3, 2009 Prospectus...................................... 7

            b.      The Comment Letter Response To The SEC............... 11

        4.      Plaintiff's Scienter Allegations Are Inadequate ..................... 12

    B.      Plaintiff's Securities Act Claims Fail ................................. 14

III.    CONCLUSION ......................................................................... 15

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

i

Case No. 8:09-cv-01304-JVS (MLG)
REPLY IN SUPPORT OF
MOTION TO DISMISS SAC

1

# TABLE OF CONTENTS

2

**Page**

3

4

## CASES

5

6

*Batwin v. Occam Networks, Inc.*,
    2008 U.S. Dist. LEXIS 52365 (C.D. Cal. July 1, 2008) ................................ 11

7

*Belodoff v. Netlist, Inc.*,
    2009 U.S. Dist. LEXIS 78309 (C.D. Cal. Sept. 1, 2009) ............................... 15

8

9

*Brodsky v. Yahoo! Inc.*,
    630 F. Supp. 2d 1104 (N.D. Cal. 2009) ........................................................ 7

10

*Brody v. Transitional Hosp. Corp.*,
    280 F.3d 997 (9th Cir. 2002) ...................................................................... 10

11

12

*Buritt v. NutraCea*,
    2010 WL 668806 (D. Ariz. Feb. 25, 2010) ................................................. 14

13

14

*Cozzarelli v. Inspire Pharms., Inc.*,
    549 F.3d 618 (4th Cir. 2008) ...................................................................... 14

15

*Emplrs. Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co.*,
    353 F.3d 1125 (9th Cir. 2004) ...................................................................... 4

16

17

*Harris v. Ivax Corp.*,
    182 F.3d 799 (11th Cir. 1999) ...................................................................... 4

18

19

*Helwig v. Vencor, Inc.*,
    Inc. 251 F.3d 540 (6th Cir. 2001) ................................................................. 5

20

21

*In re Amylin Pharms., Inc. Sec. Litig.*,
    2002 WL 31520051 (S.D. Cal. Oct. 10, 2002) .............................................. 2

22

23

*In re Apple Computer Sec. Litig.*,
    886 F.2d 1109 (9th Cir. 1989) ...................................................................... 9

24

*In re Avon Prods., Inc. Sec. Litig.*,
    2009 U.S. Dist. LEXIS 34564 (S.D.N.Y. Feb. 23, 2009) ............................... 4

25

26

*In re Clorox Co. Sec. Litig.*,
    238 F. Supp. 2d 1139 (N.D. Cal. 2002) ..................................................... 4, 5

27

28

*In re Copper Mountain Sec. Litig.*,
    311 F. Supp. 2d 857 (N.D. Cal. 2004) .......................................................... 5

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

ii

Case No. 8:09-cv-01304-JVS (MLG)
REPLY IN SUPPORT OF
MOTION TO DISMISS SAC

*In re Downey Sec. Litig.*,
2009 U.S. Dist. LEXIS 83443 (N.D. Cal. Aug. 21, 2009) ............................... 13

*In re Harmonic Inc. Sec. Litig.*,
163 F. Supp. 2d 1079 (N.D. Cal. 2001) ....................................................... 2, 9

*In re Hutchinson Tech., Inc. Sec. Litig.*,
536 F.3d 952 (8th Cir. 2008) ....................................................................... 14

*In re Immune Response Sec. Litig.*,
375 F. Supp. 2d 983 (S.D. Cal. 2005) ............................................................. 2

*In re LeapFrog Enters., Inc. Sec. Litig.*,
527 F. Supp. 2d 1033 (N.D. Cal. 2007) ...................................................... 4, 5

*In re Scientific-Atlanta, Inc. Sec. Litig.*,
239 F. Supp. 2d 1351 (N.D. Ga. 2002) ........................................................... 2

*In re Van Wagoner Funds, Inc. Sec. Litig.*,
382 F. Supp. 2d 1173 (N.D. Cal. 2004) ........................................................ 11

*In re Vantive Corp. Sec. Litig.*,
283 F.3d 1079 (9th Cir. 2002) ..................................................................... 14

*In re VeriFone Holdings, Inc. Sec. Litig.*,
2011 WL 1045120 (N.D. Cal. Mar. 22, 2011) ............................................... 13

*Knollenberg v. Harmonic, Inc.*,
152 Fed. Appx. 674 (9th Cir. 2005) ............................................................... 2

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*,
540 F.3d 1049 (9th Cir. 2008) .......................................................... 7, 12, 13

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am.
West Holding Corp.*,
320 F.3d 920 (9th Cir. 2003) ......................................................................... 4

*Osher v. JNI Corp.*,
256 F. Supp. 2d 1144 (S.D. Cal. 2003) ......................................................... 14

*Plevy v. Haggerty*,
38 F. Supp. 2d 816 (C.D. Cal. 1998) .......................................................... 2, 9

*Provenz v. Miller*,
102 F.3d 1478 (9th Cir. 1996) ........................................................................ 9

*SEC v. Nacchio*,
438 F. Supp. 2d 1266 (D. Colo. 2006) ........................................................ 3, 4

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

iii

Case No. 8:09-cv-01304-JVS (MLG)
REPLY IN SUPPORT OF
MOTION TO DISMISS SAC

*Slayton v. Am. Express Co.*,
   604 F.3d 758 (2d Cir. 2010) .......................................................................... 4, 6

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
   552 U.S. 148 (2008) ....................................................................................... 11

*Yanek v. Staar Surgical Co.*,
   388 F. Supp. 2d 1110 (C.D. Cal. 2005) ........................................................... 5

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ............................................................... 7, 12, 13

**STATUTES**

15 U.S.C. § 78u-4(b)(2) ......................................................................................... 12

15 U.S.C. § 78u-5(i)(1) ............................................................................................ 4

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

iv

Case No. 8:09-cv-01304-JVS (MLG)
REPLY IN SUPPORT OF
MOTION TO DISMISS SAC

1    **I.      INTRODUCTION**

2          Plaintiff's opposition argues repeatedly that the analysis that led the Court to

3    dismiss Plaintiff's Consolidated Amended Complaint ("AC") does not apply to the

4    Second Amended Complaint ("SAC") at issue here. But in fact, the claims asserted

5    in the SAC are, in all material respects, the same as the claims that this Court

6    previously dismissed. To the limited extent that Plaintiff has changed anything, the

7    changes are immaterial, and they do not undermine the Court's prior analysis at all.

8    The SAC fails to state a claim for relief, and therefore should be dismissed.

9    **II.     ARGUMENT**

10          **A.      Plaintiff's Exchange Act Claims Fail**

11                  **1.      The EMC Supply Agreement**

12          Plaintiff argues that Defendants' statements about the EMC Agreement were

13   misleading because they did not disclose that the Agreement was "***other than*** (a)

14   an ordinary course contract (b) whose large size reflected an increase in the level of

15   EMC's requirements." (Opp. at 3.) But this Court rejected precisely that argument

16   in its prior Order. (Order at 7-8.) Plaintiff's argument that the Court's analysis does

17   not apply to the SAC fails. As to the first issue, Plaintiff argues that investors

18   would reasonably infer that the $120 million Agreement was "just an ordinary

19   course contract" because EMC's average monthly purchases under the Agreement

20   were just 78% higher than EMC's purchases during the preceding quarter, while

21   EMC's purchases during the preceding quarter were 300% larger than the quarter

22   before that. (Opp. at 7.)  But in fact, the $120 million Agreement for the second

23   half of 2009 dwarfed the $41.2 million in ZeusIOPS sales to EMC during the first

24   half of 2009. (*See* SAC ¶ 122.) No reasonable investor could have believed that the

25   Agreement was "just an ordinary course contract."

26          Nor did Defendants create the impression that the EMC Agreement

27   "reflected an increase in the level of EMC's requirements." (Opp. at 3.) In an

28   attempt to avoid the Court's prior ruling on this point, Plaintiff cites a series of

LATHAM&WATKINS™
ATTORNEYS AT LAW
SILICON VALLEY

1

Case No. 8:09-cv-01304-JVS (MLG)
REPLY IN SUPPORT OF
MOTION TO DISMISS SAC

1   statements by securities analysts who projected that sales to EMC in 2010 would

2   continue at the same rate as under the Agreement. (*Id.* at 7-8.) But Plaintiff cannot

3   plead falsity by relying on commentary by third-party research analysts that

4   Defendants never adopted. *Plevy v. Haggerty*, 38 F. Supp. 2d 816, 824 (C.D. Cal.

5   1998); *In re Harmonic Inc. Sec. Litig.*, 163 F. Supp. 2d 1079, 1096 (N.D. Cal.

6   2001), *aff'd in part and rev'd in part on other grounds*, *Knollenberg v. Harmonic,*

7   *Inc.*, 152 Fed. Appx. 674 (9th Cir. 2005). Because Defendants never adopted nor

8   endorsed the statements made by any research analysts, Plaintiff cannot rely on

9   them to plead falsity.[1]

10      The cases cited in the opposition lend no support to Plaintiff's argument. *In*

11  *re Scientific-Atlanta, Inc. Sec. Litig.*, 239 F. Supp. 2d 1351, 1363 (N.D. Ga. 2002)

12  does not even discuss analyst reports in its discussion of falsity; rather, it

13  referenced an analyst report in weighing materiality. *Id.* at 1361 n.6. Although the

14  district court in *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1019

15  (S.D. Cal. 2005) does allude to analyst statements, it did not rely on them in its

16  falsity analysis. *See id.* at 1018-21. In fact, it found the complaint alleged

17  "contemporaneous facts" and "corroborating details" from "internal reports"

18  establishing that the defendants had misrepresented the effectiveness of an HIV

19  drug. *See id.* at 1019. By stark contrast, Plaintiff does not point to any internal

20  reports or contemporaneous facts here. *In re Amylin Pharms., Inc. Sec. Litig.*, 2002

21  WL 31520051, at *5-6 (S.D. Cal. Oct. 10, 2002) is not applicable either: the court

22  in that case based its falsity ruling on empirical data and reports from a drug study

23  showing that defendants' representations about the risk of the drug's hypoglycemic

24  effects were verifiably false. *Id.* at *5. Although the *Amylin* court alluded to an

25  _____

26  [1] In any event, Plaintiff's reliance on comments by analysts is not new. The prior
    complaint referred to 24 different comments by research analysts. (AC at 17, 26,
27  28, 40-42, 45, 48-50, 72.) The Court did not find those statements relevant in
    assessing the falsity allegations in the AC, and there is no reason to do so here.
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

2

Case No. 8:09-cv-01304-JVS (MLG)
REPLY IN SUPPORT OF
MOTION TO DISMISS SAC

analyst report in rejecting the defendants' unreasonable characterization of their own statements, that is not the case here. It is Plaintiff, not Defendants, who is mischaracterizing what Defendants said, and the fact that analysts predicted ever-increasing sales to EMC does not make Plaintiff's characterization reasonable.[2]

Plaintiff's "omission" theory fails for another reason. Plaintiff claims that Manouch Moshayedi's reference to the EMC Agreement as "a one-off type of a deal" shows that Defendants knew, in July and August of 2009, that EMC would not continue to buy products at that rate. (Opp. at 4.) But Manouch made this statement in response to a question whether STEC expected EMC to enter into similar volume commitments going forward. In so doing, Manouch specifically noted that he did not think STEC would need a similar volume commitment from EMC because EMC was "buying exclusively from us and doing everything that they can to promote our SSDs." (Ex. AA at 350.) This is hardly an admission that STEC knew that EMC would carry inventory into 2010 or that EMC's purchases would drop significantly in the first half of 2010. The fact that STEC did not expect EMC to enter into similar contractual commitments does not mean that STEC expected EMC's purchase levels to drop. Indeed, EMC had not previously entered into such volume commitments, and yet sales to EMC rose dramatically.

Plaintiff also argues that Defendants misled the market about EMC's future demand by saying that "systems utilizing [STEC's] ZeusIOPS drives have grown significantly." (Opp. at 5.) The full quote, however, says that systems using ZeusIOPS "have grown significantly *over the past few years*." (Ex. U at 186) (emphasis added). As is clear from the omitted language, STEC was describing EMC's past sales, and was not saying anything about EMC's future demand. (*See*

---

[2] Plaintiff's reliance on *SEC v. Nacchio*, 438 F. Supp. 2d 1266, 1279 (D. Colo. 2006), is misplaced. The discussion cited by Plaintiff (Opp. 9-10) deals with materiality, not falsity. In any event, the *Nacchio* court's discussion of "recurring" versus "non-recurring" revenue sources is totally irrelevant here because there is no claim that sales to EMC were "non-recurring" as that term was used in *Nacchio*.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

3

Case No. 8:09-cv-01304-JVS (MLG)
REPLY IN SUPPORT OF
MOTION TO DISMISS SAC

1   *id.*) This Court has already found that this statement was not misleading (Order at

2   7), and Plaintiff's opposition offers nothing to change that result.

3          In any event, Defendants' alleged statements and omissions regarding the

4   EMC Agreement are protected by the Safe Harbor. Plaintiff argues that these

5   statements were not forward-looking because they referred to Defendants' "present

6   knowledge" of future events. (Opp. at 10.) But adopting this approach would read

7   the Safe Harbor out of the Reform Act. By definition, a forward-looking statement

8   involves "present" expectations about future events. *See* 15 U.S.C. § 78u-5(i)(1).

9   For that reason, courts have consistently rejected the kind of distinction Plaintiff

10  seeks to draw here. *See In re Clorox Co. Sec. Litig.*, 238 F. Supp. 2d 1139, 1145

11  (N.D. Cal. 2002), *aff'd sub nom. Emplrs. Teamsters Local Nos. 175 & 505 Pension*

12  *Trust Fund v. Clorox Co.*, 353 F.3d 1125, 1132-33 (9th Cir. 2004); *Slayton v. Am.*

13  *Express Co.*, 604 F.3d 758, 769 (2d Cir. 2010); *Harris v. Ivax Corp.*, 182 F.3d 799,

14  805 (11th Cir. 1999); *In re LeapFrog Enters., Inc. Sec. Litig.*, 527 F. Supp. 2d

15  1033, 1046 (N.D. Cal. 2007).[3]

16         Indeed, it is impossible to interpret Plaintiff's claims about the EMC

17  Agreement as involving anything other than forward-looking statements. Plaintiff's

18  core claim is that Defendants misled investors about EMC's demand for STEC's

19  products after the second half of 2009. (SAC ¶ 59.) By any measure, this falls

20  squarely within the Safe Harbor because it involves a "projection of revenues"

21  from EMC and "future economic performance." 15 U.S.C. § 78u-5(i)(1); *see also*

22  *Harris*, 182 F.3d at 806. At a minimum, the alleged statements involve the

23  "assumptions underlying" STEC's projections. *See In re Avon Prods., Inc. Sec.*

24  *Litig.*, 2009 U.S. Dist. LEXIS 34564, at *49 (S.D.N.Y. Feb. 23, 2009).

25

26  [3] The cases Plaintiff cites on this point are inapposite. *See No. 84 Employer-*
27  *Teamster Joint Council Pension Trust Fund v. Am. West Holding Corp.*, 320 F.3d
    920, 936 (9th Cir. 2003) (disclosure of a past fine); *Nacchio*, 438 F. Supp. 2d at
28  1281 (weighing the sufficiency of the SEC's materiality allegations).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

4

Case No. 8:09-cv-01304-JVS (MLG)
REPLY IN SUPPORT OF
MOTION TO DISMISS SAC

Plaintiff argues that the Safe Harbor does not apply because the statements made in the July 16, 2009 press release and August 3, 2009 earnings release "were not identified as forward looking." (Opp. at 10.) This is not true: both the press release and earnings release expressly note that they contained "forward-looking statements[.]" (Ex. U at 186; Ex. X at 240.) Plaintiff then claims that the Safe Harbor does not apply because the cautionary language was not located within the press release or earnings release. But these two documents referred investors to the company's public filings, which the Ninth Circuit has found to be sufficient. *See Clorox*, 353 F.3d at 1132-33; *LeapFrog*, 527 F. Supp 2d at 1047.

Plaintiff next argues that STEC's warning that it was "difficult to accurately predict" customer demand was meaningless because it merely said that STEC "cannot predict a major aspect of [its] business." (Opp. at 11.) But STEC specifically explained the reasons why it was "difficult to accurately predict" customer demand. (Ex. P at 152.) In the same statement, it warned investors that it sold its products through "individual purchase orders" without "long-term volume commitments" and that its OEM customers faced "unpredictable demand for their own products." (*Id.*) STEC thus warned investors of risks of "similar significance to those actually realized." *In re Copper Mountain Sec. Litig.*, 311 F. Supp. 2d 857, 882 (N.D. Cal. 2004). STEC's warnings bear no resemblance to the boilerplate language in the cases cited by Plaintiff. *See Helwig v. Vencor*, Inc. 251 F.3d 540, 559 (6th Cir. 2001); *Yanek v. Staar Surgical Co.*, 388 F. Supp. 2d 1110, 1123 (C.D. Cal. 2005).

Similarly, Plaintiff ignores the full context of STEC's warning that "[t]he market for SSD products is relatively new and evolving...." (Ex. Y at 253.) In making this statement, STEC specifically warned investors that "[s]ales to a limited number of customers, *particularly EMC Corporation*, represent a significant portion of our revenues and *the loss of any key customer could materially reduce our revenues*." (*Id.*) (emphases added). STEC then explained

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

5

Case No. 8:09-cv-01304-JVS (MLG)
REPLY IN SUPPORT OF
MOTION TO DISMISS SAC

1   that EMC accounted for 38.9% of total revenues for the second quarter of 2009 and
2   that it expected that "sales to EMC will represent a significant percentage of our
3   total revenue for the foreseeable future." (*Id.*) STEC's warnings directly spoke to
4   its unique relationship with EMC; they did not merely identify risks "common to
5   the entire SSD market" as Plaintiff suggests. (*See* Opp. at 12.)

6   　　　Plaintiff also argues that two of STEC's warnings were false. Plaintiff first
7   claims that STEC's warning that it was "difficult to accurately predict" customer
8   demand was misleading because the EMC Agreement was a "one-off deal at a
9   volume STEC would not repeat without such a deal." (Opp. at 12.) But Plaintiff's
10  argument ignores the fact that STEC's warning on August 3, 2009 occurred long
11  before the EMC carryover or its resulting decline in sales. *See Slayton*, 604 F.3d at
12  770 (cautionary language is misleading where the risk at issue had already
13  transpired). Plaintiff does not allege any facts suggesting that STEC knew, when it
14  issued this warning, that EMC's purchase volume would drop off significantly.
15  Plaintiff then argues that STEC's warnings relating to "inventory buildups" were
16  misleading because they treated the carryover as a possibility when it was really a
17  certainty. But again, Plaintiff provides no explanation how the EMC carryover was
18  a "certainty" when STEC issued this warning on March 12, 2009. (Ex. N at 54.)[4]

19  ## 2.　　STEC's Revenue & Revised Guidance For 2Q09

20  　　　Plaintiff has not alleged particularized facts showing that STEC's revenue
21  for 2Q09 was materially misstated. As before, Plaintiff relies entirely on
22  speculation about an alleged "match" between the $14 million increase in guidance
23  for 2Q09 and the $14 million decline in non-EMC revenue for 1Q09. (Opp. at 24.)
24  But the Court previously ruled that such an allegation failed to "explain why non-

26  [4] Plaintiff argues that STEC's warning regarding its limited ability to predict future
27  sales in Exhibit CC should not be considered. (Opp. at 1, 11.) But STEC made
    similar warnings prior to February 23, 2010 in other public filings. (*See*, *e.g.*, Ex. N
28  at 54; Ex. P at 153; Ex. Z at 310.)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

6

Case No. 8:09-cv-01304-JVS (MLG)
REPLY IN SUPPORT OF
MOTION TO DISMISS SAC

EMC revenues for the second quarter of 2009 and the first quarter of 2010 should have been identical." (Order at 10-11.) The SAC does not provide any support for Plaintiff's theory, and instead points to statements made by two unreliable CWs who have no "personal knowledge of the effects that the conduct they witnessed had on the reported revenues." (*Id.* at 10.) Plaintiff claims that its CWs are not required to have personal knowledge; however, Ninth Circuit law is to the contrary. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009); *Brodsky v. Yahoo! Inc.*, 630 F. Supp. 2d 1104, 1114 (N.D. Cal. 2009).

Plaintiff also fails to plead loss causation regarding 2Q09 revenues. Plaintiff argues that the announcement of STEC's guidance for 1Q10 revealed the "disappearance of sustainable revenue momentum" which caused STEC's stock to decline. (Opp. at 25.) But Plaintiff's own allegations acknowledge that STEC's expectation of modest revenue in 1Q10 was based on the EMC inventory holdover – and not the improper recognition of revenue three quarters earlier. (SAC ¶ 252.) Indeed, STEC's earnings release on February 23, 2010 expressly noted that it expected the EMC inventory carryover would "negatively impact [its] sales to this customer" through the first half of 2010. (*Id.* ¶ 81.) Since the earnings release said nothing about the false recognition of revenue in 2Q09, Plaintiff fails to allege a revelation of the "relevant truth." *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1063 (9th Cir. 2008).[5]

### 3.   Sales To STEC's Other OEM Customers

#### a.   The August 3, 2009 Prospectus

Plaintiff's core argument regarding sales to other OEM customers has already been rejected by this Court. (Order at 8-9.) Plaintiff claims that Defendants misled the market when they said, in an August 3, 2009 Prospectus, that "[w]e

---

[5] The failure to allege falsity or loss causation with respect to STEC's revenue for 2Q09 requires the dismissal of Plaintiff's allegations regarding STEC's revised guidance for 2Q09. (*See* Opp. at 25 n. 21.)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

7

Case No. 8:09-cv-01304-JVS (MLG)
REPLY IN SUPPORT OF
MOTION TO DISMISS SAC

1   expect continued growth in the sales of [ZeusIOPS] through 2009 based on the

2   accelerated adoption" by other OEM customers. (Ex. Y at 247.) According to

3   Plaintiff, this falsely suggested that sales to other OEMs would increase in the

4   second half of 2009. (SAC ¶ 110; Opp. at 13.) But the Prospectus did not say any

5   such thing; it said that STEC expected "continued growth" in overall sales of

6   ZeusIOPS, and that this expectation was based in part on the "accelerated

7   adoption" of STEC's products. The SAC does not contain any allegations

8   suggesting that this statement was false: Plaintiff admits that STEC's sales of

9   ZeusIOPS experienced "continued growth" through 2009 (SAC ¶ 122), and

10  Plaintiff's opposition fails to identify any facts, let alone particularized facts,

11  indicating that the statement regarding "accelerated adoption" was false.

12        Instead, Plaintiff reads Defendants' expectation of "accelerated adoption" of

13  ZeusIOPS as a pronouncement that sales to other OEMs would increase in the

14  second half of 2009. (SAC ¶ 110; Opp. at 13.) But the Court has already

15  recognized that "'accelerated adoption' does not mean that the other OEM

16  customers had already built STEC's SSDs into their products. Rather, it means

17  their process for adoption has been expedited." (Order at 9.) For the same reason,

18  "accelerated adoption" does not necessarily mean sales in the second half of 2009.

19  Plaintiff's reading of the Prospectus is particularly unreasonable given that, on the

20  same day the Prospectus was filed, STEC cautioned investors about sales to other

21  OEMs, saying that it expected "sales to EMC will represent a significant

22  percentage of our total revenues for the foreseeable future." (Ex. V. at 201.)

23  Likewise, that same day, Manouch indicated that he expected it would take

24  "maybe a quarter or two" before any other OEMs would even enter the

25  "production" mode. (Ex. W. at 226.) [6]

26

---

27  [6] Plaintiff lists a series of statements made by research analysts to argue that
    investors were misled to believe that sales to other OEMs would increase in the

28  second half of 2009. But again, Plaintiff cannot plead falsity by relying on

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

8

Case No. 8:09-cv-01304-JVS (MLG)
REPLY IN SUPPORT OF
MOTION TO DISMISS SAC

Setting aside Plaintiff's failure to allege that Defendants actually made a prediction about sales to other OEMs, Plaintiff does not allege any facts suggesting that STEC did not believe the prediction, lacked a reasonable basis for it, or was aware of facts tending seriously to undermine it. *Provenz v. Miller*, 102 F.3d 1478, 1487 (9th Cir. 1996); *In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1113 (9th Cir. 1989). Straining to meet this standard, Plaintiff argues that STEC's level of non-cancellable inventory commitment purchases shows that Defendants knew sales to other OEMs would decrease in the second half of 2009. (Opp. at 15-18.) But as detailed in Defendants' motion to dismiss, Plaintiff's inventory theory rests on a series of assumptions that are demonstrably false. (Mot. at 18-20.) In response, Plaintiff concedes that "costs of revenues" includes several items other than "inventory actually used in a given quarter" and that "inventory" includes items other than raw materials. (Opp. at 16-17.) Although Plaintiff tries to minimize these other items, Plaintiff's argument is sheer speculation. Plaintiff alleges absolutely no factual basis for equating these items, and absent that equation, Plaintiff's argument falls apart.

Moreover, Plaintiff's inventory theory rests on Plaintiff's equally speculative assumptions that "STEC usually knows the amount of its future ZeusIOPS sales at least two quarters in advance of completing the sales", and that STEC fulfills all of its component needs through "non-cancellable inventory purchase commitments sufficient to provide for those sales." (Opp. at 15.) On that basis, Plaintiff argues that one can tell precisely what STEC expected to sell in a given quarter simply by looking at the level of "non-cancellable inventory purchase commitments" in preceding quarters. (*Id.*) Plaintiff alleges no factual support for its argument that STEC secures all the inventory it needs for all of its sales through "non-cancellable inventory purchase commitments." In fact, one of the very statements Plaintiff

commentary by third-parties that Defendants never adopted. *See In re Harmonic*, 163 F. Supp. 2d at 1096; *Plevy*, 38 F. Supp. 2d at 824.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

9

Case No. 8:09-cv-01304-JVS (MLG)
REPLY IN SUPPORT OF
MOTION TO DISMISS SAC

1  cites says precisely the opposite: Manouch Moshayedi has said that STEC only

2  enters into these kinds of inventory commitments when it has a "solid

3  commitment" from a customer. (SAC ¶ 88.) It is, in other words, the exception

4  rather than the rule. And despite Plaintiff's breezy claim that STEC always knows

5  precisely how much it is going to sell two quarters in advance, Plaintiff alleges no

6  facts suggesting that this is true.

7       Plaintiff's argument that the Prospectus omitted material information about

8  IBM is also without merit. Plaintiff's opposition points to a May 11, 2009

9  statement by Manouch Moshayedi. (Opp. at 22.) But this statement was made four

10  months before the August 3, 2009 Prospectus was filed. On the day the Prospectus

11  was filed, Manouch made clear that other OEMs (which would include IBM) were

12  "going through the same trials and tribulations…" and that they were "maybe a

13  quarter or two away [(from August 3, 2009)] from full ramping production." (Ex.

14  W at 226.) Plaintiff's argument thus rests on the suggestion that investors were

15  misled by a statement made four months before the Prospectus was filed, even as

16  they ignored a statement made on the same day the Prospectus was released.[7]

17  Moreover, Plaintiff does not allege any facts showing that the prior statement about

18  IBM was false when made. Because any alleged omissions regarding IBM did not

19  "create an impression of a state of affairs that differ[ed] in a material way from the

20  one the actually exist[ed,]" Plaintiff's claim about IBM fails. *Brody v. Transitional*

21  *Hosp. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).

22       In any event, any alleged statements about future sales to other OEMs are

23  protected by the Safe Harbor. Plaintiff argues that STEC's cautionary language

24  was not "relevant" to sales to other OEMs. (Opp. at 19.) But in fact, the company

25  issued a stream of warnings that its ability to forecast its customers' "fluctuating"

26  --------

27  [7] Plaintiff argues that STEC had a "duty to update opinions and projections" (Opp.
    at 22), which is precisely what Manouch Moshayedi did on the day the Prospectus

28  was filed. (*See* Ex. W at 226.)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

10

Case No. 8:09-cv-01304-JVS (MLG)
REPLY IN SUPPORT OF
MOTION TO DISMISS SAC

1    demand in the SSD market was "limited." (Ex. N at 54; Ex. P at 145; Ex. Z at 310.)

2    Among other things, STEC warned that "the composition of [its] major customer

3    base changes from quarter to quarter" and that it "expect[ed] this variability to

4    continue in the future." (Ex. Y at 253.) Plaintiff fails to address this language in its

5    opposition; rather, Plaintiff argues that STEC's cautions were outweighed by the

6    fact that "Defendants specifically told investors that their knowledge of future sales

7    was greater for ZeusIOPS than for STEC's other products." (Opp. at 19-20) (citing

8    SAC ¶¶ 1, 91, 125-29.) But even if the growth in ZeusIOPS "improved" STEC's

9    general visibility, it does not mean that STEC could anticipate every quarterly

10   fluctuation in customer demand, and it certainly doesn't nullify STEC's warnings

11   to the contrary. (*See id.*)

12                    **b.      The Comment Letter Response To The SEC**

13          Plaintiff does not offer a meaningful response to any of Defendants'

14   arguments about STEC's comment letter response to the SEC. First, Plaintiff does

15   not explain how STEC's statement could be false in light of the complete

16   correspondence, which clearly shows that STEC was referring to its ability to find

17   replacement customers for minor purchase orders with EMC in 2008. (Mot. at 23.)

18   Plaintiff's conclusory assertion that STEC's statement to the SEC "was false

19   regarding the EMC Agreement" (Opp. at 23) does not answer this point.

20          Second, Plaintiff claims that it does not need to allege reliance because that

21   is "a fact issue not resolvable on this motion." (Opp. at 23.) But the law is clear:

22   Plaintiff must allege reliance on a public statement to withstand a motion to

23   dismiss. *See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S.

24   148, 159 (2008); *Batwin v. Occam Networks, Inc.*, 2008 U.S. Dist. LEXIS 52365,

25   at *47 (C.D. Cal. July 1, 2008); *In re Van Wagoner Funds, Inc. Sec. Litig.*, 382 F.

26   Supp. 2d 1173, 1187 (N.D. Cal. 2004). Logic alone dictates that Plaintiff cannot

27   claim it was harmed by relying on a statement that was not public. Since it is

28   undisputed that STEC's comment letter response was not available until, at the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

11

Case No. 8:09-cv-01304-JVS (MLG)
REPLY IN SUPPORT OF
MOTION TO DISMISS SAC

1  earliest, December 4, 2009, Plaintiff fails to plead reliance. (*See* Ex. FF at 511.)

2      Third, Plaintiff fails to plead loss causation. As the Court previously held,

3  Plaintiff has "not alleged that the market became aware of, and the resulting stock

4  drop resulted from, disclosure of the fact that [STEC's comment letter response]

5  was incorrect." (Order at 10) (quotation omitted). Plaintiff's SAC does nothing to

6  cure this defect. Plaintiff's conclusory assertion that "causation still has been

7  adequately alleged" (Opp. at 23) does not suffice. Moreover, Plaintiff provides no

8  explanation how the "relevant truth" could be revealed on November 3, 2009 when

9  the statement at issue was not even made public until at least December 4, 2009.

10      **4.     Plaintiff's Scienter Allegations Are Inadequate**

11      Plaintiff cites 12 allegations that purportedly "support[] Defendants'

12  scienter…." (Opp. at 26-27.) But none of these allegations, viewed either alone or

13  "holistically," give rise to a "strong inference" of scienter. *See Metzler*, 540 F.3d at

14  1055; 15 U.S.C. § 78u-4(b)(2). With respect to the EMC Agreement, Plaintiff

15  argues that scienter can be inferred from: (1) Manouch Moshayedi's statement that

16  the Agreement was a "one-off deal"; and (2) the failure to file the Agreement with

17  the SEC. (Opp. at 26.) But the Court has already rejected those very arguments.

18  (Mot. at 14.) Plaintiff also points to Manouch's August 3, 2009 statement that

19  STEC would not commit in advance to making large purchases from its own

20  suppliers without a "solid commitment" from its customers. (*See* Ex. W. at 224.)

21  But the absence of a "solid commitment" or major purchase agreement does not

22  mean that a customer will not make purchases in the future; it simply means that

23  STEC would not have the certainty required to buy its supplies in advance for that

24  customer's purchases.

25      The defects in Plaintiff's CW allegations also undercut any inference of

26  scienter. Without any personal knowledge of STEC's accounting practices, the

27  statements from CW3 and CW4 cannot support a strong inference of scienter with

28  respect to the recognition of 2Q09 revenue. *See Zucco*, 552 F.3d at 996; *In re*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

12

Case No. 8:09-cv-01304-JVS (MLG)
REPLY IN SUPPORT OF
MOTION TO DISMISS SAC

*Downey Sec. Litig.*, 2009 U.S. Dist. LEXIS 83443, at \*30-35 (N.D. Cal. Aug. 21, 2009). Moreover, the statements of these CWs contain no firsthand information that any particular Defendant knew or was deliberately reckless about STEC's revenue recognition. (SAC ¶ 190-98.) This is not sufficient. Plaintiff's argument that "Manouch told employees to ship defective and unordered products and to channel stuff" (Opp. at 26-27), fails for the same reasons.

Plaintiff's argument that "Defendants knew that IBM was selling ZeusIOPS only as an option, because STEC's engineers had 'daily and weekly' meetings with the engineers of each ZeusIOPS customer" (Opp. at 26), is conclusory and provides absolutely no information about each Individual Defendant's state of mind. Similarly, Plaintiff's attempt to plead scienter via a statement by Manouch Moshayedi regarding Sun on May 11, 2009 fails because Plaintiff: (1) does not connect that alleged false statement to any of the alleged false statements at issue here, *see Metzler*, 540 F.3d at 1069; and (2) fails to allege particularized facts that the statement about Sun (*see* Ex. Q at 165) was false or made with scienter.[8] These same failures also undercut any attempt by Plaintiff to establish a strong inference of scienter through the allegedly false letter to the SEC. (Opp. at 26.)

Plaintiff also argues that "each misstatement involved one of STEC's core operations." (Opp. at 27.) But Plaintiff badly misconstrues the "core operations doctrine" and ignores STEC's showing that the doctrine could not conceivably apply here. (Mot. at 26.) Plaintiff's next argument, that an inference of scienter may arise because "Manouch and Mark [Moshayedi] have been subpoenaed by the SEC" (Opp. at 27), cuts against the clear weight of authority on that issue. *See, e.g.*, *In re VeriFone Holdings, Inc. Sec. Litig.*, 2011 WL 1045120, at \*11-12 (N.D.

---

[8] Plaintiff's complete reliance on CW2 in this regard is insufficient. Plaintiff does not describe why CW2, a "Chief Technologist for Storage and Data Management" (SAC ¶ 178) – i.e., an engineer – would have personal knowledge of the business dealings between STEC and Sun. *See Zucco*, 552 F.3d at 996.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SILICON VALLEY

13

Case No. 8:09-cv-01304-JVS (MLG)
REPLY IN SUPPORT OF
MOTION TO DISMISS SAC

1   Cal. Mar. 22, 2011); *Buritt v. NutraCea*, 2010 WL 668806, at *7 (D. Ariz. Feb. 25,

2   2010); *Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 628 n. 2 (4th Cir. 2008);

3   *In re Hutchinson Tech., Inc. Sec. Litig.*, 536 F.3d 952, 962 (8th Cir. 2008).

4       Finally, Plaintiff relies on Mark and Manouch Moshayedi's stock sales.

5   (Opp. at 27-30.) Plaintiff argues that in *Ronconi* (cited in Defendants' opening

6   brief), "the price at which [defendants] sold is about where the stock ended up after

7   the alleged false statements were corrected." (Opp. at 28.) But nothing in *Ronconi*

8   suggests that factor drove the scienter analysis, and *In re Vantive Corp. Sec. Litig.*,

9   283 F.3d 1079 (9th Cir. 2002), puts any debate about this issue to rest. In *Vantive*,

10  the Ninth Circuit found no inference of scienter when an insider "sold the

11  overwhelming majority of shares for between $20 and $24 per share," the stock

12  price "peaked at $39," and after the bad news became public, the "stock fell to as

13  low as $11...." *Id.* at 1084, 1093-94. On those facts, which are substantially

14  indistinguishable from those at issue here, the court cited *Ronconi* and again made

15  clear that "there is no strong inference of scienter when insiders 'miss the boat'" so

16  badly. *Id.* at 1094; *see also Osher v. JNI Corp.*, 256 F. Supp. 2d 1144, 1164-65

17  (S.D. Cal. 2003). The same is true here.

18       **B.    Plaintiff's Securities Act Claims Fail**

19       Plaintiff does not appear to dispute that its remaining Securities Act claims

20  against STEC or the Individual Defendants must satisfy the heightened pleading

21  requirements of Rule 9(b). (*See* Und. Opp. at 1.) Plaintiff nonetheless argues that

22  STEC's Form 10-Q for 2Q09 was misleading because it did not describe the EMC

23  Agreement as a "one-off" contract. (*Id.* at 11-14.) Plaintiff reasons that because

24  Item 303(a) of Reg. S-K requires the disclosure of "presently known trends[,]"

25  STEC was required to disclose that "going forward, EMC was not expected to

26  make a similar volume of purchases every six months." (SAC ¶ 323.) As an initial

27  matter, Item 303(a) of Reg. S-K "governs the disclosure of known historic trends,

28  but does not provide a basis of liability where a corporation fails to 'disclose' the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

14

Case No. 8:09-cv-01304-JVS (MLG)
REPLY IN SUPPORT OF
MOTION TO DISMISS SAC

1   future." *Belodoff v. Netlist, Inc.*, 2009 U.S. Dist. LEXIS 78309, at *27 (C.D. Cal.

2   Sept. 1, 2009) (quotation omitted). But in any event, Plaintiff fails to allege or

3   explain how Defendants would have had knowledge of an "adverse" trend in sales

4   to EMC on August 3, 2009 – a mere 18 days after the $120 million EMC

5   Agreement was announced. Plaintiff's argument that STEC should have disclosed

6   an adverse "trend" relating to the EMC Agreement is baseless.

7       Finally, Plaintiff argues that the failure to file the EMC Agreement with its

8   Form 10-Q for 2009 misled investors into believing that the $120 million EMC

9   Agreement was an ordinary course contract and that STEC was not substantially

10  dependent on the Agreement. (SAC ¶¶ 319-20.) But the Court has already

11  considered – and rejected – this very argument. (Order at 8.) Plaintiff's opposition

12  points to nothing in the SAC that would change that analysis.

13  **III.   CONCLUSION**

14      For the foregoing reasons, Defendants respectfully request that their motion

15  to dismiss be granted and that Plaintiff's SAC be dismissed with prejudice.

16

17

18  Dated:  May 16, 2011                              Respectfully submitted,

19                                                    LATHAM & WATKINS LLP

20

21                                                    By_____/s/_____
22                                                       Patrick E. Gibbs
                                                         Attorneys for Defendants STEC, Inc.,
23                                                       Manouch Moshayedi, Mark
                                                         Moshayedi, Raymond D. Cook, and
24                                                       Rajat Bahri

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SILICON VALLEY

15

Case No. 8:09-cv-01304-JVS (MLG)
REPLY IN SUPPORT OF
MOTION TO DISMISS SAC