1   BERNSTEIN LITOWITZ BERGER
        & GROSSMANN LLP
2   BLAIR A. NICHOLAS  (Bar No. 178428)
    blairn@blbglaw.com
3   NIKI L. MENDOZA  (Bar No. 214646)
    nikim@blbglaw.com
4   BENJAMIN GALDSTON  (Bar No. 211114)
    beng@blbglaw.com
5   JOSEPH W. GOODMAN  (Bar No. 230161)
    joseph.goodman@blbglaw.com
6   12481 High Bluff Drive, Suite 300
    San Diego, CA 92130
7   Tel:   (858) 793-0070
    Fax:   (858) 793-0323
8
9   *Counsel for Class Member*
    *West Virginia Laborers'*
10  *Pension Trust Fund*

11

12              UNITED STATES DISTRICT COURT

13           CENTRAL DISTRICT OF CALIFORNIA

14              SOUTHERN DIVISION

15  | IN RE STEC, INC. SECURITIES | SACV09-1304-JVS (MLGx) |
    | LITIGATION | |

16  | | **CLASS MEMBER WEST VIRGINIA** |
17  | | **LABORERS' PENSION TRUST** |
    | This Document Relates To: | **FUND'S OPPOSITION TO CLASS** |
    | | **REPRESENTATIVES' RENEWED** |
18  | ALL ACTIONS | **PURPORTED "UNOPPOSED"** |
    | | **MOTION FOR PRELIMINARY** |
19  | | **APPROVAL OF CLASS ACTION** |
    | | **SETTLEMENT** |
20  | | |
21  | | Date:        February 11, 2013 |
    | | Time:        1:30 p.m. |
22  | | Judge:       Honorable James V. Selna |
    | | Courtroom:   10C |
23

24

25

26

27

28

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................. ii

I.    PRELIMINARY STATEMENT ............................................. 1

II.   RELEVANT PROCEDURAL HISTORY .................................. 7

    A.    The Court Dismisses The Securities Act Claims For Lack
       Of Standing ................................................................ 7

    B.    The Court Expressly Refuses (Twice) To Certify A Class
       That Includes Any Securities Act Claims ........................ 8

    C.    Substantial Discovery Of The Exchange Act Claims Is
       Completed As The Exchange Act Parties Prepare For
       The November 6, 2012 Trial Date ................................. 9

    D.    Prosecution Of The Exchange Act Case Is Stayed While
       The Exchange Act Parties Finalize Negotiations Of A
       Proposed Settlement ................................................. 11

    E.    A New Class Representative To Represent The Securities
       Act Claims Is Proposed – For The First Time – In
       Connection With Seeking Approval Of A Settlement
       That Releases Those Claims ....................................... 12

    F.    The Court Denies The Motion For Preliminary Approval
       Of The Settlement Due To Ripperda's Lack Of
       Typicality And Adequacy ........................................... 14

III.  THE RENEWED MOTION PAPERS CONFIRM THAT THE
     PROPOSED SETTLEMENT FAILS TO SATISFY THE
     REQUIREMENTS FOR PRELIMINARY APPROVAL ............ 15

    A.    The Renewed Motion Papers Confirm That Ripperda Has
       Not Adequately Represented Securities Act Claimants ...... 16

    B.    The Renewed Motion Confirms That The Securities Act
       Claims Cannot Be Released Through The Settlement ........ 19

    C.    At A Minimum, The Proposed Class Notice Remains
       Deficient ................................................................ 24

IV.   CONCLUSION ................................................................ 25

OPP. TO CLASS REPS' RENEWED MTN FOR
PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT
No. SACV09-1304-JVS (MLGx)

# TABLE OF AUTHORITIES

**Cases**                                                                       **Page(s)**

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)..................................................................15

*In re Cadence Design Sys., Inc. Sec. Litig.*,
   Case No. 08-4966 SC, ECF No. 158 (N.D. Cal. Aug. 26, 2011) ..................3, 22

*In re Chiron Corp. Sec. Litig.*,
   No. C-04-4293 VRW, 2007 WL 4249902 (N.D. Cal. Nov. 30, 2007) ..............25

*In re Countrywide Fin. Corp. Sec. Litig.*,
   07-cv-05295-MRP, ECF No. 839 (C.D. Cal. June 16, 2010)........................3, 24

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005).....................................................................6

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
   02-md-1486-PJH (N.D. Cal. Nov. 15, 2007)...................................23

*In re Herald, Primeo, and Thema Sec. Litig.*,
   No. 09 Civ. 289 (RMB), 2011 WL 4351492 (S.D.N.Y. Sept. 15, 2011).....15, 25

*Herman & MacLean v. Huddleston*,
   459 U.S. 375 (1983).....................................................................6

*Hesse v. Sprint Corp.*,
   598 F.3d 581 (9th Cir. 2010),
   *cert. denied, Sprint Spectrum, L.P. v. Hesse*, 131 S. Ct. 506 (2010)...........passim

*In re IndyMac ERISA Litig.*,
   08-cv-04579 DDP, ECF No. 107 (C.D. Cal. June 28, 2010) ...........................24

*In re Inter–Op Hip Prosthesis Liab. Litig.*,
   204 F.R.D. 330 (N.D. Ohio 2001) ....................................................15

*Jaime v. Standard Parking Corp.*,
   No. CV-08-4407, 2010 WL 2757165 (C.D. Cal. July 12, 2010) ......................23

*Kagan v. Wachovia Sec., L.L.C.*,
   Nos. 09-5337 SC, 11-0412 SC, 2012 WL 1109987 (N.D. Cal. Apr. 2,
   2012) ..........................................................................................3

*Kircher v. Putnam Funds Trust*,
  547 U.S. 633 (2006)......................................................................................2, 8

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ..............................................................22

*SEC v. Moshayedi*,
  No. 8:12-cv-01179-JVS-MLGx (C.D. Cal. July 19, 2012) ...............................10

*In re STEC Inc. Sec. Litig.*,
  2011 WL 2669217 (C.D. Cal. June 17, 2011) ..................................................7, 8

*In re STEC, Inc. Sec. Litig.*,
  2011 WL 4442822 (C.D. Cal. Jan. 10, 2011) ......................................................7

*Villegas v. J.P. Morgan Chase & Co.*,
  No. C 09-00261 SBA, 2012 WL 3542187 (N.D. Cal. Aug. 14, 2012) .............15

*West Virginia Laborers' Trust Fund v. STEC Inc.*,
  No. 11-01171-JVS, 2011 WL 6156945 (C.D. Cal. Oct. 7, 2011) ...................2, 8

*In re Worlds of Wonder Sec. Litig.*,
  35 F.3d 1407 (9th Cir. 1994) ...............................................................................6

## I.   **PRELIMINARY STATEMENT**

West Virginia Laborers' Pension Trust Fund ("West Virginia Laborers"), the putative class representative in *West Virginia Laborers' Trust Fund v. STEC, Inc.*, No. 30-2011-00489022-CU-SL-CXC (Orange County Super. Ct.) (the "Securities Act Case"), on behalf of itself and the putative class in that case (the "Securities Act Class"[1]), and a member of the certified class in this case (the "Exchange Act Class"), hereby submits this Opposition to the "Renewed Unopposed Motion for Preliminary Approval of Class Action Settlement" filed on December 14, 2012 ("Renewed Motion," ECF No. 352).

The parties in this case, once again, collusively seek this Court's rubber-stamp preliminary approval of a proposed settlement that attempts to resolve not only the claims under the Exchange Act of 1934 ("Exchange Act") – claims that the Court previously certified for class treatment – but also the more valuable claims under the Securities Act of 1933 ("Securities Act") – claims that the Court has now three times refused to certify.   Despite Lead Plaintiff's submission of additional self-serving declarations, the material facts have not changed since the Court previously denied preliminary approval, and the record continues to demonstrate that the Court should again deny preliminary approval to avoid wasting resources and causing confusion to class members.   Specifically:

- *No certified class representative has standing to release the Securities Act claims*.   The Exchange Act parties do not dispute that, without such standing, and without the Securities Act claims having been "vigorously" prosecuted, their release is prohibited by the Ninth Circuit's decision in *Hesse v. Sprint Corp.*, 598 F.3d 581, 589 (9th

---

[1] The Securities Act Class is defined as follows:   all persons or entities who purchased or otherwise acquired common stock of STEC, Inc. ("STEC") pursuant or traceable to STEC's Secondary Offering on or about August 11, 2009 (the "Offering"), and who were damaged thereby.   *See* ECF No. 330-2, ¶143.

Cir. 2010) (holding that class action settlement cannot release claims where the named plaintiff did not share the claims of some of the class members, and "fail[ed] to prosecute the action vigorously on behalf of the entire class"), *cert. denied, Sprint Spectrum, L.P. v. Hesse*, 131 S. Ct. 506 (2010));

- **The Court dismissed the Securities Act claims from the complaint without prejudice for lack of standing**, ECF No. 200, and Lead Plaintiff failed to amend the complaint to reassert the Securities Act claims until *after* the proposed settlement was reached;

- **This Court rejected Defendants' attempt to improperly remove the Securities Act claims asserted in the Securities Act Case to this Court.** *See West Virginia Laborers' Trust Fund v. STEC Inc.*, No. 11-01171-JVS, 2011 WL 6156945, at *3-4 (C.D. Cal. Oct. 7, 2011) (finding that the federal court "has no jurisdiction to touch the case on the merits, and the proper course is to remand to the state court that can deal with it"; citing *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 643-44 (2006)); and

- **The Court previously rejected – now three times – requests to include Securities Act claims in the certified class**.

The fact that the settling parties proffered, at the eleventh hour and only for purposes of releasing the more valuable Securities Act claims, a new proposed individual class representative, Mark Ripperda, to purportedly represent the Securities Act claims (only to release them) **has not changed**, and, again, should not be endorsed. Any *post hoc* effort to dress up the record cannot change the fact that Ripperda began his very limited involvement in this case long after settlement negotiations were well underway, when no claims were being actively prosecuted, and within as little as one week before the settlement was largely agreed upon. *See Hesse*, 598 F.3d at 589 (claims cannot be released unless a class representative

"prosecute[s]" the claims "vigorously").  The Renewed Motion papers, including Ripperda's own supplemental declaration, only further confirm that neither he nor even his counsel had any involvement in the actual prosecution of the case, and was brought in only as a token representative, and only for purposes of attempting to provide a mechanism for releasing – not prosecuting – the more valuable Securities Act claims.

Following West Virginia Laborers' opposition to Lead Plaintiff's initial purported "unopposed" motion for preliminary approval, the Court denied preliminary approval of the proposed settlement.  ECF No. 346.  Specifically, the Court held that:  (1) Ripperda failed to satisfy the typicality requirement because he lacked standing to assert the Securities Act claims as alleged in the operative complaint; and (2) Ripperda failed to satisfy the adequacy requirement, both because he lacked standing, and because Lead Plaintiff has not satisfied the burden of showing that Ripperda and his counsel are able to prosecute the claims vigorously.[2]  The Court explained that, as West Virginia Laborers pointed out:

> Plaintiffs have not established Ripperda or his counsel's adequacy to prosecute the Securities Act claims nor supplied any information regarding their efforts to negotiate the allocation of these claims from the net settlement fund.  In fact, Ripperda and his counsel have been involved in this case only since August 2012; counsel attended one mediation session in which Ripperda was "available by telephone."

---

[2] Indeed, this is not the only court in this District that has refused to grant this Lead Counsel's motion for preliminary approval in a securities class action settlement. *See, e.g., In re Countrywide Fin. Corp. Sec. Litig.*, 07-cv-05295-MRP, ECF No. 839 (C.D. Cal. June 16, 2010), Exhibit B to the Galdston Declaration previously submitted (ECF No. 333-1); *see also In re Cadence Design Sys., Inc. Sec. Litig.*, Case No. 08-4966 SC, ECF No. 158 (N.D. Cal. Aug. 26, 2011); *Kagan v. Wachovia Sec., L.L.C.*, Nos. 09-5337 SC, 11-0412 SC, 2012 WL 1109987, at *7-8 (N.D. Cal. Apr. 2, 2012).

> Furthermore, Ripperda did not play an active role during discovery and began his participation late in the settlement negotiation stage. Finally, Plaintiffs' only basis for qualification of Ripperda's counsel is that the Court previously found that Co-Lead Counsel was qualified and capable, and so "Ripperda's counsel too are qualified and experienced."

ECF No. 346, at *12-13 (citations omitted).

Following the Court's denial of preliminary approval, Lead Plaintiff merely submitted a "renewed" purportedly "unopposed" motion for preliminary approval on the same terms, and simultaneously filed an amended complaint. Instead of being able to cure even the most glaring deficiencies noted by West Virginia Laborers (and the Court), the Renewed Motion papers only further confirm that approval of this proposed settlement, with Ripperda as a stand-in representative only for purposes of attempting to provide a mechanism for releasing the valuable Securities Act claims, cannot be granted.

Even assuming *arguendo* that amending a complaint solely for purposes of releasing additional claims could supply the previously lacking standing, and therefore arguably satisfy the typicality requirement, the renewed settlement papers further confirm that Ripperda is not – and can never be – an adequate class representative for purposes of releasing the Securities Act claims in this settlement. As the Court previously recognized, "Ripperda and his counsel have been involved in this case only since August 2012; counsel attended one mediation session in which Ripperda was 'available by telephone.'" ECF No. 346, at *12. This fact has not changed. Indeed, the renewed settlement papers further confirm that, unlike West Virginia Laborers who has prosecuted the Securities Act claims since July 1, 2011, Ripperda was not involved in prosecuting the Securities Act claims *at all*. *See* Supplemental Memorandum Of Points And Authorities In Support Of Class Representatives' Renewed Unopposed Motion For Preliminary Approval Of

OPP. TO CLASS REPS' RENEWED UNOPPOSED
MTN FOR PRELIMINARY APPROVAL
No. SACV09-1304-JVS (MLGx)

Class Action Settlement, filed on December 14, 2012 ("Supp. Memo.," ECF No. 353), at p. 6.

Furthermore, as the Court previously recognized "Ripperda did not play an active role during discovery and began his participation late in the settlement negotiation stage." ECF No. 346, at *12. These facts, too, have not changed. Rather, the renewed settlement papers further confirm that Ripperda did not agree to serve as a class representative until August 2012, and that his counsel's first involvement in the litigation was not until the third mediation session with Judge Phillips on September 5, 2012. Supp. Memo. at p. 6. This begs the question why Ripperda was not proposed as a class representative earlier (and, if necessary, amend the complaint as has now been done) at the time of the first (or even second) motion for class certification – when the case was actually being litigated. Instead, the parties deliberately and repeatedly excluded from the settlement negotiations the institutional investor that was actively pursuing the Securities Act claims, West Virginia Laborers, and waited until after Lead Plaintiff and Lead Counsel had largely agreed upon a settlement with Defendants before seeking to include any Securities Act representative in the settlement process.

As before, the Court should again refuse to grant preliminary approval to avoid wasting class resources – and potentially harmful class member confusion – where an unknown class representative is proposed by the settling parties for the first time only as part of a pre-packaged settlement *after* the litigation and settlement negotiations were largely completed without a representative of the Securities Act claims participating in the litigation, including:

- over 2 ½ years after the litigation began;
- following completion of at least 31 depositions, and production of over 1.8 million pages of documents, and expert reports;
- just one month before trial was scheduled to begin on November 6, 2012; and

- after over eight months of settlement negotiations (with the proposed class representative appearing within as little as one week before a settlement was largely agreed upon, as confirmed by the newly submitted declarations of Ripperda and his counsel).

These facts and the additional fact that the settlement was largely agreed to without separate representation by a qualified plaintiff with fiduciary experience and standing to assert the more valuable Securities Act claims,[3] and without concern for the amount that would be allocated to the more valuable Securities Act claims – and after the Court dismissed the Securities Act claims for lack of standing, remanded the Securities Act claims to state court, and twice (now, thrice) refused to certify a class for purposes of the Securities Act – *have not changed.* The same (and additional) serious concerns still exist about the adequacy of the

---

[3] The settling parties admit that Securities Act claims are more valuable. *See* Supp. Memo., at pp. 6-7; Court Order (ECF No. 314), at p. 6. Indeed, Exchange Act claims require proof of scienter and reliance, neither of which are required to prevail on the Securities Act claims. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005). Similarly, Lead Plaintiff has the burden to prove loss causation on the Exchange Act claims; *i.e.*, "a causal connection between the material misrepresentation and the loss." *Id.* at 342, 346-48. By comparison, the Securities Act claims are strict liability claims that require no proof of loss causation, as the absence of loss causation is an affirmative defense for which Defendants bear the burden of proof. *See, e.g., In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1422 (9th Cir. 1994). Additionally, the Securities Act claims seek a different remedy (statutory damages) than the Exchange Act claims (out-of-pocket losses). *See, e.g., Herman & MacLean v. Huddleston*, 459 U.S. 375, 387 n.23 (1983) (noting that the two Acts have different remedies that "redress different misconduct"); *see also* Supp. Memo., at p. 13, n.12 (acknowledging differences in damage calculations).

newly proposed class representative, and the adequacy of the amount that will be allocated to the Securities Act claimants.[4]

Preliminary approval is no mere formality.  The information provided by Lead Plaintiff, after two rounds of motion practice, further confirms that, under the unique circumstances here, any proposed settlement that attempts to release the Securities Act claims without adequate due process must again be rejected.  These deficiencies will not go away.  They should, therefore, be addressed now, rather than waiting until final approval is sought, and after a class notice has already been disseminated to class members.

## II.  **RELEVANT PROCEDURAL HISTORY**

### A.  **The Court Dismisses The Securities Act Claims For Lack Of Standing**

Beginning on November 6, 2009, several complaints were filed in this Court against STEC and other defendants alleging violations of the Securities Act and Exchange Act.  On August 13, 2010, Lead Plaintiff filed its First Amended Consolidated Complaint ("FAC"), alleging claims pursuant to both the Exchange Act and the Securities Act.  On January 10, 2011, the Court dismissed the FAC with leave to amend, finding among other things that the FAC failed to adequately allege falsity and scienter.  *See In re STEC, Inc. Sec. Litig.*, 2011 WL 4442822 (C.D. Cal. Jan. 10, 2011).

On February 22, 2011, Lead Plaintiff filed its Second Amended Consolidated Complaint ("SAC"), again alleging claims pursuant to both the Exchange Act and the Securities Act.  On June 17, 2011, the Court sustained the Exchange Act claims, *see In re STEC Inc. Sec. Litig.*, 2011 WL 2669217, at *6-12

---

[4] West Virginia Laborers notes that the statutory damages for the Securities Act claims, alone, are estimated to exceed $160 million – more than four times the total settlement amount.

(C.D. Cal. June 17, 2011); however, the Court found that standing was lacking to maintain the Securities Act claims, which the Court dismissed with leave to amend. *Id.* at \*13-14.  Lead Plaintiff elected not to amend the SAC to maintain the Securities Act claims.

Shortly thereafter, West Virginia Laborers filed its class action complaint in state court asserting exclusively Securities Act claims arising from the Offering. Defendants attempted to remove the Securities Act claims asserted in the Securities Act Case to this Court, which this Court rejected as "improper."  *West Virginia Laborers' Trust Fund v. STEC Inc.*, 2011 WL 6156945 (C.D. Cal. Oct. 7, 2011) (the federal court "has no jurisdiction to touch the case on the merits, and the proper course is to remand to the state court that can deal with it"; citing *Kircher*, 547 U.S. at 643-44).

### B.   The Court Expressly Refuses (Twice) To Certify A Class That Includes Any Securities Act Claims

On November 21, 2011, Lead Plaintiff filed its motion for class certification. Lead Plaintiff moved to certify a plaintiff class that included claims both under the Exchange Act, which Lead Plaintiff has standing to maintain, and under the Securities Act, which the Court had previously ruled no representative plaintiff had standing to represent.  West Virginia Laborers moved to intervene to protect the interests of the Securities Act claims asserted on behalf of itself and the putative class in the Securities Act Case.

On March 7, 2012, the Court denied Lead Plaintiff's initial class certification motion, finding that "the proposed Class Representatives are inadequate because they seek to certify a Class that includes individuals who may have claims under the Securities Act, but the Class Representatives do not have standing to bring

those claims."[5]   The Court, however, stayed the action for sixty days, except for fact discovery, to permit Lead Counsel the opportunity to identify a representative plaintiff with standing to maintain the Securities Act claims as alleged in this case and, if successful in identifying such a representative plaintiff, make a motion to amend the complaint to replead with an adequate representative to represent the Securities Act claims.

After failing to identify any plaintiff with standing who was willing to litigate the case on behalf of the Securities Act claims as alleged in this case, on May 25, 2012, Lead Plaintiff resubmitted its prior motion for class certification. Defendants opposed the resubmitted motion, relying on their prior opposition papers.   On June 19, 2012, the Court issued a ruling on the resubmitted class certification motion, certifying the proposed class *"for purposes of asserting the Exchange Act claim."*[6]

**C.    Substantial Discovery Of The Exchange Act Claims Is Completed As The Exchange Act Parties Prepare For The November 6, 2012 Trial Date**

Lead Plaintiff's Renewed Motion papers confirm that there is no dispute that extensive discovery on the Exchange Act claims was completed without the participation of any class member representing the Securities Act claims (despite West Virginia Laborers' repeated requests to participate in and coordinate discovery), and long before any potential class representative for the Securities Act

---

[5] ECF No. 279.   On June 14, 2012, the Ninth Circuit denied Lead Plaintiff's petition for permission to appeal this Court's order denying class certification. ECF No. 313.   This Court's March 7, 2012 Order denied West Virginia Laborers' motion to intervene as moot in light of its denial of class certification.   ECF No. 279, at p. 21.

[6] ECF No. 314.   On September 6, 2012, the Ninth Circuit denied Defendants' petition for permission to appeal this Court's order granting class certification for the Exchange Act claim.   ECF No. 322.

claims was identified "in August 2012" in connection with reaching the final settlement agreement.  Supp. Memo., at p. 6.

Not only was there no Securities Act class representative to vigorously prosecute the Securities Act claims, including through supervising discovery and expert reports pertaining specifically to the Securities Act claims, but discovery and expert reports apparently largely did not address the Offering and issues unique to the Securities Act claims.  For example, although Lead Plaintiff now claims that it did take some discovery on the "due diligence" defense – an affirmative defense potentially available to underwriters (who Lead Plaintiff refused to rename as defendants in the newest complaint[7]) – there apparently was little or no scrutiny of the circumstances surrounding the Offering by Manouch Moshayedi or Mark Moshayedi of nine million shares of their own stock, for a total of $267.8 million, at the same time they were making false statements to investors.  The Offering is the heart of the Securities Act Case being prosecuted by West Virginia Laborers, and the heart of the newly filed Securities and Exchange Commission ("SEC") action against Manouch Moshayedi for insider trading.  *See SEC v. Moshayedi*, No. 8:12-cv-01179-JVS-MLGx (C.D. Cal. filed July 19, 2012).

Indeed, Lead Counsel has admitted in open court that discovery would have been conducted differently if, in fact, Securities Act claims were included in the litigation.  *See* Oct. 7, 2011 Transcript of Proceedings, 5:6-9 ("Just so it's clear the

---

[7] The Renewed Motion papers explain only that the underwriters (named as defendants in the Securities Act Case and previously named as defendants in prior complaints in this action) have an indemnification agreement with STEC.  The fact that the underwriters would potentially be indemnified by STEC in the event they were found liable for their violations of the federal securities laws is irrelevant to the issue of defendants' liability to investors for violations of the federal securities laws.  The indemnification agreement, however, was apparently relevant to Lead Plaintiff in arriving at a settlement amount.  This only further confirms that the newest complaint was filed only for purposes of purporting to provide a mechanism for *releasing* claims, rather than for *prosecuting* claims.

case if there is a [Securities Act] claim in it will require different discovery than would be the case if there is only a[n] [Exchange Act] claim."), attached as Exhibit A to the Supplemental Declaration of Benjamin Galdston submitted herewith. Thus, the Securities Act claims were never "vigorously" prosecuted in this case – by Ripperda or any other proposed class representative. *Hesse*, 598 F.3d at 589.

### D. Prosecution Of The Exchange Act Case Is Stayed While The Exchange Act Parties Finalize Negotiations Of A Proposed Settlement

The Renewed Motion papers further confirm that, by the time Ripperda agreed to represent the Securities Act claims "in August 2002," fact discovery was closed, settlement negotiations were advanced and the case was not being prosecuted actively. Supp. Memo., at p. 6. Tellingly, Ripperda agreed to represent (release) the Securities Act claims at least seven months after the settlement negotiations began, after two mediation sessions had already been completed, and within as little as one week before the settlement was largely consummated.

The Renewed Motion papers confirm what had already been disclosed in STEC's own SEC filings – that by the time Ripperda agreed to become a class representative, the case was not actively being prosecuted as the Exchange Act claims were stayed while the parties finalized negotiations on a proposed settlement, and the settlement had been all but signed.  Indeed, in its quarterly report on Form 10-Q for the second quarter of 2012 (ended June 30, 2012), filed with the SEC on August 7, 2012, STEC publicly disclosed that, following the July 30, 2012 mediation session, the Company had already made material accounting adjustments due to the settlement:

> The Company has revised its assessment of this loss contingency and estimates the range of probable loss for the federal class action to be between $34 million and $36 million. The Company has recorded a $35 million loss accrual in current accrued and other liabilities, which represents the Company's best estimate of the probable loss and is the

mid-point of the estimated settlement range.  The Company has also recorded a receivable of $20 million related to insurance claims receivable based on the estimated amount of probable insurance contribution from the Company's directors and officers insurance. The Company has recorded the estimated settlement loss and related estimated insurance recoveries in other (expense) income in the accompanying statement of operations resulting in a net charge of $15 million for the second quarter ended June 30, 2012. Upon final settlement, the actual loss incurred may vary from the loss recorded at June 30, 2012 and may be subject to future adjustment.

Although West Virginia Laborers repeatedly requested since October 2011 to be included in any settlement discussions that might impact the Securities Act claims asserted by West Virginia Laborers on behalf of the Securities Act Class in the Securities Act Case – claims that the Court dismissed from this action for lack of standing and which are explicitly excluded from the certified Exchange Act class – the parties in this action steadfastly excluded West Virginia Laborers in such discussions.

**E.     A New Class Representative To Represent The Securities Act Claims Is Proposed – For The First Time – In Connection With Seeking Approval Of A Settlement That Releases Those Claims**

On October 5, 2012, Lead Plaintiff filed the initial Settlement Motion seeking preliminary approval of the same settlement proposed now, and, for the first time, seeking certification of a new class representative to represent (for purposes of releasing) the Securities Act claims.  The initial Settlement Motion stated only that Ripperda agreed to serve as a class representative "in August 2012," and that the two law firms representing him (but not him) "reviewed the pleadings, the discovery record, and other aspects of this case prior to joining the Parties at a third mediation session with Judge Phillips on September 5, 2012," at

OPP. TO CLASS REPS' RENEWED UNOPPOSED
MTN FOR PRELIMINARY APPROVAL
No. SACV09-1304-JVS (MLGx)

which time "the Parties came very close to settling."  ECF No. 327, at p. 6.  The Memorandum of Understanding was fully executed just six days later, on September 11, 2012.  *Id.*

Following receipt of the initial Settlement Motion, counsel for West Virginia Laborers promptly sought additional material information from Lead Counsel (some of which had previously been requested but not provided), necessary to determine whether the proposed settlement could possibly satisfy even the lower standard for preliminary approval.  *See* October 11, 2012 letter from B. Galdston to T. Dubbs, attached as Exhibit C to the Galdston Declaration (ECF No. 333-1).[8] Lead Counsel, however, has continued to refuse to provide the bulk of the requested information.[9]

---

[8] For example, West Virginia Laborers requested: (i) an explanation as to how the net settlement fund will be allocated among the more valuable Securities Act claims and the less valuable Exchange Act claims; (ii) the amount and character of any attorneys' fees and expenses that will be sought; information to support Ripperda's purported adequacy to serve as class representative, such as when he first learned about or became involved in this action, the date that he agreed to seek appointment as a class representative, and the extent of his role in monitoring class counsel's activities; (iii) information to support Ripperda's counsel's purported adequacy to serve as class counsel, such as how and when they became involved in this action, whether they have any record of success in complex cases such as this one, and how many securities class actions they have prosecuted; and (iv) all damages analyses and reports, including any separate analysis of the Securities Act claims in connection with any mediation of this action; and identification and explanation for the separate consideration obtained – if any – to resolve the Securities Act claims, and any claims against parties who are not defendants in the federal class action.

[9] By letter dated October 15, 2012, Lead Counsel responded in part as follows: "We will schedule a meet and confer with you to discuss your request after you establish that your client, West Virginia Laborers' Pension Trust Fund (the "West Virginia Laborers"),[] is a member of the settlement class and that it does not intend to opt out of the class in order to pursue its own action against STEC, Inc. and related defendants in California state court."  *See* Exhibit E to Galdston Decl. (ECF No. 333-1).  Lead Counsel's attempts to require a class member to make and

OPP. TO CLASS REPS' RENEWED UNOPPOSED
MTN FOR PRELIMINARY APPROVAL
No. SACV09-1304-JVS (MLGx)

**F.    The Court Denies The Motion For Preliminary Approval Of The Settlement Due To <u>Ripperda's Lack Of Typicality And Adequacy</u>**

On November 9, 2012, the Court denied preliminary approval of the proposed settlement.  ECF No. 346.  Specifically, the Court held that: (1) Ripperda failed to satisfy the typicality requirement because he lacked standing to assert the Securities Act claims, claims that were not even alleged in the operative complaint; and (2) Ripperda failed to satisfy the adequacy requirement, both because he lacked standing, and because plaintiffs "have not satisfied the burden of showing that Ripperda and his counsel are able to prosecute the claims vigorously."  *Id.* at *12-13.  The Court explained that, as West Virginia Laborers pointed out:

> Plaintiffs have not established Ripperda or his counsel's adequacy to prosecute the Securities Act claims nor supplied any information regarding their efforts to negotiate the allocation of these claims from the net settlement fund.  **In fact, Ripperda and his counsel have been involved in this case only since August 2012; counsel attended one mediation session in which Ripperda was "available by telephone."  Furthermore, Ripperda did not play an active role during discovery and began his participation late in the settlement negotiation stage**.  Finally, Plaintiffs' only basis for qualification of Ripperda's counsel is that the Court previously found that Co-Lead Counsel was qualified and capable, and so "Ripperda's counsel too are qualified and experienced."

*Id.* at *12-13 (citations omitted; emphasis added).

---

reveal its decision whether to opt out before the opt out deadline – and, indeed, before the proposed Class Notice is even complete – is surprising, inappropriate, and without any legal support.

OPP. TO CLASS REPS' RENEWED UNOPPOSED
MTN FOR PRELIMINARY APPROVAL
No. SACV09-1304-JVS (MLGx)

The Court held (again) that a class that includes Securities Act claims could not be certified because Ripperda failed to meet the typicality and adequacy requirements for a class representative. *Id*. at *13. Because a class as stated in the proposed settlement could not be certified, the Court denied the motion for preliminary approval of settlement.

## III. THE RENEWED MOTION PAPERS CONFIRM THAT THE PROPOSED SETTLEMENT FAILS TO SATISFY THE REQUIREMENTS FOR PRELIMINARY APPROVAL

Preliminary approval of a proposed class action settlement may be granted only if sufficient information is provided to satisfy the Court that: "[1] the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval." *Villegas v. J.P. Morgan Chase & Co.*, No. C 09-00261 SBA, 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012)). Unquestionably, the Court should not "simply 'rubber-stamp' a motion for . . . preliminary approval . . . ." *In re Herald, Primeo, and Thema Sec. Litig.*, No. 09 Civ. 289 (RMB), 2011 WL 4351492, at *5 (S.D.N.Y. Sept. 15, 2011) (denying preliminary approval; quoting *In re Inter–Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 338 (N.D. Ohio 2001)).

In addition, as this Court recognized – and as is especially true under the unique circumstances of this case where the settling parties are attempting to release claims that were not even prosecuted in this case but have been and are being pursued in a wholly separate case by a sophisticated, experienced fiduciary – "the settlement context 'demand[s] undiluted, even heightened, attention' to 'unwarranted or overbroad class definitions.'" ECF No. 346, at *8 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).

### A.    The Renewed Motion Papers Confirm That Ripperda Has Not Adequately Represented Securities Act Claimants

The Renewed Motion papers confirm that the proposed settlement was reached without *any* understanding of how the settlement would be allocated among the Exchange Act claims, and the more valuable Securities Act claims.  The initial Settlement Motion stated in conclusory fashion that the proposed Plan of Allocation "groups all Securities Act claimants together at one level of compensation and all Section 10(b) claimants at a somewhat lower level of compensation."  Yet the proposed Plan of Allocation in the Class Notice initially submitted for the Court's approval did not include even a general explanation – let alone a specific numerical formula – as to how the net settlement fund will be allocated among the more valuable Securities Act claims and the Exchange Act claims.

Only after West Virginia Laborers exposed this deficiency did Lead Plaintiff respond, in a footnote, that "Lead Plaintiff and Class Representative Mark Ripperda continue to negotiate the plan of allocation," and that the proposed plan of allocation and attorney fee percentage "will be submitted to the Court prior to the preliminary approval hearing."  Opposition to Request for Extension (ECF No. 331), at p. 3 n.2.  The fact that the settlement was largely agreed to without any involvement by any plaintiff representing the more valuable Securities Act claims, and without separate negotiation for or evaluation of the amount that would be allocated to the more valuable Securities Act claims – particularly after the Court dismissed the Securities Act claims for lack of standing, remanded the Securities Act claims to state court, and refused (twice) to certify a class for purposes of the Securities Act – raises further concerns about the adequacy of the recovery to the Securities Act Class.

And now, after preliminary approval was denied, the proposed Plan of Allocation confirms that the Securities Act claims were not adequately represented

despite Lead Plaintiff's insinuation that Ripperda somehow contributed to the plan of allocation's provision for "a 25% premium" for Securities Act claimants.  Supp. Memo., at pp. 12-14.  Indeed, at best, it remains unclear whether Securities Act claimants will in fact receive a 25% premium or any premium at all.  As drafted, the plan of allocation appears to allow application of a 25% premium to the "Recognized Loss" calculation (ECF No. 352-2, p. 34, 1st paragraph) only *before* capping the amount of the Recognized Loss as the lesser of the Recognized Loss (with the purported premium) or the out-of-pocket loss (*id.* 2nd paragraph, applying the cap after calculation of the "Recognized Loss calculated above").  Thus, as the plan of allocation continues to be stated in the proposed Notice, if a Securities Act claimant's out-of-pocket loss is less than its Recognized Loss (calculated after the premium is applied), the purported 25% premium is nullified because the Recognized Loss is then capped at the out-of-pocket loss.  It, therefore, continues to be unclear, at best, whether *any* premium, or how much, was even arguably obtained for the Securities Act claimants.

Tellingly, Lead Plaintiff submits a declaration of its expert, John D. Finnerty (attached as Exhibit E to the Supplemental Declaration of Thomas A. Dubbs, in purported support of its proposed plan of allocation ("Finnerty Decl." ECF No. 354-5), but the Finnerty Declaration only raises further doubts about the propriety of the plan of allocation as it relates to Securities Act claimants, including but not limited to the illusory nature of the purported premium.  Indeed, the Finnerty Declaration quotes verbatim the bulk of the proposed plan of allocation from the Notice.  The Finnerty Declaration departs from its verbatim recitation, however, when it purports to explain the "premium" to Securities Act claimants.  Whereas the plan of allocation in the Notice states that the premium will be applied before the out-of-pocket loss cap is applied (and thus is illusory for those who suffered a lower out-of-pocket loss), the Finnerty Declaration states "For Section 11 claims, 25% of premium [sic] is added to the Recognized Loss calculated for 10(b)

claims." ECF No. 354-5, ¶23. Thus, at best, it remains ambiguous whether *any* premium was obtained for Securities Act claimants.

With or without this error, the inclusion of this provision in the plan of allocation does nothing to support Ripperda's purported adequacy and nothing to support Lead Plaintiff's argument that the Securities Act claims were vigorously prosecuted as required by *Hesse*.

Additionally, the Finnerty Declaration admits that he was retained for purposes of creating a plan of allocation for the Exchange Act claims – not for the Securities Act claims. ECF No. 354-5, p. 2, 3rd paragraph. He calculated the Recognized Loss per share based on Exchange Act claims, and merely furnished his opinion concerning the reasonableness of the purported 25% "premium" for the Securities Act claims based solely on what has been done in unrelated cases. *Id*. Conspicuously, there is no explanation how the parties arrived at the purported 25% number as fair, reasonable and adequate compensation for the more valuable Securities Act claims. The fact that a particular percentage premium was applied in other, unrelated cases provides no justifiable basis for selecting an apparently arbitrary 25% in these unique circumstances where (unlike the other cases relied on by Lead Plaintiff and its expert), there is an actually pending case being prosecuted by an institutional investor asserting the Securities Act claims.

Indeed, if the Securities Act claims proceed to judgment in the Securities Act Case prosecuted by West Virginia Laborers, the recoveries of Securities Act class members may be advantageous, as they will be based on a specific statutory measure of damages, rather than (as here) added as merely an afterthought to the

plan of allocation, which was admittedly, created only for purposes of the recovery among Exchange Act claims.[10]

At best, the Renewed Motion papers indicate that there was a conference call with Judge Phillips regarding the plan of allocation on October 22, 2012, purportedly supporting the argument that Ripperda or his counsel actually had some substantive say in the plan of allocation.  *See* Suppl. Dubbs Decl., ECF No. 354, at ¶75.  However, that single conference call was held on the very same day that Lead Plaintiff filed its reply brief in support of its initial preliminary approval motion, which included for the first time the purported "premium" amount of 25% (ECF No. 335).  It can hardly be said that the single perfunctory conference call establishes Ripperda's adequacy.

### B.   The Renewed Motion Confirms That The Securities Act Claims Cannot Be Released Through The Settlement

The settling parties, and the Court, apparently understand that a class representative – such as Lead Plaintiff – who does not possess the same valuable claims as other class members (*i.e.,* the Securities Act claims) cannot release those claims through a class action settlement.  *See Hesse*, 598 F.3d 581.  Indeed, in opposing class certification, Defendants relied on *Hesse* and explicitly argued that this Court was correct to hold that Lead Plaintiff's lack of standing to pursue the Securities Act claims creates a "conflict of interest" that makes it an "inadequate class representative."[11]

---

[10] In addition, tellingly, the proposed proof of claim form (ECF No. 352-3) does not even ask whether the common stock was purchased pursuant or traceable to the Offering.

[11] *See In re STEC, Inc. Sec. Litig.*, No. 12-80072 (9th Cir.), Answer In Opposition To Plaintiff's-Petitioner's Petition For Permission To Appeal From Order Denying Class Certification ("Defendants' 9th Circuit Answer"), ECF No. 2-1, filed April 5, 2012.  Defendants explained that there is "no question" in the Ninth Circuit "that a class representative is inadequate when neither he, nor any other class

According to *Hesse*, "[w]ithout adequate representation, a court order approving a claim-preclusive class action settlement agreement cannot satisfy due process as to all members of the class." *Hesse*, 598 F.3d at 588.  The Ninth Circuit in *Hesse* further explained that "[c]lass representation is inadequate if the named plaintiff ***fails to prosecute the action vigorously*** on behalf of the entire class or has an insurmountable conflict of interest with other class members." *Id.* at 589.  In *Hesse,* under circumstances similar to those here – and expressly conceded by Defendants to apply here – the court found lead plaintiff's representation to be "inadequate" and thus the settlement agreement could not preclude "unique causes of action, regardless of the expansive release contained in that judgment." *Id.* at 592 (holding that a judgment approving settlement "cannot preclude the Washington Plaintiffs' unique causes of action, regardless of the expansive release contained in that judgment" because the class plaintiff "fail[ed] . . . to adequately represent the Washington Plaintiffs").[12]

Indeed, the Ninth Circuit explained that a class representative who does not possess the same type of claims as some other class members cannot release those claims:

> Class representation is inadequate if the named plaintiff fails to prosecute the action vigorously on behalf of the entire class or has an insurmountable conflict of interest with other class members.  The

representative, can assert the same claims as absent class members." *Id*. at 14. Defendants argued that the federal district court applied this "well-settled principle" correctly when it concluded that lead plaintiff's lack of standing to assert Securities Act claims creates a "conflict of interest" and makes it an "inadequate class representative." *Id.*

[12] As another "independent" basis for its ruling, the Ninth Circuit also held that a settlement cannot preclude additional causes of action that do not share "an identical factual predicate between their respective claims." *Hesse*, 598 F.3d at 592.

*Benney* Class Plaintiff's representation of the Washington Plaintiffs was inadequate for both reasons.

First, the *Benney* Class Plaintiff did not share the Washington Plaintiffs' B & O Tax Surcharge claims, or even pretend to prosecute those claims on their behalf. . . . It is evident that the *Benney* Class Plaintiff did not vigorously prosecute the claims relevant to this case. . . .

Second, as a result of not possessing the same type of claim as the Washington Plaintiffs, the *Benney* Class Plaintiff had an insurmountable conflict of interest with those members of the class. Conflicts of interest may arise when one group within a larger class possesses a claim that is neither typical of the rest of the class nor shared by the class representative.  In this case, the *Benney* Class Plaintiff's interest in settling his federal Regulatory Fee claims, even at the cost of a broad release of other claims he did not possess, was in conflict with the Washington Plaintiffs' unrepresented interest in prosecuting their B & O Tax Surcharge claims. The *Benney* Class Plaintiff's representation of the Washington Plaintiffs was therefore inadequate as to those claims.

*Hesse*, 598 F.3d at 589 (internal citations omitted).

Here, it is undisputed that the only certified class representative – Lead Plaintiff – is inadequate to represent the Securities Act claims because it "did not share . . . or even pretend to prosecute those claims," and has "an insurmountable conflict of interest with those members of the class" who hold Securities Act claims. *Id.*

Now, again, only after the settling parties had substantially completed settlement negotiations, discovery, and expert reports without a plaintiff representing the Securities Act claims (indeed, despite West Virginia Laborers'

OPP. TO CLASS REPS' RENEWED UNOPPOSED
MTN FOR PRELIMINARY APPROVAL
No. SACV09-1304-JVS (MLGx)

repeated requests to participate in and coordinate discovery and settlement negotiations), a new proposed class representative is proffered.

The Renewed Motion confirms that there is **no evidence whatsoever** supporting Ripperda's adequacy to represent the Securities Act class. Indeed, this Court previously held that Ripperda was inadequate because "Ripperda and his counsel have been involved in this case only since August 2012; counsel attended one mediation session in which Ripperda was 'available by telephone.' Furthermore, Ripperda did not play an active role during discovery and began his participation late in the settlement negotiation stage." ECF No. 346, at *12-13 (citations omitted). The Renewed Motion papers merely confirm the Court's finding of inadequacy.

Indeed, the Renewed Motion papers simply assert (again) that Ripperda is an adequate representative because he traded in STEC stock and "received and reviewed" discovery regarding the facts underlying the Securities Act claims. Supp. Memo., at p. 8. This is not the standard, and plainly fails the Ninth Circuit's requirement that the claims must have been vigorously prosecuted by a representative with standing. *See Hesse*, 598 F.3d at 589. Moreover, for support, Lead Plaintiff relies on *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998), to argue that Ripperda's counsel are entitled to rely on Lead Plaintiffs' discovery. But that case is inapposite. There, as opposed to here, there was a representative **with standing** that pursued discovery on claims that were **alleged and actively litigated** in that action. *Id.* at 1238-39. Here, by contrast, there was no adequate representative for the Securities Act claims during discovery, and the Securities Act claims were not alleged in the operative complaint or actively litigated in this action. Accordingly, Lead Plaintiff has failed to satisfy its burden of demonstrating that Ripperda is an adequate class representative sufficient to preliminarily approve the settlement and send notice to the class. *See Cadence,* Case No. 08-4966, ECF No. 158, at pp. 4-5 (denying preliminary approval of class

action settlement; "The Court will not preliminarily approve a settlement and certify a class until it is convinced Rule 23's requirements are satisfied").[13]

Even assuming *arguendo* that Ripperda was otherwise an "adequate" class representative by virtue of his trading, adding him at this late hour cannot satisfy the requirements of *Hesse*. Merely agreeing to join in the action only for purposes of providing a representative in order to release the claims, after the prosecution, discovery, and settlement negotiations have largely concluded – and long after Lead Plaintiff unsuccessfully but "diligently and exhaustively searched for said representative" to actually prosecute the claims (June 19, 2012 Order, ECF No. 314, at p. 3) – fails to satisfy *Hesse*'s requirement that the representative has "vigorously" prosecuted the claims.[14]

---

[13] *See also In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 02-md-1486-PJH, Order Denying Motion for Preliminary Approval of Settlement, ECF No. 1768 (N.D. Cal. Nov. 15, 2007), at p. 2 ("The court is not prepared, at this juncture, to certify the two proposed settlement classes set forth by the parties, as there is insufficient information from which to conclude that the requirements of Federal Rule of Civil Procedure ("FRCP") 23(a) and (b) have been satisfied. Moreover, to the extent that the proposed settlement classes appear to include members whose interests conflict, and whose presence may require consideration and/or addition of subclasses, these issues must be resolved before the court can determine that certification of the settlement classes is appropriate.").

[14] *See, e.g., Jaime v. Standard Parking Corp.*, No. CV-08-4407, 2010 WL 2757165, at *3 (C.D. Cal. July 12, 2010) (Matz, J.) ("[The parties have not] explained why it is appropriate to add FLSA claims when the action originally contained no FLSA claims. How can a settlement have been reached in their absence? How can any Court certify a class when a claim that would encompass the class (even if not properly part of the action) has not been prosecuted?").

### C.   At A Minimum, The Proposed Class Notice Remains Deficient

Even if the standard for preliminary approval had otherwise been met, certain material information necessary to satisfy the standard for preliminary approval is once again **omitted** from the Settlement Motion.[15]

At a minimum, additional material information that is typically included in preliminary approval motions, but which is again omitted from the Renewed Motion and Class Notice, includes, *inter alia*, material information about the attorneys' fees and expenses that will be sought, as follows:

> Co-Lead Counsel intend to make a motion, on behalf of Plaintiffs' Counsel, asking the Court for an aware of attorneys' fees not to exceed ___% of the Settlement Fund . . . . If the Court approves the Fee and Expense Application, the average cost per damaged share of common stock for such fees and expenses will be approximately $0.__ per share.

ECF No. 352-2, at **6:2-3, 11-13 (blanks in original).

Because the Renewed Motion and Class Notice omit material information, it is impossible for the Court or West Virginia Laborers to determine whether the proposed settlement is the product of serious, informed, noncollusive negotiations, or has obvious deficiencies.

Lead Counsel's explanation (in footnote 2) that the attorneys' fee and per share amount will be provided "prior to or at the Settlement Hearing, and after it

---

[15] *See, e.g., Countrywide*, 07-cv-05295-MRP, ECF No. 839, Exhibit B to Galdston Decl. (denying preliminary approval of proposed class action settlement filed by the same Lead Counsel where preliminary approval motion failed to provide sufficient information); *see also In re IndyMac ERISA Litig.*, 08-cv-04579 DDP, ECF No. 107 (C.D. Cal. June 28, 2010) (denying preliminary approval), *see also IndyMac* Renewed Motion, ECF No. 110 (Aug. 6, 2010) (discussing information lacking which resulted in Judge Pregerson denying preliminary approval, including information regarding potential damages).

OPP. TO CLASS REPS' RENEWED UNOPPOSED
MTN FOR PRELIMINARY APPROVAL
No. SACV09-1304-JVS (MLGx)

has considered the time and expenses requests of all counsel" is curious, at best, and an attempt to prevent West Virginia Laborers the due process and response opportunity it is entitled to, at worst. Indeed, even "[a]t the preliminary approval stage, '[c]ourts assess the reasonableness of attorneys' fees to protect class members from unfair settlements,' and require the party seeking such fees to 'explain to th[e] Court why . . . a large percentage of the [s]ettlement [f]und should be given to the . . . attorneys.'"[16]

Moreover, Lead Plaintiff now purports to add a disclosure regarding the fee application that may be made by West Virginia Laborers' counsel, Bernstein Litowitz Berger & Grossmann LLP ("BLBG"). ECF No. 352-2, at p. 21. The purported disclosure is materially inadequate, however, including by failing to disclose that BLBG has preserved and pursued the Securities Act claims sought to be released in this settlement, has not been compensated for its service and expenses incurred, and will seek approval for fees and services actually incurred in preserving and pursuing both the Exchange Act claims, when it previously served as Lead Counsel, and the Securities Act claims.[17] In light of these deficiencies, BLBG sent Lead Counsel a letter requesting revisions to the proposed class notice in order to fully inform class members. A copy of the letter is attached to the Supplemental Galdston Declaration as Exhibit B. Lead Counsel failed to respond to the request to include the additional disclosure in the proposed class notice.

## IV.   **CONCLUSION**

West Virginia Laborers respectfully submits that, under these unique circumstances, the Renewed Motion papers have only further confirmed that the

---

[16] *Herald, Primeo, and Thema Sec. Litig.*, 2011 WL 4351492, at *4 (denying preliminary approval) (citations omitted); *see also In re Chiron Corp. Sec. Litig.*, No. C-04-4293 VRW, 2007 WL 4249902, at **1, 4, 11 (N.D. Cal. Nov. 30, 2007).

[17] The proposed Notice also contains an apparent typographical error on line 3 of page 21 (ECF No. 352-2), where "July 4, 2010," should be "July 14, 2010."

OPP. TO CLASS REPS' RENEWED UNOPPOSED
MTN FOR PRELIMINARY APPROVAL
No. SACV09-1304-JVS (MLGx)

proposed settlement, to the extent that it attempts to release the Securities Act claims, cannot be approved, and requests that the Court again deny preliminary approval.

Dated: January 11, 2013                     Respectfully submitted,

                                            BERNSTEIN LITOWITZ BERGER
                                               & GROSSMANN LLP


                                            _____/s/ Benjamin Galdston_____
                                                 BENJAMIN GALDSTON

                                            Blair A. Nicholas  (Bar No. 178428)
                                            blairn@blbglaw.com
                                            Niki L. Mendoza  (Bar No. 214646)
                                            nikim@blbglaw.com
                                            Benjamin Galdston  (Bar No. 211114)
                                            beng@blbglaw.com
                                            Joseph W. Goodman  (Bar No. 230161)
                                            joseph.goodman@blbglaw.com
                                            12481 High Bluff Drive, Suite 300
                                            San Diego, CA 92130
                                            Tel:   (858) 793-0070
                                            Fax:   (858) 793-0323


                                            *Counsel for West Virginia
                                            Laborers' Pension Trust Fund*