Christopher Kim (Bar No. 082080)
christopher.kim@limruger.com
Lisa J. Yang (Bar No. 208971)
lisa.yang@limruger.com
LIM, RUGER & KIM, LLP
1055 West Seventh Street, Suite 2800
Los Angeles, California 90017-2554
Telephone: (213) 955-9500
Facsimile: (213) 955-9511

Thomas A. Dubbs (*Pro Hac Vice*)        Allyn Z. Lite (*Pro Hac Vice*)
tdubbs@labaton.com                      alite@litedepalma.com
James W. Johnson (*Pro Hac Vice*)       Bruce D. Greenberg (*Pro Hac Vice*)
jjohnson@labaton.com                    bgreenberg@litedepalma.com
LABATON SUCHAROW LLP                    LITE DePALMA GREENBERG, LLC
140 Broadway                            Two Gateway Center, 12th Floor
New York, New York 10005                Newark, New Jersey 07102
Telephone: (212) 907-0700               Telephone: (973) 623-3000
Facsimile: (212) 818-0477               Facsimile: (973) 623-0858

*Attorneys for Lead Plaintiff, the State of New Jersey, Department of Treasury, Division of Investment, Plaintiffs International Brotherhood of Electrical Workers, Local 103 and Norfolk County Retirement System and Lead Counsel for the Class*

Thomas Bienert, Jr.                     Robert S. Green
tbienert@bmkattorneys.com               rsg@classcounsel.com
BIENERT, MILLER & KATZMAN               GREEN & NOBLIN, P.C.
903 Calle Amanecer, Suite 350           700 Larkspur Landing Circle, Suite 275
San Clemente, CA 92673                  Larkspur, CA 94939
Telephone: (949) 369-3700               Telephone: (415) 477-6700
Facsimile: (949) 369-3701               Facsimile: (415) 477-6710

*Attorneys for Plaintiff Mark V. Ripperda*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| IN RE STEC, INC. SECURITIES LITIGATION | No. SACV 09-01304-JVS (MLGx) |
| This Document Relates To: | **REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF CLASS REPRESENTATIVES' RENEWED UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| ALL ACTIONS | |
| | Hearing Date: February 11, 2013 |
| | Time:         1:30 p.m. |
| | Judge:        Honorable James V. Selna |
| | Courtroom:    10C |

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ...................................................................................iii

I.  PRELIMINARY STATEMENT .................................................................. 1

II.  RELEVANT BACKGROUND................................................................... 3

    A.  Former Lead Plaintiffs Did Not Assert Securities Act Claims............. 3

    B.  The Securities Act Claims Were First Asserted by New Jersey........... 3

    C.  West Virginia Strategically Filed Its Securities Act Claims in State Court and Actively Fought to Keep Them There ....................... 4

    D.  Class Representatives Litigated and Settled the Securities Act Claims ....................................................................................... 7

III.  ARGUMENT ............................................................................................. 8

    A.  The Plan of Allocation Is Reasonable............................................... 8

        1.  It Is Reasonable to Award a 25% Premium to the Securities Act Claimants ............................................... 9

        2.  It Is Reasonable to Limit Class Members' Recoveries to Their Out-of-Pocket Losses.......................................... 12

    B.  Dr. Ripperda Satisfies the Adequacy Requirement ......................... 12

        1.  West Virginia Has Not Identified Any Conflict...................... 12

        2.  West Virginia Has Not Identified Any Lack of Prosecutorial Vigor................................................... 13

            (a)  Discovery Regarding the Securities Act Claims............ 13

                (i)  Circumstances Surrounding the Offering ............ 14

                (ii)  The Underwriters' Due Diligence....................... 16

                (iii)  Other Subjects of Discovery ............................... 18

            (b)  Negotiations on Behalf of the Securities Act Claims .... 19

    C.  The Securities Act Claims May Be Released by the Settlement........ 22

    D.  The Claims in State Court May Be Released Despite the Exclusion of State Court Class Counsel from the Settlement Process ......................................................................................... 23

    E.  Only With the Certification of Dr. Ripperda, Will the Securities Act Claimants Be Assured of Relief................................................. 24

F.    The Amended Proposed Notice Discloses the Attorneys' Fees Sought by Counsel, Including BLBG ..................................................24

CONCLUSION...............................................................................................25

# TABLE OF AUTHORITIES

## CASES

**Page**

*In re Am. Int'l Grp. Inc. Sec. Litig.,*
  689 F.3d 229 (2d Cir. 2012) ................................................................. 11

*Anderson v. Nextel Retail Stores, LLC,*
  Nos. CV 07-4480, 6362, 6576-SVW (FFMx),
  2010 WL 8591002 (C.D. Cal. Apr. 12, 2010)................................22, 23

*In re Cendant Corp. Litig.,*
  264 F.3d 201 (3d Cir. 2001) ................................................................. 11

*Class Plaintiffs v. City of Seattle,*
  955 F.2d 1268 (9th Cir. 1992)..........................................................20, 23

*In re Cutera Sec. Litig.,*
  610 F.3d 1103 (9th Cir. 2010) .............................................................. 10

*In re Diet Drugs Prods. Liability Litig.,*
  Nos. 1203, 99-20593, 2000 WL 1222042 (E.D. Pa. Aug. 28, 2000)................. 20

*In re Dynegy, Inc. Sec. Litig.,*
  226 F.R.D. 263 (S.D. Tex. 2005) ......................................................... 10

*In re Global Crossing Sec. & ERISA Litig.,*
  225 F.R.D. 436 (S.D.N.Y. 2004).......................................................... 8

*Hesse v. Sprint Corp,*
  598 F.3d 581 (9th Cir. 2010) ................................................................ 23

*Lane v. Facebook, Inc.,*
  696 F.3d 811 (9th Cir. 2012) ................................................................ 13

*Linney v. Cellular Alaska P'ship,*
  151 F.3d 1234 (9th Cir. 1998)..........................................................13, 14

*Linney v. Cellular Alaska P'ship,*
  1997 WL 450064 (N.D. Cal. July 8, 1997),
  *aff'd,* 151 F.3d 1234 (9th Cir. 1998) ................................................... 14

*In re Metro. Sec. Litig.,*
  No. CV-04-25-FVS, 2010 WL 424625 (E.D. Wash. Jan. 28, 2010) ............... 10

*In re The Mills Corp. Sec. Litig.,*
  265 F.R.D. 246 (E.D. Va. 2009)........................................................... 12

*Moralez v. Whole Foods Market, Inc.,*
  No. C12-01072(CRB), 2012 WL 4369603 (N.D. Cal. Sept. 24, 2012)............. 22

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.,*
  380 F.3d 1226 (9th Cir. 2004)............................................................... 15

*In re Portal Software, Inc. Sec. Litig.*,
  No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ............... 8

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011), *cert. denied*, 132 S. Ct. 1876 (2012) ................... 11

*In re U.S. Fin., Inc. Sec. Litig.*,
  64 F.R.D. 443 (S.D. Cal. 1974) ........................................................................ 16

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
  669 F.3d 632 (5th Cir.), *cert. denied*, 133 S. Ct. 317 (2012) .............................. 9

*Vallabhapurapu v. Burger King Corp.*,
  No. C 11-00667-WHA, 2012 WL 5349389 (N.D. Cal. Oct. 29, 2012) ............. 23

*Vallabhapurapu v. Burger King Corp.*,
  No. C 11-00667-WHA, 2012 WL 2568183 (N.D. Cal. July 2, 2012) ............. 23

*Walters v. Reno*,
  145 F.3d 1032 (9th Cir. 1998) ......................................................................... 22

### OTHER

Class Settlement Notice, *In re Countrywide Fin. Corp. Sec. Litig.*,
  No. CV07-05295 MRP (MANx) (C.D. Cal. filed Aug. 14, 2007) ................... 10

Class Settlement Notice, *In re Isolagen, Inc. Sec. & Derivative Litig.*,
  MDL No. 06-md-01741 (E.D. Pa. filed Feb. 27, 2006) .................................... 10

Order, *Lane v. Facebook, Inc.*,
  No. C 08-3845 RS (N.D. Cal. Oct. 23, 2009) (ECF No. 67) .......................... 13

Class Settlement Notice, *The Mills Corp.*,
  No. 06-cv-00077 (E.D. Va. filed Jan. 20, 2006) ............................................. 12

Class Settlement Notice, *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
  No. 01-cv-1451-REB-CBS (D. Col. filed July 27, 2001) ................................ 10

Class Settlement Notice, *In re Rait Fin. Trust Sec. Litig.*,
  No. 2:07-cv-03148-LDD (E.D. Pa. filed Aug. 1, 2007) .................................... 10

Class Settlement Notice, *Schwartz v. TXU Corp.*,
  No. 02-CV-2243-K (N.D. Tex. filed Oct. 15, 2002) ....................................... 10

Complaint, *SEC v. Moshayedi*,
  No. 12-cv-01179-JVS-MLG (C.D. Cal. July 19, 2012) (ECF No. 1) .............. 18

Class Settlement Notice, *In re SFBC Int'l Inc. Sec. & Derivative Litig.*,
  No. 2:06-cv-000165-SRC (D.N.J. filed Jan. 1, 2006) ...................................... 10

Brief, *Vallabhapurapu v. Burger King Corp.*,
  No. C 11-00667-WHA (N.D. Cal. June 14, 2012) (ECF No. 219) .................. 12

Class Settlement Notice, *In re Waste Mgmt., Inc. Sec. Litig.*,
  Master File No. H-99-2183 (MH) (S.D. Tex. filed July 8, 1999) ................... 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*West Virginia Laborers Trust Fund v. STEC, Inc.*,
  Case No. 30-2011-00489022-CU-SL-CXC (C.D. Cal. Oct. 7, 2011)
  (Cal. Super. Ct. Orange Cnty.) ............................................................2

Order, *West Virginia Laborers Trust Fund v. STEC, Inc.*,
  No. 11-cv-1171-JVS (MLGx) (C.D. Cal. Oct. 7, 2011) (ECF No. 25) ..............5

## I.   PRELIMINARY STATEMENT

Lead Plaintiff State of New Jersey, Department of Treasury, Division of Investment ("New Jersey" or "Lead Plaintiff"), representative plaintiffs International Brotherhood of Electrical Workers, Local 103 ("Local 103"), Norfolk County Retirement System ("Norfolk County" and, together with Lead Plaintiff, "Plaintiffs") and plaintiff Dr. Mark V. Ripperda (collectively with Plaintiffs, the "Class Representatives") respectfully submit this reply memorandum of points and authorities in further support of their motion for preliminary approval of the proposed settlement (the "Settlement") of the above-captioned action (the "Action").

In its November 9, 2012 Order regarding preliminary approval of the Settlement, the Court granted Plaintiffs leave to amend their pleading in order to show that Dr. Ripperda has standing to assert claims under the Securities Act of 1933 (the "Securities Act Claims") on behalf of himself and those Class Members who also have such claims (the "Securities Act Claimants"), thereby establishing that Dr. Ripperda's claims are "typical" of those of the Securities Act Claimants under Fed. R. Civ. P. 23(a)(3).  *See* ECF No. 346 at 13.  Accordingly, on December 14, 2012, the Class Representatives filed the operative complaint (the "Third Amended Complaint"), which asserts the Securities Act Claims with Dr. Ripperda as the proposed Class Representative for those claims.  *See* ECF No. 356 ¶¶ 25, 356-410.[1]

The Court further requested that the Class Representatives provide certain additional information in order to establish that Dr. Ripperda and his counsel "will fairly and adequately protect the interests" of the Securities Act Claimants under Fed. R. Civ. P. 23(a)(4), including facts "showing that Ripperda and his counsel are able to prosecute the [Securities Act Claims] vigorously" and "information

---

[1] Defendants stipulated to Plaintiffs' filing of the Third Amended Complaint.  *See* ECF No. 350.

1  regarding their efforts to negotiate the allocation of the [Securities Act Claims]

2  from the net settlement fund."  ECF No. 346 at 12.  Accordingly, the Class

3  Representatives provided the Court with additional information detailing the Class

4  Representatives' "vigorous prosecution" of the Securities Act Claims, *see* ECF No.

5  353 at 10-12, and the Plan of Allocation negotiations between Dr. Ripperda's

6  counsel and Co-Lead Counsel under the auspices of a former United States District

7  Court Judge, the Honorable Layn R. Phillips, *see id.* at 6-7, 12-14.

8       Only one objection to the Settlement has been filed, by the West Virginia

9  Laborers' Pension Trust Fund ("West Virginia"), which is the plaintiff in a putative

10  class action asserting the Securities Act Claims in a California state court action,

11  styled *West Virginia Laborers Trust Fund v. STEC, Inc., et al.*, Case No. 30-2011-

12  00489022-CU-SL-CXC (Cal. Super. Ct. Orange Cnty.) (the "State Action").  West

13  Virginia has never been appointed as a class representative or moved for class

14  certification in the State Action.

15       Significantly, West Virginia does not challenge the adequacy of the amount

16  of the Settlement.  Rather, West Virginia challenges Dr. Ripperda's adequacy as a

17  class representative for the Securities Act Claimants and the manner in which the

18  Settlement is allocated between 1) the Securities Act Claimants and 2) Class

19  Members who have claims only under the Securities Exchange Act of 1934 (the

20  "Exchange Act Claimants").  *See generally* ECF No. 358 ("W.Va.Br.").

21       However, as discussed in Section III(A), *infra*, the Plan of Allocation is

22  reasonable because, *inter alia*, the 25% premium that it awards to the Securities

23  Act Claimants is justified by both expert analysis and precedent that West Virginia

24  does not even acknowledge.  In addition, as discussed in Sections III(B)-(E), *infra*,

25  the Class Representatives have established Dr. Ripperda's adequacy, and the

26  propriety of releasing the Securities Act Claims in connection with the Settlement.

27       Finally, as discussed in Section III(F), *infra*, the Class Representatives have

28  submitted herewith a revised proposed class settlement notice (the "Notice") in

1   order to provide additional information to Class Members regarding the requests

2   for awards of attorneys' fees and expenses that both the Class Representatives'

3   counsel and former lead counsel intend to submit for this Court's approval.

4          Thus, the Court should reject West Virginia's objection.[2]

## II.   RELEVANT BACKGROUND

6      ### A.   Former Lead Plaintiffs Did Not Assert Securities Act Claims

7          On February 8, 2010, this Court appointed Arman Rashtchi and Keith A.

8   Ovitt as lead plaintiffs and appointed Kahn Swick & Foti, LLC ("KSF") and

9   Bernstein Litowitz Berger & Grossmann LLP ("BLBG") as co-lead counsel in this

10  Action.  *See* ECF No. 61.  On April 9, 2010, KSF and BLBG filed a consolidated

11  class action complaint (the "Consolidated Complaint"), which asserted only

12  Exchange Act claims and not any Securities Act claims.  *See* ECF No. 83.

13         Because the Consolidated Complaint significantly expanded the alleged

14  class period, the Court re-opened the lead plaintiff appointment process in this

15  Action.  *See* ECF No. 123.  On July 14, 2010, the Court issued an Order appointing

16  New Jersey as Lead Plaintiff.  *Id.*  Rashtchi and Ovitt requested that the Court

17  certify that Order for interlocutory appeal, to no avail.  *See* ECF No. 135.  On

18  September 14, 2010, the Ninth Circuit denied Rashtchi and Ovitt's petition for

19  mandamus on the lead plaintiff issue.  *See* ECF No. 144.

20     ### B.   The Securities Act Claims Were First Asserted by New Jersey

21         On August 13, 2010, Co-Lead Counsel filed an amended consolidated

22  complaint (the "First Amended Complaint") on behalf of New Jersey.  *See* ECF

23  Nos. 131 & 131-1.  The Amended Complaint was the first consolidated complaint

24  filed in this Action that alleged any Securities Act claims.

---

[2] West Virginia argues that "this is not the only court in this District that has refused to grant this Lead Counsel's motion for preliminary approval in a securities class action settlement."  ECF No. 358 (W.Va.Br.) at 3 n.2.  This is not the first time that West Virginia has made this oblique argument, *see* ECF No. 333 at 4, which the Class Representatives have already addressed, *see* ECF No. 335 at 8-9.

On January 10, 2011, the Court issued an Order granting Defendants' motions to dismiss the Amended Complaint, with leave to amend.  *See* ECF No. 175.  Accordingly, on February 22, 2011, New Jersey filed the Second Amended Complaint, which also asserted Securities Act claims.  *See* ECF No. 178 ¶¶ 304-69. On June 17, 2011, the Court issued an Order sustaining the Second Amended Complaint in significant part, but dismissing the alleged Securities Act claims for lack of standing.  *See* ECF No. 200.

### C.   West Virginia Strategically Filed Its Securities Act Claims in State Court and Actively Fought to Keep Them There

On July 1, 2011, BLBG filed West Virginia's complaint in the State Action,[3] which alleges the same Securities Act claims as those alleged in the Second Amended Complaint,[4] as West Virginia itself later admitted in its opposition to a demurrer that was filed by certain defendants in the State Action:

> Any challenge to the adequacy of the Complaint's falsity allegations would be misplaced.   On June 17, 2011, United States District Judge James V. Selna for the Central District of California found that Plaintiffs in a parallel federal securities class action alleging the ***same facts*** as in this action adequately stated a claim under the Securities Act against these same defendants.

ECF No. 250-3 at 2 n.2 (emphasis added).  Indeed, West Virginia copied substantial portions of the Second Amended Complaint verbatim.  *See* ECF No. 249 at 4-5.  Thus, as BLBG acknowledged during a recent hearing in this Action, if West Virginia had filed its complaint in federal court, the parties would have

---

[3] KSF is not involved in the State Action.

[4] The only claim alleged in West Virginia's complaint in the State Action that was not alleged in Plaintiffs' Second Amended Complaint was the so-called "Competition Claim," which is discussed in Section III(A), *infra*.  The Competition Claim had been asserted in Plaintiffs' First Amended Complaint.  *See* ECF Nos. 131 ¶¶ 140-45; 131-1 ¶¶ 176-79.

1  sought to consolidate it with this Action.  Ex. A at 12:18-19.[5]

2        Moreover, because the claims in the State Action have the same factual

3  predicates as those in this Action, West Virginia admitted that depositions taken in

4  the two cases would be "substantially similar" and urged that discovery and

5  settlement negotiations be "coordinate[d]" between the State Action and this

6  Action.  *See* Ex. B at 26:5-8, 27:1-3, 27:21-23, 37:20-25, 38:14-23.

7        On August 4, 2011, the defendants in the State Action removed that case to

8  this Court.  *See* ECF No. 250-4.  West Virginia successfully moved to remand it

9  back to the state court.  Order Granting Plaintiff's Motion to Remand this Action to

10  State Court ("Remand Order"), *West Virginia Laborers Trust Fund v. STEC, Inc.*,

11  No. 11-cv-1171-JVS (MLGx) (C.D. Cal. Oct. 7, 2011) (ECF No. 25).  West

12  Virginia quotes this Court's statement in the Remand Order that "the state court

13  can deal with [West Virginia's case]."  ECF No. 358 (W.Va.Br.) at 2.  However,

14  subsequent to its remand back to state court, the state court "dealt with" the State

15  Action by staying it in favor of this Action, and doing so explicitly because it

16  found that the State Action might be resolved by this Action.  Ex. C at 1 ("Despite

17  Plaintiff not being a party to the federal action, the Court finds that the issue being

18  decided in the federal action includes Plaintiff's claim here . . . .").[6]

19        Indeed, as this Court has reasoned, this Action will likely have a preclusive

20  effect on the State Action:

21          In this case, the Securities Act claims and the Exchange

22          Act claims share the "same foundation of facts."  Both

23          the   Securities   Act   and   Exchange   Act   claims   are

24

25

---

[5] Herein, "Ex. __" refers to an exhibit to the Supplemental Declaration of Richard

26  T. Joffe ("Supplemental Joffe Declaration" or "Supp. Joffe Decl."), filed herewith.
[6] West Virginia claims that it has "prosecuted the Securities Act claims since July

27  1, 2011."  *See* ECF No. 358 (W.Va.Br.) at 4.  But West Virginia has neither taken
discovery nor survived a demurrer in the State Action.  In light of its decision on

28  the stay motion, the state court declined to rule on demurrers filed by the
defendants in the State Action.  Ex. C at 2.

predicated on Defendants' allegedly false misstatements or omissions that created an inflated impression of STEC's revenue growth and of conditions seeming to ensure short- and long-term continuation of that growth. Moreover, this Court has jurisdiction to hear both the Securities Act and Exchange Act claims. ***Because claim preclusion prohibits Plaintiffs from subsequently pursuing legal theories for relief that could have been raised in the original litigation, the Court cannot hear Plaintiffs' Exchange Act claims and defer Plaintiffs' Securities Act claims to the state court action. In other words, a Class member is precluded from asserting Exchange Act claims in this Court and subsequently pursuing Securities Act claims in the West Virginia state action because that Class member could have raised the Securities Act claim in this Court.***

ECF No. 279 at 13 (internal citation omitted and emphasis added).[7]

However, as the Court noted in its June 19, 2012 Order granting Plaintiffs' motion for class certification with respect to the Exchange Act Claims, any concerns about the preclusive effect of this Action on the Securities Act Claims are attenuated by the fact that West Virginia or any other Securities Act Claimant could step forward as a class representative of the Securities Act Claimants in this Action (or opt out of this Action):

While the Court acknowledges that certification of an Exchange Act only Class could hypothetically preclude a

---

[7] Trading records that West Virginia has filed with the Court appear to show that West Virginia purchased STEC common stock in the Offering but sold those shares on October 20, 2009. *See* ECF No. 336-2 at Ex. B. Thus, West Virginia is not a member of the litigation class certified by the Court (*see* ECF No. 314), but it is a member of the proposed settlement class (*see* ECF No. 326-1 ¶ 3).

class member from subsequently asserting a Securities Act claim, three considerations attenuate this concern. First, a thorough survey of the putative class has not produced a single class member with standing to bring a Securities Act claim. Thus, the Court can fairly assume that few, if any, class members will run the risk of claim preclusion. Second, *to the extent that Class notification reveals the identity of a class member with standing to assert a Securities Act claim, the Court may reexamine the certification issue*. Third, *if a putative class member has standing to assert a Securities Act claim and declines to represent the Class, that class member may opt out of the Class and pursue both claims individually*.

ECF No. 314 at 5-6 (internal citation omitted and emphasis added). That is exactly what Dr. Ripperda has done here, by (unlike West Virginia) stepping forward as a class representative for the Securities Act Claimants in this Action.

## D. Class Representatives Litigated and Settled the Securities Act Claims

In January 2012, the parties participated in a mediation session with Judge Phillips. During that mediation, which was ultimately unsuccessful, Defendants made clear to Plaintiffs that Defendants would not agree to any settlement that did not resolve both the Exchange Act and Securities Act Claims. Supp. Joffe Decl. ¶ 31. Therefore, Plaintiffs proceeded with fact and expert discovery in this Action based on the assumption that they would have to prosecute both the Exchange Act and Securities Act Claims, and Plaintiffs did so vigorously. *See* ECF No. 354 (Supplemental Declaration of Thomas A. Dubbs dated Dec. 14, 2012 ("Supp. Dubbs Decl.")) ¶¶ 31-63.

As described in great detail in the Class Representatives' opening brief and supporting declarations, after the close of fact discovery and the exchange of expert reports, the parties engaged in subsequent mediations in Summer 2012. *See* ECF No. 353 at 6-7. On August 7, 2012, Defendant STEC, Inc. ("STEC") publicly disclosed that $35 million was its "best estimate of the probable loss" resulting from the Settlement. Ex. D at 8 (STEC, Inc., Quarterly Report (Form 10-Q) (Aug. 7, 2012)). After Dr. Ripperda's counsel joined the case, reviewed discovery and concluded the settlement negotiations, STEC agreed to a total settlement amount of $35.75 million (the "Settlement Fund"). *See* ECF Nos. 354 (Supp. Dubbs Decl.) ¶ 74; 328, Ex. 1 (Stipulation and Agreement of Settlement) ¶ 6.

Dr. Ripperda's counsel also negotiated the Plan of Allocation for the Settlement. The Plan of Allocation, which was prepared by experienced and competent counsel with the assistance of the Class Representatives' damages expert, Dr. John Finnerty, provides additional value to Securities Act Claimants by paying 125% of their Recognized Loss, while paying Exchange Act Claimants 100% of their Recognized Loss. *See* ECF No. 335 at 5.

Now, BLBG, on behalf of West Virginia, asserts an objection to the Class Representatives' motion for preliminary approval of the Settlement.[8]

## III.   ARGUMENT

### A.   The Plan of Allocation Is Reasonable

"When formulated by competent and experienced class counsel," a plan of allocation "need only have a reasonable, rational basis." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) (citation omitted). A reasonable plan may consider the relative strengths of different claims and differing positions of class members. *See In re Portal Software, Inc. Sec. Litig.*,

---

[8] West Virginia's brief exceeds the 25-page limit set forth in Rule 11-6 of this Court's Local Civil Rules, and would grossly exceed the limit had West Virginia not also violated the Court's rule limiting footnotes to five lines. *See* ECF No. 358 at 3 n.2, 6 n.3, 10 n.7, 13 n.8-9, 19 n.11; 23 n.13-14, 24 n.15; *see also* ECF 3 ¶ K(1). As former lead counsel, BLBG should be aware of that rule.

Reply Mem. in Further Supp. of Renewed Unopposed Mot. for Prelim. Approval of Settlement   No. SACV 09-01304-JVS (MLGx)

8

1   No. C-03-5138 VRW, 2007 WL 4171201, at *6 (N.D. Cal. Nov. 26, 2007)

2   ("Courts endorse distributing settlement proceeds according to the relative

3   strengths and weaknesses of the various claims.") (collecting cases).

4          Here, as set forth below, it is reasonable for the Plan of Allocation to award

5   a 25% premium to the Securities Act Claimants, subject only to the limitation that

6   all Class Members' recovery is capped to their out-of-pocket losses.[9]

### 1.     It Is Reasonable to Award a 25% Premium to the Securities Act Claimants

7

8          West Virginia asserts that the 25% premium that Dr. Ripperda negotiated on

9   behalf of the Securities Act Claimants is "arbitrary," and implies that the Securities

10  Act Claimants are entitled to nothing less than their "statutory measure of

11  damages." ECF No. 358 (W.Va.Br.) at 18.  However, West Virginia also asserts

12  (without support) that such statutory damages dwarf the total amount of the

13  Settlement Fund.  *See id.* at 7 n.4.  In short, West Virginia makes no showing as to

14  the amount of an appropriate premium.

15         By contrast, the Class Representatives have supported the reasonableness of

16  the 25% premium by both expert affidavit and precedent.  Dr. Finnerty examined

17  the plans of allocation created in numerous other cases involving the settlement

18  and release of both Exchange Act and Securities Act claims, and he opined that a

19  premium of 25% for the Securities Act Claims is reasonable, as it represents the

20  "median" premium granted to the Securities Act claimants in similar cases.  *See*

21  ECF No. 354-5, Ex. D.

22         Moreover, the Class Representatives cited numerous additional authorities

23  supporting the 25% premium.  *See* ECF No. 335 at 6 (citing class settlement

24  notices in *In re Countrywide Fin. Corp. Sec. Litig.*, No. CV07-05295 MRP

25

26

27  [9] In any event, West Virginia's objections to the Plan of Allocation do not provide any reason for the Court to reject the Settlement.  *See Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 641 (5th Cir.) (dismissing objection to settlement based on revision of plan of allocation after notice was issued to class), *cert. denied*, 133 S. Ct. 317 (2012).

28

(MANx), at 17 (C.D. Cal. filed Aug. 14, 2007) (25% premium); *In re Waste Mgmt., Inc. Sec. Litig.*, Master File No. H-99-2183, at 11 (MH) (S.D. Tex. filed July 8, 1999) (same)); *see also* ECF No. 353 at 13 (citing class settlement notices in *In re Rait Fin. Trust Sec. Litig.*, No. 2:07-cv-03148-LDD (E.D. Pa. filed Aug. 1, 2007) (same); *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, No. 01-cv-1451-REB-CBS (D. Col. filed July 27, 2001) (same); *Schwartz v. TXU Corp.*, No. 02-CV-2243-K (N.D. Tex. filed Oct. 15, 2002) (same)).

  ***Indeed, the Class Representatives cited cases in which BLBG, on behalf of the plaintiffs, agreed to settle Securities Act claims for only a 15% premium.*** See ECF No. 353 at 14 (citing class settlement notices in *In re Isolagen, Inc. Sec. & Derivative Litig.*, MDL No. 06-md-01741 (E.D. Pa. filed Feb. 27, 2006) (15% premium); *In re SFBC Int'l Inc. Sec. & Derivative Litig.*, No. 2:06-cv-000165-SRC (D.N.J. filed Jan. 1, 2006) (same)).  West Virginia does not even acknowledge these precedents.

  Here, it would not be reasonable to award the Securities Act Claimants a premium greater than 25%.  This is so because where, as here, the most important claims are arguably based on forward looking statements, they are less valuable for settlement purposes than Securities Act claims in other cases.  As Defendants have repeatedly argued (*see* ECF Nos. 147 at 2; 184 at 14, 21), under the Private Securities Litigation Reform Act ("PSLRA"), the "safe harbor" for forward looking claims requires that plaintiffs prove defendants' knowledge of falsity, regardless whether the claims are alleged under the Exchange Act or the Securities Act.  *See In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111-12 (9th Cir. 2010) (reasoning that projections fall within the safe harbor if plaintiffs fail to prove the projections were made with actual knowledge that they were materially false or misleading); *see also In re Metro. Sec. Litig.*, No. CV-04-25-FVS, 2010 WL 424625 (E.D. Wash. Jan. 28, 2010) (same reasoning applied specifically to Securities Act claims); *In re Dynegy, Inc. Sec. Litig.*, 226 F.R.D. 263, 271 (S.D.

1   Tex. 2005) (reasoning that the PSLRA safe harbor represents "[a]n exception to the
2   no-scienter-requirement" for Securities Act claims because "[t]o impose liability
3   on a defendant for 'forward-looking' statements a plaintiff must demonstrate that
4   the speaker or approving officer had actual knowledge of the false and misleading
5   statement made on behalf of the corporation").  ***Thus, a key issue here is that the***
6   ***Securities Act Claims arguably do not have the usual advantage of such claims***
7   ***that scienter need not be proven.***  *Cf. In re Cendant Corp. Litig.*, 264 F.3d 201,
8   219 (3d Cir. 2001) (affirming an order granting final approval to a class action
9   settlement where the Securities Act claimants received no premium because the
10  alleged Securities Act claims were "not necessarily legally stronger" than the
11  alleged Exchange Act claims).

12          Moreover, the only claim for which West Virginia could have damages is
13  the Competition Claim.  *See* ECF No. 335 at 10-13.[10]  The Competition Claim
14  asserts that Defendants failed to disclose that competition for STEC's flagship
15  product would emerge before the end of 2009.  Third Amended Complaint ¶¶ 187-
16  223.  The Competition Claim is forward looking, as shown by the forward looking
17  nature of the alleged disclosure of the truth.  *See* Third Amended Complaint ¶¶
18  194, 371; *see also* ECF Nos. 335-8; 335 at 10-13.[11]

19          Thus, here, the proposed 25% premium is eminently reasonable.

20
21
22
23

---

24  [10] Given the fact that, in response to multiple notices that Lead Plaintiff has issued
    in this Action, no Securities Act Claimant has come forward who held until the
25  alleged November 3, 2009 corrective disclosure, ECF No. 335 at 10 n.2, it is
    unlikely that there is any significant number of Securities Act Claimants with
26  Securities Act Claims other than the Competition Claim.
    [11] It is permissible to settle weak class claims.  *See In re Am. Int'l Grp. Inc. Sec.*
27  *Litig.*, 689 F.3d 229, 243 (2d Cir. 2012) (reasoning that defendants are entitled to
    settle class claims "even if a court believes that those claims may be meritless");
28  *see also Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 306-10 (3d Cir. 2011) (same),
    *cert. denied*, 132 S. Ct. 1876 (2012).

### 2. It Is Reasonable to Limit Class Members' Recoveries to Their Out-of-Pocket Losses

West Virginia complains that "if a Securities Act claimant's out-of-pocket loss is less than its Recognized Loss (calculated after the premium is applied), the purported 25% premium is nullified because the Recognized Loss is then capped at the out-of-pocket loss." ECF 358 (W.Va.Br.) at 17.

However, such a scenario is highly unlikely, and this methodology has repeatedly been used in plans of allocation approved in other securities class actions involving both Exchange Act and Securities Act claims *in which the plaintiff class was represented by BLBG*. *See* ECF 354-13 (class settlement notice in *SFBC*) at 7 (awarding a 15% premium to the Securities Act Claimants subject to a cap equal to their out-of-pocket loss); ECF 354-7 (class settlement notice in *RAIT*) at 10 (awarding a 25% premium to the Securities Act Claimants subject to a cap equal to their out-of-pocket loss).

In *In re The Mills Corp. Securities Litigation*, the Court approved a BLBG-proposed plan of allocation that not only capped both Exchange Act and Securities Act claimants' recoveries at their out-of-pocket losses, but also provided *no premium* to Securities Act claimants. 265 F.R.D. 246, 258 (E.D. Va. 2009); *see also* Ex. E (class settlement notice in *The Mills Corp.*, No. 06-cv-00077 (E.D. Va. filed Jan. 20, 2006)).

### B. Dr. Ripperda Satisfies the Adequacy Requirement

### 1. West Virginia Has Not Identified Any Conflict

West Virginia does not even purport to have identified any conflict between Dr. Ripperda and the other Securities Act Claimants. Indeed, the basis for Dr. Ripperda's standing is the same as that for West Virginia. Dr. Ripperda purchased STEC stock in STEC's August 2009 secondary offering (the "Offering"), and sold the last of his stock purchased in the Offering, for a loss, on *October 28, 2009*. *See* ECF No. 335-11 at Ex. 1 (Declaration of Mark V. Ripperda), Ex. A. Similarly,

1    West Virginia purchased STEC stock in the Offering, and sold the last of its stock

2    purchased in the Offering, for a loss, on **October 20, 2009**.  *See* ECF No. 336-2 ¶ 3

3    & Ex. B.

4         West Virginia asserts only that "Lead Plaintiff," *i.e.*, New Jersey, "has an

5    insurmountable conflict of interest with those members of the class who hold

6    Securities Act claims."  ECF No. 358 (W.Va.Br.) at 21:21-25.  West Virginia's

7    assertion is an irrelevancy, because Plaintiffs request the appointment of Dr.

8    Ripperda, not New Jersey, as Representative Plaintiff for the Securities Act

9    Claimants.

10        Moreover, a representative plaintiff may be certified at any time during a

11   class action, including in the same order that grants preliminary approval of a

12   settlement.  *See* Ex. F at 1-3 (Order, *Lane v. Facebook, Inc.*, No. C 08-3845 RS

13   (N.D. Cal. Oct. 23, 2009) (ECF No. 67) (simultaneously appointing representative

14   plaintiffs and granting preliminary approval of settlement dated September 17,

15   2009)); *Lane v. Facebook, Inc.*, 696 F.3d 811, 816-17, 826 (9th Cir. 2012)

16   (affirming final approval of settlement "finalized" in September 2009).

### 2.    West Virginia Has Not Identified Any Lack of Prosecutorial Vigor

#### (a)    Discovery Regarding the Securities Act Claims

In *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1237-40 (9th Cir. 1998), the Ninth Circuit affirmed certification of a settlement class, despite the fact that class counsel who negotiated the settlement took no formal discovery, and relied on the work product of a previous class counsel held to have had a conflict of interest with the class.  That the counsel who negotiated the settlement relied on the work product of former, conflicted counsel was held to be of no significance, "where the parties have sufficient information to make an informed decision."  *Id.* at 1239.

West Virginia tries to distinguish *Linney* on the ground that, in *Linney*, even though the key attorney work product was that of a prior, conflicted counsel, "there was a representative with standing" throughout the case.  ECF No. 358 (W.Va.Br.) at 22:20-21.  However, the standing of the representative plaintiff during the period when the work was being done by a conflicted counsel cannot have mattered in *Linney*, because, among other reasons, the *Linney* court never considered whether the representative plaintiff ever had standing.  What did matter in *Linney* was that, just like here, the objectors "do not demonstrate that the work product on which new class counsel relied was inadequate."  *Linney*, 151 F.3d at 1239.

Moreover, in *Linney*, the "new class counsel" who negotiated the settlement included Robert S. Green, then a member of the law firm Girard & Green, and now one of the two counsel for Dr. Ripperda.  *Compare Linney v. Cellular Alaska P'ship*, 1997 WL 450064, at *1 (N.D. Cal. July 8, 1997) (listing Robert S. Green among the counsel for the plaintiff class), *with Linney*, 151 F.3d at 1238 (listing the law firm Girard & Green as one of the two "new class counsel").   In *Linney*, where Green and the other "new class counsel" negotiated a settlement based on the work product of former, conflicted counsel, the Ninth Circuit, after a lengthy analysis, specifically affirmed the district court's holding that the representation provided by Green and his co-counsel had been "adequate" under Rule 23(a). *Linney*, 151 F.3d at 1238-41.

### (i)   Circumstances Surrounding the Offering

In its opposition to the Class Representatives' renewed motion for preliminary approval of the Settlement, for the first time, West Virginia identifies the following aspect of discovery as supposedly having been inadequate:

> discovery and expert reports apparently largely did not address the Offering and issues unique to the Securities Act claims.  [T]here apparently was little or no scrutiny of the circumstances surrounding the Offering by

1          Manouch Moshayedi or Mark Moshayedi of nine million

2          shares of their own stock, for a total of $267.8 million, at

3          the same time they were making false statements to

4          investors.

5    ECF No. 358 (W.Va.Br.) at 10:5-14.  This vague assertion by West Virginia is (1)

6    unsupported, (2) false about Plaintiffs' discovery, and (3) false about the supposed

7    unique relevance of this issue to the Securities Act claims.

8          First, West Virginia cites no evidence in support of its assertion.

9          Second, the assertion regarding Plaintiffs' discovery is false.  Although

10   discovery was comprehensive and focused on many issues, it focused on no group

11   of issues more thoroughly than the group that included the nature of the Offering

12   and how it compared to the Moshayedis' history of trading, the Moshayedis'

13   motivations for the Offering, the process by which the Offering was approved, the

14   essential simultaneity of the Offering with the alleged misstatements and material

15   omissions, the specifics of the alleged misstatements and material omissions—

16   which were made primarily in the Registration Statement and Prospectus, and in

17   the Form 10-Q incorporated into the Registration Statement and Prospectus—and

18   Defendants' knowledge at the time of the Offering that their statements were false

19   and their omissions were material.  *See* Supp. Joffe Decl. ¶¶ 11-26.

20         Third, West Virginia's assertion that it is an issue "unique to the Securities

21   Act claims" that Defendants were selling their stock "at the same time they were

22   making false statements to investors" also is wrong.  The simultaneity of a

23   defendant's false statements and insider stock sales is the *sine qua non* of some of

24   the strongest cases for scienter under the Exchange Act.  *See, e.g.*, *Nursing Home*

25   *Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1227, 1232 (9th Cir.

26   2004) (in a case alleging claims solely under the Exchange Act, holding that

27   suspicious insider stock sales "support a strong inference of scienter," based on

28

"(1) the amount and percentage of shares sold; (2) timing of the sales; and (3) consistency with prior trading history").

Indeed, as the Court has recognized, "[i]n this case the Securities Act claims and the Exchange Act claims share the 'same foundation of facts.'"  ECF No. 279 at 13.  Therefore, even if discovery had been aimed solely at the Exchange Act Claims, the result still would have been a vigorous discovery of the Securities Act Claims.  As the court held in *In re U.S. Financial, Inc. Securities Litigation*, 64 F.R.D. 443, 454 (S.D. Cal. 1974),

> the broader Section 10(b) action encompasses the misrepresentations and omissions in the registration statement, which form the basis of the Section 11 action. [Therefore,] the Section 11 violation, if it exists, will be proved in the course of proving the Section 10(b) violation, if it exists.

### (ii)    The Underwriters' Due Diligence

As West Virginia did in its prior brief—filed in opposition to the Class Representatives' initial motion for preliminary approval—West Virginia again suggests that Plaintiffs' discovery should have focused  more on the due diligence defense of the underwriters of the Offering (the "Underwriters").  *Compare* ECF No. 333 at 8-9, *with* ECF No. 358 (W.Va.Br.) at 10:7-10 & n.7.  West Virginia is wrong about both the extent of Plaintiffs' discovery regarding the Underwriters' defense, and the relative importance of this defense to the Securities Act Claimants' case.

First, Plaintiffs took extensive discovery regarding the Underwriters' due diligence defense.  Plaintiffs obtained and reviewed document productions by all four Underwriters, including a total of 668,105 pages produced by the two lead underwriters, and a total of 63,876 pages produced by the other two Underwriters.

These productions included all of the due diligence documents produced by the Underwriters to the SEC, and the Commitment Committee memoranda that each firm drafted in connection with the Offering, describing, among other things, the due diligence procedures performed by each Underwriter.  *See* ECF No. 354 (Supp. Dubbs Decl.) ¶¶ 60-61.  Plaintiffs also deposed a financial analyst for one of the two lead Underwriters who was part of that Underwriter's engagement team for the Offering.  *Id.* ¶ 62.  During that deposition both Plaintiffs and Defendants questioned the deponent specifically about, among other things, due diligence for the Offering.  *Id.*

Second, West Virginia is wrong to suggest that the only reasonable way to conduct discovery of  Securities Act Claims is by focusing on the Underwriters' due diligence defense, rather than on the issuer's liability.  As the Class Representatives previously explained, as a matter of law, if STEC were to be found liable under the Securities Act, it would be liable for the entirety of the Securities Act damages; therefore, proving the liability of the Underwriters would add nothing to the Securities Act Claimants' damages.  *See* ECF No. 335 at 15:11-17. Moreover, it is easier to prove an issuer's liability than an underwriter's liability, because, as a matter of law, the issuer has no due diligence defense.  *Id.* at 15:18-25.

The greater difficulty of proving an underwriter's liability than an issuer's liability is even more pronounced than usual in this Action, because the central alleged false statement—the omission to disclose that the EMC Agreement was a "one-off" deal—arguably was a forward looking omission that was false only to the extent that the STEC Defendants *knew* that the contract would not be renewed. *See* ECF No. 200 at 10-19 (Order, denying, in part, motion to dismiss the Second Amended Complaint, discussing this allegation as the central allegation in the Complaint, and assuming, for the purpose of analyzing the applicability of the safe harbor, that the omission was forward looking).  It is difficult enough to prove an

1    issuer's knowledge; it is doubly difficult to prove that underwriters had knowledge

2    of an issuer's knowledge.

3         Indeed, it is an indication of the vigor of Plaintiffs' prosecution of the

4    Securities Act Claims that Plaintiffs did conduct discovery even into that doubly

5    difficult, and arguably superfluous, issue—the Underwriters' knowledge of

6    STEC's knowledge.  Thus, a key piece of evidence of the STEC Defendants'

7    knowledge of the falsity of their omission regarding the EMC Agreement, obtained

8    through discovery, was an e-mail received by Defendant Manouch Moshayedi

9    from an EMC employee just hours before STEC issued the Prospectus, in which

10   the EMC employee stated "I think I can say with a high degree of confidence that

11   our most recent . . . volume commitment deal will be our last."[12]  During the

12   deposition of Manouch Moshayedi, Plaintiffs' attorney specifically asked Mr.

13   Moshayedi "did you tell the underwriters about this e-mail?"  Supp. Joffe Decl. ¶

14   27.  Mr. Moshayedi responded that he did *not* tell the Underwriters.  *Id.*

15                      **(iii)    Other Subjects of Discovery**

16        West Virginia argues that Plaintiffs' Co-Lead Counsel "admitted in open

17   court that discovery would have been conducted differently" if there had been

18   Securities Act claims in the Action.  ECF No. 358 (W.Va.Br.) at 10.  Contrary to

19   West Virginia's assertion, the statement they quote—that Securities Act claims

20   would require different discovery—was made *before* discovery had commenced, at

21   a time when Plaintiffs were focused on looking for a Securities Act plaintiff.

22   *Compare id.* (citing transcript dated October 7, 2011), *with* ECF No. 216 (Order,

23   dated October 24, 2011, setting out rules for discovery requests and depositions,

24   and setting discovery cut-off date).

25        Once it became clear that discovery would go forward, Plaintiffs determined

26   to leave no potentially relevant issue uninvestigated, including those relating solely

27   _____

28   [12] This e-mail and its contents were publicly disclosed in the complaint filed in this
     Court against Manouch Moshayedi by the SEC.  *See* Ex. G (Complaint ¶ 69, *SEC
     v. Moshayedi*, No. 12-cv-01179-JVS-MLG (C.D. Cal. July 19, 2012) (ECF No. 1)).

1   to the Securities Act Claims.  Plaintiffs did so because, among other reasons, they

2   continued with their attempts to identify a Securities Act representative plaintiff,

3   *see* ECF Nos. 354 (Supp. Dubbs Decl.) ¶¶ 35-44; 335 at 14:9-17, and because,

4   during the first mediation—which took place before the commencement of the

5   depositions—Defendants communicated that they would not settle unless the

6   Securities Act Claims were included in the settlement, *see* Supp. Joffe Decl. ¶ 31.

7   Thus, as demonstrated, *supra*, Plaintiffs took discovery regarding the

8   Underwriters' due diligence defense.  Thus too, Plaintiffs served an expert report

9   devoted in part to an allegation in the Complaint alleged only under the Securities

10  Act—namely, that disclosure of the one-off nature of the EMC Agreement had

11  been required by the SEC's Regulation S-K, even if it had ***not*** been required by the

12  nature of the affirmative statements that Defendants had made about the EMC

13  Agreement—the latter requirement being one alleged under ***both*** the Securities Act

14  ***and*** the Exchange Act.  *See* ECF No. 335 at 14:18-15:5.

15         Similarly, Plaintiffs took vigorous discovery regarding the Competition

16  Claim.  *See* ECF No. 354 (Supp. Dubbs Decl.) ¶¶ 51-56; Supp. Joffe Decl. ¶¶ 28-

17  29.  Plaintiffs had multiple reasons to do so, including that (1) the facts relevant to

18  the Competition Claim also are relevant to the EMC Agreement claim, *see* ECF

19  No. 335-1 ¶ 11, (2) if supported by evidence obtained during discovery, Plaintiffs

20  could have sought leave to re-allege the Competition Claim prior to any motions

21  for summary judgment, (3) dismissal of the claim could be appealed after

22  judgment, and (4) even a dismissed claim may be worth something in a settlement.

23         **(b)    Negotiations on Behalf of the Securities Act Claims**

24         West Virginia asserts that Dr. Ripperda's representation of the Securities Act

25  Claimants cannot have been adequate because the Plan of Allocation was not

26  negotiated until after the parties had agreed to the Settlement.  *See* ECF No. 358

27  (W.Va.Br.) at 16.  West Virginia cites no authority for this proposition.

28

1    In fact, contrary to West Virginia's assertion, negotiation of a plan of

2    allocation after a settlement agreement has been executed, and without any

3    participation by defendants in the negotiation of the plan of allocation, is common,

4    and entirely appropriate, in securities class actions. *See, e.g.*, *Class Plaintiffs v.*

5    *City of Seattle*, 955 F.2d 1268, 1273, 1275-76, 1296 (9th Cir. 1992) (affirming

6    approval of settlement agreement and plan of allocation in securities litigation

7    where approval of the settlement agreement had been certified as a final judgment

8    on February 27, 1990, and the plan of allocation, negotiated thereafter solely

9    between counsel for two sets of plaintiffs, had not been approved until September

10   21, 1990—seven months after certification of the district court's approval of the

11   settlement as a final judgment).

12   West Virginia also asserts that Dr. Ripperda cannot have been adequate

13   because the Settlement "was largely agreed to" without his involvement.  This

14   assertion too is wrong—for each of several reasons.

15   First, "[n]othing in Rule 23 requires that subclass counsel fight among one

16   another or attend every negotiation session in attempting to work out a global

17   settlement." *In re Diet Drugs Prods. Liability Litig.*, Nos. 1203, 99-20593, 2000

18   WL 1222042, at *51 (E.D. Pa. Aug. 28, 2000).  Indeed, so far as maximizing the

19   recovery from Defendants is concerned—as distinct from achieving a fair plan of

20   allocation among Class Members—representative plaintiffs for both the Exchange

21   Act Claims and the Securities Act Claims have a common interest.

22   Even so, as Robert S. Green, one of Dr. Ripperda's two attorneys has

23   explained, when Ripperda's attorneys joined the negotiation, they acted with

24   appropriate independence:

25       Mr. Bienert and I approached the mediation with two

26       goals in mind.  First, we wanted to maximize the amount

27       of money that Defendants would pay to obtain a release

28       of claims that included the Section 11 claims.  Second,

1            we wanted to maximize the allocation to Section 11

2            claimants out of the settlement fund that was created. At

3            the mediation on September 5, 2012, we maintained

4            separation from both the Lead Plaintiffs counsel and

5            Defendant's counsel, working separately with the

6            mediators to advance these two goals and conducting our

7            own joint sessions with Defendants' counsel and then

8            with Lead Plaintiff's counsel as deemed appropriate with

9            the mediators. At the end of the day, we did not accept

10           the amount that was offered by Defendants and further

11           negotiations were required to reach an amount that was

12           acceptable to us, as well as Lead Plaintiff's counsel.

13 ECF No. 354-2 ¶ 11.

14       Moreover, the participation of Dr. Ripperda, through his counsel, had a

15 positive effect on the amount of the Settlement Fund. Thus, before Dr. Ripperda

16 and his counsel became involved in the negotiations, STEC stated in its Form 10-Q

17 filed on August 7, 2012, that "the Company's best estimate of the probable loss"

18 from a settlement with Plaintiffs was only $35 million. *See* Ex. D. However, after

19 the participation of Ripperda and his counsel in the remaining negotiations,

20 Defendants agreed to provide a $35.75 million Settlement Fund.

21       Second, where, as here, the purpose of appointing a Securities Act

22 representative plaintiff is so that Securities Act Claimants will have "the benefit of

23 the lesser burden of proof required by the Securities Act claims," ECF No. 279

24 at 14, vigorous negotiation of the plan of allocation is a crucial metric of the

25 adequacy of the Securities Act representative plaintiff.

26       Dr. Ripperda's counsel participated in negotiations assisted by Judge Philips

27 regarding the Plan of Allocation of the Settlement Fund between the Exchange Act

28 Claimants and the Securities Act Claimants. *See* ECF Nos. 354-2 ¶¶ 12-15; 354

¶¶ 75-76; 354-4 ¶¶ 9-10.  Indeed, during those negotiations, it was Dr. Ripperda's counsel who suggested the amount of the premium for the Securities Act Claims that ultimately was agreed to by New Jersey and Dr. Ripperda.  *See* ECF No. 354 (Supp. Dubbs Decl.) ¶ 76.

Third, the fact that a class representative has secured appropriate relief for class members that he represents indicates that the adequacy requirement has been satisfied.  *See Walters v. Reno*, 145 F.3d 1032, 1046 (9th Cir. 1998) (objection to adequacy "is particularly weak in light of the fact that the class representatives have been so successful in their efforts to obtain relief for the entire class"); *Moralez v. Whole Foods Market, Inc*., No. C12-01072(CRB), 2012 WL 4369603, at *11 (N.D. Cal. Sept. 24, 2012) (holding class settlement release preclusive because representation was adequate where class members were compensated appropriately, and "nothing suggests that [class member wishing to bring her own suit] could or would secure—apart from her own incentive award and attorneys' fees—any different or better resolution of the claims while avoiding the uncertainties of trial").

Here, the Court already has held that, "[t]he size of the Settlement speaks for itself," as a reason to submit the proposed Settlement to the Class.  ECF No. 346 at 13.  In addition, as demonstrated, *supra*, the allocation between the Securities Act Claims and Exchange Act Claims is fair to both kinds of claims.

## C.   The Securities Act Claims May Be Released by the Settlement

The factual predicate of every Securities Act claim released by the Settlement was pled in the Second Amended Complaint, *see* ECF No. 279 at 13 ("in this case the Securities Act claims and the Exchange Act claims share the 'same foundation of facts'"), or the First Amended Complaint, ECF No. 131-1 ¶¶ 140, 176-79.  Moreover, "the released claims need not be exactly factually and legally identical to the allegations in the complaint; rather, they need only share a common factual predicate." *Anderson v. Nextel Retail Stores, LLC*, Nos. CV 07-

1   4480, 6362, 6576-SWW (FFMx), 2010 WL 8591002, at *6 (C.D. Cal. Apr. 12,

2   2010); *see also Class Plaintiffs*, 955 F.2d at 1288 (holding claims pled and claims

3   released need only share "the same common nucleus of operative fact").

4   　　　　In addition, as demonstrated, *supra*, each of the Securities Act Claims

5   released by the Settlement has been prosecuted with appropriate vigor.  *See*

6   *Anderson*, 2010 WL 8591002, at *14 ("counsel is required to be adequate, not

7   perfect").  As also demonstrated, *supra*, the Securities Act Claims have been

8   settled with the vigorous involvement of a proposed representative—Dr.

9   Ripperda—who has no conflict with the other Securities Act Claimants.

10   　　　　Moreover, a complaint may be amended to add a representative plaintiff,

11   even after the parties have agreed to a settlement.  *See* Ex. H at 1 (Pls' Br.,

12   *Vallabhapurapu v. Burger King Corp.* ("*Vallabhapurapu*"), No. C 11-00667-WHA

13   (N.D. Cal. June 14, 2012) (ECF No. 219)) (explaining amendment was needed in

14   order to have a representative plaintiff for "each subclass," "to effectuate a global

15   settlement reached by the parties"); *Vallabhapurapu*, 2012 WL 2568183, at *1

16   (N.D. Cal. July 2, 2012) (granting class certification, based on amendment);

17   *Vallabhapurapu*, 2012 WL 5349389, at *4-5 (N.D. Cal. Oct. 29, 2012) (approving

18   settlement).

19   **D.   The Claims in State Court May Be Released Despite the Exclusion of State Court Class Counsel from the Settlement Process**

20   　　　　The Ninth Circuit has held that claims alleged in state court may be released

21   by a settlement in federal court, despite the exclusion of the state court class

22   counsel from the settlement process.  *Class Plaintiffs*, 955 F.2d at 1286-88, 1291

23   (affirming release of claims pled in state court because counsel who negotiated the

24   settlement in federal court represented the "same group of [claimants]" and was

25   "intimately familiar with the [relevant] facts and law").

26   　　　　Therefore, the Securities Act Claims may be released by the Settlement.[13]

27

28   ──────────
[13] As previously explained, *Hesse v. Sprint Corp*, 598 F.3d 581 (9th Cir. 2010), relied on by West Virginia, is nothing like this case.  *See* ECF No. 335 at 16 n.4

### E.   Only With the Certification of Dr. Ripperda, Will the Securities Act Claimants Be Assured of Relief

West Virginia asserts that Plaintiffs' purpose in adding Dr. Ripperda to this action is **solely** so that the Securities Act Claims can be released.  *See* ECF No. 358 (W.Va.Br.) at 23:5-6.  Contrary to West Virginia's assertion, the addition of Dr. Ripperda as a representative plaintiff gives Securities Act Claimants an opportunity to share in the Settlement Fund, and even to receive a premium relative to other participants in the Fund.  It is only reasonable that, in order for Securities Act Claimants to so benefit, they be required to release their claims. Even after Dr. Ripperda has been certified as their representative, if the Securities Act Claimants do not wish to make such a trade-off, they will be able to opt out.

If, on the other hand, Securities Act Claimants are excluded from the Settlement, there is a risk that they will never be able to obtain **any** relief, because the State Action has not yet survived Defendants' demurrers to the complaint, and has never been certified as a class action.

### F.   The Amended Proposed Notice Discloses the Attorneys' Fees Sought by Counsel, Including BLBG

Co-Lead Counsel's fee is subject to a fee agreement with New Jersey, as well as Court review and approval.  The combined fee requested by Co-Lead Counsel, Dr. Ripperda's counsel and KSF will not exceed 16.75% of the Settlement Fund.  Should the Court award attorneys' fees of 16.75%, such an award would represent a significant negative lodestar multiplier for Co-Lead Counsel.  In other words, Co-Lead Counsel will recover a small fraction of their total lodestar.

BLBG and KSF requested that Co-Lead Counsel add language to the notice regarding their respective requests for fees.  After negotiations, KSF agreed to accept the same negative lodestar multiplier as Co-Lead Counsel.  However, BLBG has indicated that it will seek compensation for the **full** amount of the lodestar that it has accumulated in connection with its representation of:  1) former

co-lead plaintiffs Rashtchi and Ovitt in this Action **and** 2) West Virginia in the State Action. BLBG states that its fee will not exceed $2.6 million, or approximately 7.27% of the Settlement Fund. Accordingly, at the request of BLBG, Plaintiffs' Counsel has added several paragraphs explaining this issue to the current proposed Notice, which is attached as Exhibit I to the Supplemental Joffe Declaration. *See* Ex. I at 6-7, 21-23.[14]

## **CONCLUSION**

For the reasons set forth above, West Virginia's objection should be rejected.


Dated: January 25, 2012                    Respectfully submitted,

                                           LABATON SUCHAROW LLP


                                           */s/ Thomas A. Dubbs*
                                           Thomas A. Dubbs (*Pro Hac Vice*)
                                           *tdubbs@labaton.com*
                                           James W. Johnson (*Pro Hac Vice*)
                                           *jjohnson@labaton.com*
                                           Richard T. Joffe (*Pro Hac Vice*)
                                           *rjoffe@labaton.com*
                                           Thomas G. Hoffman, Jr. (*Pro Hac Vice*)
                                           *thoffman@labaton.com*
                                           140 Broadway
                                           New York, NY 10005
                                           Telephone: (212) 907-0700
                                           Facsimile: (212) 818-0477

                                           *-and-*

---

[14] Although New Jersey has agreed to provide Class Members with notice of BLBG's fee request in the Amended Proposed Notice, New Jersey has expressly reserved the right to oppose that request. *See* Ex. I at 23.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITE DEPALMA GREENBERG,  LLC

/s/ Allyn Z. Lite
Allyn Z. Lite (*Pro Hac Vice*)
*alite@litedepalma.com*
Bruce D. Greenberg (*Pro Hac Vice*)
*bgreenberg@litedepalma.com*
Katrina Carroll (*Pro Hac Vice*)
*kcarroll@litedepalma.com*
Two Gateway Center, 12th Floor
Newark, NJ 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858

*Attorneys for Lead Plaintiff, Plaintiffs
and Co-Lead Counsel for the Class*

Christopher Kim (Bar No. 082080)
*christopher.kim@limruger.com*
Lisa J. Yang (Bar No. 208971)
*lisa.yang@limruger.com*
LIM, RUGER & KIM, LLP
1055 West Seventh Street, Suite 2800
Los Angeles, CA 90017
Telephone: (213) 955-9500
Facsimile: (213) 955-9511

*Attorneys for Lead Plaintiff, Plaintiffs
and Liaison Counsel for the Class*

GREEN & NOBLIN, P.C.

/s/ Robert S. Green
Robert S. Green
*rsg@classcounsel.com*
700 Larkspur Landing Circle
Suite 275
Larkspur, CA 94939
Telephone: (415) 477-6700
Facsimile: (415) 477-6710

BIENERT, MILLER & KATZMAN
Thomas Bienert, Jr.
*tbienert@bmkattonreys.com*
903 Calle Amanecer, Suite 350
San Clemente, CA 92673
Telephone: (949) 369-3700
Facsimile: (949) 369-3701

*Attorneys for Mark Ripperda*