BERNSTEIN LITOWITZ BERGER
    & GROSSMANN LLP
BLAIR A. NICHOLAS  (Bar No. 178428)
blairn@blbglaw.com
NIKI L. MENDOZA (Bar No. 214646)
nikim@blbglaw.com
BENJAMIN GALDSTON  (Bar No. 211114)
beng@blbglaw.com
JOSEPH W. GOODMAN  (Bar No. 230161)
joseph.goodman@blbglaw.com
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:   (858) 793-0070
Fax:   (858) 793-0323

*Movant and Prior Lead Counsel*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| IN RE STEC, INC. SECURITIES LITIGATION | SACV09-1304-JVS (MLGx) |
| | **MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES FOR BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP AS FORMER LEAD COUNSEL AND COUNSEL FOR SECURITIES ACT CLAIMANTS** |
| | Date:       May 20, 2013<br>Time:       1:30 p.m.<br>Judge:      Hon. James V. Selna<br>Courtroom:  10C |

## <u>NOTICE OF MOTION AND MOTION</u>

PLEASE TAKE NOTICE that, pursuant to the Court's Preliminary Approval Order Providing For Notice And Hearing In Connection With Proposed Class Action Settlement filed March 5, 2013 ("Preliminary Approval Order," ECF No. 372), on May 20, 2013, at 1:30 p.m., before the Honorable James V. Selna of the United States District Court for the Central District of California, Southern Division in the Ronald Reagan Federal Building and U.S. Courthouse, Courtroom 10C, 411 West Fourth Street, Santa Ana, California, Bernstein Litowitz Berger & Grossmann LLP will and hereby does move the Court for an order granting attorneys' fees and reimbursement of litigation expenses in the above-captioned class action.

This motion is based on this notice of motion, the memorandum of points and authorities and declaration of Blair A. Nicholas in support thereof, the *in camera* submissions, all pleadings and papers filed herein, arguments of counsel, and any other matters properly before the Court.

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ........................................................................1

II.   HISTORY OF THE LITIGATION ................................................................5

    A.    Bernstein Litowitz's Service To The Class
       As Prior Co-Lead Counsel ................................................................5

    B.    Bernstein Litowitz Preserved, Prosecuted
       And Protected The Securities Act Claims...................................9

    C.    Bernstein Litowitz Successfully Urged The
       Court To Refuse To Certify A Class That
       Includes The Securities Act Claims ...........................................11

    D.    Bernstein Litowitz Continued To Protect The
       Securities Act Claims By Opposing
       Preliminary Approval Of A Settlement That
       Releases The Securities Act Claims Without
       A Proper Class Representative And Without
       A Clear Premium..................................................................................12

III.  BERNSTEIN LITOWITZ IS ENTITLED TO
    CLAIM ITS FEES IN QUANTUM MERUIT ............................................14

IV.   FACTORS CONSIDERED IN DETERMINING
    AMOUNT OF FEE RECOVERABLE IN
    QUANTUM MERUIT ....................................................................................14

V.    BERNSTEIN LITOWITZ'S REQUESTED FEE IN
    THE AMOUNT OF ITS ACTUALLY INCURRED
    LODESTAR WITHOUT A MULTIPLIER IS
    REASONABLE UNDER THE NINTH CIRCUIT
    FACTORS .........................................................................................................15

    A.    Bernstein Litowitz's Lodestar Is Reasonable
       And Supported By Detailed Time Reports ........................................15

    B.    Bernstein Litowitz's Extensive Efforts
       Contributed To The Recovery Obtained As
       Consideration For The Class' Release Of The
       Securities Act Claims And The Exchange
       Act Claims...........................................................................................18

        1.    The Nature Of The Litigation Supports
           Bernstein Litowitz's Fee Request ............................................19

        2.    The Skill Employed, The Attention
           Given, And The Success Of Bernstein
           Litowitz's Efforts Support Its Fee
           Request..................................................................................20

3.     The Reaction Of The Class To Date Supports Bernstein Litowitz's Fee Request ........................................................22

VI.   BERNSTEIN LITOWITZ IS ENTITLED TO REIMBURSEMENT OF ITS REASONABLE LITIGATION EXPENSES ...............................................23

VII.  CONCLUSION.................................................24

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Alvarado v. FedEx Corp.*,
    2009 WL 5113998 (N.D. Cal. December 18, 2009), *aff'd in relevant part,*
    *Alvarado v. Young,* 436 Fed. Appx. 746 (9th Cir. 2011) ...........................passim

*Buccellato v. AT&T Operations, Inc.*,
    2011 WL 3348055 (N.D. Cal. June 30, 2011).....................................................4

*In re Commtouch Software Ltd. Sec. Litig.*,
    2002 WL 31417998 (N.D. Cal. July 24, 2002) ..................................................6

*Dura Pharm. Inc. v. Broudo*,
    544 U.S. 336 (2005)........................................................................................6, 8

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
    2007 WL 2416513 (N.D. Cal. Aug. 16, 2007) .................................................19

*Glass v. UBS Fin. Services, Inc.*,
    331 Fed. Appx. 452 (9th Cir. 2009).....................................................................1

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .............................................................................1

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ................................................................................24

*In re Heritage Bond Litig.*,
    2005 WL 1594403 (C.D. Cal. June 10, 2005)...................................................19

*Knight v. Red Door Salons Inc.*,
    2009 WL 248367 (N.D. Cal. Feb. 2, 2009) .................................................22, 23

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ...............................................................19

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008)......................................................passim

*Rodriguez v. Disner*,
    688 F.3d 645 (9th Cir. 2012) ........................................................................2, 22

*Rodriguez v. West Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ........................................................2, 22

*In re Sumitomo Copper Litig.*,
   189 F.R.D. 274 (S.D.N.Y. 1999) ........................................................19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)........................................................................6

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ........................................1, 4, 14, 19

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) ..............................................................19

*Yumul v. Smart Balance, Inc.*,
   2010 WL 4352723 (C.D. Cal. Oct. 8, 2010) ........................................2

STATUTES, RULES & REGULATIONS

Rules of Civil Procedure
   Rule 23 ........................................................................................3
   Rule 26(f) ....................................................................................8

SECONDARY AUTHORITIES

"Biggest Lawyers Grab Fee Bounty," *The Wall Street Journal* (Apr. 16, 2012) .....18

"Top Firms Ranked by Medium Partner Hourly Rate," *The American Lawyer*
   (Jan. 26, 2010)................................................................................18

## I.   **PRELIMINARY STATEMENT**

Subject to the Court's approval, this securities class action has been settled, for $35,750,000 in cash, in exchange for the release of the Class' claims under both the Exchange Act of 1934 ("Exchange Act") and the Securities Act of 1933 ("Securities Act").   From this "common fund," attorneys' fees and expenses are awardable as a matter of law and equity.   The law firms that performed work benefitting the Class seek an award of attorneys' fees totaling less than 24.02% of the Settlement Fund.[1]  This total requested fee is lower than the Ninth Circuit's 25% "benchmark" for common fund cases.  *See, e.g., Glass v. UBS Fin. Services, Inc.*, 331 Fed. Appx. 452, 457 (9th Cir. 2009) (unpubl.); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (referring to 25% in attorneys' fees as a "benchmark award").   The aggregate fee is fully warranted under the standards set forth by the Ninth Circuit, including the results achieved, risks of litigation, skill required and quality of work, the contingent nature of the fee and financial burdens, awards made in similar cases, the reaction of the Class, and the amount of a lodestar cross-check.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046-48 (N.D. Cal. 2008).

This motion addresses the fees requested by Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz"), which initially served in this case as Court-appointed co-lead counsel for the Class, and subsequently served as counsel for Class Member West Virginia Laborers' Pension Trust Fund ("West Virginia Laborers") in its California state court putative class action, which preserved and prosecuted the Class Members' Securities Act claims (the "Securities Act Case").   Bernstein Litowitz is entitled to claim its fees in quantum meruit for its valuable

---

[1]  All capitalized terms that are not defined herein are defined in the Stipulation and Agreement of Settlement filed on October 5, 2012 (ECF No. 328-1).

MOT. FOR ATTORNEYS' FEES
No. SACV09-1304-JVS (MLGx)

work performed.  *See, e.g., Alvarado v. FedEx Corp.*, 2009 WL 5113998, at *1 (N.D. Cal. December 18, 2009) ("*FedEx*") (awarding fees on a quantum meruit basis to prior class counsel; based on Court's assessment of value of work performed by former counsel), *aff'd in relevant part, Alvarado v. Young,* 436 Fed. Appx. 746 (9th Cir. 2011) ("*Young*") (unpubl.) (affirming award of 25% of total fee award to prior class counsel and 75% to successor class counsel, finding that prior class counsel "was entitled to claim her fees in quantum meruit"); *Yumul v. Smart Balance, Inc.*, 2010 WL 4352723, at *1 n.6 (C.D. Cal. Oct. 8, 2010) ("Allowing plaintiff to terminate Beck & Lee as counsel does not prevent the firm from recovering the reasonable value of the services it has performed to date."); *see also Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 963 (9th Cir. 2009) (clearly erroneous to not award objectors fees where objectors brought issue to district court's attention; "we remand for the district court to reconsider the extent to which Objectors added value that increased the fund or substantially benefitted the class members, and to award attorney's fees accordingly"), *on appeal after remand, Rodriguez v. Disner*, 688 F.3d 645 (9th Cir. 2012) (clear error to not award fees to objector who brought issue to district court's attention).

Bernstein Litowitz performed valuable work that benefited the Class.  For example, in authorizing Bernstein Litowitz to seek attorneys' fees for its service, this Court recognized that Bernstein Litowitz ***"obviously expended significant resources drafting a consolidated complaint and responding to STEC's motion to dismiss."***  *See* July 14, 2010 Order, ECF No. 123.  Indeed, by the time the Court substituted a new lead plaintiff in this case (and approved of its selection of new lead counsel) on July 14, 2010 (ECF No. 123), Bernstein Litowitz, as prior co-lead counsel, had already conducted an extensive factual and legal investigation, including identifying and contacting hundreds of potential confidential witnesses; consulted with accounting and damages experts; drafted the comprehensive consolidated complaint that was later used as a template for future complaints;

conferred with defense counsel and appeared before the Court regarding an appropriate pretrial schedule; and prepared an extensive opposition to Defendants' motion to dismiss and request for judicial notice.

In addition, following the dismissal of – and then election not to reallege and/or preserve – the "more valuable" Securities Act claims by the successor lead plaintiff in this case, Bernstein Litowitz promptly prepared and filed a detailed complaint in state court asserting exclusively Securities Act claims.   These Securities Act claims would have become barred by the statute of limitations had Bernstein Litowitz not preserved them.   Accordingly, Bernstein Litowitz's preservation of the Securities Act claims added value to the Settlement that was obtained expressly in consideration for release of both the Exchange Act claims and the Securities Act claims.  Indeed, the successor lead plaintiff recently confirmed that "Defendants communicated to Plaintiffs that *Defendants would not settle unless the Securities Act claims were included in the settlement.*" ECF No. 360-1 ¶31 (emphasis added).

Bernstein Litowitz also obtained through informal discovery, expressly authorized by the state court following motion practice, more than 1.6 million pages of documents and 30 deposition transcripts concerning core facts relevant to the Securities Act claims and Defendants' affirmative defenses thereto.   Bernstein Litowitz reviewed and analyzed transcripts and documents to evaluate and understand the merits and potential settlement value of the claims.

Finally, Bernstein Litowitz conferred additional value to the Class in connection with the settlement proceedings by ensuring at the preliminary approval stage that the proposed class representative for the Securities Act claimants satisfied the requirements of Rule 23 and confirming that Securities Act claimants will receive an actual 25% premium in the settlement recovery for their more valuable claims.

Bernstein Litowitz undertook the prosecution of these actions on an entirely contingent basis.  As compensation for its extensive efforts which contributed to the recovery for the Class in exchange for the release of both the Exchange Act claims and the Securities Act claims, Bernstein Litowitz is applying for attorneys' fees limited to only the amount of its lodestar actually incurred, in a total amount of $2,152,742.50, and its actually incurred litigation expenses in a total amount of $72,346.85.  In determining the amount to which counsel is entitled to in quantum meruit for its services benefitting a class, ***"the most useful starting point"*** is its lodestar.  *FedEx,* 2009 WL 5113998, at *17; *aff'd in relevant part, Young,* 436 Fed. Appx. 746.

Notably, Bernstein Litowitz is not seeking any "enhancement" or "multiplier" to its fee award through the application of a multiplier above the amount of its actually incurred lodestar, as is commonly awarded by courts to contingency counsel that – like Bernstein Litowitz – take on representation of class claims in complex and risky high-stakes litigation on a pure contingency basis while advancing costs with no assurance of recovery.  *See, e.g., Vizcaino,* 290 F.3d 1043 (affirming lead counsel's fee that equaled 28% of the settlement fund and a multiplier of 3.65); *see also Buccellato v. AT&T Operations, Inc.*, 2011 WL 3348055, at *1 (N.D. Cal. June 30, 2011) (awarding 25% fee, representing a 4.3 multiplier).

West Virginia Laborers, the putative class representative in the related Securities Act Case, and who is a sophisticated institutional investor Class Member here, approves of Bernstein Litowitz's fee and expense request as fair and reasonable.  *See* Declaration Of Blair A. Nicholas In Support Of Motion For Approval Of Attorneys' Fees And Litigation Expenses ("Nicholas Declaration" or "Nicholas Decl."), ¶58.  In addition, the Court-approved Notice sent to Class Members informed the Class, *inter alia*, that:  (i)  Bernstein Litowitz would seek attorneys' fees in the amount of its lodestar actually incurred in preserving and

pursuing both the Securities Act claims and the Exchange Act claims in this federal court action and the related state court action, in a total amount not to exceed $2.6 million, and litigation expenses not to exceed $80,000; (ii) Bernstein Litowitz's requested fee would represent approximately 7.27% of the Settlement Fund; and (iii) in the event the Court awards the fees requested by Bernstein Litowitz, as well as the fee requested by Successor Lead Counsel Labaton Sucharow LLP and Lite DePalma Greenberg, LLC ("Successor Lead Counsel"), the total fees paid to counsel would not exceed 24.02% of the Settlement Fund.

While the deadline for Class Members to file any objection to the requested attorneys' fees and expenses has not yet passed, to date, no objection has been filed, either to the total aggregate fee of less than 24.02%, or to Bernstein Litowitz's fee and expense request as clearly stated in the Notice.

## II.   HISTORY OF THE LITIGATION

Bernstein Litowitz respectfully refers the Court to the Nicholas Declaration being publicly filed herewith, as well as its lodestar time records being submitted *in camera*, for detailed descriptions of the work performed by Bernstein Litowitz for the benefit of the Class.  A summary is provided below.

### A.   Bernstein Litowitz's Service To The Class As Prior Co-Lead Counsel

Beginning on November 6, 2009, several complaints were filed in this Court against STEC and other defendants alleging violations of the Securities Act and Exchange Act.  By Order dated February 8, 2010, the Court granted the motion for appointment of Arman Rashtchi and Keith Ovitt as lead plaintiffs, and their selection of Bernstein Litowitz and Kahn Swick & Foti, LLC, as co-lead counsel. ECF No. 61.  As the Court-appointed co-lead counsel, Bernstein Litowitz utilized its skill and experience as a top securities class action law firm in conducting an extensive investigation, preparing the comprehensive first consolidated complaint, negotiating and appearing before the Court regarding an appropriate pretrial

schedule, and defending against Defendants' motion to dismiss.  *See* Nicholas Decl. ¶5.

Indeed, Bernstein Litowitz understood that it was necessary that the consolidated complaint allege false statements and omissions with sufficient particularity, and that the pleading create a strong inference of scienter, such that the complaint would satisfy the PSLRA's heightened pleading standard, as well as the Supreme Court's decision in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).  In order to meet this standard, Bernstein Litowitz conducted an extensive investigation, including by reviewing and analyzing all relevant news, press releases and filings made with the U.S. Securities and Exchange Commission (the "SEC"), as well as analyst reports from over twenty analyst companies. Nicholas Decl. ¶6.  Specifically to satisfy – and exceed – the standards for pleading falsity and scienter, Bernstein Litowitz identified over 616 potential confidential witnesses from 13 different companies, contacted over 200 of them for use in preparing the consolidated complaint, and drafted over 100 confidential investigation memoranda regarding communications with the potential confidential witnesses. *Id.* ¶6.

In addition, Bernstein Litowitz worked with an accounting expert to analyze the accounting misstatements and numerous violations of generally accepted accounting principles ("GAAP") detailed in the consolidated complaint.  Bernstein Litowitz understood that loss causation must be pled sufficiently to satisfy the Supreme Court's decision in *Dura Pharm. Inc. v. Broudo*, 544 U.S. 336 (2005) ("*Dura*"), and worked with an expert to ensure that the standard was satisfied.

Unquestionably, the consolidated complaint filed by Bernstein Litowitz, as co-lead counsel, contained much more extensive detail than the sparse allegations contained in the initial complaints filed at the commencement of the litigation.  *See In re Commtouch Software Ltd. Sec. Litig.*, 2002 WL 31417998, at *5 (N.D. Cal. July 24, 2002) (recognizing that "most placeholder complaints filed early in a

securities class action subject to the PSLRA" are not supported "with extensive details"). For example, unlike the placeholder complaints, the consolidated complaint detailed material misstatements and omissions regarding: (i) revenues from ZeusIOPS ("Zeus"); (ii) the $120 million supply agreement with EMC Corporation ("EMC"); (iii) customer base and future growth; (iv) product quality; (v) competition; and (vi) internal controls and compliance with GAAP and SEC regulations.

Based on Bernstein Litowitz's investigation, including communications with 13 well-placed confidential witnesses, the consolidated complaint alleged details regarding Defendants' corrupt business practices, including (i) "shipping bricks" (*i.e.*, STEC's practice of shipping empty packages or packages containing the wrong product, allowing STEC to immediately record revenue for product that was not actually shipped); (ii) forcing customers to accept inventory by a fiscal quarter's deadline regardless of actual need for STEC's products at that time; (iii) shipping defective or untested product; (iv) selling product as "new" even though it contained refurbished or rejected parts; (v) lying to customers about product quality, features, certifications, testing, and failure rates; (vi) altering error reports before sending them to customers; and (vii) manipulating accounting for revenue from the EMC contract in violation of GAAP.[2]

Bernstein Litowitz's consolidated complaint also detailed the massive insider trading – which was the basis of the SEC's formal investigation and subsequent

---

[2] Consolidated Complaint, ¶¶22, 37-75, 186-200 (ECF No. 83). Because Bernstein Litowitz's investigation for the consolidated complaint, including communications with confidential witnesses made pursuant to an express agreement with such confidential witnesses not to disclose their identities absent Court order, is protected work product, Bernstein Litowitz was unable to share the investigative work product with Successor Lead Counsel without potentially waiving the work product protection and violating its agreements with the confidential witnesses. Nicholas Decl. ¶10.

civil enforcement action against Manouch Moshayedi – and explained how multiple partial disclosures, beginning on September 17, 2009, and concluding on February 23, 2010, revealed that STEC's purported increased revenue was derived from a single customer, in a one-time deal that, contrary to Defendants' misrepresentations, was not indicative of continuing demand for STEC's products.

As prior co-lead counsel, Bernstein Litowitz also met and conferred and prepared a stipulation with defense counsel regarding scheduling matters; drafted and negotiated a Joint Rule 26(f) Report (ECF No. 82), including, *inter alia,* a summary of legal issues, anticipated motions, discovery, and the parties' proposed pretrial schedule; participated as lead counsel in the Court's April 12, 2010 Scheduling Conference; and drafted and negotiated a stipulation and proposed order regarding pretrial deadlines.  Bernstein Litowitz also prepared a comprehensive opposition to Defendants' motion to dismiss and request for judicial notice, explaining, *inter alia*, how the consolidated complaint sufficiently alleged Defendants' false and misleading statements and omissions with particularity; that it adequately alleged scienter, including allegations of Defendants' deliberate GAAP violations and additional supporting information obtained from well-placed confidential witnesses interviewed by Bernstein Litowitz; and how the consolidated complaint adequately alleged loss causation under *Dura*.  ECF No. 92.

Defendants' motion to dismiss was removed from the Court's calendar when a new lead plaintiff and lead counsel were appointed.  The substitution of State of New Jersey, Department of Treasury, Division of Investment ("New Jersey" or "Lead Plaintiff") and Labaton Sucharow LLP and Lite DePalma Greenberg, LLC as the Court-appointed Lead Plaintiff and Successor Lead Counsel became final on September 14, 2010, when the Ninth Circuit denied the petition for writ of mandamus filed by Messrs. Rashtchi and Ovitt.  ECF No. 144.

**B.    Bernstein Litowitz Preserved, Prosecuted And Protected The Securities Act Claims**

After the new lead plaintiff appointment became final, Bernstein Litowitz became aware of the Court's June 17, 2011 Order (ECF No. 200), which sustained the Exchange Act claims and dismissed without prejudice the Securities Act claims for lack of standing to pursue the claims as alleged in the complaint filed by Successor Lead Counsel.   Although the Securities Act claims were dismissed without prejudice, Successor Lead Counsel elected not to amend the complaint to reassert the Securities Act claims.   *See* ECF No. 201 (stipulating to extension of time for Defendants' to answer the prior complaint).

Having carefully reviewed the Court's June 17, 2011 Order, Bernstein Litowitz understood that the Securities Act claims were extremely valuable because Securities Act claims do not require proof of scienter, reliance or loss causation. Bernstein Litowitz further understood that Successor Lead Counsel's decision not to amend the complaint left the Securities Act claims in jeopardy of being extinguished by the statute of limitations within a matter of months.   Bernstein Litowitz was thus retained by a sophisticated institutional investor, West Virginia Laborers, who is a Class Member in this case and who purchased STEC common stock in the August 2009 offering, to pursue the Securities Act claims in California state court.

Bernstein Litowitz preserved the Securities Act claims by filing a detailed complaint (the "Securities Act Complaint") alleging that the August 2009 offering documents contained false and misleading statements and omissions, including that: (i) STEC would experience continued growth in sales of STEC's flagship product, Zeus, to EMC similar to a massive contract announced just prior to announcing the August 2009 offering, while omitting the material fact that the prior contract was merely a "one-off type of deal" which would not be repeated; (ii) STEC would experience continued growth in its sales of Zeus to other original equipment

manufacturer customers, while omitting, among other material information, that IBM would not begin purchasing for volume production during the second half of 2009 and was not marketing Zeus as a standard feature in its systems; and (iii) there was and would be no competition for STEC's solid-state drivers in the foreseeable future, while omitting the material fact that new competition would be entering the market at the end of 2009 and beginning of 2010. The August 2009 offering documents also incorporated STEC's second quarter 2009 Form 10-Q, filed with the SEC the same day as the Registration Statement, which West Virginia Laborers alleges falsely reported artificially inflated revenue in violation of GAAP. The Securities Act Complaint alleges that the falsity of Defendants' statements began to be revealed through a series of partial disclosures on September 17, 2009, through February 23, 2010. Although Defendants filed a demurrer as to timeliness (to which Bernstein Litowitz filed an opposition), Defendants did not dispute that the Securities Act claims were sufficiently alleged.

On October 26, 2011, Bernstein Litowitz, on behalf of West Virginia Laborers, served document requests on all Defendants seeking eight categories of core documents that relate directly to the Securities Act claims. On November 30, 2011, Defendants served their written responses.

Although the state court action was partially stayed pending the outcome of this case, the state court directed the parties to engage in certain agreed-upon informal discovery. As a result, beginning on March 12, 2012, the STEC Defendants provided Bernstein Litowitz with copies of the documents that they had produced in this federal action, as well as transcripts of certain depositions. During an October 18, 2012 Case Management Conference, the state court again encouraged the parties, including the Underwriter Defendants, to conduct further discovery. In total, the STEC Defendants, the Underwriter Defendants, and certain third-parties produced more than 1.6 million pages of documents and 30 deposition transcripts to Bernstein Litowitz, which were reviewed and analyzed by Bernstein

1    Litowitz to assess the merits of and defenses to the Securities Act claims.  Nicholas

2    Decl. ¶31.

3         **C.    Bernstein Litowitz Successfully Urged**
4              **The Court To Refuse To Certify A Class**
              **That Includes The Securities Act Claims**

5         Bernstein Litowitz continued to protect the valuable Securities Act claims by

6    moving, on behalf of West Virginia Laborers, to intervene when Successor Lead

7    Counsel moved to certify a plaintiff class that included claims both under the

8    Exchange Act, which Lead Plaintiff has standing to maintain, and under the

9    Securities Act, which the Court had previously ruled no representative plaintiff had

10   standing to represent under the theory of Successor Lead Counsel's operative

11   complaint.  Bernstein Litowitz argued that the valuable Securities Act claims being

12   prosecuted by West Virginia Laborers in California state court should not be

13   erroneously incorporated into any class that may be certified in this federal action,

14   particularly where the Court had dismissed the Securities Act claims and

15   determined that no named plaintiff in this federal action had standing to maintain

16   the Securities Act claims.  ECF No. 249, 257.

17        The Court agreed and denied Lead Plaintiff's initial class certification

18   motion, finding that "the proposed Class Representatives are inadequate because

19   they seek to certify a Class that includes individuals who may have claims under the

20   Securities Act, but the Class Representatives do not have standing to bring those

21   claims."[3]  After Lead Plaintiff failed to identify any plaintiff with standing who was

22   willing to litigate the case on behalf of the Securities Act claims as then alleged in

23

24   _____

25   [3] ECF No. 279, p. 10.  On June 14, 2012, the Ninth Circuit denied Lead Plaintiff's

26   petition for permission to appeal this Court's order denying class certification. ECF

27   No. 313.  This Court's March 7, 2012 Order denied West Virginia Laborers'
     motion to intervene as moot in light of its denial of class certification.  ECF No.

28   279, at p. 21.

this case, the Court then certified a class only "for purposes of asserting the Exchange Act claim."[4]

### D.   Bernstein Litowitz Continued To Protect The Securities Act Claims By Opposing Preliminary Approval Of A Settlement That Releases The Securities Act Claims Without A Proper Class Representative And Without A Clear Premium

Throughout the settlement approval process, Bernstein Litowitz continued zealously protecting the Securities Act claims, to ensure that a class representative with standing represents them, and to ensure that Securities Act claimants receive an actual, rather than illusory, premium for these "more valuable" claims.  Despite Bernstein Litowitz being excluded from the settlement negotiations, its efforts were largely successful, and materially contributed to the recovery obtained.

Bernstein Litowitz not only brought certain important issues to the Court's attention in connection with the motion for preliminary approval of the Settlement, but the Court expressly agreed and denied the initial motion.   ECF No. 346. Specifically, following West Virginia Laborers' opposition to Lead Plaintiff's initial purported "unopposed" motion for preliminary approval, the Court held that: (1) the proposed Securities Act class representative, Mark Ripperda ("Ripperda"), failed to satisfy the typicality requirement because he lacked standing to assert the Securities Act claims as alleged in the operative complaint; and (2) Ripperda failed to satisfy the adequacy requirement, both because he lacked standing, and because Lead Plaintiff has not satisfied the burden of showing that Ripperda and his counsel are able to prosecute the claims vigorously.  The Court expressly noted its reliance on West Virginia Laborers' opposition:

---

[4] ECF No. 314.   On September 6, 2012, the Ninth Circuit denied Defendants' petition for permission to appeal this Court's order granting class certification for the Exchange Act claim.  ECF No. 322.

As West Virginia Laborers points out in its opposition, Plaintiffs have not established Ripperda or his counsel's adequacy to prosecute the Securities Act claims nor supplied any information regarding their efforts to negotiate the allocation of these claims from the net settlement fund.  In fact, Ripperda and his counsel have been involved in this case only since August 2012; counsel attended one mediation session in which Ripperda was "available by telephone." Furthermore, Ripperda did not play an active role during discovery and began his participation late in the settlement negotiation stage. Finally, Plaintiffs' only basis for qualification of Ripperda's counsel is that the Court previously found that Co-Lead Counsel was qualified and capable, and so "Ripperda's counsel too are qualified and experienced."

ECF No. 346, pp.12-13 (citations omitted).

Successor Lead Counsel thus filed an amended complaint to assert Securities Act claims (that it had previously elected not to reallege), and to adopt the "competition" claim and corrective disclosure previously alleged by Bernstein Litowitz.

Although the Court then granted preliminary approval over Bernstein Litowitz's objection, the Court acknowledged the ambiguity revealed by Bernstein Litowitz as to whether the purported premium in the plan of allocation applied before or after the out-of-pocket loss cap is applied, and adopted the interpretation of the plan that ensures that the premium is actual, rather than illusory.  ECF No. 358, pp. 17-18 (explaining ambiguity in the Notice and the Finnerty declaration); ECF No. 361, p. 7 (adopting an interpretation that ensures the out-of-pocket loss cap is applied before the premium).

### III.   BERNSTEIN LITOWITZ IS ENTITLED TO CLAIM ITS FEES IN QUANTUM MERUIT

The Court's July 14, 2010 Order (ECF No. 123) substituting New Jersey as the new lead plaintiff, and approving of its selection of new lead counsel recognized that Bernstein Litowitz had "obviously expended significant resources drafting a consolidated complaint and responding to STEC's motion to dismiss," and explicitly authorized Bernstein Litowitz to apply for an award of attorneys' fees and reimbursement of costs incurred.  ECF No. 123 at p. 7, *id.* p. 7 n.7.

Bernstein Litowitz is also authorized to claim its fees – both as prior lead counsel in this case and as subsequent putative class counsel in the Securities Act Case – under quantum meruit pursuant to Ninth Circuit law.  *See, e.g., FedEx*, 2009 WL 5113998, at *1 (awarding fees on a quantum meruit basis to prior class counsel based on Court's assessment of value of work performed by former counsel), *aff'd in relevant part, Young,* 436 Fed. Appx. 746 (unpubl.) (affirming award of 25% of total fee award to prior class counsel and 75% to successor class counsel, finding that prior class counsel "was entitled to claim her fees in quantum meruit").

Furthermore, under certain circumstances, where, as here, counsel opposing approval of a settlement have successfully brought concerns to the Court's attention, they may be entitled to attorneys' fees from the fund created by class action litigation.  *See, e.g., Vizcaino*, 290 F.3d at 1051-52 (objectors may claim fees on the same equitable principles as class counsel).

### IV.   FACTORS CONSIDERED IN DETERMINING AMOUNT OF FEE RECOVERABLE IN QUANTUM MERUIT

In determining the amount that counsel is entitled to in quantum meruit for its services in benefitting a class, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *FedEx*, 2009 WL 5113998, at *17 (awarding fees on a quantum meruit basis to prior class counsel), *aff'd in*

*relevant part, Young*, 436 Fed. Appx. 746. "This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." *Id.*

Courts have explained, however, that "providing evidence as to the number of hours worked and rates claimed is not the end of the analysis in such a *quantum meruit* action," but rather the party seeking fees must also show the total fees incurred were reasonable. *Id.* "Factors relevant to that determination include the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure of the attorneys' efforts, the attorney's skill and learning, including his or her age and experience in the particular type of work demanded." *Id.* (citation and internal quotations omitted), *aff'd in relevant part, Young,* 436 Fed. Appx. 746 ("The 'nature of the litigation,' 'the skill employed, the attention given, [and] the success or failure of the attorney's efforts' are all proper considerations in a quantum meruit action.").

As explained below, Bernstein Litowitz's requested fee is reasonable, and supported by its lodestar and the additional factors considered by courts in granting quantum meruit fee awards.

## V. BERNSTEIN LITOWITZ'S REQUESTED FEE IN THE AMOUNT OF ITS ACTUALLY INCURRED LODESTAR WITHOUT A MULTIPLIER IS REASONABLE UNDER THE NINTH CIRCUIT FACTORS

### A. Bernstein Litowitz's Lodestar Is Reasonable And Supported By Detailed Time Reports

As explained by Judge Illston in granting prior class counsel 25% of the total attorneys' fee awarded in *FedEx,* "the most useful starting point" in determining a quantum meruit award is counsel's lodestar (number of hours reasonably expended multiplied by a reasonable hourly rate). *FedEx*, 2009 WL 5113998, at *17 (awarding fees on a quantum meruit basis to prior class counsel), *aff'd in relevant*

*part, Young*, 436 Fed. Appx. 746.

Here, Bernstein Litowitz seeks reimbursement for 4,407.90 of the total hours that it spent for the benefit of the Class. Accordingly, it is applying for attorneys' fees only in the amount of its actually incurred lodestar, in a total amount of $2,152,742.50. This represents only 6% of the Settlement Fund.

Bernstein Litowitz's lodestar is verified by a publicly-filed sworn declaration, detailing the lodestar by timekeeper, hourly rate, total hours, and total lodestar. *See* Nicholas Decl., Table A. In addition, Bernstein Litowitz is submitting (*in camera* in order to preserve the attorney-client privilege and/or work product protection) its comprehensive time reports detailing the work actually performed, in chronological order, including the timekeeper, description of work performed, time, rate, and lodestar for each task.

Bernstein Litowitz's hourly rates in this case are its regular 2011-2012 rates charged to clients who are billed by the firm on a monthly basis, and are based on qualifications and experience of each partner, senior counsel, associate, staff attorney, and paraprofessional.[5] Courts within the Ninth Circuit have approved fee applications of Bernstein Litowitz in securities class actions with comparable hourly rates.[6] Moreover, although to date Successor Lead Counsel Labaton

---

[5] Nicholas Decl. ¶45. Bernstein Litowitz's rates are based on its annual survey of the market rates for practitioners in the field using available sources, including rates charged by law firms that regularly defend securities class actions. Bernstein Litowitz surveyed four other securities litigation specialist firms on the plaintiffs' side, and five securities litigation specialist firms that it regularly faces on the defense side. The information on rates for the plaintiffs' counsel firms was typically obtained from attorneys' fees applications in other securities class actions. The information on rates for the defense firms was typically obtained from bankruptcy court filings, in which approval to pay attorneys' fees was requested. *Id.* ¶46.

[6] *In re Wells Fargo Mortgage-Backed Certificates Litig.*, Case No. 09-CV-1376-LHK (N.D. Cal.), Order filed Nov. 14, 2011, ECF No. 475 (partner rates ranging

Sucharow has not publicly disclosed its lodestar or billing rates in this case, historically its billing rates have been consistent with those of Bernstein Litowitz. A survey of Labaton Sucharow's 2012 billing rates indicates it charged between $725 to $975 for partners (with an average rate of $810), and between $425 to $650 for associates (with an average rate of $528).[7]

Bernstein Litowitz's rates in this case are also comparable to, or significantly less than, the known hourly rates charged by counsel that regularly represent defendants in securities class actions, including the law firm that represented the STEC defendants in this case, Latham & Watkins.  For example, between August

---

from $700 to $975 and associate rates ranging from $425 to $500, *see* ECF No. 453-4); *In re Maxim Integrated Prods., Inc. Sec. Litig.,* Case No. C-08-00832 JW (N.D. Cal.), Order filed Nov. 1, 2010, ECF No. 312 (granting fee request supported by similar lodestar cross-check and rates, ECF No. 306-1); *In re New Century*, Case No. 07-cv-00931 DDP (FMOx) (C.D. Cal.), Order filed Nov. 15, 2010, ECF No. 504 (granting fee requested supported by similar lodestar cross-check and rates, ECF No. 498-6); *In re Connetics Sec. Litig.*, Case No. C 07-02940 SI (N.D. Cal.), Order filed Nov. 10, 2009, ECF No. 202 (granting fee request supported by similar lodestar cross-check and rates, ECF No. 197-4); *Atlas v. Accredited Home Lenders Holding Co.*, Case No. 07-cv-00488-H (S.D. Cal.), Order filed Nov. 4, 2009, ECF No. 225 (granting fee request supported by similar lodestar cross-check and rates, ECF No. 218-4); *In re Int'l Rectifier Corp. Sec. Litig.*, Case No. CV 07-2544-JFW (C.D. Cal.), Order filed Feb. 8, 2010, ECF No. 316 (granting fee request supported by similar lodestar cross-check and rates, ECF No. 300-6).

[7] The information is gathered from Labaton Sucharow's declarations in support of its fee applications submitted in the following securities class actions:  Declaration of Thomas A. Dubbs at Ex. A, *In re Broadcom Corp. Class Action Litig.*, Lead Case No. CV-06-56036-R (CWx), ECF No. 444-4 (C.D. Cal. Nov. 2, 2012); Declaration of Thomas A. Dubbs at Ex. A, *In re the Bear Stearns Cos. Inc. Sec. Derivative & ERISA Litig.*, Master File No. 08 MDL 1963 (RWS), ECF No. 302-5 (S.D.N.Y. Aug. 15, 2012); Declaration of Jonathan Gardner at Ex. A, *In re Coinstar Inc. Sec. Litig.*, Case No. C11-133 MJP, ECF No. 143-6 (W.D. Wash. July 3, 2012); and Declaration of Jonathan Gardner at Ex. A, *In re Carter's, Inc. Sec. Litig.*, Civil Action No. 1:08-CV-2940-AT, ECF No. 123-5 (N.D. Ga. Apr. 23, 2012).

2008 and August 2009 – *i.e.,* 4-5 years ago – the rates for partners at Latham & Watkins ranged from $600 to $1,025 per hour (with a median rate of $830) and the rates for its associates ranged from $350 to $705 per hour (with a median rate of $490). *See* "Top Firms Ranked by Medium Partner Hourly Rate," *The American Lawyer* (Jan. 26, 2010).[8]   Moreover, hourly rates at large defense firms have materially risen since the foregoing surveys were conducted. *See, e.g.*, "Biggest Lawyers Grab Fee Bounty," *The Wall Street Journal* (Apr. 16, 2012).

**B.     Bernstein Litowitz's Extensive Efforts Contributed To The Recovery Obtained As Consideration For The Class' Release Of The Securities Act Claims And The Exchange Act Claims**

In addition to its actually incurred lodestar, verified by detailed time reports, other factors considered by courts in determining a quantum meruit award also demonstrate that Bernstein Litowitz's lodestar-based fee request is reasonable, both on its own, and as part of the aggregate plaintiffs' counsel's fee request of less than 24.02% of the Settlement Fund.

For example, the Ninth Circuit in *Young,* 436 Fed. Appx. 746, affirmed the award to prior class counsel of 25% of the aggregate fee award, explaining that "[t]he 'nature of the litigation,' 'the skill employed, the attention given, [and] the

---

[8] By way of further example, during the same time frame, the rates for partners at Cadwalader, Wickersham & Taft LLP, another prominent defense firm, ranged from $700 to $1,050 per hour (with a median rate of $900) and the rates for its associates ranged from $335 to $620 per hour (with a median rate of $480). *See* "Top Firms Ranked by Medium Partner Hourly Rate," *supra*.  Likewise, during the same time frame, the rates for partners at Fried, Frank, Harris, Shriver & Jacobson LLP ("Fried Frank"), another prominent defense firm, ranged from $735 to $895 (with a median rate of $835) and the rates of its associates ranged from $360 to $600 (with a median rate of $470).   *Id.*   A recent bankruptcy fee application submitted by Fried Frank in 2011 reflects that today its current partner rates range from $970 to at least $1,100 per hour, and that its associate rates range from $395 to at least $580 per hour. *See* Third Interim Fee Application, *In re Innkeepers USA Trust*, Case No. 10-13800 (SCC), ECF No. 2087 (S.D.N.Y. Bankr. Sept. 14, 2011).

success or failure of the attorney's efforts' are all proper considerations in a quantum meruit action." These factors support Bernstein Litowitz's fee request as discussed below.

### 1. The Nature Of The Litigation Supports Bernstein Litowitz's Fee Request

The Ninth Circuit has confirmed that a determination of a fair and reasonable fee must include consideration of the contingent nature of the fee and the obstacles surmounted in obtaining the settlement.[9] In addition, courts recognize that securities class actions are generally complex and expensive to prosecute.[10]

Here, Bernstein Litowitz received no compensation during the course of more than three years prosecuting two complex class actions, one in federal court and one in state court, which contributed to the benefit obtained by the Class. During this time, Bernstein Litowitz invested over 4,407 hours for a total lodestar of $2,152,742.50, and advanced reasonable and necessary expenses of $72,346.85 in prosecuting the claims. *See* Nicholas Decl. ¶¶3, 42, 49. Bernstein Litowitz lawyers working on the case have also forgone the business opportunity to devote time to other cases. *See Vizcaino*, 290 F.3d at 1050. Any fee award has always been at risk, and completely contingent on the result achieved and on the Court's discretion in awarding fees and expenses.

---

[9] *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("*WPPSS*"); *see In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 2007 WL 2416513, at *1 (N.D. Cal. Aug. 16, 2007); *see also Omnivision*, 559 F. Supp. 2d at 1047.

[10] *See, e.g., In re Heritage Bond Litig.*, 2005 WL 1594403, at *6 (C.D. Cal. June 10, 2005) (citing *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002)); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999).

### 2. The Skill Employed, The Attention Given, And The Success Of Bernstein Litowitz's Efforts Support Its Fee Request

The Ninth Circuit has also recognized that "the skill employed, the attention given, [and] the success or failure of the attorney's efforts' are all proper considerations in a quantum meruit action." *Young,* 436 Fed. Appx. at 748 (citation omitted). Here, there is no question that Bernstein Litowitz employed great skill and attention to prosecuting both the Exchange Act claims and the Securities Act claims for the benefit of the Class, and that its efforts were largely successful and contributed to the recovery obtained to resolve the claims.

**First**, as prior Court-appointed co-lead counsel, Bernstein Litowitz conducted an extensive investigation (including identifying and contacting hundreds of potential confidential witnesses), worked with accounting and damages experts, prepared the comprehensive first consolidated complaint to satisfy the heightened pleading standards of the PSLRA and Supreme Court precedent, negotiated and appeared before the Court regarding an appropriate pretrial schedule, and defended against Defendants' motion to dismiss. The Court was correct in observing that Bernstein Litowitz, as prior co-lead counsel, had "obviously expended significant resources drafting a consolidated complaint and responding to STEC's motion to dismiss." Order, at p. 7 (ECF No. 123).

**Second**, Bernstein Litowitz preserved and prosecuted the more valuable Securities Act claims after Successor Lead Counsel elected not to reallege and preserve them, which preservation and prosecution by Bernstein Litowitz valuably contributed to the ultimate resolution of the Securities Act claims. Indeed, Successor Lead Counsel has recently disclosed that Defendants *refused* to settle the Exchange Act claims unless they would also obtain a release of the Securities Act claims. ECF No. 360-1 ¶31. Clearly, Bernstein Litowitz's preservation and prosecution of the Securities Act claims contributed to the value of the settlement achieved.

**Third**, Bernstein Litowitz also continued to protect the value of the Securities Act claims by moving to intervene when Successor Lead Counsel moved to certify a plaintiff class that included claims both under the Exchange Act, which Lead Plaintiff has standing to maintain, and under the Securities Act, which the Court had previously ruled no representative plaintiff had standing to represent under the theory of Successor Lead Counsel's operative complaint.  The Court agreed and denied Lead Plaintiff's initial class certification motion, finding that "the proposed Class Representatives are inadequate because they seek to certify a Class that includes individuals who may have claims under the Securities Act, but the Class Representatives do not have standing to bring those claims."

**Fourth**, throughout the settlement approval process, Bernstein Litowitz continued to zealously protect the Securities Act claims, to ensure that a class representative with standing represents them, and to ensure that they receive an actual, rather than illusory, premium for these "more valuable" claims.  Bernstein Litowitz's efforts were largely successful, and materially contributed to the recovery obtained.  Indeed, the Court expressly noted its reliance on West Virginia Laborers' opposition in denying preliminary approval.  ECF No. 346, pp. 12-13.

Successor Lead Counsel thus filed an amended complaint to assert the Securities Act claims that it had previously elected not to reallege and preserve, and to adopt the "competition" claim and corrective disclosure alleged by Bernstein Litowitz.  Moreover, the Court acknowledged the ambiguity revealed by Bernstein Litowitz as to whether the purported premium applied before or after the out-of-pocket loss cap is applied, and adopted the interpretation of the plan that ensures that the premium is actual, rather than illusory.  ECF No. 358 pp. 17-18; ECF No. 361, p. 7.

It is well-settled Ninth Circuit law that, in certain circumstances, where, as here, counsel raises important issues that are considered by the Court, they are entitled to an award of attorneys' fees and expenses.  *See, e.g., Rodriguez,* 563 F.3d

at 963 (clearly erroneous to not award objectors fees where objectors brought issue to district court's attention; "we remand for the district court to reconsider the extent to which Objectors added value that increased the fund or substantially benefitted the class members, and to award attorney's fees accordingly"), *on appeal after remand, Disner*, 688 F.3d 645  (clear error to not award fees to objector who brought issue to district court's attention).

### 3. The Reaction Of The Class To Date<br>Supports Bernstein Litowitz's Fee Request

The reaction of the class to a proposed settlement and fee request is a relevant factor in approving fees. *See Knight v. Red Door Salons Inc.*, 2009 WL 248367, at *7 (N.D. Cal. Feb. 2, 2009); *Omnivision*, 559 F. Supp. 2d at 1048.  Here, West Virginia Laborers' Pension Trust Fund, the putative class representative in the related Securities Act Case, and who is a sophisticated institutional investor Class Member here, approves of Bernstein Litowitz's fee and expense request as fair and reasonable.  *See* Nicholas Decl. ¶58.

Moreover, the Court-approved Notice sent to the Class informed the Class, *inter alia*, that:  (i)  Bernstein Litowitz would seek attorneys' fees in the amount of its lodestar actually incurred in preserving and pursuing both the Securities Act claims and the Exchange Act claims in this federal court action and the related state court action, in a total amount not to exceed $2.6 million, and litigation expenses not to exceed $80,000; (ii) Bernstein Litowitz's requested fee would represent approximately 7.27% of the Settlement Fund; and (iii) in the event the Court awards the fees requested by Bernstein Litowitz, as well as the fee requested by Successor Lead Counsel, the total fees paid to counsel would not exceed 24.02% of the Settlement Fund.

While the deadline for Class Members to file objections, if any, does not expire until April 22, 2013, to date, no objection has been filed, either to the total aggregate fee of less than 24.02%, or to Bernstein Litowitz's fee and expense

Case 8:09-cv-01304-JVS-MLG   Document 376   Filed 04/08/13   Page 29 of 31   Page ID #:9075

request as stated in the Notice.  *See Silva v. Banco Popular N. Am.*, CV 08-06300 (C.D. Cal.), Order Granting Final Approval Of Settlement And Awarding Fees And Costs filed June 22, 2009, ECF No. 42 (awarding 28% aggregate fee award based in part on no objections); *Red Door Salons*, 2009 WL 248367, at *7 (no objection supports 30% aggregate fee award); *Omnivision*, 559 F. Supp. 2d at 1048 (only three objections supports 28% aggregate fee award).

## VI.   BERNSTEIN LITOWITZ IS ENTITLED TO REIMBURSEMENT OF ITS REASONABLE LITIGATION EXPENSES

Bernstein Litowitz also seeks reimbursement in the amount of its litigation expenses incurred in prosecuting the claims, in the amount of $72,346.85.  *See* Nicholas Decl., Table B.  Expenses are reimbursable in a common fund case where they are of the type typically billed by attorneys to paying clients in the marketplace.[11]

From the beginning of the case, Bernstein Litowitz was aware that it might not recover any of its expenses, and, at the very least, would not recover anything until the claims were successfully resolved.  Bernstein Litowitz also understood that, even assuming that the claims were ultimately successful, an award of expenses would not compensate it for the lost use of the funds advanced to prosecute the claims.  Thus, Bernstein Litowitz was motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the claims.  *See* Nicholas Decl. ¶51.

---

[11] *See, e.g., Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.");  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'").

MOT. FOR ATTORNEYS' FEES
No. SACV09-1304-JVS (MLGx)

-23-

Bernstein Litowitz's expenses are supported by a sworn declaration detailing the expenses. *See* Nicholas Decl. ¶49, Table B (publicly filed summary of expenses by category and amount), and detailed expense reports submitted *in camera*.

The expenses for which reimbursement is sought are the type of expenses routinely charged to hourly paying clients, and were necessary and appropriate for the prosecution of these claims. *See* Nicholas Decl. ¶52. These include charges for payments to experts and consultants; court transcripts; costs incurred in out-of-town travel; charges for photocopying; telephone, postal and express mail charges; and similar case-related costs. *Id. ¶*52. Courts have typically found that such expenses are reimbursable from a fund recovered by counsel for the benefit of the class.

The Notice provided to potential Class members informed them that Bernstein Litowitz would seek reimbursement of its litigation expenses not to exceed $80,000. The amount of expenses for which reimbursement is now sought – $72,346.85 – is *less* than the amount stated in the Notice. The deadline for filing objections to the fee and expense applications expires on April 22, 2013. To date, no objections have been filed.

## VII.   CONCLUSION

With no assurance of success, Bernstein Litowitz relentlessly pursued the Exchange Act claims and the Securities Act claims on behalf of the Class – in both federal and state court. Bernstein Litowitz's work on behalf of the Class undoubtedly contributed to the $35,750,000 recovery. Accordingly Bernstein Litowitz respectfully submits that its request to be reimbursed only for its time and expenses actually incurred in preserving, prosecuting and protecting the claims is reasonable and should be approved.

Dated: April 8, 2013                    Respectfully submitted,

                                        BERNSTEIN LITOWITZ BERGER
                                        & GROSSMANN LLP

                                        _____/s/ Blair A. Nicholas_____

Blair A. Nicholas  (Bar No. 178428)
blairn@blbglaw.com
Niki L. Mendoza (Bar No. 214646)
nikim@blbglaw.com
Benjamin Galdston  (Bar No. 211114)
beng@blbglaw.com
Joseph W. Goodman  (Bar No. 230161)
joseph.goodman@blbglaw.com
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:    (858) 793-0070
Fax:    (858) 793-0323

*Movant and Prior Lead Counsel*