BERNSTEIN LITOWITZ BERGER
   & GROSSMANN LLP
BLAIR A. NICHOLAS  (Bar No. 178428)
blairn@blbglaw.com
NIKI L. MENDOZA (Bar No. 214646)
nikim@blbglaw.com
BENJAMIN GALDSTON  (Bar No. 211114)
beng@blbglaw.com
JOSEPH W. GOODMAN  (Bar No. 230161)
joseph.goodman@blbglaw.com
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:   (858) 793-0070
Fax:   (858) 793-0323

*Movant and Prior Lead Counsel*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| IN RE STEC, INC. SECURITIES LITIGATION | SACV09-1304-JVS (MLGx) **DECLARATION OF BLAIR A. NICHOLAS IN SUPPORT OF MOTION FOR APPROVAL OF ATTORNEYS' FEES AND LITIGATION EXPENSES** |

# TABLE OF CONTENTS

Page

I.   HISTORY OF THE FEDERAL AND STATE
     COURT ACTIONS ...................................................................1

     A.   Prior Co-Lead Counsel ...............................................2

     B.   Background Of The Securities Act Case .....................5

     C.   Removal Of The Securities Act Case To
          Federal Court...............................................................7

     D.   Notice Of Related Cases, Demurrer And
          Motion To Stay The Securities Act Case.....................8

     E.   Motion To Lift The Stay Of The Securities
          Act Case ......................................................................9

     F.   Discovery From Defendants And Non-
          Parties ........................................................................10

     G.   This Court Denies New Jersey's Motion For
          Class Certification ....................................................12

     H.   Settlement Approval Process .....................................13

II.  THE APPLICATION FOR ATTORNEYS' FEES
     AND EXPENSES ...................................................................15

     A.   Application For Attorneys' Fees................................15

     B.   Application For Reimbursement Of
          Expenses ....................................................................18

     C.   The Reaction Of The Class To Date
          Supports Bernstein Litowitz's Fee And
          Expense Request.........................................................21

I, Blair A. Nicholas, do hereby state, under the penalty of perjury, as follows:

1. I am a partner of the law firm of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz"), which initially served in this case as Court-appointed co-lead counsel for the Class, and subsequently served as counsel for Class member West Virginia Laborers' Pension Trust Fund ("West Virginia Laborers") in its California state court putative class action, which preserved and prosecuted Class Members' Securities Act claims (the "Securities Act Case").[1]  I have personal knowledge of all material matters related to the Litigation based upon my active supervision and participation in the prosecution of this Litigation since its inception.  If called upon to do so, I could and would testify to the matters set forth herein.

2. This declaration is submitted pursuant to Federal Rule of Civil Procedure 23(g) to assist the Court in evaluating Bernstein Litowitz's application for an award of attorneys' fees and reimbursement of litigation expenses.

3. Bernstein Litowitz received no compensation during the course of more than three years prosecuting two complex class actions, one in federal court and one in state court, which contributed to the benefit obtained by the Class. During this time, Bernstein Litowitz invested over 4,407 hours for a total lodestar of $2,152,742.50, and advanced reasonable and necessary expenses of $72,346.85 in prosecuting the claims.

## I.   HISTORY OF THE FEDERAL AND STATE COURT ACTIONS

4. A summary of the history of the actions is provided below.  In addition, Bernstein Litowitz respectfully refers this Court to its lodestar time records being submitted *in camera* for detailed descriptions of the work performed

---

[1] All capitalized terms that are not defined herein are defined in the Stipulation and Agreement of Settlement filed on October 5, 2012 (ECF No. 328-1).

by Bernstein Litowitz for the benefit of the Class.

A.   <u>**Prior Co-Lead Counsel**</u>

5.   Beginning on November 6, 2009, several complaints were filed in this Court against STEC and other defendants alleging violations of the Securities Act and Exchange Act.  By Order dated February 8, 2010, the Court granted the motion for appointment of Arman Rashtchi and Keith Ovitt as lead plaintiffs, and their selection of Bernstein Litowitz and Kahn Swick & Foti, LLC, as co-lead counsel. ECF No. 61.  As the Court-appointed co-lead counsel, Bernstein Litowitz utilized its skill and experience as a top securities class action law firm in conducting an extensive investigation, preparing the comprehensive first consolidated complaint, negotiating and appearing before the Court regarding an appropriate pretrial schedule, and defending against Defendants' motion to dismiss.

6.   Bernstein Litowitz understood that it was necessary that the consolidated complaint allege false statements and omissions with sufficient particularity, and that the pleading create a strong inference of scienter, such that the complaint would satisfy the PSLRA's heightened pleading standard, as well as the Supreme Court's decision in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).  In order to meet this standard, Bernstein Litowitz conducted an extensive investigation, including by reviewing and analyzing all relevant news, press releases and filings made with the U.S. Securities and Exchange Commission (the "SEC"), as well as analyst reports from over twenty analyst companies. Specifically to satisfy – and exceed – the standards for pleading falsity and scienter, Bernstein Litowitz identified over 616 potential confidential witnesses from 13 different companies, contacted over 200 of them for use in preparing the consolidated complaint, and drafted over 100 confidential investigation memoranda regarding communications with the potential confidential witnesses.

7.   In addition, Bernstein Litowitz worked with an accounting expert to analyze the accounting misstatements and numerous violations of generally

DECL. OF BLAIR A. NICHOLAS ISO MOTION
FOR ATTORNEYS' FEES AND EXPENSES
No. SACV09-1304-JVS (MLGx)

accepted accounting principles ("GAAP") detailed in the consolidated complaint. Bernstein Litowitz understood that loss causation must be pled sufficiently to satisfy the Supreme Court's decision in *Dura Pharm. Inc. v. Broudo*, 544 U.S. 336 (2005) ("*Dura*"), and worked with an expert to ensure that the standard was satisfied.

8.     Unquestionably, the consolidated complaint filed by Bernstein Litowitz, as co-lead counsel, contained much more extensive detail than the sparse allegations contained in the initial complaints filed at the commencement of the litigation.  For example, unlike the initial complaints, the consolidated complaint detailed material misstatements and omissions regarding:  (i) revenues from ZeusIOPS ("Zeus"); (ii) the $120 million supply agreement with EMC Corporation ("EMC"); (iii) customer base and future growth; (iv) product quality; (v) competition; and (vi) internal controls and compliance with GAAP and SEC regulations.

9.     Based on Bernstein Litowitz's investigation, including communications with 13 well-placed confidential witnesses, the consolidated complaint alleged details regarding Defendants' corrupt business practices, including (i) "shipping bricks" (*i.e.*, STEC's practice of shipping empty packages or packages containing the wrong product, allowing STEC to immediately record revenue for product that was not actually shipped); (ii) forcing customers to accept inventory by a fiscal quarter's deadline regardless of actual need for STEC's products at that time; (iii) shipping defective or untested product; (iv) selling product as "new" even though it contained refurbished or rejected parts; (v) lying to customers about product quality, features, certifications, testing, and failure rates; (vi) altering error reports before sending them to customers; and (vii) manipulating accounting for revenue from the EMC contract in violation of GAAP. Consolidated Complaint, ¶¶22, 37-75, 186-200 (ECF No. 83).

10.     Because Bernstein Litowitz's investigation for the consolidated

complaint, including communications with confidential witnesses made pursuant to an express agreement with such confidential witnesses not to disclose their identities absent Court order, is protected work product, Bernstein Litowitz was unable to share the investigative work product with Successor Lead Counsel without potentially waiving the work product protection and violating its agreements with the confidential witnesses.

11.     Bernstein Litowitz's consolidated complaint also detailed the massive insider trading – which was the basis of the SEC's formal investigation and subsequent civil enforcement action against Manouch Moshayedi – and explained how multiple partial disclosures, beginning on September 17, 2009, and concluding on February 23, 2010, revealed that STEC's purported increased revenue was derived from a single customer, in a one-time deal that, contrary to Defendants' misrepresentations, was not indicative of continuing demand for STEC's products.

12.     As prior co-lead counsel, Bernstein Litowitz also met and conferred and prepared a stipulation with defense counsel regarding scheduling matters; drafted and negotiated a Joint Rule 26(f) Report (ECF No. 82), including, *inter alia,* a summary of legal issues, anticipated motions, discovery, and the parties' proposed pretrial schedule; participated as lead counsel in the Court's April 12, 2010 Scheduling Conference; and drafted and negotiated a stipulation and proposed order regarding pretrial deadlines.  Bernstein Litowitz also prepared a comprehensive response to Defendants' motion to dismiss and request for judicial notice, explaining, *inter alia*, how the consolidated complaint sufficiently alleged Defendants' false and misleading statements and omissions with particularity; that it adequately alleged scienter, including allegations of Defendants' deliberate GAAP violations and additional supporting information obtained from well-placed confidential witnesses interviewed by Bernstein Litowitz; and how the consolidated complaint adequately alleged loss causation

DECL. OF BLAIR A. NICHOLAS ISO MOTION
FOR ATTORNEYS' FEES AND EXPENSES
No. SACV09-1304-JVS (MLGx)

under *Dura*. ECF No. 92.

13.     Defendants' motion to dismiss was removed from the Court's calendar when a new lead plaintiff and lead counsel were appointed.  The substitution of State of New Jersey, Department of Treasury, Division of Investment ("New Jersey" or "Lead Plaintiff") and Labaton Sucharow LLP and Lite DePalma Greenberg, LLC ("Successor Lead Counsel") as the Court-appointed Lead Plaintiff and Successor Lead Counsel became final on September 14, 2010, when the Ninth Circuit denied the petition for writ of mandamus filed by Messrs. Rashtchi and Ovitt.  ECF No. 144.

### B.     Background Of The Securities Act Case

14.     After the new lead plaintiff appointment became final, Bernstein Litowitz became aware of the Court's June 17, 2011 Order (ECF No. 200), which sustained the Exchange Act claims and dismissed without prejudice the Securities Act claims for lack of standing to pursue the claims as alleged in the complaint filed by Successor Lead Counsel.  Although the Securities Act claims were dismissed without prejudice, Successor Lead Counsel elected not to amend the complaint to reassert the Securities Act claims.  *See* ECF No. 201 (stipulating to extension of time for Defendants' to answer the prior complaint).

15.     Having carefully reviewed the Court's June 17, 2011 Order, Bernstein Litowitz understood that the Securities Act claims were extremely valuable because Securities Act claims do not require proof of scienter, reliance or loss causation.  Bernstein Litowitz further understood that Successor Lead Counsel's decision not to amend the complaint left the Securities Act claims in jeopardy of being extinguished by the statute of limitations within a matter of months. Bernstein Litowitz was thus retained by a sophisticated institutional investor, West Virginia Laborers, who is a Class Member in this case and who purchased STEC common stock in the August 2009 offering, to pursue the Securities Act claims in California state court.

16.    Bernstein Litowitz preserved the Securities Act claims by filing a detailed complaint (the "Securities Act Complaint") on July 1, 2011 in the Superior Court of the State of California, County of Orange against Defendants STEC, Manouch Moshayedi (STEC's Chief Executive Officer, Chairman of the Board, and Co-Founder), Mark Moshayedi (STEC's Chief Operating Officer), Raymond D. Cook (STEC's Chief Financial Officer and Principal Accounting Officer), Rajat Bahri (a Director and Chairman of the Audit Committee of STEC's Board of Directors), Barclays Capital Inc., Deutsche Bank Securities, Inc., J.P. Morgan Securities, Inc., and Oppenheimer & Co., Inc.[2]  On July 13, 2011, the case was assigned to Superior Court Judge Gail A. Andler.

17.    The Securities Act Complaint was brought on behalf of West Virginia Laborers and a putative class of all persons or entities who purchased or otherwise acquired the common stock of STEC pursuant or traceable to a secondary offering of STEC common stock on or about August 11, 2009 (the "August 2009 Offering"), and who were damaged thereby.  The Securities Act Complaint asserts claims under Sections 11, 12(a)(2) and 15 of the Securities Act, arising out of materially false and misleading statements in STEC's Registration Statement, Prospectus, and Amended or Supplemental Prospectus for the August 2009 Offering (collectively, the "Offering Documents").

18.    Specifically, the Securities Act Complaint alleges that the Offering Documents contained false and misleading statements and omissions, including that: (i) STEC would experience continued growth in sales of STEC's flagship product, Zeus, to EMC similar to a massive contract announced just prior to announcing the August 2009 Offering, while omitting the material fact that the

---

[2] STEC, Manouch Moshayedi, Mehrdad Moshayedi, Raymond D. Cook and Rajat Bahri are collectively referred to as the "STEC Defendants."  Barclays Capital Inc., Deutsche Bank Securities, Inc., J.P. Morgan Securities, Inc. and Oppenheimer & Co., Inc. are collectively referred to as the "Underwriter Defendants."

prior contract was merely a "one-off type of deal" which would not be repeated; (ii) STEC would experience continued growth in its sales of Zeus to other original equipment manufacturer customers, while omitting, among other material information, that IBM would not begin purchasing for volume production during the second half of 2009 and was not marketing Zeus as a standard feature in its systems; and (iii) there was and would be no competition for STEC's solid-state drivers in the foreseeable future, while omitting the material fact that new competition would be entering the market at the end of 2009 and beginning of 2010. The Securities Act Complaint also alleges STEC's second quarter 2009 Form 10-Q, which was incorporated in the Offering Documents and filed with the SEC the same day as the Registration Statement, falsely reported artificially inflated revenue in violation of GAAP. The Securities Act Complaint further alleges that the falsity of Defendants' statements began to be revealed through a series of partial disclosures on September 17, 2009, through February 23, 2010. Although, as explained below, Defendants filed a demurrer as to timeliness (to which Bernstein Litowitz filed an opposition), Defendants did not dispute that the Securities Act claims were sufficiently alleged.

## C.    Removal Of The Securities Act Case To Federal Court

19.    On August 4, 2011, the STEC Defendants removed the state court action to this Court pursuant to 28 U.S.C. § 1441(b).[3] Following an August 5, 2011 meet and confer telephone conference of counsel, West Virginia Laborers moved to remand the case back to the Orange County Superior Court on August 17, 2011, arguing that the plain language of the Securities Litigation Uniform Standards Act of 1998 does not allow a defendant to remove a Securities Act claim to federal court. On August 29, 2011, Defendants filed an opposition brief and, on

---

[3] The Underwriter Defendants concurred in the STEC Defendants Notice of Removal.

September 2, 2011, West Virginia Laborers filed a reply brief.   Following a September 19, 2011 hearing, this Court granted West Virginia Laborers' remand motion on October 13, 2011, finding Defendants' removal was "not proper."

**D.   Notice Of Related Cases, Demurrer And Motion To Stay The Securities Act Case**

20.   Following remand to state court, Defendants filed a Notice of Related Cases on October 19, 2011 seeking to have the Securities Act case related to a case brought derivatively on behalf of STEC against its directors and executive officers. On October 24, 2011, West Virginia Laborers filed an opposition, arguing that the federal court action is based on different claims, has different parties, and is subject to different discovery than the state court action.

21.   Then, following an October 27, 2011 meet and confer telephone conference of counsel, Defendants filed a demurrer to the Securities Act Complaint and a motion to stay on November 16, 2011.   On December 16, 2011, West Virginia Laborers filed an opposition to defendants' demurrer, arguing that the Securities Act Complaint was timely filed under *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974), because multiple complaints tolled the statute of limitations for the Securities Act claims asserted for all putative class members, including West Virginia Laborers.   West Virginia Laborers also filed an opposition to Defendants' motion to stay on December 16, 2011, arguing that there are critical differences between the federal court action and the state court action.

22.   On February 16, 2012, the state court held a Case Management Conference and heard oral argument on Defendants' Notice of Related Cases, demurrer and motion to stay.   On February 17, 2012, the state court granted Defendants' motion to stay but declined to rule on Defendants' demurrer and Notice of Related Cases.   Specifically, the state court found that "this action should be stayed pending resolution of the consolidated federal action."   The State Court also directed the parties to engage in certain agreed-upon informal discovery;

DECL. OF BLAIR A. NICHOLAS ISO MOTION FOR ATTORNEYS' FEES AND EXPENSES No. SACV09-1304-JVS (MLGx)

specifically noting that "Defendants have agreed to continue to provide informal discovery to Plaintiffs notwithstanding any stay, in order to minimize the risk of a duplication of efforts between the state and federal actions."

**E.   Motion To Lift The Stay Of The Securities Act Case**

23.   On September 19, 2012, West Virginia Laborers moved the state court for an order lifting the February 17, 2012 stay.  West Virginia Laborers argued that the rationale for the stay had become moot due to intervening developments in the federal action, such as (i) this Court's March 7, 2012 order refusing to certify a class in the federal action that includes the Securities Act claims because there was no representative plaintiff in the federal action with standing to maintain those claims; (ii) this Court's June 19, 2012 order granting class certification for purposes of asserting Exchange Act claims, only; and (iii) STEC's August 7, 2012 announcement that there was a contemplated settlement of the federal action despite the absence of a representative plaintiff with standing to maintain any Securities Act claims.  West Virginia Laborers argued that the potential for inconsistent rulings and unseemly conflict was no longer a concern due to these developments.  On September 26, 2012, Defendants filed an opposition to West Virginia Laborers' motion to lift the stay, and on October 3, 2012, West Virginia filed a reply.

24.   On October 18, 2012, the state court held a Case Management Conference and a hearing on West Virginia Laborers' motion to lift the stay and, later that day, issued a Minute Order denying without prejudice West Virginia Laborers' motion.  The state court indicated it would consider a motion for a partial lifting of the stay to pursue limited discovery and proposed that counsel for West Virginia Laborers "talk[] to opposing counsel and say[], rather than it being an all or nothing, we're concerned about this item of evidence or this particular witness' testimony, or the third party discovery; and, how about if we just go ahead and take some testimony to preserve it, or exchange some documents so that we know what

we have here?  As opposed to being all or nothing, full on, let's start the discovery, and all of the cost and all of the resource implications for that."  The Court further advised: "Maybe we don't need a cleaver; maybe with a scalpel you can take out some witnesses or some documents or some issues that you are really concerned about, and address that issue of prejudice."

### F.   Discovery From Defendants And Non-Parties

25.   On October 26, 2011, West Virginia Laborers served document requests on all Defendants seeking eight categories of core documents that relate directly to the principal issues in this case – whether the August 2009 Offering documents contained materially false and misleading statements or omissions.  On November 30, 2011, Defendants served their written responses.

26.   At the February 16, 2012 hearing on Defendants' motion to stay, STEC Defendants agreed to provide West Virginia Laborers with copies of all documents produced by the STEC Defendants (as well as transcripts of certain depositions) in the federal class action.  Beginning on March 12, 2012, the STEC Defendants provided West Virginia Laborers with copies of these documents, as well as copies of more than thirty deposition transcripts from the federal class action.  As of September 19, 2012, the STEC Defendants had produced more than 652,516 pages of documents and 30 deposition transcripts to Plaintiff.

27.   During the October 18, 2012 hearing on West Virginia Laborers' motion to lift the stay, the Court encouraged the parties to move forward with informal discovery.  On October 23, 2012, counsel for West Virginia Laborers contacted counsel for Defendants to schedule a meet and confer conference to discuss specific discovery that West Virginia Laborers believed was essential to develop and protect the Securities Act claims and avoid prejudice.  Specifically, West Virginia Laborers proposed to take nine depositions, including five party depositions – defendant Rajat Bahri and Rule 30(b)(6) depositions of the four Underwriter Defendants – witnesses that were not deposed in the federal class

1   action.   Additionally, West Virginia Laborers requested that Defendants provide

2   copies of certain documents produced in the federal class action, including

3   documents from third parties, that had not yet been provided to West Virginia

4   Laborers, in accordance with the Court's prior instructions in its February 17, 2012

5   Minute Order.

6        28.   On October 24, 2012, the parties met and conferred telephonically.

7   Regarding the depositions proposed by West Virginia Laborers, counsel for the

8   Defendants refused to produce the witnesses for depositions, but agreed to produce

9   certain additional documents and information, and further explained that

10   Defendants could not produce copies of certain documents produced by non-

11   parties in the federal class action because those documents were expressly

12   produced by the non-parties subject to a protective order.   Defendants stated that

13   they did not oppose any effort by West Virginia Laborers to contact the producing

14   non-parties to obtain copies of the relevant documents or certifications from those

15   parties allowing Defendants to produce the documents, consistent with the

16   protective order.

17        29.   On October 29, 2012, the Underwriter Defendants provided West

18   Virginia Laborers with copies of documents produced by the Underwriter

19   Defendants in the federal class action.   On November 9, 2012, the STEC

20   Defendants provided West Virginia Laborers copies of third-party subpoenas and

21   contact information for twenty-five third parties that produced documents in the

22   federal class action.   In December 2012 and January 2013, West Virginia Laborers

23   endeavored to obtain permission from those non-parties, and did receive

24   permission from fourteen of the non-parties, to receive copies of documents they

25   produced in the federal class action.   On January 22, 2013, the STEC Defendants

26   provided copies of such third party productions to West Virginia Laborers.   West

27   Virginia Laborers has received copies of document productions directly from two

28   non-parties and continues to seek permission from the remaining non-parties.

30.   Defendants have represented that they provided West Virginia Laborers with copies of all documents they produced in the federal class action. STEC Defendants have also represented that they provided West Virginia Laborers with copies of all documents they produced to the SEC in response to the SEC's investigative subpoenas.

31.   In total, the STEC Defendants, the Underwriter Defendants, and certain third-parties produced more than 1.6 million pages of documents and 30 deposition transcripts to Bernstein Litowitz, which were reviewed and analyzed by Bernstein Litowitz to assess the merits of and defenses to the Securities Act claims. Specifically, Bernstein Litowitz has received at least:

    (a)   Over 650,000 pages of documents from the STEC Defendants;

    (b)   Over 730,000 pages of documents from the Underwriter Defendants; and

    (c)   Over 240,000 pages of documents from non-parties B. Riley & Co., Cisco Systems, Inc., Hewlett-Packard Company, Hitachi Data Systems Corporation, Needham & Company, Pacific Crest Securities, Inc., PricewaterhouseCoopers, Reed Smith, Stifel Nicolaus & Company, Inc., ThinkEquity LLC, Thrivent Asset Management, Wedbush Securities, Inc., and Noble Financial, Inc.

32.   In sum, West Virginia Laborers was diligently preparing its case for trial, including endeavoring to coordinate discovery with the federal class action in order to avoid duplicative document and deposition discovery, and retaining consultants and experts to prepare damages analyses for presentation at trial.

### G.   This Court Denies New Jersey's Motion For Class Certification

33.   Bernstein Litowitz continued to protect the valuable Securities Act claims by moving, on behalf of West Virginia Laborers, to intervene when Successor Lead Counsel moved to certify a plaintiff class that included claims both

under the Exchange Act, which Lead Plaintiff has standing to maintain, and under the Securities Act, which this Court had previously ruled no representative plaintiff had standing to represent under the theory of Successor Lead Counsel's operative complaint. Bernstein Litowitz argued that the valuable Securities Act claims being prosecuted by West Virginia Laborers in state court should not be erroneously incorporated into any class that may be certified in this federal action, particularly where this Court had dismissed the Securities Act claims and determined that no named plaintiff in this federal action had standing to maintain the Securities Act claims. ECF No. 249, 257.

34. This Court agreed and denied Lead Plaintiff's initial class certification motion, finding that "the proposed Class Representatives are inadequate because they seek to certify a Class that includes individuals who may have claims under the Securities Act, but the Class Representatives do not have standing to bring those claims."[4] After Lead Plaintiff failed to identify any plaintiff with standing who was willing to litigate the case on behalf of the Securities Act claims as then alleged in this case, this Court then certified a class only "for purposes of asserting the Exchange Act claim."[5]

**H.  Settlement Approval Process**

35. Throughout the settlement approval process, Bernstein Litowitz continued zealously protecting the Securities Act claims, to ensure that a class representative with standing represents them, and to ensure that Securities Act

---

[4] ECF No. 279, p. 10. On June 14, 2012, the Ninth Circuit denied Lead Plaintiff's petition for permission to appeal this Court's order denying class certification. ECF No. 313. This Court's March 7, 2012 Order denied West Virginia Laborers' motion to intervene as moot in light of its denial of class certification. ECF No. 279, at p. 21.

[5] ECF No. 314. On September 6, 2012, the Ninth Circuit denied Defendants' petition for permission to appeal this Court's order granting class certification for the Exchange Act claim. ECF No. 322.

claimants receive an actual, rather than illusory, premium for these "more valuable" claims.  Despite Bernstein Litowitz being excluded from the settlement negotiations, its efforts were largely successful, and materially contributed to the recovery obtained.

36.    Specifically, following West Virginia Laborers' opposition to Lead Plaintiff's initial purported "unopposed" motion for preliminary approval, the Court held that:   (1) the proposed Securities Act class representative, Mark Ripperda ("Ripperda"), failed to satisfy the typicality requirement because he lacked standing to assert the Securities Act claims as alleged in the operative complaint; and (2) Ripperda failed to satisfy the adequacy requirement, both because he lacked standing, and because Lead Plaintiff did not satisfy the burden of showing that Ripperda and his counsel are able to prosecute the claims vigorously.  This Court expressly noted its reliance on West Virginia Laborers' opposition:

> As West Virginia Laborers points out in its opposition, Plaintiffs have not established Ripperda or his counsel's adequacy to prosecute the Securities Act claims nor supplied any information regarding their efforts to negotiate the allocation of these claims from the net settlement fund.  In fact, Ripperda and his counsel have been involved in this case only since August 2012; counsel attended one mediation session in which Ripperda was "available by telephone." Furthermore, Ripperda did not play an active role during discovery and began his participation late in the settlement negotiation stage. Finally, Plaintiffs' only basis for qualification of Ripperda's counsel is that the Court previously found that Co-Lead Counsel was qualified and capable, and so "Ripperda's counsel too are qualified and experienced."

ECF No. 346, pp.12-13 (citations omitted).

DECL. OF BLAIR A. NICHOLAS ISO MOTION
FOR ATTORNEYS' FEES AND EXPENSES
No. SACV09-1304-JVS (MLGx)

37.     Successor Lead Counsel thus filed an amended complaint to assert Securities Act claims (that it had previously elected not to reallege), and to adopt the "competition" claim and corrective disclosure previously alleged by Bernstein Litowitz.

38.     Although this Court then granted preliminary approval over Bernstein Litowitz's objection, this Court acknowledged the ambiguity revealed by Bernstein Litowitz as to whether the purported premium in the plan of allocation applied before or after the out-of-pocket loss cap is applied, and adopted the interpretation of the plan that ensures that the premium is actual, rather than illusory.  ECF No. 358, pp. 17-18 (explaining ambiguity in the Notice and the Finnerty declaration); ECF No. 361, p. 7 (adopting an interpretation that ensures the out-of-pocket loss cap is applied before the premium).

## II.     THE APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

39.     Bernstein Litowitz is applying to this Court for an award of attorneys' fees only in the amount of its actually incurred lodestar, in a total amount of $2,152,742.50, and for reimbursement of $72,346.85 in litigation expenses.

### A.     Application For Attorneys' Fees

40.     For the extensive efforts on behalf of the Class, Bernstein Litowitz is applying for reimbursement for the total hours that it spent for the benefit of the Class.  As set forth in Bernstein Litowitz's accompanying Motion For Award Of Attorneys' Fees And Reimbursement Of Litigation Expenses ("Fee Motion"), the lodestar is the appropriate starting point in determining a quantum meruit award, while the party seeking fees must also show that the total fees incurred were reasonable.

41.     Bernstein Litowitz submits that its fee request is reasonable, and supported by its lodestar and the additional factors considered by courts in granting quantum meruit fee awards, including the nature of the litigation, the skill employed, the attention given, and the success or failure of the attorneys' efforts.

42.    As indicated in Table A below, the total number of hours expended on this litigation by my firm is 4,407.90 hours.   The total lodestar for my firm is $2,152,742.50.

**Table A:  Lodestar Report Summary**

| NAME | HOURS | HOURLY RATE ($) | LODESTAR ($) |
|---|---|---|---|
| **Partners:** | | | |
| Max Berger | 16.50 | $975.00 | $16,087.50 |
| Timothy DeLange | 195.00 | $700.00 | $136,500.00 |
| Avi Josefson | 112.25 | $650.00 | $72,962.50 |
| Blair A. Nicholas | 346.50 | $800.00 | $277,200.00 |
| Gerald Silk | 89.50 | $800.00 | $71,600.00 |
| **Senior Counsel:** | | | |
| Benjamin Galdston | 527.25 | $600.00 | $316,350.00 |
| Niki L. Mendoza | 441.20 | $600.00 | $264,720.00 |
| **Associates:** | | | |
| Michael Blatchley | 70.75 | $440.00 | $31,130.00 |
| Joseph Goodman | 648.45 | $500.00 | $324,225.00 |
| Paul Jonna | 148.25 | $425.00 | $63,006.25 |
| Takeo Kellar | 258.75 | $475.00 | $122,906.25 |
| Ann Lipton | 17.00 | $490.00 | $8,330.00 |
| **Law Clerk:** | | | |
| Reza Wrathall | 96.25 | $325.00 | $31,281.25 |
| **Staff Attorney:** | | | |
| Elaine White | 16.00 | $390.00 | $6,240.00 |
| **Paralegals:** | | | |
| Dena Bielasz | 528.75 | $265.00 | $140,118.75 |
| Jessica Cuccurullo | 65.00 | $265.00 | $17,225.00 |
| Kelly McDaniel | 25.75 | $225.00 | $5,793.75 |
| Amy Neil | 22.25 | $265.00 | $5,896.25 |
| **Case Analyst:** | | | |
| Sam Jones | 165.75 | $245.00 | $40,608.75 |
| **Investigators:** | | | |
| Amy Bitkower | 169.50 | $465.00 | $78,817.50 |
| Lisa C. Burr | 17.00 | $265.00 | $4,505.00 |

DECL. OF BLAIR A. NICHOLAS ISO MOTION FOR ATTORNEYS' FEES AND EXPENSES No. SACV09-1304-JVS (MLGx)

| NAME | HOURS | HOURLY RATE ($) | LODESTAR ($) |
|---|---|---|---|
| Jaclyn Chall | 220.50 | $265.00 | $58,432.50 |
| Joelle (Sfier) Landino | 102.50 | $265.00 | $27,162.50 |
| **Director of Investor Services:** | | | |
| Adam Weinschel | 37.25 | $375.00 | $13,968.75 |
| **Financial Resources Analyst:** | | | |
| Rochelle Moses | 18.00 | $295.00 | $5,310.00 |
| Sharon Safran | 14.00 | $295.00 | $4,130.00 |
| **Litigation Support:** | | | |
| Andy Alcindor | 14.50 | $260.00 | $3,770.00 |
| **Document Clerk:** | | | |
| Michael Andres | 23.50 | $190.00 | $4,465.00 |
| **TOTAL LODESTAR** | **4,407.90** | | **$2,152,742.50** |

43.     In addition, Bernstein Litowitz is submitting (*in camera* in order to preserve the attorney-client privilege and/or work product protection) its comprehensive time report detailing the work actually performed, in chronological order, including the timekeeper, description of work performed, time, rate, and lodestar for each task.

44.     I maintained daily control and monitoring of all the work provided by lawyers on this case.  While I personally devoted substantial time to this case, I have also utilized other experienced attorneys at my firm to undertake or work with me on particular tasks appropriate to their levels of expertise, skill and experience, and more junior attorneys and paralegals to work on matters more appropriate to their experience levels.

45.     Bernstein Litowitz's hourly rates in this case are its regular 2011-2012 rates charged to clients who are billed by the firm on a monthly basis, and are based on qualifications and experience of each partner, senior counsel, associate, staff attorney, and paraprofessional.  Courts within the Ninth Circuit have approved fee applications of Bernstein Litowitz in securities class actions with comparable hourly rates.  Moreover, although to date Successor Lead Counsel Labaton

Sucharow has not publicly disclosed its lodestar or billing rates in this case, historically its billing rates have been consistent with those of Bernstein Litowitz. A survey of Labaton Sucharow's 2012 billing rates indicates it charged between $725 to $975 for partners (with an average rate of $810), and between $425 to $650 for associates (with an average rate of $528).

46.    Bernstein Litowitz's rates are based on its annual survey of the market rates for practitioners in the field using available sources, including rates charged by law firms that regularly defend securities class actions.  Bernstein Litowitz surveyed four other securities litigation specialist firms on the plaintiffs' side, and five securities litigation specialist firms that it regularly faces on the defense side. The information on rates for the plaintiffs' counsel firms was typically obtained from attorneys' fees applications in other securities class actions.  The information on rates for the defense firms was typically obtained from bankruptcy court filings, in which approval to pay attorneys' fees was requested.

47.    Bernstein Litowitz's rates in this case are also comparable to, or significantly less than, the known hourly rates charged by counsel that regularly represent defendants in securities class actions, including the law firm that represented the STEC defendants in this case, Latham & Watkins.  For example, between August 2008 and August 2009 –i.e., 4-5 years ago – the rates for partners at Latham & Watkins ranged from $600 to $1,025 per hour (with a median rate of $830) and the rates for its associates ranged from $350 to $705 per hour (with a median rate of $490).   Moreover, hourly rates at large defense firms have materially risen since the foregoing surveys were conducted.

### B.    Application For Reimbursement Of Expenses

48.    The lodestar figures in Table A (and in the *in camera* submission) do not include charges for expense items.  Expense items are billed separately.  The expenses incurred by my firm in preserving and prosecuting the claims are reflected in the books and records of my firm. These books and records are

prepared from expense vouchers, check records and other source materials and are an accurate record of the expenses incurred.

49.     As indicated in Table B below, the total expenses for my firm (paid expenses, as well as incurred but unpaid), for which reimbursement is sought, total $72,346.85:

**Table B:  Expense Report Summary**

| CATEGORY | AMOUNT |
|---|---|
| Court Fees | $1,712.07 |
| Service of Process | $1,856.11 |
| Online Legal Research | $37,744.72 |
| Online Factual Research | $7,746.45 |
| Telephone | $124.45 |
| Postage & Express Mail | $1,907.06 |
| Internal Copying ($0.25/page) | $1,355.00 |
| Out of Town Travel | $3,951.06 |
| Court Reporting & Transcripts | $1,074.93 |
| Experts | $14,875.00 |
| **TOTAL EXPENSES:** | **$72,346.85** |

50.     In addition, Bernstein Litowitz is submitting *in camera* its detailed expense records.

51.     From the beginning of the case, Bernstein Litowitz was aware that it might not recover any of its expenses, and, at the very least, would not recover anything until the claims were successfully resolved.  Bernstein Litowitz also understood that, even assuming that the claims were ultimately successful, an award of expenses would not compensate it for the lost use of the funds advanced to prosecute the claims.  Thus, Bernstein Litowitz was motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the claims.

52.     The expenses for which reimbursement is sought are the type of expenses routinely charged to hourly paying clients, and were necessary and appropriate for the prosecution of these claims.  These include charges for

1  payments to experts and consultants; court transcripts; costs incurred in out-of-

2  town travel; charges for photocopying; telephone, postal and express mail charges;

3  and similar case-related costs.  Courts have typically found that such expenses are

4  reimbursable from a fund recovered by counsel for the benefit of the class.

5       53.    Included in the amount of expenses is $14,875.00 paid to experts and

6  consultants.    This encompasses 20% of Bernstein Litowitz's total expenses.

7  Bernstein Litowitz worked extensively with experts and consultants at the different

8  stages of prosecuting the claims.    The advice of experts was essential to the

9  effective prosecution of these claims due to the complex issues of accounting

10  misstatements, loss causation, and damages.   Experts were utilized to prepare the

11  initial consolidated complaint in this federal action, respond to Defendants' motion

12  to dismiss, analyze documents, and to analyze potential recoveries.

13       54.    Bernstein Litowitz also received more than 1.6 million pages of

14  documents produced by the STEC Defendants, the Underwriter Defendants and

15  certain third-parties.    Included in the expense request is $1,355.00 for

16  reimbursement of Bernstein Litowitz's internal copying costs.

17       55.    Bernstein Litowitz was required to travel in connection with

18  prosecuting and settling the claims, and thus incurred the related costs of train

19  tickets and meals.   Included in the expense request is $3,951.06 for Bernstein

20  Litowitz's travel expenses necessarily incurred for the prosecution of the claims.

21       56.    In connection with court proceedings in the two actions, Bernstein

22  Litowitz also incurred $1,074.93 for transcripts.   The expenses also include the

23  costs of on-line legal research in the amount of $37,744.72, and on-line factual

24  research in the amount of $7,746.45.   These are the charges for factual and legal

25  research services such as Lexis-Nexis, Westlaw, Bloomberg, and Pacer.   It is

26  standard practice for attorneys to use these on-line services to assist them in

27  researching legal and factual issues.  *See In re Media Vision Tech. Sec. Litig.*, 913

28  F. Supp. 1362, 1371 (N.D. Cal. 1996).   Indeed, courts recognize that these tools

create efficiencies in litigation and, ultimately, save clients and the class money. *See, e.g., In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992).   In approving expenses for computerized research, the court in *Gottlieb v. Wiles* underscored the time-saving attributes of computerized research as a reason reimbursement should be encouraged.  150 F.R.D. 174, 186 (D. Colo. 1993), *rev'd and remanded on other grounds sub nom. Gottlieb v. Barry*, 43 F.3d 474 (10th Cir. 1994).

57.    The other expenses are the types of expenses that are necessarily incurred in litigation and routinely charged to clients billed by the hour.  These expenses include long distance telephone charges, postal and express mail expenses, and similar case-related costs.  *See Thornberry v. Delta Air Lines, Inc.*, 676 F.2d 1240, 1244 (9th Cir. 1982), *vacated and remanded on other grounds*, 461 U.S. 952 (1983); *see also Knight v. Red Door Salon*, 2009 WL 248367, at *7 (N.D. Cal. Feb. 2, 2009); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2007).

### C.    The Reaction Of The Class To Date Supports Bernstein Litowitz's Fee And Expense Request

58.    The reaction of the class to a proposed fee and expense request is a relevant factor in approving fees and expenses.  Here, West Virginia Laborers, the putative class representative in the related Securities Act Case, and who is a sophisticated institutional investor Class Member here, approves of Bernstein Litowitz's fee and expense request as fair and reasonable.

59.    In addition, the Court-approved Notice sent to the Class informed the Class, inter alia, that:  (i)  Bernstein Litowitz would seek attorneys' fees in the amount of its lodestar actually incurred in preserving and pursuing both the Securities Act claims and the Exchange Act claims in this federal court action and the related state court action, in a total amount not to exceed $2.6 million, and litigation expenses not to exceed $80,000; (ii) Bernstein Litowitz's requested fee

DECL. OF BLAIR A. NICHOLAS ISO MOTION
FOR ATTORNEYS' FEES AND EXPENSES
No. SACV09-1304-JVS (MLGx)

would represent approximately 7.27% of the Settlement Fund; and (iii) in the event the Court awards the fees requested by Bernstein Litowitz, as well as the fee requested by Successor Lead Counsel, the total fees paid to counsel would not exceed 24.02% of the Settlement Fund.

60.     While the deadline for Class Members to file objections, if any, does not expire until April 22, 2013, to date, no objection has been filed, either to the aggregate of the fee and expense requests, or to Bernstein Litowitz's fee and expense request as stated in the Notice, and Bernstein Litowitz has not been informed that any objections have been submitted but not filed.

I declare under penalty of perjury that the foregoing facts are true and correct and that this declaration was executed this 8th day of April, 2013.

          /s/ Blair A. Nicholas
          BLAIR A. NICHOLAS