BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP
BLAIR A. NICHOLAS  (Bar No. 178428)
blairn@blbglaw.com
NIKI L. MENDOZA (Bar No. 214646)
nikim@blbglaw.com
BENJAMIN GALDSTON  (Bar No. 211114)
beng@blbglaw.com
JOSEPH W. GOODMAN  (Bar No. 230161)
joseph.goodman@blbglaw.com
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:   (858) 793-0070
Fax:  (858) 793-0323

*Movant and Prior Lead Counsel*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| IN RE STEC, INC. SECURITIES LITIGATION | SACV09-1304-JVS (MLGx) |
|---|---|
| | **REPLY IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES FOR BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP AS FORMER LEAD COUNSEL AND COUNSEL FOR SECURITIES ACT CLAIMANTS** |
| | Date:      May 20, 2013<br>Time:      1:30 p.m.<br>Judge:     Hon. James V. Selna<br>Courtroom: 10C |

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .................................................................................. ii

I. PRELIMINARY STATEMENT ................................................................... 1

II. BERNSTEIN LITOWITZ SHOULD BE PROPERLY COMPENSATED FOR ITS SERVICE TO THE CLASS AS PRIOR CO-LEAD COUNSEL ................................................................................................... 5

III. BERNSTEIN LITOWITZ SHOULD BE PROPERLY COMPENSATED FOR PRESERVING, PROSECUTING AND PROTECTING THE SECURITIES ACT CLAIMS ........................................ 9

IV. CONCLUSION ............................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alpern v. Utilicorp United, Inc.*,
    84 F.3d 1525 (8th Cir. 1996) ......................................................................................8

*Alvarado v. FedEx Corp.*,
    2009 WL 5113998 (N.D. Cal. December 18, 2009), *aff'd in relevant part,*
    *Alvarado v. Young,* 436 Fed. Appx. 746 (9th Cir. 2011) ...................................5, 6

*American Pipe & Costr. Co. v. Utah*,
    414 U.S. 538 (1974) ................................................................................................10

*Besig v. Dolphin Boating & Swimming Club*,
    683 F.2d 1271 (9th Cir. 1982) .........................................................................10, 11

*In re Cendant Corp. Sec. Litig.*,
    404 F.3d 173 (3d Cir. 2005) .....................................................................................7

*Class Plaintiffs v. Jaffe & Schlesinger, P.A.*,
    19 F.3d 1306 (9th Cir. 1994) ..................................................................................11

*In re Complete Mgmt. Inc. Sec. Litig.*,
    153 F. Supp. 2d 314 (S.D.N.Y. 2001) .....................................................................8

*In re Heritage Bond Litig.*,
    2005 WL 1594403 (C.D. Cal June 10, 2005) .........................................................6

*Howard v. Hui*,
    2001 U.S. Dist. LEXIS 15443 (N.D. Cal. Sept. 24, 2001) ..................................11

*In re IMAX Sec. Litig.,*
    2012 WL 3133476 (S.D.N.Y. Aug. 1, 2012) ..........................................................8

*Immigrant Assitance Project of L.A. Cnty. Fed'n of Labor* (AFL-CIO) v. INS,
    306 F.3d 842 (9th Cir. 2002) ...................................................................................8

*Raines v. Seattle Sch. Dist. No. 1*,
    2012 WL 527065 (W.D. Wash. Feb. 16, 2012) .....................................................8

*In re Red Hat, Inc. Sec. Litig.*,
    2011 WL 4434053 (E.D.N.C. Sept. 22, 2011) .......................................................7

*Rodriguez v. Disner*,
 688 F.3d 645 (9th Cir. 2012) ...............................................................................13

*Rodriguez v. West Publ'g Corp.*,
 563 F.3d 948 (9th Cir. 2009) ...............................................................................12

*In re Syntex Corp. Sec. Litig.*,
 95 F.3d 922 (9th Cir. 1996) ............................................................................8, 10

*Victor v. Agent Classic Convertible Arbitrage Fund L.P.*,
 623 F.3d 82 (2d Cir. 2010) ....................................................................................7

*Yumul v. Smart Balance, Inc.*,
 2010 WL 4352723 (C.D. Cal. Oct. 8, 2010) .........................................................6

Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") respectfully submits this Reply in further support of its motion for an award of attorneys' fees and reimbursement of litigation expenses ("Fee Motion," ECF No. 376).[1]

## I. PRELIMINARY STATEMENT

As the record before the Court reflects, Bernstein Litowitz has worked diligently for the benefit of the class on a fully contingent basis, without compensation, and advanced expenses for more than three years. Pursuant to the Court's Preliminary Approval Order (ECF No. 372), Class Members were provided notice that Bernstein Litowitz intended to seek an award of attorneys' fees in the amount of its lodestar actually incurred, in a total amount not to exceed $2.6 million (or 7.27% of the Settlement Fund), and reimbursement of its litigation expenses actually incurred in a total amount not to exceed $80,000. On April 8, 2013, Bernstein Litowitz filed its Fee Motion requesting fees only in the amount of its actually incurred lodestar of $2,152,742.50, and actually incurred litigation expenses of $72,346.85 – both below the maximum amounts stated in the Notice. *See* ECF No. 376. As disclosed in the Notice, Bernstein Litowitz does ***not*** seek to increase its attorneys' fee award through the application of a multiplier above the amount of its actually incurred lodestar.

Copies of the Notice were mailed to more than 125,000 potential Class Members beginning on or about March 19, 2013, and the Summary Notice was widely disseminated through publication in *Investor's Business Daily* and over the *PR Newswire*. The time for filing objections has now passed, and there is only one objection to Bernstein Litowitz's request. (ECF No. 391, "Resp.") In other words, more than 99.99% of the Class Members who received the Notice did not object to

---

[1] All capitalized terms that are not defined herein are defined in the Stipulation and Agreement of Settlement filed on October 5, 2012 (ECF No. 328-1).

Bernstein Litowitz's request, which is not surprising as it is fully supported by applicable Ninth Circuit law.

As explained below, the Court should grant Bernstein Litowitz's reasonable request for four straightforward reasons.

**First**, Bernstein Litowitz's request is grounded in equitable principles of quantum meruit. Bernstein Litowitz performed valuable work that directly benefitted the class and deserves reasonable compensation for its services. Lead Plaintiff nevertheless contends that Bernstein Litowitz should not be awarded ***any*** compensation whatsoever for its work preserving and prosecuting the more valuable Securities Act claims in connection with its representation of West Virginia Laborers and the putative Securities Act class in the state court action. These are the same Securities Act claims that were at risk of being extinguished by Lead Counsel's failure to promptly amend the operative complaint following the Court's June 17, 2011 Order dismissing without prejudice the Securities Act claims because no representative plaintiff had standing to maintain those claims. Lead Plaintiff simply pretends that the Securities Act claims – though unasserted in this action since June 17, 2011 – somehow remained in the action.[2] Lead Plaintiff ignores that the Court refused ***three times*** to certify a class that included the Securities Act claims because Lead Plaintiff lacked standing to maintain those claims and the Court initially denied preliminary approval of the Settlement, agreeing with West Virginia Laborers that the proposed Securities Act class representative was neither adequate nor typical. Lead Counsel's failure to amend the operative complaint promptly after the Court's June 17, 2011 Order only confirms its tacit reliance on the efforts of Bernstein Litowitz to preserve and

---

[2] Notably, during the October 7, 2011 status conference with the Court, Lead Counsel acknowledged that no viable Section 11 claim remained at issue in the case at that time and, if there was such a claim, "different discovery" would be required. *See* Oct. 7, 2011 Transcript of Proceedings, 5:6-9 (ECF No. 212).

litigate those claims in state court. There is no other explanation for why Lead Counsel failed to amend its complaint with a named plaintiff with standing until after Bernstein Litowitz prosecuted – and fully protected – the Securities Act claims. At bottom, the Court has consistently agreed with West Virginia Laborers that Lead Plaintiff could not prosecute or resolve the Securities Act claims without a representative plaintiff with standing, and it is principally because of the efforts of West Virginia Laborers and Bernstein Litowitz that Securities Act claimants will, subject to the Court's approval, receive the substantial premium for those "more valuable" claims.

**Second**, Lead Plaintiff urges the Court to *penalize* Bernstein Litowitz by discounting Bernstein Litowitz's lodestar for its service as prior lead counsel by the same "negative multiplier" that applies to Lead Counsel's fee request. Lead Plaintiff provides no rational reason to arbitrarily reduce the fees of counsel who are not parties to, nor bound by, the fee agreement between Lead Counsel and Lead Plaintiff; did not work for or at the direction of Lead Counsel; and where the purported "negative multiplier" is the direct result of a contractual agreement between Lead Plaintiff and Lead Counsel.

**Third**, Lead Plaintiff's attempt to engage in a task-by-task analysis questioning (in hindsight) the value of the services provided by Bernstein Litowitz should be rejected. Bernstein Litowitz performed valuable and important work that benefitted the Class, including:

- As prior lead counsel, conducting a comprehensive investigation and preparing a comprehensive first consolidated complaint, consulting with experts, negotiating a pretrial schedule and joint Rule 26(f) report, and preparing oppositions to Defendants' motions to dismiss and request for judicial notice;
- As counsel for West Virginia Laborers and the putative Securities Act class, preparing and filing a detailed class action complaint in

state court alleging Securities Act claims that were in jeopardy of being extinguished as a result of Lead Counsel's decision not to amend the operative complaint in this Action, including claims against defendants that had been dismissed altogether from this Action;

- Obtaining partial relief from the stay imposed on the Securities Act class action to obtain party and non-party discovery, including transcripts of 30 depositions and more than 1.6 million pages of documents, which Bernstein Litowitz reviewed and analyzed to assess the merits and potential defenses unique to the Securities Act claims and to diligently prepare the case for trial; and

- Ensuring that the Securities Act claims were not erroneously included in the class certified in this Action for litigation or settlement purposes without proper representation by a plaintiff with standing to maintain the Securities Act claims and that the Securities Act claimants received an actual premium for the "more valuable" claims.

**Finally**, as the Court has previously noted, if the fee applications of all counsel were granted, "total fees paid to all counsel would not exceed 24.02 percent of the Settlement Fund" which would still be *less* than the 25% benchmark for similar securities fraud class actions in the Ninth Circuit.[3] Bernstein Litowitz produced valuable work in this action and in the state court action, and is proud of its contributions to the recovery obtained for the Class. The detailed time records voluntarily submitted *in camera* for the Court's review by Bernstein Litowitz (and,

---

[3] Feb. 11, 2013 Minute Order, at 7-8 (ECF No. 361). Based on the fee requests that were actually made, the total of all fee requests amounts to only 23.05% of the gross settlement fund.

1  notably, by no other fee movant) provide ample support for the award of fees in the
2  amount of Bernstein Litowitz's lodestar and address any issues raised regarding the
3  allocation of efforts prosecuting the Exchange Act claims and the Securities Act
4  claims.[4]

## II. BERNSTEIN LITOWITZ SHOULD BE PROPERLY COMPENSATED FOR ITS SERVICE TO THE CLASS AS PRIOR CO-LEAD COUNSEL

In authorizing Bernstein Litowitz to seek attorneys' fees for its service as prior co-lead counsel, this Court recognized that Bernstein Litowitz "***obviously expended significant resources drafting a consolidated complaint and responding to STEC's motion to dismiss***." July 14, 2010 Order, ECF No. 123. Indeed, by the time the Court substituted a new lead plaintiff in this case (and approved of its selection of new lead counsel) on July 14, 2010 (ECF No. 123), Bernstein Litowitz, as prior co-lead counsel, had already conducted an extensive factual and legal investigation, including identifying and contacting hundreds of potential confidential witnesses; consulted with accounting and damages experts; drafted the comprehensive consolidated complaint that was later used as a template for future complaints; conferred with defense counsel and appeared before the Court regarding an appropriate pretrial schedule; and prepared an extensive opposition to Defendants' motion to dismiss and request for judicial notice. *See* Declaration of Blair A. Nicholas in Support of Motion for Approval of Attorneys' Fees and Litigation Expenses (ECF No. 376-1, "Nicholas Decl.") at ¶¶5-12.

Lead Plaintiff does not – and cannot – dispute that Bernstein Litowitz is entitled to claim its fees in quantum meruit for its service as prior co-lead counsel. *See* Fee Motion, p. 2 (citing *Alvarado v. FedEx Corp.*, 2009 WL 5113998, at *1 (N.D. Cal. December 18, 2009) ("*FedEx*") (awarding fees on a quantum meruit

---

[4] The summary lodestar report that Lead Counsel did submit, ECF No. 386-4, confirms that its billing rates are consistent with those of Bernstein Litowitz.

basis to prior class counsel; based on Court's assessment of value of work performed by former counsel), *aff'd in relevant part, Alvarado v. Young,* 436 Fed. Appx. 746 (9th Cir. 2011) ("*Young*") (unpubl.) (affirming award of 25% of total fee award to prior class counsel and 75% to successor class counsel, finding that prior class counsel "was entitled to claim her fees in quantum meruit"); *Yumul v. Smart Balance, Inc.*, 2010 WL 4352723, at *1 n.6 (C.D. Cal. Oct. 8, 2010) ("Allowing plaintiff to terminate Beck & Lee as counsel does not prevent the firm from recovering the reasonable value of the services it has performed to date.")).

Lead Plaintiff also does not dispute that, in determining the amount to which counsel is entitled to in quantum meruit for its services benefitting a class, ***"the most useful starting point"*** is its lodestar.  Fee Motion, pp. 4, 14-16 (citing *FedEx,* 2009 WL 5113998, at *17; *aff'd in relevant part, Young,* 436 Fed. Appx. 746).

As explained in the Class Notice, Bernstein Litowitz does not seek to increase its attorneys' fee award through the application of a multiplier above the amount of its actually incurred lodestar.  Lead Plaintiff argues, however, that Bernstein Litowitz should not be fully compensated for its work performed (its full lodestar), but rather, Bernstein Litowitz should be penalized and paid only a small fraction (0.27, or less than a third) of its lodestar for work performed as prior lead counsel.[5]  Lead Plaintiff reasons that its own counsel, current Lead Counsel, is

---

[5] Lead Plaintiff mistakenly claims that its recommendations with respect to fee awards are due a "presumption of correctness."  Resp. at 1.  While the recommendations of a lead plaintiff with respect to work performed by prior counsel *before* the lead plaintiff appointment is accorded "substantial deference," there is no general "presumption of correctness" where, as here, counsel also represented a different client, including prosecution of a related action in state court, and did not work under the direction and supervision of lead counsel.  Lead Plaintiff's cited authority only supports these points.  *See In re Heritage Bond Litig.*, 2005 WL 1594403, at *25 (C.D. Cal June 10, 2005) (declining to award fees for counsel's work "performed in an unrelated and unsuccessful matter" that "had a harmful effect on the class" and reducing fees for work authorized by Lead

limited by its contractual agreement with Lead Plaintiff from seeking more than 16.07% of the Settlement Fund, and that under that agreement, Lead Counsels' fee request results in a negative multiplier of 0.27 on Lead Counsel's claimed lodestar – and that the same negative multiple should also apply to Bernstein Litowitz. This argument is wholly misguided for several reasons.

First, and most obvious, Bernstein Litowitz is not a party to the fee agreement negotiated and voluntarily entered into by Lead Counsel. It would be patently inequitable to force Bernstein Litowitz to be bound by a contract in which it is not a party and the terms of which it never knew. Bernstein Litowitz, having zealously and efficiently advocated every step of the way – as confirmed by its detailed time reports – should not be punished because Lead Counsel voluntarily entered into an agreement for a specific fee percentage. The multiplier attributable to Lead Counsel's fee request is a product of that fee agreement combined with Lead Counsel's own reported lodestar, which is entirely unrelated to Bernstein Litowitz's lodestar. Indeed, courts typically use the lodestar and multiplier "crosscheck" to confirm the reasonableness of fee requests by class counsel where the fee award sought *exceeds* the actual lodestar. Here, the lodestar and multiplier crosscheck on Lead Counsel's fee request has no bearing on Bernstein Litowitz's fee request, which seeks only its actual lodestar, with no multiplier. Instead, the Court may assess the reasonableness of Bernstein Litowitz's fee request based on the detailed time records submitted for *in camera* review.

---

Plaintiff); *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 195 (3d Cir. 2005) (the court may give "substantial deference" to Lead Plaintiff's recommendations as to work performed before the appointment of the lead plaintiff but "[t]he court, not the lead plaintiff, must decide for itself what firms deserve compensation for work done on behalf of the class prior to the appointment of the lead plaintiff"); *In re Red Hat, Inc. Sec. Litig.*, 2011 WL 4434053, at *6 (E.D.N.C. Sept. 22, 2011) (same) (citing *Cendant*); *Victor v. Agent Classic Convertible Arbitrage Fund L.P.*, 623 F.3d 82, 90 (2d Cir. 2010) (same).

Moreover, while Bernstein Litowitz was initially appointed as co-lead counsel, its replacement by Lead Counsel was through no fault of its own but the result of unusual circumstances related to the scope of the class period.[6] Under such circumstances, any ruling to deny or discount compensation for Bernstein Litowitz's valuable work would be inequitable, inconsistent with quantum meruit, and would disincentive attorneys who take on these high-risk, resource-intensive and complex contingency fee cases.[7]

---

[6] This situation, thus, is materially distinguishable from the case relied on by Lead Plaintiff, *In re IMAX Sec. Litig.,* 2012 WL 3133476 (S.D.N.Y. Aug. 1, 2012), in which the court "criticized [prior lead counsel] vis-à-vis its failure to disclose [information]." *Id.* at *3; *id.* at *10-11 ("[W]e do hold [prior lead counsel] partially responsible for the need to replace [prior lead plaintiff] . . . . In this case, [prior lead counsel] disappointed in its level of candor and based on its supplemental submission still fails to grasp the basis for our concern regarding the Yates Affair. For reasons of public policy, the grant of fees and expenses must reflect this."). The court nevertheless granted a 33% fee and expense award, to be initially allocated by successor lead counsel in accordance with the court's order, but "[i]f counsel are unable to reach an agreement with [successor lead counsel] that is perceived as equitable and in accord with the observation in this Memorandum and Order, then application can be made to this Court for assistance." *Id.* at *11.

[7] The cases cited by Lead Plaintiff are inapposite. For example, in *Immigrant Assistance Project of L.A. Cnty. Fed'n of Labor (AFL-CIO) v. INS*, 306 F.3d 842 (9th Cir. 2002), as opposed to here, individual plaintiffs who were "similarly situated" were pursuing the same claims. *Id*. at 858; *see also Raines v. Seattle Sch. Dist. No. 1*, 2012 WL 527065, at *3, 4-5 (W.D. Wash. Feb. 16, 2012) (standing not at issue because the same plaintiff with standing was permitted to file an EPA claim "arising out of the same facts from her first complaint" and "based on the[] same events"). Lead Plaintiff also seeks to rely on two cases outside of the Ninth Circuit that do not apply the Ninth Circuit's standard for relation back set forth in *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 935 (9th Cir. 1996). *See Alpern v. Utilicorp United, Inc.*, 84 F.3d 1525 (8th Cir. 1996) and *In re Complete Mgmt. Inc. Sec. Litig.*, 153 F. Supp. 2d 314 (S.D.N.Y. 2001). Additionally, in both those cases, in contrast to the present case, standing was not at issue as they involved a plaintiff that had standing in the original complaint for the Securities Act claims to "relate back" to. *Alpern*, 84 F.3d 1525 at 1531, 1542-43; *Complete Mgmt.*, 153 F.

As this Court recognized in eventually granting preliminary approval, here, the total fee request, including Bernstein Litowitz's, is below the Ninth Circuit's 25% benchmark. ECF No. 361, p. 7.

## III. BERNSTEIN LITOWITZ SHOULD BE PROPERLY COMPENSATED FOR PRESERVING, PROSECUTING AND PROTECTING THE SECURITIES ACT CLAIMS

Lead Plaintiff's attempt to rewrite history to diminish the importance and value of Bernstein Litowitz's service to the Class is baseless and should be rejected. Lead Plaintiff's primary argument – that Defendants never challenged the timeliness of the Securities Act claim in the Third Consolidated Amended Complaint for Violations of the Federal Securities Laws (ECF No. 356) ("TAC") (which was filed only after the Court sustained the objections filed by Bernstein Litowitz, and only for purposes of attempting to release the Securities Act claims), and therefore, somehow, Bernstein Litowitz's preservation of the Securities Act claims is devalued – is frivolous. Resp. at p. 5. As the record in this case clearly indicates, Defendants never challenged the timeliness of the amendment because they supported the amendment in order to effectuate the global resolution of all class claims. Therefore, Lead Plaintiff's argument that Defendants' failure to challenge the amendment should be given significant weight (or any weight at all) is baseless.

Lead Plaintiff's alternative argument questioning the timeliness of the Securities Act claims in West Virginia Laborers' Securities Act Complaint is similarly baseless. Indeed, West Virginia Laborers' Securities Act claims were timely filed and, as Lead Plaintiff concedes, it has never been established otherwise. In fact, well after Defendants' November 6, 2011 motion raised this purported defense, Defendants nonetheless insisted in their initial mediation with

---

Supp. 2d at 336. Moreover, in *Alpern*, the doctrine was merely used for calculating damages and not calculating the statute of limitations. *Id.* at 1542-43.

Lead Plaintiff on January 5, 2012 that they would not settle unless the Securities Act claims were included in the settlement. ECF No. 360-1, ¶31. Thus, Defendants apparently recognized the strong likelihood that the Securities Act claims asserted by West Virginia Laborers were viable and timely filed. Indeed, Bernstein Litowitz was the *only law firm* pursuing Securities Act claims at this time because this Court had dismissed the Securities Act claims in this action on June 17, 2011. Additionally, as set out in West Virginia Laborers' briefing on the issue, the statute of limitations for the Securities Act claims asserted by West Virginia Laborers was tolled under the Supreme Court's Decision in *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974) ("*American Pipe*"). Therefore, West Virginia Laborers' Securities Act claims were timely filed.

Tellingly, Lead Plaintiff does not – and cannot – argue that its Securities Act claims in the TAC would have been timely filed under *American Pipe* without relying on West Virginia Laborers' Securities Act Complaint. Rather, Lead Plaintiff seeks to enlist the "relation-back" doctrine to salvage its claim. Lead Plaintiff's relation-back argument is premised on a hypothetical proposition that *if* West Virginia Laborers had never filed its Securities Act Complaint, Lead Plaintiff nevertheless would have, on its own (and without the Court's direction following Bernstein Litowitz's sustained objections to class certification and preliminary approval), inexplicably elected to file the TAC to add the Securities Act claims and add a plaintiff with standing to maintain that claim more than one year after the Court dismissed it without prejudice. The history of this action speaks for itself.

In any event, even if Lead Plaintiff's hypothetical were credible, whether Lead Plaintiff would have hypothetically been able to rely on the "relation-back" doctrine is questionable at best. *See*, *e.g.*, *Syntex Corp.*, 95 F.3d at 935 (the relation back doctrine only applies where "there is an identity of interests between the original and newly proposed plaintiff") (citing *Besig v. Dolphin Boating & Swimming Club*, 683 F.2d 1271, 1278-79 (9th Cir. 1982)); *Besig*, 683 F.2d at 1278

("Notice from a previous complaint is seldom adequate when substituting plaintiffs . . . [u]nless the substituted and substituting plaintiffs are so closely related that they in effect are but one") (citations omitted); *Howard v. Hui*, 2001 U.S. Dist. LEXIS 15443, at *17-20 (N.D. Cal. Sept. 24, 2001) ("[a]lthough Anderson was a member of the class when the original complaint was filed, he asserts an entirely new claim that Howard . . . could not allege due to lack of standing. Thus, with respect to the new [] claim, Anderson has different interests from Howard. Accordingly, the relation-back doctrine does not rescue Anderson's [] claims."). The Court need not entertain such speculation because the operative complaint was amended solely to settle – not litigate – the Securities Act claims, which had been preserved by West Virginia Laborers.

Lead Plaintiff's reliance on *Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306 (9th Cir. 1994), is unavailing. *Class Plaintiffs* confirms that the Court may award attorneys' fees to counsel other than lead class counsel. *Id.* at 1309. And this case is unlike *Class Plaintiffs* where the state court action "was not sufficiently related to the MDL litigation to warrant payment out of the MDL settlement fund." *Id*. (citation omitted). In any event, Lead Plaintiff's arguments ignore the relevant facts: (i) Lead Counsel failed to amend the operative complaint prior to reaching a proposed settlement to include Securities Act claims and a proper class representative with standing for the claims; (ii) following Lead Counsel's election not to amend to reassert the Securities Act claims, Bernstein Litowitz filed a complaint asserting the Securities Act claims and including a class representative with standing to pursue the claims; and (iii) Lead Counsel admits that "Defendants would not settle unless the Securities Act claims were included in the settlement." ECF No. 360-1, ¶31. With these facts, there can be no doubt that, contrary to Lead Plaintiff's attempts to convince the Court that Bernstein Litowitz

played no part in obtaining the settlement for the Class, Bernstein Litowitz played a very important and valuable role, and should be compensated accordingly.[8]

Lead Plaintiff also argues that Bernstein Litowitz should not be compensated for what Lead Plaintiff calls an "unsuccessful attempt to intervene in this Action regarding certification of a litigation class."[9] Bernstein Litowitz's efforts can hardly be said to have been "unsuccessful." Indeed, Lead Plaintiff admits, as it must, that the motion was denied "<u>as moot</u>," and only as a result of the Court <u>denying</u> Lead Plaintiff's motion for class certification (for the first of three times). Lead Plaintiff also fails to acknowledge that the "solution" proposed by Bernstein Litowitz – that the Securities Act claims be excluded from class certification (ECF No. 279, p. 12) – is precisely what the Court ordered when it later granted class certification as to the Exchange Act claims only. ECF No. 314 (denying, for the second time, Lead Plaintiff's request to certify a class to include the Securities Act claims).

Lead Plaintiff likewise argues that Bernstein Litowitz should not be compensated for opposing preliminary approval of the Settlement. Lead Plaintiff does not dispute that successful objectors are entitled to compensation for their efforts in certain circumstances. *See Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 963 (9th Cir. 2009) (clearly erroneous to not award objectors fees where

---

[8] Lead Plaintiff opposes reimbursement of Bernstein Litowitz's expenses incurred in connection with its preservation and prosecution of the Securities Act claims only for the same reasons that Lead Plaintiff opposes Bernstein Litowitz's motion to be compensated for its time spent in connection with its preservation and prosecution of such claims. Bernstein Litowitz has submitted detailed expense reports supporting its request, which no other fee and expense movant submitted.

[9] Resp. at 2, 8-9. Lead Plaintiff similarly argues that Bernstein Litowitz should not be compensated for its discovery efforts in prosecuting the Securities Act claims. *Id*. at 7. Again, this argument relies on hindsight and ignores that the discovery efforts undertaken were necessary to litigate the Securities Act claims and evaluate the sufficiency of the settlement.

objectors brought issue to district court's attention; "we remand for the district court to reconsider the extent to which Objectors added value that increased the fund or substantially benefitted the class members, and to award attorney's fees accordingly"), *on appeal after remand, Rodriguez v. Disner*, 688 F.3d 645 (9th Cir. 2012) (clear error to not award fees to objector who brought issue to district court's attention).

But Lead Plaintiff ignores the fact that, throughout the settlement approval process, Bernstein Litowitz continued zealously protecting the Securities Act claims, to ensure that a class representative with standing represents the Securities Act claims, and to ensure that Securities Act claimants receive an actual, rather than illusory, premium for their "more valuable" claims. In doing so, Lead Plaintiff attempts to downplay the Court's express reliance on Bernstein Litowitz's objections when denying Lead Plaintiff's initial motion for preliminary approval:

> As West Virginia Laborers points out in its opposition, Plaintiffs have not established Ripperda or his counsel's adequacy to prosecute the Securities Act claims nor supplied any information regarding their efforts to negotiate the allocation of these claims from the net settlement fund. In fact, Ripperda and his counsel have been involved in this case only since August 2012; counsel attended one mediation session in which Ripperda was "available by telephone." Furthermore, Ripperda did not play an active role during discovery and began his participation late in the settlement negotiation stage. Finally, Plaintiffs' only basis for qualification of Ripperda's counsel is that the Court previously found that Co-Lead Counsel was qualified and capable, and so "Ripperda's counsel too are qualified and experienced."

ECF No. 346, pp.12-13 (citations omitted).

Lead Counsel thus filed an amended complaint to assert Securities Act claims (that it had previously elected not to reallege), and to adopt the "competition" claim and corrective disclosure previously alleged by Bernstein Litowitz.

Although the Court then granted preliminary approval over Bernstein Litowitz's objection, the Court acknowledged the ambiguity revealed by Bernstein Litowitz as to whether the purported premium in the plan of allocation applied before or after the out-of-pocket loss cap is applied, and adopted the interpretation of the plan that ensures that the premium is actual, rather than illusory.  ECF No. 358, pp. 17-18 (explaining ambiguity in the Notice and the Finnerty declaration); ECF No. 361, p. 7 (adopting an interpretation that ensures the out-of-pocket loss cap is applied before the premium).  Lead Plaintiff provides no evidence or support for its assertion that only "one or two Class Members" will benefit from the Court's clarification that the premium will, in fact, apply to all Securities Act claimants. Resp. at 11.  In any event, class counsel has a fiduciary duty to all class members, and not only to the Lead Plaintiff or the majority of class members.

## IV. **CONCLUSION**

Based on the overwhelming positive reaction of the Class to the Notice disclosing the fee and expenses that would be requested by Bernstein Litowitz, and for the reasons stated above, in the Fee Motion and supporting declaration, Bernstein Litowitz respectfully requests that the Court grant its request for attorneys' fees and reimbursement of litigation expenses.

Dated: May 6, 2013                    Respectfully submitted,

BERNSTEIN LITOWITZ BERGER
    & GROSSMANN LLP

    */s/ Blair A. Nicholas*

Blair A. Nicholas  (Bar No. 178428)
blairn@blbglaw.com
Niki L. Mendoza (Bar No. 214646)
nikim@blbglaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Benjamin Galdston  (Bar No. 211114)
beng@blbglaw.com
Joseph W. Goodman  (Bar No. 230161)
joseph.goodman@blbglaw.com
12481 High Bluff Drive, Suite 300
San Diego, CA 92130
Tel:   (858) 793-0070
Fax:   (858) 793-0323

*Movant and Prior Lead Counsel*